UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| RICHARD MAX STRAHAN | ) | |
|---|---|---|
| | ) | |
| *Plaintiff* | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | 05 – 10140 - NMG |
| ELLEN ROY-HERZFELDER, *et al.* | ) | |
| | ) | 19 June 2005 |
| *Defendants* | ) | |

AFFIDAVIT OF RICHARD MAX STRAHAN

I Richard Max Strahan hereby swear and depose as follows —

1.    I served subpoenas on the National Marine Fisheries Service in Gloucester MA ("NMFS Subpoena") and on the Center for Coastal Studies in Provincetown MA ("CCS Subpoena") pursuant to the instant action. At no time did any NMFS employee contact me to discuss the production of sought after documents or otherwise attempt to discuss the NMFS Subpoena. I attempted to contact NMFS to discuss the NMFS Subpoena but was rebuffed in each of my attempts to do so.

2a.    On the date that these subpoenas required NMFS and CCS to appear, both parties failed to provide the requested original documents for copying at the location specified in their respective subpoenas at the date and time specified by them. I did however receive from each of these parties a written response to my respective subpoena to them. <u>See</u> attachments #1 and #2. They eventually supplied to me some documents that they alleged to be responsive to my subpoenas to them. However, they never claimed to be supplying the copies of the original documents that I requested to be supplied to me in my respective subpoenas to them and they

have not. For example, upon inspection of their responses I did not receive any copy of any of the requested original digital images I requested of entangled whales and the fishing gear that was removed from some entangled whales. They did not supply these. They also did not supply copies of any of the requested correspondence between these parties and the defendants. They also did not supply any copy of any of the requested computer databases either.

    2b.    The CCS/Borrelli refused to provide the documents described in the numbered requests of the CCS subpoena. In order to perfect their intentional evasion of the CCS Subpoena they have only offered to supply a copy of files on a web site maintained by CCS. I have routinely examined this referred Internet site with the URL address of www.coastalstudies.org/_entanglementupdate/entanglement~update.htm ("CCS Web Site"). The files on this site essentially contain promotional material for CCS disentanglement efforts, some anecdotal description of their disentanglement activities, and no original image or data files concerning entangled whales or whales at all. I have routinely accessed this site for years although CCS routinely promotes the CCS Web Site as a secret. The "secretness" of this web site is a known joke and it is widely known by anyone who wants to access it. I personally informed Borrelli and CCS' legal counsel that the CCS Subpoena did not request any document associated with this web site. The CCS Subpoena was issued after years of my accessing this site and it asks for information not found on this site. Regardless, I expressly told Borrelli them that I did not want any of these documents because I already had anything of use on it already. I objected to their plan to only supply these documents as their total response to the CCS Subpoena. Upon information and belief, they sent to me the threatened documents on a CD-R. Recently I tried to access the CCS Web Site and it is now password protected. I have asked numerous state and federal government officials if they have the password and they said they do not. Upon

information and belief, the Borrelli/CCS has decided to make the site inaccessible in a bad faith attempt to not comply with the CCS Subpoena.

    2c.    Both Borrelli and CCS' legal counsel have completely refused to honor the CCS Subpoena's request for the production of original digital images of entangled whales and the fishing gear removed from some of these whales. The Borrelli told me that he would never supply original digital images of entangled whales. He said that there was no difference in cost to CCS in supplying the original digital images versus corrupted thumbnail copies of the originals. He said that CCS' simply did not want me to have copies of these images because he did not support me getting the relief the instant action is seeking.

    3.    The NMFS' response to my NMFS Subpoena consisted of two CD-R disks and a stack of documents printed from the files supplied on one of these CD disks. On one of the CD disks ("CD1") are indications that it is responsive to items #1 - #6 of the NMFS Subpoena. Upon examining the CD on a computer desktop the following content of the CD was displayed —



1 Entanglement images    2, 3 &4  Entanglement Reports

6 Sightings data    5 Gear images

4.    When I opened up the "Entanglement Images" file that appears to be responsive

to item #1 of the NMFS Subpoena the following contents are displayed —



1999 Images     2000 Images     2001 Images     2002 Images

Whale entanglemen
write up.doc

2003 images     2004 Images     2005 Images     Thumbs.db

5.    To me, the "Thumbs.db" file indicates that these files are derived from an actual

computer database possessed by NMFS or the CCS. All of the image files contained in these

folders turned out to be corrupted and reduced quality "thumbnail" images of the high quality

original images. They probably represent the original digital images in the said computer

database as " aliases" of the original images. The document "Whale entanglement write-up"

upon examination turned out to have been created by NMFS in response to the NMFS Subpoena

and its contained information derived from original documents that are not referenced anywhere

in this said file.

