UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD MAX STRAHAN )
)
*Plaintiff* )
) Civil Action No.
v. )
) 05 – 10140 - NMG
ELLEN ROY-HERZFELDER, *et al.* )
) 20 June 2005
*Defendants* )

**PLAINTIFF'S MEMO IN SUPPORT OF HIS MOTIONS FOR A PROTECTION ORDER TO ENFORCE SUBPOENAS ISSUED TO CENTER FOR COASTAL STUDIES AND THE NATIONAL MARINE FISHERIES SERVICE**

The Plaintiff — Richard Max Strahan — on 14 June 2005 FILED AND SERVED on the Court and parties motions to enforce subpoenas that the Court issued and Strahan lawfully served on each of the following parties —

1. Peter Borrelli and the Center for Coastal Studies was served a subpoena ("CCS Subpoena") VIA TRACKED U. S. Priority Mai on 16 April 2005 for the production of documents by 16 May 2005.

2. The regional administrator of the National Marine Fisheries Service in Gloucester MA was served a subpoena ("NMFS Subpoena") VIA TRACKED U. S. Priority Mail on 16 April 2005 for the production of documents by 16 May 2005.

These two parties each supplied Strahan a timely written response to the NMFS Subpoena and the CCS Subpoena respectively. See 19 June 2005 "Affidavit of Richard Max Strahan." Both parties failed to supply Strahan copies of the original documents that the NMFS Subpoena and CCS Subpoena called for them to produce. Both parties chose to wholly ignore and NOT respond to specific categorical requests for production documents in their respective

subpoenas. Strahan has since served on Borrelli/CCS a supplemental addition to the CCS Subpoena and now includes these added requests for document production in his request to the Court to enforce the CCS Subpoena. Both CCS/Borrelli and NMFS wholly failed to respond to specific categories of requested original documents. Both CCS/Borrelli and NMFS claimed a response to some of the specific categorical requests for document production in the CCS Subpoena and the NMFS Subpoena respectively. But in so doing they wholly failed to provide the requested original documents or copies of them. Instead they chose to supply corrupted versions of some of the original documents or fabricated new documents with partial information extracted from the original documents that they failed to supply Strahan.

*Specific Categories of Requested Documents that CCS and NMFS Failed to Produce*

1. Both CCS and NMFS refuse to supply requested original digital images of entangled whales and the digital images of the fishing gear removed from these whales. These digital images are all greater than one megabyte in size in JPEG format and many were originally formed in RAW or TIF format and so formatted are greater than 5 megabytes in size. They instead have partially offered only a few corrupted digital images of wholly inferior and unacceptable quality degraded to 10 kilobytes in size — a reduction of quality of 3,000% or more.

2. Documents of correspondence between employees of NMFS and/or CCS and the Defendants and other employees of the Massachusetts agencies that employ the Defendants.

3. Computer databases that constitute a requested document. .

3

**The CCS/Borrelli Subpoena and Their Failure to Produce the Requested Documents**

The CCS Subpoena made eight specific categorical requests for the production of documents. The CCS and Borrelli wholly failed to comply with requests #1, #5, #6, #7, and #8. In responding to items #2, #3, and #4 the CCS/Borrelli wholly refused to supply the requested copies of original documents but only offered corrupted files derived with information from the desired original documents that CCS publishes on a web site. Strahan repeatedly told Borrelli and CCS' legal counsel that he did not want these web-based documents and that the CCS Subpoena did not request them.  Despite these directions, the CCS/Borrelli sent Strahan a CD-R that allegedly contains a copy of all the files on its web site.

Strahan had several conversations with Borrelli on the issue of producing the original digital images taken by CCS employees of entangled whales and the fishing gear removed from these whales.  Despite numerous discussions, Borrelli simply refused to supply a single requested original file for copying.  He was adamant that CCS simply did not want to provide Strahan any high quality image depicting a whale entangled in fishing gear. This was not an issue of cost according to Borrelli. He conceded that there was no difference in cost in supplying to Strahan a 5 mega pixel digital image versus a one pixel digital image.  Nor was it an issue of the number of requested digital images.  It was explicitly stated by Borrelli that he would not supply a single original digital image to Strahan. It was made clear to Strahan by Borrelli that CCS did not want the Public to see any high quality image of a whale entangled in fishing gear because it would stir Public outrage against commercial fishing and create Public opinion demanding that the entanglement of whales in fishing gear be stopped.  He did not want to do anything that would anger commercial fishermen or that would have an adverse impact on their industry.

