UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD MAX STRAHAN ) | |
| ) | |
| *Plaintiff* ) | |
| ) | Civil Action No. |
| v. ) | |
| ) | 05 – 10140 - NMG |
| ELLEN ROY-HERZFELDER, *et al.* ) | |
| ) | 23 June 2005 |
| *Defendants* ) | |

### AFFIDAVIT OF RICHARD MAX STRAHAN

I Richard Max Strahan hereby swear and depose as follows —

1.  Before the instant action commenced I made several contacts with staff of the New England Aquarium,("NEA"), Center for Coastal Studies ("CCS") and other members of the Right Whale Consortium ("RWC") a self-named group of individuals and non-government organizations who engage in research and other commercial activities involving Northern Right Whales. The RWC as a group attempts to control access to any scientific information that its members have on endangered whales. It requires the approval of its board for the release of any scientific information by any member of the RWC. Upon information and belief the CCS is a founding member of the RWC and one of its employees sits on the RWC board. Under the several criteria adopted by the RWC for releasing information to applicants — cost is not listed as a factor.

2.  During my efforts to obtain digital images of entangled and injured whales, I have contacted the New England Aquarium — a leader of the RWC. It has agreed to supply me with requested information. This includes the entire

database of Northern Right Whale identified whale sightings and its "E-catalog", a catalog describing unique dermal features of all sighted Northern Right Whales which is used to individually identify individual members of its remaining populations. At no time has any employee of the NEA raised the issue of cost in deciding on whether or not to grant me access to information in its possession. At all times that I have requested information from the NEA I have done so in a spirit of mutually beneficial cooperative interaction and made my requests in a manner to minimize and impact on the NEA of granting my requests for information.

    3.    I have had many conversations with various CCS employees on the subject of its supplying copies of digital images of whales in its possession. At no point in any of these discussions did any CCS employee raise the issue of cost as a factor in its deciding on whether or not to supply pictures of whales and other sighting information on whales, In 2005, I had several conversations with Peter Borrelli — CCS' executive director — on the subject of in supplying me copies of digital images of entangled whales, the fishing gear that entangled whales, video recordings and other sighting information on whales in CCS' possession.  During these discussions I repeatedly assured Borrelli that I wanted to develop a cooperative relationship with CCS and work together to have the requested information supplied to me in a manner that minimize any inconvenience to CCS. I also told Borrelli many times that I needed this information to protect whales from entanglement in fishing gear and to persuade state and federal agencies to license only Whale Safe fishing gear.

    4.    After several discussions, Borrelli told me that he would give me his final answer on 12 April 2005. On that date we talked on the phone. He told

me that he had developed a "memo" listing four reasons why CCS would not supply me a single picture of an entangled whale, None of these reasons had anything to do with the cost of supplying any picture to me. In point of fact, the issue of the actual cost He also offered to send me a copy of the memo and at that point I declined to have him send it to me. He then agreed to read from to me from the memo the four reasons that CCS was refusing my request to provide me ANY images of whales and other requested information. The Borrelli read the memo to me and it cited four numbered reasons for CCS' refusal in the following order —

    a.    Since many of the requested digital images were obtained under a government permit that I first must get written approval from the permit office of National marine Fisheries Service ("NMFS") in Silver Spring MD before CCS can release any of the requested digital images to me.

    b.    All the other photos taken by them and not done under permit are their personal property, they are not required to share them with anybody and for personal reasons they just don't feel like giving me any access to them.

    c.    Since I am not representing an IRS determined 501(c)(3) NGO, he felt that they should not give me copies of any photos.

    d.    Before CCS shared any digital images with me and/or supply me any other information on whales I have to first prove that my intended use was going to be strictly for educational and/or scientific purposes.

4

5. The National Marine Fisheries Service ("NMFS") and the Center for Coastal Studies refused to supply me any original digital images of whales and any video recordings of whales pursuant to my 16 April 2005 subpoena to them. Despite the NMFS not supplying me ANY original digital images and video recordings of entangled whales and also the fishing gear removed from these whales in its possession, I contacted NMFS directly by phone and e-mail requesting copies of original images of entangled whales of two specific events –

    a. An entangled Northern Right Whale sighted on 8 June 2005 by a NMFS spotter plane.

    b. An entangled Humpback Whale sighted on 29 May 2005 off Newburyport MA by commercial whale watch operations which was also subject to disentanglement efforts by employees of the Center for Coastal Studies ("CCS").

