UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

RICHARD MAX STRAHAN,

                Plaintiff,

     v.

SECRETARY ELLEN ROY-HERZFELDER;
COMMISSIONER DAVID PETERS; and
DIRECTOR PAUL DIODATI,

                Defendants.

Civil Action No. 05-10140-NMG

---

## PROVINCETOWN CENTER FOR COASTAL STUDIES' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND IN SUPPORT OF ITS CROSS-MOTION TO QUASH

Provincetown Center for Coastal Studies (the "Center") submits this Memorandum of Law in opposition to Plaintiff Richard Max Strahan's Motion to Compel[1] concerning a Subpoena served on the Center, dated April 15, 2005 (the "Subpoena"). The Affidavits of Peter Borrelli, Executive Director of the Center ("Borrelli Aff."), and Amy R. George, Esq. ("George Aff.") are submitted contemporaneously herewith, as well as the Center's Cross-Motion to Quash the Subpoena.

### INTRODUCTION

The Center is a not-for-profit organization that, with respect to whales, conducts marine mammal research relating to humpback and right whales and performs whale rescues. Plaintiff

---

[1] Plaintiff has failed to properly serve any of the papers concerning his Motion to Compel. To date, all papers have been received via email, which is not a permissible means of service for pleadings, unless agreed to in writing by the person being served. *See* Fed. R. Civ. P. 5(b)(2). Although Plaintiff's Certification of Service indicates that all papers have been served by "mail," no papers have been received from the postal service. Moreover, Plaintiff's email "service" of the papers concerning his Motion has not included any of the attachments referenced in the documents.

served the Subpoena on the Center, seeking virtually every document that the Center possesses concerning whale entanglements and sightings. The Center formally objected to the Subpoena, but thereafter engaged Plaintiff in an attempt to narrow the scope of the Subpoena and produce priority documents. Despite a breakdown in negotiations as to the Subpoena scope, the Center produced its on-line database, which contains virtually all of the information that the Center has in its possession concerning whale entanglements, including 2000 photographs and 1000 additional files of information. Plaintiff now contends that none of the information contained on the database is responsive to his requests, including the 2000 photographs that specifically respond to requests 1 and 5. The Center's on-line database is relied on by researchers in the area of whale entanglements, and Plaintiff's claim that the on-line database does not provide the information that he is seeking is simply disingenous. Moreover, requiring the Center to produce hard copy documents that contain the same information as that on the on-line database would cripple the Center because of the outlay of resources necessary to undertake such a task.

Plaintiff is also unsatisfied with the photographs contained on the on-line database, and seeks all photographs in the megapixel size. Complying with this request would place a tremendous burden on the Center, requiring resources that this non-for-profit corporation simply cannot spare, particularly where the photographs have already been provided and the discernible difference between the two differently-sized photos is not apparent to the naked eye. Finally, much of the information requested by Plainitff in the Subpoena is obtainable for other sources, such as the National Oceanic and Atmospheric Administration ("NOAA"). Indeed, Plaintiff proved this point by including a Center photograph in his Affidavit concerning the alleged inadequacies of NOAA National Marine Services' response to his subpoena.

Based upon the foregoing, the Center requests that this Court deny Plaintiff's Motion to Compel and grant its Cross-Motion to Quash the Subpoena.

## FACTUAL BACKGROUND

On or about April 15, 2005, Plaintiff served the Center with a Subpoena in the above-captioned matter. *See* George Aff., ¶ 2 and Ex. A. On April 28, 2005, the Center timely sent Plaintiff its written objection to the Subpoena, pursuant to Federal Rule of Civil Procedure 45(c)(2)(B), indicating that, among other things, responding to the Subpoena would be unduly burdensome for the Center. *See id.* at ¶ 3 and Ex. B. Thereafter, during a conversation with the Center's counsel, Plaintiff prioritized his document requests and suggested that the Center start with the production of pictures of entangled whales and documents relating to any reports of entangled whales. George Aff., ¶ 5.

In an effort to comply with Plaintiff's prioritized requests, the Center agreed to produce to him the Atlantic Large Whale Disentanglement Network on-line database (the "On-Line Database"), which is a limited access website available to Network members only. Borrelli Aff., ¶ 10; George Aff., ¶ 7. The Center's counsel communicated this to Plaintiff on May 9, 2005, at which time he agreed to review the On-Line Database, as well as sign an agreement to limit the use and distribution of it. George Aff., ¶ 7. Also during this conversation, despite earlier indications, Plaintiff made it clear that nothing other than full compliance with his Subpoena would be sufficient. *Id.*

Despite Plaintiff's failure to review and sign the Use Agreement relating to the On-Line Database (which he had previously agreed to do) and his protestations that he did not want the On-Line Database, on May 18, 2005, the Center produced the On-Line Database to Plaintiff, in response to his Subpoena. George Aff., ¶¶ 8-11 and Exs. D-G ; Borrelli Aff., ¶ 10. The On-Line

