UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD MAX STRAHAN,

                Plaintiff,

v.

SECRETARY ELLEN ROY-HERZFELDER;
COMMISSIONER DAVID PETERS; and
DIRECTOR PAUL DIODATI,

                Defendants.

Civil Action No. 05-10140-NMG

## AFFIDAVIT OF AMY R. GEORGE, ESQ.

I, Amy R. George, Esq., under oath do depose and say as follows:

1.      I am an associate with Nixon Peabody LLP, attorneys for Provincetown Center for Coastal Studies (the "Center"). I submit this affidavit in support of the Center's opposition to Plaintiff Richard Max Strahan's Motion to Compel, as well as the Center's Cross-Motion to Quash the Subpoena.

2.      On or about April 15, 2005, Plaintiff served the Center with a Subpoena in the above-captioned matter. A true and correct copy of the Subpoena is attached hereto as Exhibit A.

3.      On April 28, 2005, the Center timely sent Plaintiff its written objection to the Subpoena, pursuant to Federal Rule of Civil Procedure 45(c)(2)(B), indicating that, among other things, responding to the Subpoena would be unduly burdensome for the Center. A true and correct copy of this correspondence is attached hereto as Exhibit B.

4.      On April 26, 2005, I spoke to David Hoover, Esq., General Counsel for the Commonwealth of Massachusetts, Department of Fish and Game. Mr. Hoover informed me that

much of the information requested in the Subpoena is duplicative of information produced by the Commonwealth to Mr. Strahan, or is otherwise available from the Commonwealth. For example, categories 2 and 3 of the Subpoena seek the same documents that category 4 of the Demand to the Commonwealth requests. Furthermore, Mr. Hoover informed me that the Federal Government maintains extensive data and documentation concerning the entanglement of whales, which is easily obtainable by FOIA request, and would be responsive to a vast majority of the documents/data requested in the Subpoena.

5.     On Friday, April 29, 2005, I spoke to Mr. Strahan about the Subpoena, and explained the Center's desire to narrow the scope of the Subpoena and negotiate a compromise that was acceptable to both parties. I also explained in more detail the burdensome nature of Mr. Strahan's document requests, which is set forth in the Affidavit of Peter Borrelli, submitted contemporaneously herewith. Mr. Strahan quickly dismissed any indication that the requests were burdensome on the Center, and suggested that the Center hire temporary employees to comply with the document requests. At the conclusion of our conversation, Mr. Strahan prioritized his requests and suggested that the Center start with the production of pictures of entangled whales and documents relating to any reports of entangled whales.

6.     To that end, I worked with Peter Borrelli, Executive Director of the Center, to comply with Mr. Strahan's prioritized requests.

7.     On May 9, 2005, I again spoke to Mr. Strahan. During that time, I explained that the Center was prepared to produce to him the entire, limited access entanglement database, which would satisfy Mr. Strahan's prioritized requests. Mr. Strahan agreed to the production of the website, as well as to sign an agreement to limit the use and distribution of the database, despite his protestations that the database contained none of the information that he sought in the

Subpoena. A true and correct copy of the May 11, 2005 correspondence memorializing this conversation is attached hereto as Exhibit C. Also during this conversation, Mr. Strahan retreated from his earlier position that we would discuss his other requests after the prioritized requests were satisfied. Rather, he was quite clear that nothing than full compliance with his Subpoena would be sufficient.

8.　　On numerous occasions, I forwarded the Use Agreement to Mr. Strahan for his review and signature, in accordance with our discussion on May 9th. *See, e.g.,* May 12, 2005 Correspondence, May 13, 2005 Correspondence, and May 13, 2005 Email Correspondence, true and correct copies of which are attached hereto as Exhibits D, E, and F, respectively. However, Mr. Strahan never returned the signed Agreement.

9.　　On May 13, 2005, I again spoke to Mr. Strahan, inquiring whether he intended to sign the Use Agreement, so that I could produce the database to him per our prior discussions. Again, Mr. Strahan was quite adamant that he was not interested in receiving the database.

10.　　On May 18, 2005, Mr. Strahan sent me an email to Mr. Borrelli, wherein he stated: "As you know, I need [the] information [requested in the Subpoena] in order to persuade the Court in *Strahan v. Herzfelder* to order Massachusetts to stop killing endangered whales with its licensed fishing gear." Based upon this statement, the Center understood Mr. Strahan's intention to use the material produced in response to the Subpoena in the pending litigation only.

11.　　As a result, and in an effort to provide Mr. Strahan with information requested in his Subpoena, on May 18, 2005, the Atlantic Large Whale Disentanglement Network on-line database, which included whale archives from 1999 to May 4, 2005, was produced to him. A true and correct copy of the correspondence that accompanied the CD-ROM is attached hereto as Exhibit G.

12.     On May 18, 2005, I received an email from Mr. Strahan, indicating that he has access to the database, that it contained none of the scientific information requested, and that he believed the Center failed to comply with the Subpoena in any manner. A true and correct copy of this email correspondence is attached hereto as Exhibit H.

13.     Based upon the numerous conversations that I have had with Mr. Strahan, it is clear that, unless megapixel photographs of whales are produced, no further negotiations as to narrowing the scope of the Subpoena will result in any compromise.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY, THIS 22ND DAY OF JUNE, 2005.

Amy R. George

## CERTIFICATE OF SERVICE

I, Amy R. George, Esq., do hereby certify that the above Affidavit of Amy R. George, Esq. was served, by hand delivery, upon Richard Max Strahan, 928 Dorchester Avenue, Unit 5, Boston, MA  02125, on this 23th day of June, 2005.

Amy R. George

**Issued by the**

# UNITED STATES DISTRICT COURT

_EASTERN_                    DISTRICT OF    _MASSACHUSETTS_

Richard Max Strahan                    **SUBPOENA IN A CIVIL CASE**

v.