6.    Upon opening the "2000" folder I found a series of folders that contained a set of

degraded "thumbnail" image files of the requested original digital images.  The following

Thumbnail is about 18 thousand pixels in size reduced from an original image that is probably

greater that one and half million pixels in size.  Many of the "thumbnail" derived images are

embossed with a copyright claim of the "Center for Coastal Studies." These thumbnails are so

degraded from the original that they are expectedly devoid of any usable detail. These

thumbnails are also but a degraded copy of a few of hundreds if not thousands of high quality

original digital images of entangled whales and the fishing gear removed from some of these

whales. These  thumbnails appear to be offered to deliberately prevent me from having images

that adequately detail the entanglement of whales in fishing gear, the kind of gear that entangles them, and the injuries that they sustain as a result of the entanglements. Below is a faithful example of one of the thumbnail images supplied by NMFS pursuant to the NMFS Subpoena in size and quality —



7.    All of these images are so degraded to be useless and there is no provided metadata to indicate where the original pictures were even taken or by whom. The thumbnail images offered here by NMFS in no way is responsive to item #1 of the NMFS subpoena. I would have told NMFS this if any employee of NMFS had ever contacted me to discuss my requests for the production documents in the NMFS Subpoena.

8.    I opened the second top folder on the NMFS CD, which appears to be responsive to items #2, #3, and #4 of the NMFS Subpoena. The following contents were presented —



9.    These documents are not copies of the original documents sought by items #2 - #4 of the NMFS Subpoena. They are reports that were generated by NMFS employees from the original sought documents without any reference to the original sought documents. This is not what I asked for in the NMFS Subpoena, which included original reports of the entanglement of

whales made to NMFS as well as the computer database maintained by NMFS on sightings of entangled whales.

10.     When I open the "6 Sighting Data" folder on the top view of NMFS CD I discover a single file in Microsoft Excel format. This folder appears to be in response to item #6 of the NMFS Subpoena but it supplies no copy of said requested documents. The included file appears to contain information on entangled whales derived from the sought after original documents of the NMFS Subpoena without any reference to these original documents. It appears to have been created specifically in response to my NMFS Subpoena and does represent any of the original documents sought by it.

11.     When I open the "5 Gear Images" folder on the top view of the NMFS CD I discover a series of folder of the same Thumbnail files of original digital images that are not included. This folder is apparently responsive to item #5 of the NMFS Subpoena. No file found in this folder can possibly be claimed to be responsive to the request for original digital images requested by the NMFS Subpoena. Additionally these thumbnails and associated document files are all derivative from a computer database that is not included and the documents are created specifically in response to the NMFS Subpoena from information derived from original sources not even referenced anywhere here.

12.     In summary, the materials that NMFS supplied me in response to the NMFS Subpoena cannot be interpreted as any way responsive subpoena's request to NMFS for the production of original documents. The fact that NMFS failed to supply a single original digital image or computer database on its own constitutes a complete failure to comply with the NMFS Subpoenas requests for the production of documents.

13.     I have talked with peter Borrelli on four separate occasions on the subject of CCS providing copies of original digital images of entangled whales and the fishing gear that was removed by some of these whales. Upon information and belief, these pictures have been paid for under federal permit and paid for by state/federal contract funding. These contracts/permits specify that the involved state and federal agencies retain ownership of these digital images. He has consistently refused to supply the said original digital images for no other offered reason except that he "just does not want to." I sent him and serve CCS' legal counsel a supplement to the CCS Subpoena on 18 June 2005. See Attachment #3. In response he sent me an e-mail challenging me to prove that higher resolution digital images show more detail than lower resolution version of the same image and supply me two digital images of derived from the same picture of a Northern Right Whale named "Piper" by someone. See Attachment # 4. On 20 June 2005 I sent Borrelli my response that conclusively showed that a higher resolution image of Piper showed more usable detail than a lower resolution version of the same image. See Attachment #5.