The eight specific requests for original documents of the CCS Subpoena, a brief description of what CCS/Borrelli did or did not provide is as follows —

1. *Ten representative digital images of each and every whale observed entangled in fishing gear within fifty miles of U. S. coastal waters under Massachusetts state jurisdiction between the years 1999 – 2005. The digital images provided should be the highest available resolution as measured in absolute size of pixels (e. g. if two distinct files exist of the same image but one of them is higher in resolution as measured in pixels, the higher resolution and larger as measured in bytes of a particular format constitutes the requested file). In addition necessary documentation that identifies the date any provided picture was taken, the location it was taken in latitude and longitude, the species of the whale that is being depicted, and the name of the photographer that took the image,*

   The CCS/Borrelli wholly failed to produce any of these requested documents.

2. *All documents concerning reports of any whale observed entangled in fishing gear within 50 miles of U. S. coastal waters under Massachusetts state jurisdiction (e. g. within 53 miles of any point on the Massachusetts coastline) between the years 1999 - 2005.*

   The CCS/Borrelli wholly failed to supply any documents of original reports made to CCS of entangled whales, including correspondence (e. g. e-mails) with the NMFS and commercial whale watch operations reporting entangled whales to CCS. They failed to produce documents of original reports of entangled whales to CCS that did not result in any entangled whale being sighted as a result of the report being received by CCS.

3. *All documents in any way describing and/or reporting the observation of entangled whales in coastal waters under Massachusetts state jurisdiction.*

   The CCS/Borrelli failed to supply the computer database that contains the requested information, the original documents that describe in detail the observations including notes made by employees of the CCS, correspondence with NMFS and other government agencies — including the Defendants — concerning the said sighted entangled whales. The only documents CCS offered were derivative incomplete descriptions that they have published on a web site that CCS maintains.

4. *Documents concerning and detailing the removal of fishing gear from whales between 1999 - 2005 and the subsequent handling and disposal/storage of this fishing gear.*

The CCS/Borrelli failed to supply any original documents at all concerning the removal of fishing gear from whales by CCS employees or others in CCS' possession. They supplied no original digital images, notes, or correspondence with others including government agencies and the Defendants on any incident of fishing gear being removed from whales by CCS employees or others. They supplied no documents detailing the fate of any fishing gear removed from entangled whales and/or any assessment of the fishing gear including type or ownership. The CCS/Borrelli only supplied alleged derivative files on the requested subject that they published on a web site maintained by CCS.

5. *Ten representative digital images of the fishing gear removed from each whale disentangled by employees and agents of the CCS between the years 1999 – 2005. The digital images provided should be the highest available resolution as measured in absolute size of pixels (e. g. if two distinct files exist of the same image but one of them is higher in resolution as measured in pixels, the higher resolution and larger as measured in bytes of a particular format constitutes the requested file). In addition the necessary documentation that identifies the date any provided picture was taken, the location it was taken in latitude and longitude, and the name of the photographer that took the image,*

The CCS/Borrelli wholly failed to produce any of the requested documents.

6. *All computer records detailing observations of the occurrence of individual Northern Right Whales, Humpback Whales, Fin Whales, Minke Whales and Blue Whales between the years 1999 – 2005 in coastal waters under Massachusetts state jurisdiction and the area within fifty miles of any point on the Massachusetts coastline,*

The CCS/Borrelli wholly failed to produce any of the requested documents.

7. *All correspondence between any employee and/or agent of the EOEA, DFG, and/or DMF and any employee or agent of the CCS in any way concerning and/or naming Richard Max Strahan.*

The CCS/Borrelli wholly refused to comply with any of the requested documents.

8.  *Any report and/or other results — including high resolution photographs — of studies of the scarring on individual Humpback Whales and the correlation of this scarring on the whale with its possible entanglement in commercial and sports fishing gear.*

The CCS/Borrelli wholly refused to comply with any of the requested documents.

Strahan discussed the CCS Subpoena personally with Borrelli and separately CCS legal counsel each several times and No employee of NMFS in any way contacted Strahan to discuss the production of the requested documents and Strahan was unable to find any employee of NMFS willing to discuss the production of the documents requested by his subpoena to NMFS.