6. NMFS responded by e-mailing me three digital images that are over one mega pixel in size of the 8 June 2005 Northern Right Whale and several degraded secondary copies of digital images of the 29 may 2005 entangled Humpback Whale that are less than 100 kilo pixels in size. I also went to the CCS website and found a displayed degraded, cropped, and otherwise smaller picture of the 8 June 2005 Northern Right Whale displayed on that web site. I downloaded that degraded digital image and found it to be only 52 Kilobytes in size. I then prepared a detailed comparison of the details observable in each image. It is obvious to anyone that much less detail is available in the degraded version of the original digital image of the 8 June 2005 Northern Right Whale than its original. See Attachment #1, #2, and #3.

7. The NMFS responded to my 16 April 2005 subpoena to it by sending me a CD-R containing no original digital images at all of whales and no video recordings of any entanglement. Upon information and belief the only digital images that the CD-R contained was degraded digital images of entangled whales that were copied by some NMFS employee off the

CCS web site. I printed out three of these images. The quality of these images is abhorrent and completely unusable for my purposes of doing a forensic assessment of the injuries sustained by whales from entanglement in fishing gear and the identification of the type of gear involved in the entanglement. See Attachment #4

8. One of the reasons that I seek to obtain original digital images of entangled whales is to 1) assess the degree of the injury to a whale resulting from the entanglements and 2) to conduct a forensic analysis of the image to identify the type of fishing gear that entangled the whale. These two analyses require the highest possible available resolution in a digital image. The degraded images offered by NMFS of the 29 May 2005 entanglement of the Humpback Whale fails miserably this requirement, NMFS offered degraded and non-original digital images of the entanglement. See Attachment #5. When I attempted to zoom in on the area of the whale where the rope cut into it, I got a resulting image that exhibited a useless pixilated mess because of the low resolution of the offered images. See Attachment #6. If I had the original digital images to start with, the results would have been different.

9. The degraded digital images on the CCS' web site are wholly useless for any forensic analysis of injuries sustained by whales because of entanglements and for determining the type of fishing gear involved in an entanglement. An example is a picture of the entangled Northern Right Whale "Piper" taken by me from the CCS web site. See Attachment #7. The top picture is so horrible that it does not even show the fishing gear and hardly even looks like it is a picture of a whale. The bottom image is one mega pixel in size and was one to me by Borrelli on 19 June 2005. It is not found on the CCS web site and Borrelli expressed no difficulty in sending it to me or complained of the cost.

10. A low-resolution digital image sent to me by NMFS in response to my 16 April 2005 subpoena was clearly obtained by it from the CCS web site. It is a degraded version of an

original high-resolution digital image was produced by NMFS but apparently that it refused to send to me. The image is embossed with a claim that the original image is a NMFS image. <u>See</u> Attachment #8. This is typical of NMFS and CCS working together to keep original digital images of entangled whales out of the Public view.

11.     On 19 June 2005, Borrelli sent me an e-mail with two images of the entangled Northern Right Whale attached. He challenged me in this e-mail to show that there was some relevant difference between a degraded low-resolution version of a digital image versus the high-resolution original image. I responded to this challenge with such a demonstration that I sent to him in a following e-mail that same day. <u>See</u> Attachments #9 and #10. In his e-mail Borrelli offered to comply with my subpoena's request for copies or original digital images of entangled whales and fishing gear if I could show that I really needed high-resolution images. He never once raised the issue that cost is a factor.

12.     Unless the Court orders NMFS and CCS to supply me the requested original digital images and other requested documents, I will be unable to provide the factual basis to the Court required to successfully prosecute my claims against the Defendants. Upon information and belief, the CCS and NMFS are the business partners of the Defendants and they are deliberately refusing to comply with the subpoenas that I served on them in order to insure that I do not prevail against the Defendants.

Signed under the pains and penalties of perjury this 23rd day of June in the year two thousand and five.