Database represents the Center's entire entanglement database, and is the official database of record. Borrelli Aff., ¶ 11. In fact, this On-Line Database is used by virtually every professional in the marine mammal field for information regarding entanglements in the western North Atlantic Ocean. *Id.*

The On-Line Database contains approximately 3000 separate files of information relating to entangled whales, including Whales Archives from 1999 to May 4, 2005, organized annually. *Id* at ¶ 13. The Whales Archive contains information on 120 sightings of entangled whale that occurred between 1999 and May 4, 2005. *Id.* at ¶ 14. Moreover, the On-Line Database contains every photograph (approximately 2000) that the Center has in its possession showing whales entangled in Massachusetts waters during that same time period. *Id.* at ¶ 17. The On-Line Database also contains telemetry information on entangled whales, including detailed coordinate locations, telemetry maps and details about the whale itself, positioning information, reports from the field, and photographs. *Id.* at ¶¶ 23-24.

On May 18, 2005, Plaintiff informed the Center's counsel that he had access to the database, that it contained none of the scientific information requested, and that he believed the Center failed to comply with the Subpoena in any manner. George Aff., ¶ 12.

Thereafter, on June 14, 2005, Plaintiff filed his Motion to Compel, which was a single-paged Motion simply alleging that the Center failed to comply with the Subpoena. On June 20, 2005, Plaintiff "served" by email the Affidavit of Richard Max Strahan ("Strahan Affidavit") and a Memorandum in Support of his Motions ("Memo.").[2] On June 22, 2005, Plaintiff "served" by email another Affidavit of Richard Max Strahan and Memorandum.[3]

---

[2] Plaintiff has also filed a Motion to Compel against the National Marine Fisheries Service, and a portion of the Strahan Affidavit and the Memorandum relates to that Motion.

[3] References herein are to the June 22, 2005 Affidavit and Memorandum.

4

## REQUIRING THE CENTER TO RESPOND TO PLAINTIFF'S SUBPOENA IS UNDULY BURDENSOME ON THE CENTER AND, THEREFORE, THE SUBPOENA SHOULD BE QUASHED.

In his Motion to Compel, Plaintiff argues that: (1) as to requests 1, 5 and through 8 of the Subpoena, the Center failed to comply in any manner; and (2) as to requests 2 through 4 of the Subpoena, the Center provided only "corrupted" files derived from the original documents that the Center publishes on its website. *See* Memo, at p. 3. Plaintiff further argues that the Center has failed to provide megapixel photographs as requested. *Id.* Plaintiff's arguments are specious, at best. The Center produced the On-Line Database, which provided information responsive to requests 1 through 6 of the Subpoena. Further response to the Subpoena would be unduly burdensome on the Center, which is a not-for-profit organization. As a result, the Court should deny Plaintiff's Motion and quash the Subpoena.

District courts have broad discretion to manage discovery matters. *See Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003). Federal Rule of Civil Procedure 26(c) provides that, upon a showing of good cause, a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Indeed, Federal Rule of Civil Procedure 45(c)(3)(A)(iv) states that a court "shall" quash or modify a subpoena, if the subpoena "subjects a person to undue burden."

The party moving to quash a subpoena in a civil trial bears the burden of persuasion. *See Demers v. Lamontagne*, Civ. Action No. 98-10762, 1999 U.S. Dist. LEXIS 17500, at *4 (D. Mass. May 5, 1999) (citing *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996)). The Court considers numerous factors when determining whether a subpoena places an undue burden on a party: (1) the relevance of the documents sought; (2) the necessity of the documents sought; (3), the breadth of the request; (4) the time period covered by the request (5) the particularity with which the documents are described; (6) and the burden in fact

imposed. *Id.* (citation omitted). In addition, a non-party is given consideration regarding inconvenience and expense. *Id.* (citation omitted). The ultimate determination of burden and reasonableness, however, is subject to the discretion of the court. *See United States v. Concemi*, 957 F.2d 942, 949 (1st Cir. 1992).

I. **THE CENTER'S PRODUCTION OF THE ON-LINE DATABASE SATISFIES PLAINTIFF'S REQUESTS FOR DOCUMENTS CONCERNING WHALE ENTANGLEMENTS.**

In his Subpoena, Plaintiff requests, for the time period 1999 to 2005: (1) digital images of all entangled whales; (2) all documents concerning reports of any whale observed entangled in fishing gear; (3) documents concerning and detailing the removal of fishing gear from whales, as well as the subsequent disposal of such gear; and (4) photographs of the fishing gear removed from each entangled whale. *See* Subpoena, Requests 1, 2, 4, and 5. Plaintiff also seeks, without any time limitation: (1) all documents that describe or report the observation of any entangled whales in the coastal waters of Massachusetts; and (2) all computer records detailing observations of certain whales in Massachusetts coastal waters.[4] *See* Subpoena, Requests 3 and 6. The Center's production of the On-Line Database satisfies these requests, as detailed below.