Ellen Roy-Herzfelder et al    Case Number:[1]

TO: Peter Borelli, Director                    05 - 10140 - NME
Center For Coastal Studies
Province Town, MA

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below
   testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
   in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
   place, date, and time specified below (list documents or objects): SEE ATTACHMENT

at  Massachusetts Sierra Club
  100 Boylston Street, 7th Floor
  Boston, MA

| PLACE | DATE AND TIME |
| --- | --- |
| → | 15 May 2005 at 9AM |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| Courtroom dep'ts clerk | 3/11/05 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
   UNITED STATES DISTRICT COURT
   1 COURTHOUSE WAY
   SUITE 2301            (See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)
   BOSTON, MA 02210   617-748-9158
[1] If action is pending in district other than district of issuance, state district under case number.
   CRAIG NICEWICZ, Dep'ty Clerk

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | 16 April 2005 | VIA US. Priority Mail |

SERVED Peter Borrelli

SERVED ON (PRINT NAME)                                    MANNER OF SERVICE

SERVED BY Richard Max Strahan                    Prince of Whales

SERVED BY (PRINT NAME)                                    TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on  16 April 2005.
                    DATE

_____
SIGNATURE OF SERVER

928 Dorchester Ave
_____
ADDRESS OF SERVER

Boston MA 02125

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD MAX STRAHAN )
)
*Plaintiff* )
) Civil Action No.
v. )
) 05 – 10140 - NMG
ELLEN ROY-HERZFELDER, *et al.* )
) 15 April 2005
*Defendants* )

## PLAINTIFF'S SUBPOENA TO PETER BORRELLI AND THE CENTER FOR COASTAL STUDIES TO PRODUCE DOCUMENTS FOR INSPECTION AND COPYING

Pursuant to the Federal Rules of Civil Procedure, Plaintiff Richard Max Strahan

DEMANDS that Peter Borrelli and the Center for Coastal Studies of Providence MA produce for

inspection and copying at the offices of Sierra Club of New England, 100 Boylston Street,

Boston, Massachusetts, all documents described below on or before 9:00 A.M. on 16 May 2005.

If the Defendants choose to reproduce the requested records on their own and supply them to

Strahan on or before 16 May 2005, then they do not need to make their original copies of

requested records available for inspection and copying on the said date and location.

### DEFINITIONS

The following definitions shall apply to this request:

1. "Strahan " shall refer to the Plaintiff, Richard Max Strahan.

2. "EOEA" shall mean any office and all employees/agents of the Massachusetts
   Executive Office of Environmental Affairs and any of its infra-agencies and/or
   offices.

3. "DFG" shall mean any agency and/or agent of the Massachusetts Department of
   Fish and Game its infra-agencies and/or offices.

4.  "DMF" shall mean any agency and/or agent of the Massachusetts Division of Marine Fisheries its infra-agencies and/or offices.

5.  "CCS" shall mean the Center for Coastal Studies in Provincetown, MA.

6.  "Correspondence" includes, but is not limited to, any letter, telegram, telex, TWX, notice, message, E-mail, memorandum or other written communication or transcription or notes of a communication.

7.  "Whale" or "whales" shall mean any member of a biological species taxonomically listed as belonging to the biological Order Cetacea.

8.  "Entangled Whale(s)" shall mean a whale or whales that physically in contact for any length of time on any given day with any rope, net, pot, and/or any physical object that is deployed into the marine environment by an individual for the purpose of catching and/or harvesting marine wildlife of any biological species.

9.  "And" and "or" shall mean, where the context permits, "and/or."

10. "All" and "any" shall mean, where the context permits, "any and all."

11. "Documents" shall mean any conceivable type of recorded information on any kind of conceivable material — including (but not exclusively) printed material, notes, hand written material, E-mails, computer files of any format, magnetic audio and/or video recordings, and photographs.

12. Words used in the singular shall, where the context permits, be deemed to include the plural, and words used in the plural shall, where the context permits, be deemed to include the singular.

## INSTRUCTIONS

1.  As to any document requested herein but withheld on the ground of privilege, please state the following:

    a.  The nature of the claimed privilege;

    b.  The title of the document;

    c.  The type of document (e.g. letter, note, memorandum, etc.);

    d.     The date of the document;

    e.     Names and positions of all persons who authored the document, or assisted in its preparation, or in whose name the document was prepared;

    f.     Names and positions of all persons to whom the document was addressed; or to whom it was sent, or who received, have seen, have had possession or custody of, or have had disclosed to them the contents of, the document or any copies thereof;

    g.     Names and positions of all persons from whom the document was received;

    h. .    The present location of the document and all copies thereof;

    I.     Names and positions of all persons having custody or control of the document and all copies thereof; and

    j.     Subject matter of the document.

2.    In producing documents, documents responsive to each request are to be segregated and labeled so as to indicate which request each segregated set of documents to which it is in response.

3.    If a document has been generated as a computer file and then converted into a printed format, the computer file is requested first and only the printed document too if in any way it has been personalized with a signature, date stamp and/or annotations of any type.

## DOCUMENTS REQUESTED

1.    Ten representative digital images of each and every whale observed entangled in fishing gear within fifty miles of U. S. coastal waters under Massachusetts state jurisdiction between the years 1999 – 2005. The digital images provided should be the highest available resolution as measured in absolute size of pixels (e. g. if two distinct files exist of the same image but one of them is higher in resolution as measured in pixels, the higher resolution and larger as measured in bytes of a particular format constitutes the

requested file). In addition necessary documentation that identifies the date any provided picture was taken, the location it was taken in latitude and longitude, the species of the whale that is being depicted, and the name of the photographer that took the image,

2.    All documents concerning reports of any whale observed entangled in fishing gear within 50 miles of U. S. coastal waters under Massachusetts state jurisdiction (e. g. within 53 miles of any point on the Massachusetts coastline) between the years 1999 - 2005.

3.    All documents in any way describing and/or reporting the observation of entangled whales in coastal waters under Massachusetts state jurisdiction.

4.    Documents concerning and detailing the removal of fishing gear from whales between 1999 - 2005 and the subsequent handling and disposal/storage of this fishing gear.

5.    Ten representative digital images of the fishing gear removed from each whale disentangled by employees and agents of the CCS between the years 1999 – 2005. The digital images provided should be the highest available resolution as measured in absolute size of pixels (e. g. if two distinct files exist of the same image but one of them is higher in resolution as measured in pixels, the higher resolution and larger as measured in bytes of a particular format constitutes the requested file). In addition the necessary documentation that identifies the date any provided picture was taken, the location it was taken in latitude and longitude, and the name of the photographer that took the image,

6.    All computer records detailing observations of the occurrence of individual Northern Right Whales, Humpback Whales, Fin Whales, Minke Whales and Blue Whales between the years 1999 – 2005 in coastal waters under Massachusetts state jurisdiction and the area within fifty miles of any point on the Massachusetts coastline,

7.    All correspondence between any employee and/or agent of the EOEA, DFG, and/or DMF and any employee or agent of the CCS in any way concerning and/or naming Richard Max Strahan.