Signed under the pains and penalties of perjury this 20th day of June in the year two thousand and one.

By:



RICHARD MAX STRAHAN, Plaintiff



## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **RICHARD MAX STRAHAN,** | ) |
| | ) |
| **Plaintiff,** | )     **Civil Action No.** |
| | ) |
| v. | )     **05-10140-NMG** |
| | ) |
| **ELLEN ROY-HERZFELDER, *et al.*,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## NATIONAL MARINE FISHERIES SERVICE'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S SUBPOENA *DUCES TECUM*

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, the National Marine

Fisheries Service ("NMFS") responds to Plaintiff's Subpoena *Duces Tecum* as follows:

### GENERAL OBJECTIONS

1.    NMFS objects to each of the requests to the extent it is unreasonable, unduly

burdensome or expensive under the circumstances of this case.

2.    NMFS objects to each of the requests to the extent it seeks information protected

by the attorney-client privilege, the attorney work product privilege, or any other applicable

privilege.

3.    NMFS objects to each of the requests, and the prefatory "Definitions" and

"Instructions" to the extent they seek to impose obligations that exceed the requirements of the

Federal Rules of Civil Procedure.

4.    NMFS objects to each of the requests to the extent that it seeks the production of

documents that are already in Plaintiff's possession, custody or control or that are public records,

and thus are equally available to Plaintiff.

5. NMFS objects to each of the requests to the extent it is cumulative, duplicative, or the subject of prior Freedom of Information Act ("FOIA") requests.

Subject to and incorporating the foregoing objections and without waiving these objections or the right to file later motions, NMFS responds as follows:

## DOCUMENTS REQUESTED

### REQUEST NO. 1

Ten representative digital images of each and every whale observed entangled in fishing gear within fifty miles of U.S. coastal waters under Massachusetts state jurisdiction between the years 1999-2005. The digital images provided should be the highest available resolution as measured in absolute size of pixels (e.g. if two distinct files exist of the same image but one of the is higher in resolution as measured in pixels, the higher resolution and larger as measured in bytes of a particular format constitutes the requested file). In addition necessary documentation that identifies the date any provided picture was taken, the location it was taken in latitude and longitude, the species of the whale that is being depicted, and the name of the photographer that took the image.

### RESPONSE TO REQUEST NO. 1

NMFS specifically objects to this request insofar as it is overly broad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, responsive materials are contained on the first of two CD-ROMs enclosed herein.

### REQUEST NO. 2

All documents concerning reports of any whale observed entangled in fishing gear within 50

miles of U.S. coastal waters under Massachusetts state jurisdiction (e.g. within 53 miles of any point on the Massachusetts coastline) between the years 1999-2005.

## RESPONSE TO REQUEST NO. 2

NMFS specifically objects to this request insofar as it is overly broad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, responsive materials are contained on the first of two CD-ROMs enclosed herein.

## REQUEST NO. 3

All documents in any way describing and/or reporting the observation of entangled whales in coastal waters under Massachusetts state jurisdiction.

## RESPONSE TO REQUEST NO. 3

NMFS specifically objects to this request insofar as it is overly broad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, responsive materials are contained on the first of two CD-ROMs enclosed herein. The materials responsive to Request No. 2 above are responsive to this request as well.

## REQUEST NO. 4

Documents concerning and detailing the removal of fishing gear from whales between 1999-2005 and the subsequent handling and disposal/storage of this fishing gear.

## RESPONSE TO REQUEST NO. 4

NMFS specifically objects to this request insofar as it is overly broad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, responsive materials are contained on the first of two CD-ROMs enclosed herein. The materials responsive to Request No. 2 above are responsive to this request as well.

**REQUEST NO. 5**

Ten representative digital images of the fishing gear removed from each whale disentangled by employees and agents of the CCS and/or the Coast Guard and/or commercial fisherm[e]n between the years 1999-2005. The digital images provided should be the highest available resolution as measured in absolute size of pixels (e.g., if two distinct files exist of the same image but one of them is higher in resolution as measured in pixels, the higher resolution and larger as measured in bytes of a particular format constitutes the requested file). In addition[,] the necessary documentation that identifies the date any provided picture was taken, the location it was taken in latitude and longitude, and the name of the photographer that took the image[.]