### The NMFS Subpoena and Its Failure to Produce the Requested Documents

The NMFS Subpoena made nine specific categorical requests for the production of documents. The NMFS wholly failed to comply with requests #1, #4, #5, #6, #7, and #8. In responding to items #2, #3, and #4 the NMFS wholly refused to supply the requested copies of original documents but only offered corrupted files derived with information from the desired original documents that it also refused to identify making the supplied information unreliable and not usable as evidence at trial. The NMFS fully responded to item #9. The NMFS Strahan was unable to get any employee of NMFS to discuss the NMFS Subpoena including its employed legal counsel. At no time did any representative from NMFS contact Strahan to discuss the NMFS Subpoena. The nine specific requests for original documents of the NMFS Subpoena, a brief description of what NMFS did or did not provide is as follows —

1.  *Ten representative digital images of each and every whale observed entangled in fishing gear within fifty miles of U. S. coastal waters under Massachusetts state jurisdiction between the years 1999 – 2005. The digital images provided should be the highest available resolution as measured in absolute size of pixels (e. g. if two distinct files exist of the same image but one of them is higher in resolution as measured in pixels, the higher resolution and larger as measured in bytes of a particular format constitutes the requested file). In addition necessary documentation that identifies the date any provided picture was taken, the location it was taken in latitude and longitude, the species of the whale that is being depicted, and the name of the photographer that took the image,*

The NMFS wholly failed to supply any of the requested documents.

2. *All documents concerning reports of any whale observed entangled in fishing gear within 50 miles of U. S. coastal waters under Massachusetts state jurisdiction (e. g. within 53 miles of any point on the Massachusetts coastline) between the years 1999 - 2005.*

The NMFS failed to supply requested original documents or its computer database. It supplied unsupported information extracted from unknown original sources and supplied as documents created in response to the NMFS Subpoena. As such the supplied documents authorship and origin is unknown and it is not usable as evidence at trial. Any derived and corrupted images supplied by NMFS pursuant to this request was supplied without associate metadata that would detail the subject of the image, its author, date of origination etc. As such these derived and corrupted images have no evidentiary value at all.

3. *All documents in any way describing and/or reporting the observation of entangled whales in coastal waters under Massachusetts state jurisdiction.*

The NMFS failed to supply requested original documents. It only supplied extracted and incomplete information from original documents that it failed to describe.

4. *Documents concerning and detailing the removal of fishing gear from whales between 1999 - 2005 and the subsequent handling and disposal/storage of this fishing gear.*

The NMFS wholly refused to provide any documents responsive to this request.

5. *Ten representative digital images of the fishing gear removed from each whale disentangled by employees and agents of the CCS and/or the Coast Guard and/or commercial fisherman between the years 1999 – 2005. The digital images provided should be the highest available resolution as measured in absolute size of pixels (e. g. if two distinct files exist of the same image but one of them is higher in resolution as measured in pixels, the higher resolution and larger as measured in bytes of a particular format constitutes the requested file). In addition the necessary documentation that identifies the date any provided picture was taken, the location it was taken in latitude and longitude, and the name of the photographer that took the image,*

The NMFS wholly refused to provide any documents responsive to this request.

6. *All computer records detailing observations of the occurrence of individual Northern Right Whales, Humpback Whales, Fin Whales, Minke Whales and Blue Whales between the years 1999 – 2005 in coastal waters under Massachusetts state jurisdiction and the area within fifty miles of any point on the Massachusetts coastline,*

8

The NMFS failed to provide any documents responsive to this request.

7. *All correspondence between any employee and/or agent of the EOEA, DFG, and/or DMF and any employee or agent of the NMFS in any way concerning and/or naming Richard Max Strahan.*

The NMFS failed to provide any documents responsive to this request.

8. *Any report and/or other results — including high resolution photographs — of studies of the scarring on individual Humpback Whales and Northern Right Whales and the correlation of this scarring on the whale with its possible entanglement in commercial and sports fishing gear.*

The NMFS failed to produce any documents responsive to this request.

9. *Documents that were used as a basis for NOAA to develop its Draft Environmental Impact Statement for the revision of its Atlantic Large Whale Take Reduction Plan. The specific documents for which copies are sought are listed on pp. 77-79 of Chapter 5 of the DEIS/ALWTRP entitled ""Biological Impacts." If computer PDF or other formatted computer files of any of these requested documents exist then these are the ones that will be provided.*

The NMFS responded to this request by supplying paper copies of the requested documents.

For the above reasons the Plaintiff asks the Court to grant his requested relief.

BY:

_____
Richard Max Strahan, Plaintiff
928 Dorchester Avenue, #5
Boston, MA 02125
617.233.3854

*Pro Se and Proud!*

### CERTIFICATION OF CONSULTATION PURSUANT TO LOCAL RULE 7

I certify that I consulted with the Defendants attorney Daniel Hammond of the Office of the Massachusetts Attorney General on the above motion on several occasions. .

_____
Richard Strahan, Plaintiff

### CERTIFICATION OF SERVICE

I hereby certify that a copy of this motion has been served VIA Mail and E-mail on the attorney for the Center for Coastal Studies on 20 June 2005 and also e-mailed to Borrelli at the CCS.

_____
Richard Strahan, Plaintiff