By:



RICHARD MAX STRAHAN, Plaintiff

Northern Right Whale CCS 52 Kilo Byte



Northern Right Whale NMFS 1.4 Mega Byte



ATTACHMEN #2

Original 1.2 Mega Byte 8 June 2005 NOAA Digital Image of
an Entangled Northern Right Whale





Degraded 52 Kilo Byte Center for Coastal Studies Version of the 8 June 2005 NOAA Digital Image of an Entangled Northern Right Whale



HW July 29 1999 Platts Bank_3.jpeg  28 K bytes.



NRW 1158_2 May 23 1999 GSC.jpeg 20 K byte



HW Sept 5 1999 Stellwagen_2.jpeg 32 K bytes

HBW Entangled 29 March 2005 68 Kilo Bytes Whale Watch Boat



(c) www.whalesightings.com | May 29 2005 - An entangled Humpback Whale, the fishing line is wrapped around the body and flukes

HBW 29 May 2005 CCS 72 Kilo Byte



May 29, 2005    © Provincetown Center for Coastal Studies 2005

29 May 2005 Entangled Humpback Whale  CCS 72 Kilo Byte



May 29, 2005   © Provincetown Center for Coastal Studies  2005

Close Up of Rope Detail — Pixelation because of Low Resolution





April 17, 2005   Courtesy of PCCS/MADMF





NEFSC/NMFS 04 May 2005
41-12.5N 069-23.8W

Nrothern Right Whale  NMFS 50 Kilo Byte

From: Peter Borrelli <borrelli@coastalstudies.org>
Subject: **Re: Supplemental Subpoena - Strahan v. Herzfelder**
Date: June 19, 2005 8:36:14 PM EDT
To: Richard Strahan <esis@savespecies.com>
Cc: "George, Amy" <AGEORGE@nixonpeabody.com>
2 Attachments, 1.2 MB

Max,

Your email of this date further confirms my belief that you have no intention of working with the Center in a cooperative or professional manner. The CD we sent you represents our entanglement data base. It is the official data base of record and the one that virtually every professional in the marine mammal field relies on for information regarding entanglements in the western North Atlantic. Your request to provide you this entire data base in an entirely different format is not only burdensome but irrelevant to the issues at hand and for this reason I will continue to resist your efforts to harass this institution.

Nevertheless, I am attaching two images of a right whale known as Piper. The smaller file is taken directly from our data base and is the image that every professional in the field references. The other is a cropped version of the "original" eliminating background sky and water. If you or any qualified expert in the field can demonstrate that one image is more informative than the other, I would welcome this information and might have reason for reconsidering your request for "megabyte" images.

Peter Borrelli

At 04:07 PM 6/19/2005, you wrote:
> 19 June 2005
>
> Amy George, esq.
> Nixon and Peabody, LLP
> Boston MA
>
> Peter Borrelli
> Center for Coastal Studies
> Provincetown MA
>
> To the Above Parties:
>
> Hi there. I have attached a supplement to my 15 April 2005 subpoena to the Center for Coastal Studies. As always I am eager to discuss it and the CCS' production of the requested documents in a manner that minimizes any impact on CCS in doing so.
>
> As you are aware, I have moved the court to order you to comply with my 15 April 2005 and I have asked the court to hear argument on this motion at its scheduled hearing in this matter on 24 June 2005. It is unfortunate that you refused to produce any of the requested documents. I also repeatedly informed you that none of the items on CCS' web site were being sought by the subpoena. Despite this you sent me an unsolicited CD-R that you claim holds copies of computer files displayed on your web site. I do not want this CD-R and I will return it to you. I did specifically ask for copies of original digital images of pictures of entangled whales that CCS employees took. You have unequivocally have REFUSED to supply me a single requested image. When I discussed the subpoena with Peter, I asked him to supply just one original digital image of an entangled whale - that would be greater than one megapixel in size -- and he directly refused and said that under no circumstances would he supply me one. When I asked why, he simply said, "I don't want to."
>
> From what Borrelli has told me, he doesn't want to because he doesn't want the Public see a high quality image of an entangled whale and become outraged towards commercial fishing. He apparently wants to protect commercial fishing from the impact of my law suit. Despite this I will ask the Court to order CCS to supply me original digital images of entangled whales for copying.
>
> In Peace,
>
> Richard Max Strahan
> GreenWorld