The Center produced the On-line Database to Plaintiff in response to the Subpoena. Borrelli Aff., ¶ 10. The On-Line Database represents the Center's entire entanglement database. *Id.* at ¶ 11. This On-Line Database is the official database of record, and the one that virtually every professional in the marine mammal field relies on for information regarding entanglements in the western North Atlantic. *Id.* This On-Line Database is a limited access website, available to members of the Network only. *Id.*

---

[4] These requests are unduly burdensome and overly broad, as they fail to specify a time period for which these documents are requested. Moreover, the request for computer records seeks information relating not only to whale entanglements, but all whales sightings. Such a request is unreasonable as overly broad and irrelevant to the case for which the Subpoena was issued.

This On-Line Database contains approximately 3000 separate files of information relating to entangled whales, including the Whales Archive from 1999 through May 4, 2005. Borrelli Aff., ¶¶ 13-14. The Whales Archive for each year contains information on every sighting of an entangled whale that occurred in a particular year. *Id.* at ¶ 14. For example, the Whale Archive for 2000 contains information relating to twenty-six (26) such whale sightings. *Id.* at ¶ 14(b) and Ex. C.

Where the information is available, for each entangled whale listed in the Whales Archive, the On-Line Database contains detail about the geographic location of the entangled whale (including a map and coordinates), a description about the condition of the whale, a description of the fishing gear in which the whale was entangled, photographs of the entangled whale, and information about the disentanglement of the whale. *Id.* at ¶ 15. An example of the information contained on the database for a particular entangled whale is attached to the Borrelli Affidavit, Exhibit I.

Moreover, the On-Line Database contains every photograph that the Center has in its possession showing whales entangled in Massachusetts waters between 1999 and May 4, 2005. Borrelli Aff., ¶ 17. Also included amongst these photographs are all the images of fishing gear in which the whales are entangled that the Center has in its possession. *Id.* According to Mr. Borrelli, the On-Line Database contains approximately 2000 photographs of whale entanglements, all of which are responsive to Mr. Strahan's Subpoena. *Id.*

The On-Line Database also contains telemetry information on the entangled whales listed in the Whales Archive. *Id.* at ¶ 23. The detail for the telemetry tracked whales includes detailed coordinate locations, telemetry maps and details about the whale itself, positioning information, reports from the field, and photographs. Borrelli Aff., ¶ 24. An example of the telemetry

information contained on the database relating a particular entangled whale is attached to the Borrelli Affidavit, Exhibit N.

In sum, the On-Line Database contains virtually all of the information that the Center has in its possession concerning whale entanglements. *Id.* at ¶ 25. To produce the information contained on the On-Line Database in a different form would be unduly burdensome upon the Center and duplicative of that already produced by the Center. For example, Mr. Borrelli estimates that it would take between fourteen (14) and eighteen (18) work days to identify, collect, and prepare for production the documents relating to entangled whales requested in requests 1 through 5 of the Subpoena, if the Center were to produce them in hard copy form. Borrelli Aff., ¶ 9. To fully and completely respond to the Subpoena, Mr. Borrelli estimates that it would take between 21 and 25 work days. *Id.* at ¶ 8. The Center is a not-for-profit corporation, and the reallocation of the Center's resources to undertake this document collection effort and production would virtually cripple the Center. *Id.* at ¶ 2. As a result, the Center requests that the Court deny Plaintiff's Motion to Compel and grant its Motion to Quash.

II.   **REQUIRING THE PRODUCTION OF ADDITIONAL DOCUMENTS (INCLUDING PHOTOGRAPHS IN A DIFFERENT FORMAT) WOULD BE UNDULY BURDENSOME FOR THE CENTER AND DUPLICATIVE OF INFORMATION ALREADY PRODUCED.**

   A.   Production of Megabyte Images Would be Unduly Burdensome for the Center.

Despite the production of thousands of photographs on the On-Line Database, Plaintiff continues to request photographs in the megapixel size, as opposed to the size provided on the On-Line Database. *See* Memo., at pp. 2, 3. To produce each photograph contained on the On-Line Database in such a manner would require extensive work by the Center, and would provide no additional information to Plaintiff. In rejecting the photographs contained on the On-Line Database, Plaintiff has rejected photographs that are industry-standard and utilized by

researchers and others on a daily basis with respect to whale disentanglements. Because Plaintiff has all of the photographs in its possession via the On-Line Database and reproduction of these photographs would be unduly burdensome for the Center, the Court should deny Plaintiff's Motion to Compel on this issue.