8.    Any report and/or other results — including high resolution photographs — of studies of
     the scarring on individual Humpback Whales and the correlation of this scarring on the
     whale with its possible entanglement in commercial and sports fishing gear.

By:



RICHARD MAX STRAHAN, Plaintiff
928 Dorchester Avenue, #5
Boston, MA 02125
617.233.3854

*PRO SE AND PROUD!*



# NIXON PEABODY LLP
### ATTORNEYS AT LAW

100 Summer Street
Boston, Massachusetts 02110-2131
(617) 345-1000
Fax: (617) 345-1300

April 28, 2005

## VIA OVERNIGHT MAIL AND U.S. MAIL

Richard Max Strahan
928 Dorchester Avenue, #5
Boston, MA 02125

      Re:    *Strahan v. Roy-Herzfelder*, U.S. District Court, District of Massachusetts,
             05-CV-10140 NMG

Dear Mr. Strahan:

We represent the Provincetown Center for Coastal Studies (the "Center"). The Center received your Subpoena relating to *Strahan v. Roy-Herzfelder*, U.S. District Court, District of Massachusetts, 05-CV-10140 NMG. Pursuant to Federal Rule of Civil Procedure 45(c)(2)(B), this correspondence constitutes the Center's objection to the documents requested in the Subpoena for inspection and copying.

As you know, the Center is a not-for-profit organization, which conducts research, collects data, and organizes volunteers to disentangle whales off the coast of Massachusetts. The Subpoena requests eight (8) categories of documents, dating from 1999 through 2005, including photographs, computer records, correspondence, reports, and other documents relating to whale entanglements. The Center objects to these documents requests for the following reasons.

First, pursuant to Federal Rule of Civil Procedure 26(b)(2)(iii), these document requests are unduly burdensome for the Center. Indeed, the Center estimates that identifying and collecting documents responsive to your requests would require numerous staff members and between 21 to 25 work days, as the documents are not maintained or organized in the manner that you have requested. For example, the Center estimates that responding to your requests relating to whale entanglements alone would require between 14 to 18 working days. Such a dedication of staff to your requests would effectively render the Center incapable of conducting its regular business.

Moreover, the Center believes the documents/data requested are obtainable from either the State or Federal Governments, and could be obtained through a FOIA or similar state request. In the Center's view, obtaining these documents/data from the government would be more convenient for you and less burdensome for the Center. *See* Fed. R. Civ. P. 26(b)(2)(i). Indeed,

ALBANY, NY · BOSTON, MA · BUFFALO, NY · GARDEN CITY, NY · HARTFORD, CT · MANCHESTER, NH · McLEAN, VA
NEW YORK, NY · ORANGE COUNTY, CA · PHILADELPHIA, PA · PROVIDENCE, RI · ROCHESTER, NY · SAN FRANCISCO, CA · WASHINGTON, DC

NIXON PEABODY LLP

Richard Max Strahan
April 28, 2005
Page 2

I recently spoke to David Hoover, Esq., General Counsel for Commonwealth of Massachusetts, Department of Fish and Game, concerning your document requests to the Center. Mr. Hoover informed me that most, if not all, of the information requested in the Subpoena is duplicative of information produced to you by the Commonwealth this week, or is otherwise available from the Commonwealth. Attached please find a copy of the April 26, 2005 correspondence from Mr. Hoover responding to your requests. For example, categories 2 and 3 of the Subpoena seek the same documents that category 4 of the Demand to the Commonwealth requests. Furthermore, Mr. Hoover informed me that the Federal Government maintains extensive data and documentation concerning the entanglement of whales, which is easily obtainable by FOIA request, and would be responsive to a vast majority of the documents/data requested in the Subpoena.

Based on the foregoing, the Center will not make the documents requested in the Subpoena available for your inspection and copying at this time. However, once you have reviewed the documents and data received from the Commonwealth and sought similar data from the Federal Government, we would be happy to discuss with you what additional information you need that is peculiarly within the Center's possession.

Please contact me if you wish to further discuss this matter.

Very truly yours,

Amy K. George

cc:    Peter Borrelli
       David Hoover, Esq.
       David M. Ryan, Esq.



# NIXON PEABODY LLP

ATTORNEYS AT LAW

100 Summer Street
Boston, Massachusetts 02110-2131
(617) 345-1000
Fax: (617) 345-1300

May 11, 2005

## VIA HAND DELIVERY AND U.S. MAIL

Richard Max Strahan
928 Dorchester Avenue, #5
Boston, MA  02125

> Re:    *Strahan v. Roy-Herzfelder*, U.S. District Court, District of Massachusetts,
> 05-CV-10140 NMG

Dear Mr. Strahan:

The letter confirms our conversation of May 9, 2005 concerning the Subpoena seeking documents in an action entitled *Strahan v. Roy-Herzfelder*, U.S. District Court, District of Massachusetts, 05-CV-10140 NMG, which you served on the Provincetown Center for Coastal Studies (the "Center").

As you know, on April 28, 2005, the Center objected in writing to the Subpoena, pursuant to the provision of Fed. R. Civ. P. 45(c)(2)(B). In an attempt to reach an agreement as to the scope of your requests, on April 29, 2005, we discussed a priority list concerning the documents requested in the Subpoena. As a result of that conversation, I understood that your "first priority" requests were (1) photographs of entangled whales off the coast of Massachusetts, and (2) documents relating to any reports of entanglements. As we discussed, the Center offered to produce a copy of its entire, limited access, entanglement website to satisfy your prioritized requests, subject to your execution of an agreement limiting its use and distribution. Unfortunately, you expressed disappointment with this offer, indicated that you found it "insulting", and expressed your opinion that the website contained only a "token sampling" of the documents requested (without having even reviewed its contents). You also expressed an intention to add the Center as a defendant in your lawsuit.

Despite your initial negative reaction, we agreed that the Center would produce the website to you, in hopes that the extensive scientific and other information contained therein would satisfy your requests. Provided that you execute the agreement limiting its use and distribution (which will follow shortly), the Center plans to produce the website on or before May 16, 2005, the return date of the Subpoena.

NIXON PEABODY LLP

Richard Max Strahan
May 11, 2005
Page 2

During our conversation, you stated your intention to forward me photographs of a few entanglements, for which you requested all documentation in the Center's possession on such entanglements. I await those photographs and, once received, will work with the Center on your request.

Finally, as we discussed during our conversation, the Center has retained Nixon Peabody to represent it in connection with the Subpoena. As a result, kindly contact me directly to discuss any matters relating to the Subpoena.