**RESPONSE TO REQUEST NO. 5**

NMFS specifically objects to this request insofar as it is overly broad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, responsive materials are contained on the first of two CD-ROMs enclosed herein.

**REQUEST NO. 6**

All computer records detailing observations of the occurrence of individual Northern Right Whales, Humpback Whales, Fin Whales, Minke Whales and Blue Whales between the years 1999-2005 in coastal waters under Massachusetts state jurisdiction and the area within fifty miles of any point on the Massachusetts coastline.

**RESPONSE TO REQUEST NO. 6**

NMFS specifically objects to this request insofar as it is overly broad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, responsive materials are contained on the first of two CD-ROMs enclosed herein.

## REQUEST NO. 7

All correspondence between any employee and/or agent of the EOEA, DFG and/or DMF and any employee or agent of the CCS in any way concerning and/or naming Richard Max Strahan.

## RESPONSE TO REQUEST NO. 7

NMFS specifically objects to this request insofar as it is overly broad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, NMFS states that it has no documents responsive to this request.

## REQUEST NO. 8

Any report and/or other results - including high resolution photographs - of studies of the scarring on individual Humpback Whales and Northern Right Whales and the correlation of this scarring on the whale with its possible entanglement in commercial and sports fishing gear.

## RESPONSE TO REQUEST NO. 8

NMFS specifically objects to this request insofar as it is overly broad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, responsive materials are being provided herein.

## REQUEST NO. 9

Documents that were used as a basis for NOAA to develop its Draft Environmental Impact Statement for the revision of its Atlantic Large Whale Take Reduction Plan. The specific documents for which copies are sought are listed on pp. 77-79 of Chapter 5 of the DEIS/ALWTRP entitled "Biological Impacts." If computer PDF or other formatted computer files of any of these requested documents exist then these are the ones that will be provided.

## RESPONSE TO REQUEST NO. 9

NMFS specifically objects to this request insofar as it is overly broad and unduly burdensome.

Subject to and without waiving the foregoing general and specific objections, responsive

materials are being provided, in paper form and on the second of two CD-ROMs enclosed herein.

Respectfully submitted this 13th day of May, 2005.

KELLY A. JOHNSON, Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division
JEAN E. WILLIAMS, Chief
SETH M. BARSKY, Assistant Chief

By:      /s/ _____

S. JAY GOVINDAN, Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Benjamin Franklin Station, P.O. Box 7369
Washington, D.C. 20044-7369
Telephone: (202) 305-0237
Facsimile: (202) 305-0275

Attorneys for Federal Defendants



Attachment #2

# Nixon Peabody LLP
### ATTORNEYS AT LAW

100 Summer Street
Boston, Massachusetts 02110-2131
(617) 345-1000
Fax: (617) 345-1300

April 28, 2005

## VIA OVERNIGHT MAIL AND U.S. MAIL

Richard Max Strahan
928 Dorchester Avenue, #5
Boston, MA 02125

Re:    *Strahan v. Roy-Herzfelder*, U.S. District Court, District of Massachusetts,
       05-CV-10140 NMG

Dear Mr. Strahan:

We represent the Provincetown Center for Coastal Studies (the "Center"). The Center received your Subpoena relating to *Strahan v. Roy-Herzfelder*, U.S. District Court, District of Massachusetts, 05-CV-10140 NMG. Pursuant to Federal Rule of Civil Procedure 45(c)(2)(B), this correspondence constitutes the Center's objection to the documents requested in the Subpoena for inspection and copying.

As you know, the Center is a not-for-profit organization, which conducts research, collects data, and organizes volunteers to disentangle whales off the coast of Massachusetts. The Subpoena requests eight (8) categories of documents, dating from 1999 through 2005, including photographs, computer records, correspondence, reports, and other documents relating to whale entanglements. The Center objects to these documents requests for the following reasons.