Peter R. Borrelli
Executive Director
Provincetown Center for Coastal Studies
P.O. Box 1036
Provincetown, MA 02657
Tel. 508-487-3622 x 111
Fax 508-487-4495



From: Richard Strahan <esis@savespecies.com>
Subject: Comparison of High-Low Resolution Whale Pix
Date: June 20, 2005 11:28:37 PM EDT
To: Peter Borrelli <borrelli@coastalstudies.org>
1 Attachment, 4.3 MB

20 June 2005

Peter Borrelli
Venter for Coastal Studies
Provincetown MA

RE: Comparison of Hi-Lo Resolution Whale Pix

Peter,

I got your 18 June 2005 e-mail and its challenge for me to show a significant difference between high and low resolution pictures of the same whale. This "challenge" is a "no brainer." I also feel that your challenge was a bit of a "set up." On a computer screen with a limit of 72 pixel/inch, high and low resolution images look the same. BUT if you zoom in on a critical feature, the difference between high and low resolution images become readily apparent even on a computer screen. Check it out —

## A Compairison of Detail Provided by a One Million Pixel and 100 Thousand Pixel Images of the Same Entangled Whale

 

The High resolution picture of Piper on the left shows the actual twist on the rope entangling her and reveals details of the markings on the rope and also the injury to the whale from the rope. This represents valuable forensic information. The low resolution image of the same site on Piper on the right is completely pixelated and shows no detail at all.

Since I won your challenge i hope that you will now agree to supply original copies of the digital images of entangled whales that CCS possess and copies of original digital images of the fishing gear that CCS has removed from some of these whales. If I am to evaluate the fishing gear for its type or origin. I hope this demonstration convinces you that the highest possible image resolution is necessary.

I look forward to you response. Remember the court hearing to enforce my subpoena to CCS is set for 10 am on 24 June 2005.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD MAX STRAHAN )
)
*Plaintiff* )
) Civil Action No.
v. )
) 05 – 10140 - NMG
ELLEN ROY-HERZFELDER, *et al.* )
) 24 June 2005
*Defendants* )

PLAINTIFF'S PROPOSED ORDER TO COMPEL COMPLIANCE WITH
HIS SUBPOENA TO THE NATIONAL MARINE FISHERIES SERVICE

ORDERED:

The National Marine Fisheries Service ("NMFS") will comply with the subpoena that the Plaintiff served on it on or about 16 April 2005. The NMFS will also supply the Plaintiff with the following specific requested documents in its possession at the time the subpoena was issued and as updated since then to the present time —

1. The requested original digital images of entangled whales and also the original digital images of any fishing gear removed from these whales.

2. Original video recordings of entangled whales and also the original video recordings of any fishing gear removed from these whales.

3. Correspondence between the any employee of the Defendants and any employee/agent of NMFS concerning the Plaintiff.

4. Any computer database of whale sightings and/or whale entanglements.

5. Reports to NMFS or anyone concerning a possible entanglement of a whale in fishing gear.

_____
Gorton J.  Date: 24 June 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD MAX STRAHAN )<br>)<br>*Plaintiff* )<br>)<br>v. )<br>)<br>ELLEN ROY-HERZFELDER, *et al.* )<br>)<br>*Defendants* ) | Civil Action No.<br><br>05 – 10140 - NMG<br><br>24 June 2005 |

---

**PLAINTIFF'S PROPOSED ORDER TO COMPEL COMPLIANCE WITH
HIS SUBPOENA TO THE CENTER FOR COASTAL STUDIES**

---

ORDERED:

The Center for Coastal Studies ("CCS") will comply with the subpoena that the Plaintiff served on it on or about 15 April 2005. The CCS will also supply the Plaintiff with the following specific requested documents in its possession at the time the subpoena was issued and as updated since then to the present time —

1.  The requested original digital images of entangled whales and also the original digital images of any fishing gear removed from these whales.

2.  Original video recordings of entangled whales and also the original video recordings of any fishing gear removed from these whales.

3.  Correspondence between the any employee of the Defendants and any employee/agent of CCS concerning the Plaintiff.

4.  Any computer database of whale sightings and/or whale entanglements.

5.  Reports made to CCS of alleged entanglements of whales.

---

Gorton J.  Date: 24 June 2005