As detailed in the Borrelli Affidavit, the typical photograph that the Center takes is between 2,000 - 3,000 KB or 1.95 - 2.93 MB. Borrelli Aff., ¶ 19. Those images are 3048 x 2072 pixels wide on a monitor, and their print size is 42 inches by 28 inches. *Id.* These are "original" photographs of a whale. For the On-Line Database, the Center changes the dimensions of the file to make them sharer-friendly, reducing the file size to approximately 124 KB. *Id.* at ¶ 20. In terms of identifying the whale, the entanglement, and the nature of the wounds, there is virtually no difference between the "original" and On-Line Database photographs. *Id.* at ¶ 21. This is amply demonstrated by a review of Exhibits J and K – two images of a right whale known as Piper – which are attached to Mr. Borrelli's affidavit. Exhibit J is the smaller file, which was taken directly from the Center's database. The "original" photograph is attached to Mr. Borrelli's Affidavit as Exhibit K. The Center is perplexed by the notion that the On-Line Database photographs are sufficient for researchers, but not for Plaintiff.

Moreover, to locate, label, copy, and download every photograph contained on the On-Line Database would impose tremendous burden on the Center. For example, all photographs taken prior to mid-2001 are on film, and not in digital format. Borrelli Aff., ¶ 22. Therefore, these films would have to be located in order to comply with such a request, which would be a great burden for the Center. In total, Mr. Borrelli estimates that it would average the Center approximately fifteen (15) minutes per photograph to produce it in the megabyte size requested by Plaintiff, including locating, identifying, labeling, and downloading the images. *Id.* Although

just an estimate, this potentially translates into more than one month of time that a Center employee would need to dedicate to this project alone. Again, for a not-for-profit organization, such would seriously impact its ability to conduct its day-to-day business. For this reason, the Center requests that the Court deny Plaintiff's Motion to Compel on this point and grant its Motion to Quash.

### III. MANY OF THE DOCUMENTS AND OTHER INFORMATION REQUESTED IN THE SUBPOENA ARE OBTAINABLE FROM OTHER SOURCES.

Much of the information requested in the Subpoena is obtained from governmental agencies, such as NOAA. The Center provides Disentanglement Permit Reports to NOAA National Marine Fisheries Service on an annual basis. Borrelli Aff., ¶ 16. This report details the Center and Network member's whale disentanglement activities on an annual basis, including the number of reported entanglements, species, outcome of disentanglement attempts, and assessments of documented cases. *Id.* Moreover, NOAA issues Large Whale Entanglement Reports on an annual basis, which details the location, species information, nature of the animal or carcass, observers, and the nature of the entanglement for those on the entire Eastern Seaboard and relating to all cetacean species. *Id.* In addition, NOAA publishes Fishery Interaction Gear Analyses on an annual basis. These analyses include location, baleen cetacean species information, nature of entanglement, nature of animal or carcass, observers, and an analysis of the entangling material for the entire Eastern Seaboard. *Id.* Thus, the entanglement information and documentation that Plaintiff seeks is available from National Marine Fisheries Service.

Requests 1 through 7 of the Subpoena served upon the Center are identical to those same requests in Plaintiff's subpoena to National Marine Fisheries Service. *Cf.* Memo., at pp. 4-6, 6-8. Moreover, in his Affidavit, Plaintiff includes a photograph attributed to the Center in his argument about the inadequacies of NOAA National Marine Fisheries Service's response to his

subpoena. *See* Strahan Aff., ¶ 6. Thus, National Marine Fisheries Service not only has in its possession documentation from the Center, but it actually produced same in response to Plaintiff's subpoena. For these reasons, the Centers asserts that a majority of the information requested by Plaintiff in his Subpoena is in the possession of governmental agencies, which should relief the Center from its obligation to produce additional documents in response to the Subpoena, particularly given the undue burden that such would impose on the Center.

## CONCLUSION

For the foregoing reasons, the Provincetown Center for Coastal Studies requests that this Court deny Plaintiff's Motion to Compel, grant its Cross-Motion to Quash, and grant such other just and equitable relief as the Court deems appropriate.

Respectfully submitted,

PROVINCETOWN CENTER FOR COASTAL STUDIES

By its attorneys,

*/s/ Amy R. George*

David M. Ryan (BBO No. 644037)
Amy R. George (BBO No. 629548)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
617-345-1000 (phone)
617-345-1300 (fax)

Dated:      June 23, 2005

## CERTIFICATE OF SERVICE

I, Amy R. George, Esq., do hereby certify that the above Memorandum of Law in Opposition to Plaintiff's Motion to Compel and in Support of the Cross-Motion to Quash was served, by hand delivery, upon Richard Max Strahan, 928 Dorchester Avenue, Unit 5, Boston, MA 02125, on this 23th day of June, 2005.

_____
Amy R. George

BOS1504008.1