Please contact me if you have a different understanding of our conversation or wish to further discuss this matter.

Very truly yours,

Amy R. George

cc:    Peter Borrelli
       David M. Ryan, Esq.



# NIXON PEABODY LLP

ATTORNEYS AT LAW

100 Summer Street
Boston, Massachusetts 02110-2131
(617) 345-1000
Fax: (617) 345-1300

May 12, 2005

## VIA HAND DELIVERY AND U.S. MAIL

Richard Max Strahan
928 Dorchester Avenue, #5
Boston, MA 02125

      Re:    *Strahan v. Roy-Herzfelder*, U.S. District Court, District of Massachusetts,
            05-CV-10140 NMG

Dear Mr. Strahan:

      Pursuant to our prior conversation and my May 11, 2005 correspondence, enclosed please find a Use Agreement for your review and signature. If the Use Agreement is acceptable, kindly sign it and return it to me as soon as possible. Upon my receipt of the signed Agreement, the Center for Coastal Studies will produce its entire, limited access, entanglement website to you in response to the Subpoena.

      Please contact me with any questions or concerns.

                        Very truly yours,

                        Amy R. George

Enclosure

cc:    Peter Borrelli (w/ enclosure)
       David M. Ryan, Esq. (w/o enclosure)

ALBANY, NY · BOSTON, MA · BUFFALO, NY · GARDEN CITY, NY · HARTFORD, CT · MANCHESTER, NH · McLEAN, VA
NEW YORK, NY · ORANGE COUNTY, CA · PHILADELPHIA, PA · PROVIDENCE, RI · ROCHESTER, NY · SAN FRANCISCO, CA · WASHINGTON, DC

## USE AGREEMENT

WHEREAS, *Strahan v. Roy-Herzfelder*, Civ. A. No. 05-10140-NMG is currently pending in the United States District Court for the District of Massachusetts (the "Litigation");

WHEREAS, Plaintiff Richard Max Strahan ("Strahan") served a third-party Subpoena on the Center for Coastal Studies (the "Center") in the Litigation;

WHEREAS, the Subpoena requests eight (8) categories of documents, things, and information;

WHEREAS, documents, things, and information that are in the Center's possession pursuant to certain permits may be furnished or disclosed by the Center in response to the Subpoena;

WHEREAS, Strahan and the Center desire to establish a mechanism to protect the disclosure of such material;

It is hereby STIPULATED and AGREED as follows:

1.   Documents, things, and information produced by the Center must be used only and exclusively in the good faith litigation of this action; and

2.   Neither Strahan or the Center has a wish or intention to use such documents, things, and information for any purpose other than the good faith litigation of this action.

WHEREFORE, it is hereby AGREED that the following procedure shall govern the production, use, and return of all documents and information produced by the Center in response to the Subpoena:

1.   This Use Agreement shall be applicable to and govern all documents, things, and information that the Center produces in response to the Subpoena ("Produced Documents").

2.   All Produced Documents shall be used only for the prosecution or defense of this Litigation as it is presently pending, and not for any business, legal, commercial, or other

purposes, or for the purposes of any other pending or future litigation or proceeding. Such prohibited uses of Produced Documents includes publication in any print media, including, but not limited to, pamphlets, flyers, newspapers, newsletter, webpages, or peer-reviewed publications.

3.    Because much of the Center's work is done pursuant to various permits, prior to disclosure of any Produced Documents (particularly photographs) to anyone listed in paragraphs 4 or 5, Strahan must notify the Center in writing and request permission to distribute the Produced Documents so that the Center may comply with its obligations under the permits.

4.    All Produced Documents shall be inspected only by representatives of the parties, counsel for the parties, and attorneys or staff members working with counsel for the parties, except as provided in paragraph 5, below.

5.    All Produced Documents may be viewed and inspected by experts retained by Strahan to the extent necessary for the Litigation, only after such expert has been made aware of the provisions of this Use Agreement and manifested his/her assent to be bound thereby by signing a copy of the annexed Acknowledgment and Consent. Any such signed Acknowledgment and Consent signed by an expert shall be maintained by the attorney/party retaining the expert, and shall be disclosed to the other party. Such signed Acknowledgment and Consent must be produced, under seal if necessary, to the Court if a dispute arises concerning possible violation of this Use Agreement, at which time the Court shall determine whether production to the other side is justified given the circumstances of the dispute and the provisions of the Federal Rules of Civil Procedure governing disclosure of experts.

6.    The persons receiving Produced Documents are enjoined from disclosing it to any other person, except in conformance with this Use Agreement.

7.    The Center shall designate Produced Documents by placing the following legend on any such material prior to production: "Documents Produced Pursuant to Use Agreement."

8.    Within thirty (30) calendar days of the termination of Litigation, including any appeal or retrial, all Produced Documents and all copies thereof shall be returned to the Center, or, upon written request of the Center, all Produced Documents and all copies of same, shall be destroyed by the Strahan within thirty (30) days of final termination of this Litigation. Specifically, but without limitation, no person shall use any Produced Documents contained in documents or generated in discovery even after such documents or discovery materials are returned or destroyed under this paragraph.

9.    Strahan and the Center agree to cooperate in ensuring that the purposes of this Use Agreement are carried out. Strahan and the Center agree to notify each other as soon as practicable in the event of any breach of its provisions and in the event of any formal or informal request by a third party (including subpoenas) for any Produced Documents.

10.    The production of Produced Documents is not an acknowledgement that the material is admissible at trial, and the party producing such material expressly reserves the right to object to its admissibility at trial.

11.    The terms and limitations of this Use Agreement shall not be modified or deviated from except upon written stipulation or agreement by Strahan and the Center.

12.    In the event any person subject to this Use Agreement receives a subpoena or other formal request for documents or information from any person, Court, or tribunal calling for the production of Produced Documents, that person shall, within seven days of the receipt of the subpoena, forward the subpoena by overnight mail or facsimile to the party or witness who provided the Produced Documents. Thereafter, it shall be the responsibility of the designating

3

party or witness, within seven business days, or upon such shorter notice as provided for in the subpoena, to object to the production of any Produced Documents called for by the subpoena, move to quash the subpoena, or otherwise undertake measures designed to restrict the dissemination of Produced Documents. If the designating party or witness files objections to the subpoena or moves to quash the subpoena, the recipient of the subpoena shall not produce any Produced Documents in response to the subpoena unless and until the recipient: (a) receives written permission from the designating party or witness to do so; or (b) is ordered to do so by a Court of competent jurisdiction.