First, pursuant to Federal Rule of Civil Procedure 26(b)(2)(iii), these document requests are unduly burdensome for the Center. Indeed, the Center estimates that identifying and collecting documents responsive to your requests would require numerous staff members and between 21 to 25 work days, as the documents are not maintained or organized in the manner that you have requested. For example, the Center estimates that responding to your requests relating to whale entanglements alone would require between 14 to 18 working days. Such a dedication of staff to your requests would effectively render the Center incapable of conducting its regular business.

Moreover, the Center believes the documents/data requested are obtainable from either the State or Federal Governments, and could be obtained through a FOIA or similar state request. In the Center's view, obtaining these documents/data from the government would be more convenient for you and less burdensome for the Center. *See* Fed. R. Civ. P. 26(b)(2)(i). Indeed,

ALBANY, NY • BOSTON, MA • BUFFALO, NY • GARDEN CITY, NY • HARTFORD, CT • MANCHESTER, NH • McLEAN, VA
NEW YORK, NY • ORANGE COUNTY, CA • PHILADELPHIA, PA • PROVIDENCE, RI • ROCHESTER, NY • SAN FRANCISCO, CA • WASHINGTON, DC

NIXON PEABODY LLP

·

Richard Max Strahan
April 28, 2005
Page 2

I recently spoke to David Hoover, Esq., General Counsel for Commonwealth of Massachusetts, Department of Fish and Game, concerning your document requests to the Center. Mr. Hoover informed me that most, if not all, of the information requested in the Subpoena is duplicative of information produced to you by the Commonwealth this week, or is otherwise available from the Commonwealth. Attached please find a copy of the April 26, 2005 correspondence from Mr. Hoover responding to your requests. For example, categories 2 and 3 of the Subpoena seek the same documents that category 4 of the Demand to the Commonwealth requests. Furthermore, Mr. Hoover informed me that the Federal Government maintains extensive data and documentation concerning the entanglement of whales, which is easily obtainable by FOIA request, and would be responsive to a vast majority of the documents/data requested in the Subpoena.

Based on the foregoing, the Center will not make the documents requested in the Subpoena available for your inspection and copying at this time. However, once you have reviewed the documents and data received from the Commonwealth and sought similar data from the Federal Government, we would be happy to discuss with you what additional information you need that is peculiarly within the Center's possession.

Please contact me if you wish to further discuss this matter.

Very truly yours,

Amy R. George

cc:    Peter Borrelli
       David Hoover, Esq.
       David M. Ryan, Esq.



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD MAX STRAHAN                      )
                                         )
            *Plaintiff*                   )
                                         )        Civil Action No.
v.                                       )
                                         )        05 – 10140 - NMG
ELLEN ROY-HERZFELDER, *et al.*           )
                                         )        19 June 2005
            *Defendants*                  )

───────────────────────────────

PLAINTIFF'S SUPPLEMENTAL ADDITION TO HIS 15 APRIL 2005 SUBPOENA TO
PETER BORRELLI AND THE CENTER FOR COASTAL STUDIES TO PRODUCE
DOCUMENTS FOR INSPECTION AND COPYING

───────────────────────────────

Pursuant to the Federal Rules of Civil Procedure, Plaintiff Richard Max Strahan

NOTIFIES Peter Borrelli and the Center for Coastal Studies ("CCS") of Providence MA that he

is the supplementing the requests of his 15 April 2005 subpoena for documents with the

following numbered requests. Since CCS has chosen NOT to produce ANY of the originally

requested documents and forced the Plaintiff to move the Court to compel CCS to comply with

said subpoena, the additional requests constitute a simple update and enhanced specification of

the original request for the production of documents.

## DEFINITIONS

The following definitions shall apply to this request:

1.    "Strahan " shall refer to the Plaintiff, Richard Max Strahan.

2.    "EOEA" shall mean any office and all employees/agents of the Massachusetts
      Executive Office of Environmental Affairs and any of its infra-agencies and/or
      offices.

3.   "DFG" shall mean any agency and/or agent of the Massachusetts Department of Fish and Game its infra-agencies and/or offices.

4.   "DMF" shall mean any agency and/or agent of the Massachusetts Division of Marine Fisheries its infra-agencies and/or offices.

5.   "CCS" shall mean the Center for Coastal Studies in Provincetown, MA.

6.   "Correspondence" includes, but is not limited to, any letter, telegram, telex, TWX, notice, message, E-mail, memorandum or other written communication or transcription or notes of a communication.