13.    Nothing in this Use Agreement precludes the parties from voluntarily disclosing information designated Produced Documents to law enforcement, regulatory or self-regulatory authorities, except that any party providing such information shall request similar treatment of such information by the requesting authority, pursuant to the Freedom of Information Act or similar laws, rules, or regulations.

**SO AGREED ON THIS __th DAY OF MAY, 2005:**

Richard Max Strahan, Pro Se
928 Dorchester Avenue, #5
Boston, MA 02125

David M. Ryan (BBO No. 644037)
Amy R. George (BBO No. 629548)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
617-345-1000 (phone)
617-345-1300 (fax)

4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD MAX STRAHAN,

Plaintiff

v.                                                    Civ. A. No. 05-10140-NMG

ELLEN ROY-HERZFELDER; DAVID M.
PETERS; PAUL DIODATI,

Defendants.

## ACKNOWLEDGMENT AND CONSENT

I hereby certify the following:

1.    I have read the attached Use Agreement concerning the above-captioned action (the "Litigation")

2.    I understand the terms of the Use Agreement.

3.    I understand that discovery material designated as Produced Documents under the Use Agreement is being provided to me pursuant to the terms of that Agreement.

4.    I agree to be fully bound by the provisions of the Use Agreement, including its provisions restricting disclosure of documents and information designated as Produced Documents under the Use Agreement and limiting the use of such documents and information to the conduct of the Litigation.

5.    I hereby submit to the jurisdiction of the United States District Court for the District of Massachusetts for purposes of enforcement of the Use Agreement; and

6.    I understand that violation of the Use Agreement may be punishable by the Court.

Dated: _____      Signature:_____

                                 [Name]
                                 [Title & Affiliation]



# NIXON PEABODY LLP
### ATTORNEYS AT LAW

100 Summer Street
Boston, Massachusetts 02110-2131
(617) 345-1000
Fax: (617) 345-1300

May 13, 2005

## VIA OVERNIGHT MAIL AND U.S. MAIL

Richard Max Strahan
928 Dorchester Avenue, #5
Boston, MA 02125

      Re:    *Strahan v. Roy-Herzfelder*, U.S. District Court, District of Massachusetts, 05-CV-10140 NMG

Dear Mr. Strahan:

This letter confirms our conversation of this afternoon. As you know, the Center for Coastal Studies (the "Center") has offered to produce to you its entire, limited access, entanglement website in response to the Subpoena. On May 12, 2005 (and again this morning by email), I forwarded to you a Use Agreement for your review and signature. As indicated in my correspondence, upon my receipt of the signed Agreement, the Center will produce the website. Based upon your statements during the conversation, as well as the abrupt manner in which the conversation ended, I am under the impression that you will not sign the Use Agreement. The Center remains ready to produce the website to you upon receipt of the signed Use Agreement. For your convenience, enclosed please find another copy of the Use Agreement for your signature.

Please contact me with any questions or concerns.

Very truly yours,

Amy R. George

Enclosure

cc:    Peter Borrelli (w/o enclosure)
      David M. Ryan, Esq. (w/o enclosure)

BOS1492830.1

ALBANY, NY · BOSTON, MA · BUFFALO, NY · GARDEN CITY, NY · HARTFORD, CT · MANCHESTER, NH · McLEAN, VA
NEW YORK, NY · ORANGE COUNTY, CA · PHILADELPHIA, PA · PROVIDENCE, RI · ROCHESTER, NY · SAN FRANCISCO, CA · WASHINGTON, DC

## USE AGREEMENT

WHEREAS, *Strahan v. Roy-Herzfelder*, Civ. A. No. 05-10140-NMG is currently pending in the United States District Court for the District of Massachusetts (the "Litigation");

WHEREAS, Plaintiff Richard Max Strahan ("Strahan") served a third-party Subpoena on the Center for Coastal Studies (the "Center") in the Litigation;

WHEREAS, the Subpoena requests eight (8) categories of documents, things, and information;

WHEREAS, documents, things, and information that are in the Center's possession pursuant to certain permits may be furnished or disclosed by the Center in response to the Subpoena;

WHEREAS, Strahan and the Center desire to establish a mechanism to protect the disclosure of such material;

It is hereby STIPULATED and AGREED as follows:

1.    Documents, things, and information produced by the Center must be used only and exclusively in the good faith litigation of this action; and

2.    Neither Strahan or the Center has a wish or intention to use such documents, things, and information for any purpose other than the good faith litigation of this action.

WHEREFORE, it is hereby AGREED that the following procedure shall govern the production, use, and return of all documents and information produced by the Center in response to the Subpoena:

1.    This Use Agreement shall be applicable to and govern all documents, things, and information that the Center produces in response to the Subpoena ("Produced Documents").

2.    All Produced Documents shall be used only for the prosecution or defense of this Litigation as it is presently pending, and not for any business, legal, commercial, or other

purposes, or for the purposes of any other pending or future litigation or proceeding. Such prohibited uses of Produced Documents includes publication in any print media, including, but not limited to, pamphlets, flyers, newspapers, newsletter, webpages, or peer-reviewed publications.

3.     Because much of the Center's work is done pursuant to various permits, prior to disclosure of any Produced Documents (particularly photographs) to anyone listed in paragraphs 4 or 5, Strahan must notify the Center in writing and request permission to distribute the Produced Documents so that the Center may comply with its obligations under the permits.

4.     All Produced Documents shall be inspected only by representatives of the parties, counsel for the parties, and attorneys or staff members working with counsel for the parties, except as provided in paragraph 5, below.

5.     All Produced Documents may be viewed and inspected by experts retained by Strahan to the extent necessary for the Litigation, only after such expert has been made aware of the provisions of this Use Agreement and manifested his/her assent to be bound thereby by signing a copy of the annexed Acknowledgment and Consent. Any such signed Acknowledgment and Consent signed by an expert shall be maintained by the attorney/party retaining the expert, and shall be disclosed to the other party. Such signed Acknowledgment and Consent must be produced, under seal if necessary, to the Court if a dispute arises concerning possible violation of this Use Agreement, at which time the Court shall determine whether production to the other side is justified given the circumstances of the dispute and the provisions of the Federal Rules of Civil Procedure governing disclosure of experts.

6.     The persons receiving Produced Documents are enjoined from disclosing it to any other person, except in conformance with this Use Agreement.

7.      The Center shall designate Produced Documents by placing the following legend on any such material prior to production: "Documents Produced Pursuant to Use Agreement."