7.   "Whale" or "whales" shall mean any member of a biological species taxonomically listed as belonging to the biological Order Cetacea.

8.   "Entangled Whale(s)" shall mean a whale or whales that physically in contact for any length of time on any given day with any rope, net, pot, and/or any physical object that is deployed into the marine environment by an individual for the purpose of catching and/or harvesting marine wildlife of any biological species.

9.   "And" and "or" shall mean, where the context permits, "and/or."

10.   "All" and "any" shall mean, where the context permits, "any and all."

11.   "Documents" shall mean any conceivable type of recorded information on any kind of conceivable material — including (but not exclusively) printed material, notes, hand written material, E-mails, computer files of any format, magnetic audio and/or video recordings, and photographs.

12.   Words used in the singular shall, where the context permits, be deemed to include the plural, and words used in the plural shall, where the context permits, be deemed to include the singular.

## INSTRUCTIONS

1.   As to any document requested herein but withheld on the ground of privilege, please state the following:

a.   The nature of the claimed privilege;

b.    The title of the document;

c.    The type of document (e.g. letter, note, memorandum, etc.);

d.    The date of the document;

e.    Names and positions of all persons who authored the document, or assisted in its preparation, or in whose name the document was prepared;

f.    Names and positions of all persons to whom the document was addressed; or to whom it was sent, or who received, have seen, have had possession or custody of, or have had disclosed to them the contents of, the document or any copies thereof;

g.    Names and positions of all persons from whom the document was received;

h.    The present location of the document and all copies thereof;

I.    Names and positions of all persons having custody or control of the document and all copies thereof; and

j.    Subject matter of the document.

2.    In producing documents, documents responsive to each request are to be segregated and labeled so as to indicate which request each segregated set of documents to which it is in response.

3.    If a document has been generated as a computer file and then converted into a printed format, the computer file is requested first and only the printed document too if in any way it has been personalized with a signature, date stamp and/or annotations of any type.

## DOCUMENTS REQUESTED

9.    All original digital images of an entangled Humpback Whale sighted off the Massachusetts coast on 28-29 May 2005 in RAW format or JPEG and only for images greater than one megabyte in size,

10. All documents concerning ANY report of any whale observed entangled in fishing gear within U. S. coastal waters 1999 - 2005.

11. Any computer database that documents sightings by CCS and others of entangled whales in U. S. coastal waters and the responses by anyone to these sightings and all metadata associated with these sightings, including survey tracks, sighting effort, observer, date, platform, etc..

12. Any computer database of whale sightings in U. S. coastal waters and all metadata associated with these sightings, including survey tracks, sighting effort, observer, date, platform, etc..

13. All correspondence between any employee of CCS and any employee of the International Fund for Animal Welfare concerning the subject of the entanglement of whales in fishing gear between 1999 – 2005.

14. All correspondence between any employee of the CCS and any agent of the Massachusetts Lobstermen's Association between 1999 – 2005.

15. All correspondence between any employee of CCS and any employee of the National Oceanographic and Atmospheric Agency ("NOAA") concerning the subject of the entanglement of whales in fishing gear between 1999 – 2005.

16. All correspondence between any employee and/or agent of the EOEA, DFG, and/or DMF and any employee or agent of the CCS.

Be advised, the Plaintiff has reviewed the web site of the CCS and has found no image on that web site of immediate interest and therefore not a document of interest requested by either his 15 April 2005 subpoena to CCS or its instant supplement.

By:

RICHARD MAX STRAHAN, Plaintiff
928 Dorchester Avenue, #5
Boston, MA 02125
*PRO SE AND PROUD!*

ATTACHMENT #4

**From:** Peter Borrelli <borrelli@coastalstudies.org>
**Subject:** Re: Supplemental Subpoena - Strahan v. Herzfelder
**Date:** June 19, 2005 8:36:14 PM EDT
**To:** Richard Strahan <esis@savespecies.com>
**Cc:** "George, Amy" <AGEORGE@nixonpeabody.com>
▓ 2 Attachments, 1.2 MB

Max,

Your email of this date further confirms my belief that you have no intention of working with the Center in a cooperative or professional manner. The CD we sent you represents our entanglement data base. It is the official data base of record and the one that virtually every professional in the marine mammal field relies on for information regarding entanglements in the western North Atlantic. Your request to provide you this entire data base in an entirely different format is not only burdensome but irrelevant to the issues at hand and for this reason I will continue to resist your efforts to harass this institution.