8.      Within thirty (30) calendar days of the termination of Litigation, including any appeal or retrial, all Produced Documents and all copies thereof shall be returned to the Center, or, upon written request of the Center, all Produced Documents and all copies of same, shall be destroyed by the Strahan within thirty (30) days of final termination of this Litigation. Specifically, but without limitation, no person shall use any Produced Documents contained in documents or generated in discovery even after such documents or discovery materials are returned or destroyed under this paragraph.

9.      Strahan and the Center agree to cooperate in ensuring that the purposes of this Use Agreement are carried out. Strahan and the Center agree to notify each other as soon as practicable in the event of any breach of its provisions and in the event of any formal or informal request by a third party (including subpoenas) for any Produced Documents.

10.     The production of Produced Documents is not an acknowledgement that the material is admissible at trial, and the party producing such material expressly reserves the right to object to its admissibility at trial.

11.     The terms and limitations of this Use Agreement shall not be modified or deviated from except upon written stipulation or agreement by Strahan and the Center.

12.     In the event any person subject to this Use Agreement receives a subpoena or other formal request for documents or information from any person, Court, or tribunal calling for the production of Produced Documents, that person shall, within seven days of the receipt of the subpoena, forward the subpoena by overnight mail or facsimile to the party or witness who provided the Produced Documents. Thereafter, it shall be the responsibility of the designating

3

party or witness, within seven business days, or upon such shorter notice as provided for in the subpoena, to object to the production of any Produced Documents called for by the subpoena, move to quash the subpoena, or otherwise undertake measures designed to restrict the dissemination of Produced Documents. If the designating party or witness files objections to the subpoena or moves to quash the subpoena, the recipient of the subpoena shall not produce any Produced Documents in response to the subpoena unless and until the recipient: (a) receives written permission from the designating party or witness to do so; or (b) is ordered to do so by a Court of competent jurisdiction.

13.    Nothing in this Use Agreement precludes the parties from voluntarily disclosing information designated Produced Documents to law enforcement, regulatory or self-regulatory authorities, except that any party providing such information shall request similar treatment of such information by the requesting authority, pursuant to the Freedom of Information Act or similar laws, rules, or regulations.

**SO AGREED ON THIS __th DAY OF MAY, 2005:**

_____          _____
Richard Max Strahan, Pro Se                David M. Ryan (BBO No. 644037)
928 Dorchester Avenue, #5                  Amy R. George (BBO No. 629548)
Boston, MA  02125                          NIXON PEABODY LLP
                                           100 Summer Street
                                           Boston, MA  02110
                                           617-345-1000 (phone)
                                           617-345-1300 (fax)

4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD MAX STRAHAN,

               Plaintiff

v.                                        Civ. A. No. 05-10140-NMG

ELLEN ROY-HERZFELDER; DAVID M.
PETERS; PAUL DIODATI,

               Defendants.

## ACKNOWLEDGMENT AND CONSENT

I hereby certify the following:

1.    I have read the attached Use Agreement concerning the above-captioned action (the "Litigation")

2.    I understand the terms of the Use Agreement.

3.    I understand that discovery material designated as Produced Documents under the Use Agreement is being provided to me pursuant to the terms of that Agreement.

4.    I agree to be fully bound by the provisions of the Use Agreement, including its provisions restricting disclosure of documents and information designated as Produced Documents under the Use Agreement and limiting the use of such documents and information to the conduct of the Litigation.

5.    I hereby submit to the jurisdiction of the United States District Court for the District of Massachusetts for purposes of enforcement of the Use Agreement; and

6.    I understand that violation of the Use Agreement may be punishable by the Court.

Dated: _____    Signature:_____

                                        [Name]
                                      [Title & Affiliation]

## George, Amy

**From:** George, Amy
**Sent:** Friday, May 13, 2005 11:25 AM
**To:** 'Richard Strahan'
**Subject:** RE: Subpoena to Center for Coastal Studies



Strahan Letter and
  Use Agreeme...

                    Mr. Strahan --

For your convenience, attached please find the letter and Use Agreement that I forwarded
to you yesterday.  Kindly advise your intentions with regard to signing the Use Agreement.
As stated in my letter, the Center for Coastal Studies is prepared to produce the website
upon receipt of the signed Use Agreement.  Thank you.

_____

Amy R. George, Esq.
Nixon Peabody LLP
100 Summer Street
Boston, MA  02110-1832
Email:  ageorge@nixonpeabody.com


This email message and any attachments are intended only for the use of the addressee
named above and may contain information that is privileged and confidential.  If you are
not the intended recipient, any dissemination, distribution, or copying is strictly
prohibited.  If you received this message in error, please immediately notify the sender
by replying to this email message and then delete all copies of the original message.
Thank you.


-----Original Message-----
From: Richard Strahan [mailto:esis@savespecies.com]
Sent: Thursday, May 12, 2005 5:31 PM
To: George, Amy
Subject: Subpoena to Center for Coastal Studies


11 May 2005

Amy George
Nixon and Peabody, LLC
Boston, MA

RE: Subpoena to Center for Coastal Studies in Strahan v. Herzfelder

Ms. George,

This is a response to our phone conversation on 10 May 2005 our
conversation today and the two letters that you have sent me.  I
disagree with your statements that attempt to describe these phone
conversations. As I told you today, I spoke with Peter Borrelli of the
Center For Coastal Studies yesterday. He told me that he simply refused
to give me any copies of the original digital photographic image files
that the CCS has collected as a result of its survey work in
Massachusetts coastal waters for whales. These files are all greater
than one megabyte in size.  He said the was refusing to do so not
because it was too burdensome but just because he did not want to give
me the requested  copies. He also said that he would not give me any

1

copies of CCS data files concerning the occurrence of sighted whales in Massachusetts waters. Since he has issued me an absolute refusal to comply with the subpoena in all its parts, I wonder on what is left to negotiate.