Nevertheless, I am attaching two images of a right whale known as Piper. The smaller file is taken directly from our data base and is the image that every professional in the field references. The other is a cropped version of the "original" eliminating background sky and water. If you or any qualified expert in the field can demonstrate that one image is more informative than the other, I would welcome this information and might have reason for reconsidering your request for "megabyte" images.

Peter Borrelli

At 04:07 PM 6/19/2005, you wrote:
19 June 2005

Amy George, esq.
Nixon and Peabody, LLP
Boston MA

Peter Borrelli
Center for Coastal Studies
Provincetown MA

To the Above Parties:

Hi there. I have attached a supplement to my 15 April 2005 subpoena to the Center for Coastal Studies. As always I am eager to discuss it and the CCS' production of the requested documents in a manner that minimizes any impact on CCS in doing so.

As you are aware, I have moved the court to order you to comply with my 15 April 2005 and I have asked the court to hear argument on this motion at its scheduled hearing in this matter on 24 June 2005. It is unfortunate that you refused to produce any of the requested documents. I also repeatedly informed you that none of the items on CCS' web site were being sought by the subpoena. Despite this you sent me an unsolicited CD-R that you claim holds copies of computer files displayed on your web site. I do not want this CD-R and I will return it to you. I did specifically ask for copies of original digital images of pictures of entangled whales that CCS employees took. You have unequivocally have REFUSED to supply me a single requested image. When I discussed the subpoena with Peter, I asked him to supply just one original digital image of an entangled whale - that would be greater than one megapixel in size  and he directly refused and said that under no circumstances would he supply me one. When I asked why , he simply said, "I don't want to."

From what Borrelli has told me, he doesn't want to because he doesn't want the Public see a high quality image of an entangled whale and become outraged towards commercial fishing. He apparently wants to protect commercial fishing from the impact of my law suit. Despite this I will ask the Court to order CCS to supply me original digital images of entangled whales for copying.

In Peace,

Richard Max Strahan
GreenWorld

**Peter R. Borrelli**
**Executive Director**
**Provincetown Center for Coastal Studies**
**P.O. Box 1036**
**Provincetown, MA 02657**
**Tel. 508-487-3622  x 111**
**Fax 508-487-4495**



ATTACHMENT #5

**From:** Richard Strahan <esis@savespecies.com>
**Subject:** Comparison of High-Low Resolution Whale Pix
**Date:** June 20, 2005 11:28:37 PM EDT
**To:** Peter Borrelli <borrelli@coastalstudies.org>
    ▮1 Attachment, 4.3 MB

20 June 2005

Peter Borrelli
Venter for Coastal Studies
Provincetown MA

RE: Comparison of Hi-Lo Resolution Whale Pix

Peter,

I got your 18 June 2005 e-mail and its challenge for me to show a significant difference between high and low resolution pictures of the same whale. This "challenge" is a "no brainer." I also feel that your challenge was a bit of a "set up." On a computer screen with a limit of 72 pixel/inch , high and low resolution images look the same. BUT if you zoom in on a critical feature, the difference between high and low resolution images become readily apparent even on a computer screen. Check it out —

# A Compairison of Detail Provided by a One Million Pixel and 100 Thousand Pixel Images of the Same Entangled Whale



The High resolution picture of Piper on the left shows the actual twist on the rope entangling her and reveals details of the markings on the rope and also the injury to the whale from the rope. This represents valuable forensic information. The low resolution image of the same site on Piper on the right is completely pixelated and shows no detail at all.

Since I won your challenge I hope that you will now agree to supply original copies of the digital images of entangled whales that CCS possess and copies of original digital images of the fishing gear that CCS has removed from some of these whales. If I am to evaluate the fishing gear for its type or origin, I hope this demonstration  convinces you that the highest possible image resolution is necessary.

I look forward to you response. Remember the court hearing to enforce my subpoena to CCS is set for 10 am on 24 June 2005.

In Peace,

Richard Max Strahan
GreenWorld
617.233.3854