I want to get get copies of ten representative digital images in CCS' possession depicting whales entangled in fishing gear on any given day from 2000 - 2005. I also want a copy of the database that CCS maintains of sightings of large whales in Massachusetts waters from 2000 - 2005. There is nothing onerous about this simple request. For example below are two pictures of Northern Right Whale that were photographed in Massachusetts waters entangled in fishing gear. The one below was photographed on 17 April 2005 and I believe has been named "Piper."

s



# NIXON PEABODY LLP

ATTORNEYS AT LAW

100 Summer Street
Boston, Massachusetts 02110-2131
(617) 345-1000
Fax: (617) 345-1300

May 12, 2005

**VIA HAND DELIVERY AND U.S. MAIL**

Richard Max Strahan
928 Dorchester Avenue, #5
Boston, MA  02125

> Re:    *Strahan v. Roy-Herzfelder*, U.S. District Court, District of Massachusetts,
> 05-CV-10140 NMG

Dear Mr. Strahan:

Pursuant to our prior conversation and my May 11, 2005 correspondence, enclosed please find a Use Agreement for your review and signature.  If the Use Agreement is acceptable, kindly sign it and return it to me as soon as possible.  Upon my receipt of the signed Agreement, the Center for Coastal Studies will produce its entire, limited access, entanglement website to you in response to the Subpoena.

Please contact me with any questions or concerns.

Very truly yours,

Amy R. George

Enclosure

cc:    Peter Borrelli (w/ enclosure)
       David M. Ryan, Esq. (w/o enclosure)

ALBANY, NY · BOSTON, MA · BUFFALO, NY · GARDEN CITY, NY · HARTFORD, CT · MANCHESTER, NH · McLEAN, VA
NEW YORK, NY · ORANGE COUNTY, CA · PHILADELPHIA, PA · PROVIDENCE, RI · ROCHESTER, NY · SAN FRANCISCO, CA · WASHINGTON, DC

## USE AGREEMENT

WHEREAS, *Strahan v. Roy-Herzfelder*, Civ. A. No. 05-10140-NMG is currently pending in the United States District Court for the District of Massachusetts (the "Litigation");

WHEREAS, Plaintiff Richard Max Strahan ("Strahan") served a third-party Subpoena on the Center for Coastal Studies (the "Center") in the Litigation;

WHEREAS, the Subpoena requests eight (8) categories of documents, things, and information;

WHEREAS, documents, things, and information that are in the Center's possession pursuant to certain permits may be furnished or disclosed by the Center in response to the Subpoena;

WHEREAS, Strahan and the Center desire to establish a mechanism to protect the disclosure of such material;

It is hereby STIPULATED and AGREED as follows:

1.    Documents, things, and information produced by the Center must be used only and exclusively in the good faith litigation of this action; and

2.    Neither Strahan or the Center has a wish or intention to use such documents, things, and information for any purpose other than the good faith litigation of this action.

WHEREFORE, it is hereby AGREED that the following procedure shall govern the production, use, and return of all documents and information produced by the Center in response to the Subpoena:

1.    This Use Agreement shall be applicable to and govern all documents, things, and information that the Center produces in response to the Subpoena ("Produced Documents").

2.    All Produced Documents shall be used only for the prosecution or defense of this Litigation as it is presently pending, and not for any business, legal, commercial, or other

purposes, or for the purposes of any other pending or future litigation or proceeding. Such prohibited uses of Produced Documents includes publication in any print media, including, but not limited to, pamphlets, flyers, newspapers, newsletter, webpages, or peer-reviewed publications.

3.    Because much of the Center's work is done pursuant to various permits, prior to disclosure of any Produced Documents (particularly photographs) to anyone listed in paragraphs 4 or 5, Strahan must notify the Center in writing and request permission to distribute the Produced Documents so that the Center may comply with its obligations under the permits.

4.    All Produced Documents shall be inspected only by representatives of the parties, counsel for the parties, and attorneys or staff members working with counsel for the parties, except as provided in paragraph 5, below.

5.    All Produced Documents may be viewed and inspected by experts retained by Strahan to the extent necessary for the Litigation, only after such expert has been made aware of the provisions of this Use Agreement and manifested his/her assent to be bound thereby by signing a copy of the annexed Acknowledgment and Consent. Any such signed Acknowledgment and Consent signed by an expert shall be maintained by the attorney/party retaining the expert, and shall be disclosed to the other party. Such signed Acknowledgment and Consent must be produced, under seal if necessary, to the Court if a dispute arises concerning possible violation of this Use Agreement, at which time the Court shall determine whether production to the other side is justified given the circumstances of the dispute and the provisions of the Federal Rules of Civil Procedure governing disclosure of experts.

6.    The persons receiving Produced Documents are enjoined from disclosing it to any other person, except in conformance with this Use Agreement.

7.      The Center shall designate Produced Documents by placing the following legend on any such material prior to production: "Documents Produced Pursuant to Use Agreement."

8.      Within thirty (30) calendar days of the termination of Litigation, including any appeal or retrial, all Produced Documents and all copies thereof shall be returned to the Center, or, upon written request of the Center, all Produced Documents and all copies of same, shall be destroyed by the Strahan within thirty (30) days of final termination of this Litigation. Specifically, but without limitation, no person shall use any Produced Documents contained in documents or generated in discovery even after such documents or discovery materials are returned or destroyed under this paragraph.

9.      Strahan and the Center agree to cooperate in ensuring that the purposes of this Use Agreement are carried out.  Strahan and the Center agree to notify each other as soon as practicable in the event of any breach of its provisions and in the event of any formal or informal request by a third party (including subpoenas) for any Produced Documents.

10.     The production of Produced Documents is not an acknowledgement that the material is admissible at trial, and the party producing such material expressly reserves the right to object to its admissibility at trial.

11.     The terms and limitations of this Use Agreement shall not be modified or deviated from except upon written stipulation or agreement by Strahan and the Center.

12.     In the event any person subject to this Use Agreement receives a subpoena or other formal request for documents or information from any person, Court, or tribunal calling for the production of Produced Documents, that person shall, within seven days of the receipt of the subpoena, forward the subpoena by overnight mail or facsimile to the party or witness who provided the Produced Documents.  Thereafter, it shall be the responsibility of the designating

party or witness, within seven business days, or upon such shorter notice as provided for in the subpoena, to object to the production of any Produced Documents called for by the subpoena, move to quash the subpoena, or otherwise undertake measures designed to restrict the dissemination of Produced Documents. If the designating party or witness files objections to the subpoena or moves to quash the subpoena, the recipient of the subpoena shall not produce any Produced Documents in response to the subpoena unless and until the recipient: (a) receives written permission from the designating party or witness to do so; or (b) is ordered to do so by a Court of competent jurisdiction.

13.    Nothing in this Use Agreement precludes the parties from voluntarily disclosing information designated Produced Documents to law enforcement, regulatory or self-regulatory authorities, except that any party providing such information shall request similar treatment of such information by the requesting authority, pursuant to the Freedom of Information Act or similar laws, rules, or regulations.


**SO AGREED ON THIS __th DAY OF MAY, 2005:**


_____          _____

Richard Max Strahan, Pro Se              David M. Ryan (BBO No. 644037)
928 Dorchester Avenue, #5                Amy R. George (BBO No. 629548)
Boston, MA  02125                        NIXON PEABODY LLP
                                         100 Summer Street
                                         Boston, MA  02110
                                         617-345-1000 (phone)
                                         617-345-1300 (fax)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD MAX STRAHAN,

Plaintiff

v.

ELLEN ROY-HERZFELDER; DAVID M.
PETERS; PAUL DIODATI,

Defendants.

Civ. A. No. 05-10140-NMG

## ACKNOWLEDGMENT AND CONSENT

I hereby certify the following:

1.    I have read the attached Use Agreement concerning the above-captioned action (the "Litigation")

2.    I understand the terms of the Use Agreement.

3.    I understand that discovery material designated as Produced Documents under the Use Agreement is being provided to me pursuant to the terms of that Agreement.

4.    I agree to be fully bound by the provisions of the Use Agreement, including its provisions restricting disclosure of documents and information designated as Produced Documents under the Use Agreement and limiting the use of such documents and information to the conduct of the Litigation.

5.    I hereby submit to the jurisdiction of the United States District Court for the District of Massachusetts for purposes of enforcement of the Use Agreement; and

6.    I understand that violation of the Use Agreement may be punishable by the Court.

Dated: _____    Signature:_____

[Name]
[Title & Affiliation]



# NIXON PEABODY LLP

ATTORNEYS AT LAW

100 Summer Street
Boston, Massachusetts 02110-2131
(617) 345-1000
Fax: (617) 345-1300


May 18, 2005


**VIA HAND DELIVERY AND U.S. MAIL**

Richard Max Strahan
928 Dorchester Avenue, #5
Boston, MA 02125

> Re:  *Strahan v. Roy-Herzfelder*, U.S. District Court, District of Massachusetts,
> 05-CV-10140 NMG

Dear Mr. Strahan:

     We are in receipt of your email correspondence today to both me and Peter Borrelli concerning your Subpoena relating to *Strahan v. Roy-Herzfelder*, U.S. District Court, District of Massachusetts, 05-CV-10140 NMG (the "Litigation") and Provincetown Center for Coastal Studies' response thereto.

     In your email correspondence to Mr. Borrelli, you state: "As you know, I need [the] information [requested in the Subpoena] in order to persuade the court in *Strahan v. Herzfelder* to order Massachusetts to stop killing endangered whales with its licensed fishing gear." Based upon this statement, we understand that it is your intention to use the material produced by the Center in response to the Subpoena ("Produced Documents") in the Litigation only. As you know, on several occasions last week, I forwarded to you the Use Agreement, the purpose of which is to limit the use of Produced Documents. For your convenience, I again enclose a copy of the Use Agreement for your review and signature. Kindly execute this Agreement and return it to me in the enclosed self-addressed stamped envelope.

     In any event, based upon your above-referenced statement concerning the intended use for the Produced Documents, enclosed please find PCCS CD 0001, which contains the Atlantic Large Whale Disentanglement Network website, including whale archives from 1999 to May 4, 2005. Also enclosed please find detailed instruction on opening the website from the CD-ROM. Please note that this website contains every photograph that the Center has in its possession showing whales entangled in Massachusetts waters between 1999 and May 4, 2005.

BOS1493940.1

ALBANY, NY · BOSTON, MA · BUFFALO, NY · GARDEN CITY, NY · HARTFORD, CT · MANCHESTER, NH · McLEAN, VA
NEW YORK, NY · ORANGE COUNTY, CA · PHILADELPHIA, PA · PROVIDENCE, RI · ROCHESTER, NY · SAN FRANCISCO, CA · WASHINGTON, DC

NIXON PEABODY LLP

Richard Max Strahan
May 18, 2005
Page 2

   Please contact me if you would like to further discuss this matter, or if you have any questions about the website.

       Very truly yours,

       Amy R. George

Enclosures

cc:  Peter Borrelli (w/o enclosures)
   David M. Ryan, Esq. (w/o enclosures)

*Strahan v. Roy-Herzfelder*
Civ. Action No. 05-10140-NMG

Provincetown Center for Coastal Studies' Response to
Third-Party Subpoena from Plaintiff Richard Max Strahan

Instructions for Opening Atlantic Large Whale Disentanglement Network Website

1.  Place CD-ROM in the computer D drive and open;

2.  Copy the folder entitled, "Entanglement" to your desktop;

3.  Once the folder is copied to your desktop, open the folder;

4.  For convenience, go to your View icon and set it to display the files in List format, rather than small or large icons;

5.  The files are in alphabetical order. Scroll forward until you locate a file entitled "entanglement~update.htm." Click on this file and it will take you to the home page of the website. From there, you can move forward or back in the website using the various links within the website.



**Strahan v. Roy-Herzfelder**
Civ. Action No. 05-10140-NMG

Provincetown Center for Coastal Studies' Response to
Third-Party Subpoena from Plaintiff Richard Max Strahan

Produced Pursuant to Use Agreement
PCCS CD 0001

NIXON PEABODY LLP
ATTORNEYS AT LAW

**George, Amy**

| | |
|---|---|
| **From:** | Richard Strahan [esis@savespecies.com] |
| **Sent:** | Wednesday, May 18, 2005 9:46 PM |
| **To:** | George, Amy |
| **Subject:** | Strahan v. Herzfelder: Subpoena to Center for Coastal Studies |

18 May 2005

Amy George, esq.
Nixon and Peabody LLC
Boston MA

RE: Subpoena to Center for Coastal

Ms. George,

This is a notice that the Center for Coastal Studies has failed to in
any way comply with the subpoena issued to it. I will file a motion in
the immediate future with the Court to compel CCS' compliance with the
subpoena.  I have access to the CCS web site and it possess none of the
requested  scientific information. I told you that I did not need or
want anything from the CCS web site. Despite this clear and unequivocal
instruction, you deliberately ignored it and refused to supply the
requested documents.  CCS complete refusal to supply the original
digital images, the requested copies of reports and database
information, and the requested correspondence with NOAA is  deliberate
and a blatant attempt to protect the interests of the defendants in the
referenced action.

I will also move for Rule 11 sanctions against you for your refusal to
comply with the subpoena — which is an order of the Court/

In Peace,

Richard Max Strahan
GreenWorld

Pro Se and Proud!