UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD MAX STRAHAN )<br>  )<br>*Plaintiff* )<br>  )<br>v. )<br>  )<br>ELLEN ROY-HERZFEDLER, Secretary )<br>EXECUTIVE OFFICE OF ENVIRONMENTAL )<br>AFFAIRS )<br>  )<br>DAVID M. PETERS, Commissioner )<br>DEPARTMENT OF FISH AND GAME )<br>  )<br>PAUL DIODATI, Director )<br>DIVISION OF MARINE FISHERIES )<br>  )<br>*Defendants* ) | Civil Action No. 05-10140-NMG |

### NON-PARTY FREDERICK O'REGAN AND THE INTERNATIONAL FUND FOR ANIMAL WELFARE'S MOTION TO QUASH SUBPOENA DUCES TECUM AND OBJECTION PURSUANT TO FRCP 45(c)

**I.    PROCEDURAL BACKGROUND**

On or about June 15, 2005, the Plaintiff served a Subpoena on Frederick O'Regan, President (hereinafter O'Regan) and the International Fund for Animal Welfare (hereinafter IFAW), seeking voluminous correspondence, documents, computer records, digital images, audio recordings and numerous other materials regarding a myriad of IFAW activities, and IFAW seeks protection from being required to incur the expense, hardship and unreasonable burden of producing the voluminous materials requested by the Plaintiff. [A copy of this Subpoena is attached hereby as Exhibit A.]

IFAW's attorney conferred with Mr. Strahan by telephone on June 23, 2005 and in person on June 24, 2005, regarding this Subpoena. As a result of these conferences, counsel for IFAW and Mr. Strahan agreed that Mr. Strahan would review the materials provided to him by the Defendants (said materials to be made available to Mr. Strahan on or about July 1, 2005) and that after this review, Mr. Strahan and IFAW's counsel would meet *in person* to further assess the Plaintiff's need for additional documents from IFAW.

Despite this agreement, IFAW is filing this Motion at this time in order to preserve its right to object to the Plaintiff's Subpoena, if necessary. Hence, pursuant to F.R.C.P. 45(c), O'Regan and IFAW object to said Subpoena and request that the Court grant this Motion to Quash the Subpoena.

IFAW is not a party to this action nor is it involved in any way in the licensing and regulating the deployment of commercial fishing gear that, according to Plaintiff, ". . . routinely kills and injuries Northern Right Whales." In fact, IFAW is an international non-profit entity expressly devoted to the protection and well being of endangered animals such as whales.

## II.  ARGUMENT

### A.  IFAW Should Not Be Required to Respond to the Plaintiff's Subpoena.

In his underlying Verified Complaint for Declaratory and Injunctive Relief, the Plaintiff seeks an Order enjoining the Defendants (all supervisory officials of the Commonwealth of Massachusetts Office of Environmental Affairs, Department of Fish and Game and Division of Marine Fisheries) from ". . . .further licensing and regulating the deployment of commercial fishing gear." In addition, the Plaintiff seeks to have the Court order the Defendants ". . . .not to further license any commercial fishing operation in the U.S. coastal waters unless they are whale safe."

The gist of the Plaintiff's allegations against the named Defendants is that they are shirking their responsibility to enforce a Massachusetts state law prohibiting the deployment of commercial fishing gear which is potentially injurious to endangered whales. In his Complaint, the Plaintiff describes the type of injury and death caused by certain commercial fishing gear and asserts that the Defendants are liable for "the unlawful taking of endangered whales by entanglement caused by such commercial fishing gear." [*See* Plaintiff's Complaint ¶3]

The Massachusetts Attorney General's Office, on behalf of all named Defendants, denies the allegations of the Plaintiff's Complaint and affirmatively states that the Plaintiff: (a) lacks standing, (b) that the Complaint fails to state a claim upon which relief may be granted, (c) that the Defendants are qualifiedly immune from suit, (d) that the action is barred by the Doctrine of *Res Judicata* and (e) that the claims set forth in the action are barred by the Doctrine of Issue Preclusion.

Naturally, if the Court agrees with one or all of these Affirmative Defenses, this case could be dismissed and no further discovery activity would be engaged in by any of the parties. Hence, at the very least, the Court should quash this Subpoena until it is determined whether or not the Plaintiff's case has any merit and whether or not the documents sought from IFAW are material or probably material to the Plaintiff's case.

Also, the Subpoena is duplicative and unnecessary. It appears that the relevant documents, material and correspondence which the Plaintiff seeks in his Subpoena have already been requested of the party Defendants in the Plaintiff's Request for Discovery to Defendants filed in this action on March 7, 2005. The Plaintiff has also subpoenaed these materials from two other non-parties – the National Marine Fisheries Service (NMFS) and the Center for Coastal Studies (CCS). The Defendants have responded to Plaintiff's Request and numerous documents will be made available

to the Plaintiff on or about July 1, 2005. In addition, the Center for Coastal Studies and the National Marine Fisheries Service have already produced voluminous documentation in response to the Plaintiff's Subpoena. Obviously, if Plaintiff can obtain these materials from all these other sources, he would be unable to demonstrate a substantial need to obtain them from O'Regan and IFAW.

Hence, at this juncture, prior to the completion of the Plaintiff's review of the above-referenced document production, it would be unreasonable and unduly burdensome for a non-party, such as IFAW, to be required to produce the same documents that the Plaintiff may have already obtained.. [A copy of the Plaintiff's Request for Discovery to Defendants, dated March 7, 2005, is attached hereto as Exhibit B.]

**B.    The Plaintiff's Subpoena is Unreasonable and Oppressive.**

Compliance with this broad sweeping Subpoena would impose an incredible burden on IFAW. These materials are not indexed or located in one central location, and they are voluminous. Searching for and retrieving such materials would require enormous amounts of time and labor that is not currently budgeted. According to Erin Heskett, Senior Program Officer, it could require at least two (2) weeks to retrieve and to assemble all responsive materials, to review the materials for confidentiality/proprietary information and to then make the materials available for inspection and copying. Moreover, it appears that the information requested in Plaintiff's Subpoena can be obtained by Plaintiff from other readily available sources. [*See* Affidavit of Erin Heskett attached hereto as Exhibit C.] Undoubtedly, compliance with this Subpoena will impose an unreasonable and oppressive burden on IFAW.

Respectfully submitted,

FREDERICK O'REGAN and
INTERNATIONAL FUND FOR ANIMAL WELFARE

By their attorney,

*[signature]*
James E. Riley, Jr.
BBO #420320
RILEY & ASSOCIATES
420 Main Street, Suite 25
Walpole, MA 02081
(508) 668-3360

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on all interested parties this 28th day of June 2005, by causing a copy of same to be mailed, postage prepaid, directed to:

Richard Max Strahan
928 Dorchester Avenue, #5
Boston, MA 02125

Daniel J. Hammond
Assistant Attorney General
Government Bureau
One Ashburton Place, Room 2019
Boston, MA 02108

*[signature]*
James E. Riley, Jr.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD MAX STRAHAN ) | |
| ) | |
| *Plaintiff* ) | |
| ) | Civil Action No. |
| v. ) | |
| ) | 05 – 10140 - NMG |
| ELLEN ROY-HERZFELDER, *et al.* ) | |
| ) | 12 June 2005 |
| *Defendants* ) | |

**PLAINTIFF'S SUBPOENA TO FREDERICK O'REGAN AND THE INTERNATIONAL
FUND FOR ANIMAL WELFARE TO PRODUCE DOCUMENTS
FOR INSPECTION AND COPYING**

Pursuant to the Federal Rules of Civil Procedure, Plaintiff Richard Max Strahan DEMANDS that the Frederick O'Regan and the International Fund for Animal Welfare ("IFAW") at the offices of Sierra Club of New England, 100 Boylston Street, Boston, Massachusetts, all documents described below on or before 9:00 A.M. on 12 July 2005. If the Defendants choose to reproduce the requested records on their own and supply them to Strahan on or before 12 July 2005, then they do not need to make their original copies of requested records available for inspection and copying on the said date and location.

### DEFINITIONS

The following definitions shall apply to this request:

1. "Strahan" shall refer to the Plaintiff, Richard Max Strahan.

2. "EOEA" shall mean any office and all employees/agents of the Massachusetts Executive Office of Environmental Affairs and any of its infra-agencies and/or offices.

3. "DFG" shall mean any agency and/or agent of the Massachusetts Department of Fish and Game its infra-agencies and/or offices.

4. "DMF" shall mean any agency and/or agent of the Massachusetts Division of Marine Fisheries its infra-agencies and/or offices.

5. "NOAA" shall mean the federal National Oceanographic and Atmospheric Agency and any of its infra-agencies and employees.

6. "CCS" shall mean the Center for Coastal Studies in Provincetown, MA.

7. "Correspondence" includes, but is not limited to, any letter, telegram, telex, TWX, notice, message, E-mail, memorandum or other written communication or transcription or notes of a communication

8. "Whale" or "whales" shall mean any member of a biological species taxonomically listed as belonging to the biological Order Cetacea.

9. "Entangled Whale(s)" shall mean a whale or whales that physically in contact for any length of time on any given day with any rope, net, pot, and/or any physical object that is deployed into the marine environment by an individual for the purpose of catching and/or harvesting marine wildlife of any biological species.

10. "Metadata" shall mean information about a record and/or item of data including — but not exclusively — the author of the datum and facts associated with its origin and/or source.

11. "And" and "or" shall mean, where the context permits, "and/or."

12. "All" and "any" shall mean, where the context permits, "any and all."

13. "Documents" shall mean any conceivable type of recorded information on any kind of conceivable material — including (but not exclusively) printed material, notes, hand written material, E-mails, computer files of any format, magnetic audio and/or video recordings, and photographs.

14. Words used in the singular shall, where the context permits, be deemed to include the plural, and words used in the plural shall, where the context permits, be deemed to include the singular.

## INSTRUCTIONS

1. As to any document requested herein but withheld on the ground of privilege, please state the following:

   a. The nature of the claimed privilege;

   b. The title of the document;

   c. The type of document (e.g. letter, note, memorandum, etc.);

   d. The date of the document;

   e. Names and positions of all persons who authored the document, or assisted in its preparation, or in whose name the document was prepared;

   f. Names and positions of all persons to whom the document was addressed; or to whom it was sent, or who received, have seen, have had possession or custody of, or have had disclosed to them the contents of, the document or any copies thereof;

   g. Names and positions of all persons from whom the document was received;

   h. The present location of the document and all copies thereof;

   I. Names and positions of all persons having custody or control of the document and all copies thereof; and

   j. Subject matter of the document.

2. In producing documents, documents responsive to each request are to be segregated and labeled so as to indicate which request each segregated set of documents to which it is in response.

3. If a document has been generated as a computer file and then converted into a printed format, the computer file is requested first and only the printed document

too if in any way it has been personalized with a signature, date stamp and/or annotations of any type.

**DOCUMENTS REQUESTED**

1. All correspondence between any employee and/or agent of IFAW and any employee and/or agent of the EOEA, DFG, and/or DMF from the years 1999 – 2005.

2. All correspondence between any employee and/or agent of IFAW and any employee and/or agent of NOAA from the years 1999- 2005.

3. All documents produced as a consequence of IFAW's involvement the removal of fixed fishing gear in Massachusetts' coastal waters from 1999-2005 and describing its involvement with the said removal of fixed fishing gear.

4. Computer records and/or any maintained database on sightings of large whales and associated metadata associated with said sightings, including — but not exclusively — the name of the observer, the location of said sighting in longitude and latitude, the date and time of the sighting, and measures of the sighting effort made associated with the sighting.

5. Digital images of commercial fishing gear greater than 1 megabyte in size and its associated metadata including the name of the author and/or source of the digital image, the date its inception, and the location of the its inception.

6. Digital images greater than one megabyte in size of whales entangled in commercial fishing gear and its associated metadata including the name of the author and/or source of the digital image, the date its inception, and the location of the its inception.

7. Correspondence between IFAW employees and Chris Clarke of Cornell University concerning the use of sound detecting instruments to detect the presence of whales in coastal waters.

8. Audio recordings of Northern Right Whale and Humpback Whales made by anyone in association with employees of Cornell University from the deployment of sound

recording instruments in U. S. coastal waters from 1999 – 2005 including associated metadata.

9. All correspondence between any employee and/or agent of IFAW to the any employee and/or agent of the Massachusetts Lobsterman's Association from 1999 – 2005.

10. All documents concerning IFAW's involvement in efforts conducted to remove derelict fishing gear from Massachusetts' coastal waters from 1999 – 2005.

11. All documents concerning IFAW's receipt from the government and subsequent expenditure of monies to assist in some way the purchase of commercial fishing gear by anyone.

12. All documents detailing IFAW's grant and/or awarding of monies to any commercial fisherman and/or any association whose members are mostly commercial fisherman.

13. All correspondence between any employee and/or agent of IFAW to the any employee and/or agent of any commercial fisherman's association from 1999 – 2005.

It is the intent of Richard Max Strahan to obtain the requested documents in a manner that minimizes the inconvenience to IFAW of complying with the instant subpoena. Strahan encourages representatives of IFAW to meaningfully discuss with him the production of the requested documents. Such a discussion will make it possible to minimize IFAW's need to produce much of the requested documents.

By:

RICHARD MAX STRAHAN, Plaintiff
928 Dorchester Avenue, #5
Boston, MA 02125
617.233.3854

*PRO SE AND PROUD!*

Issued by the
# UNITED STATES DISTRICT COURT

__EASTERN__ DISTRICT OF __MASSACHUSETTS__

Richard Max Strahan

V.                                            SUBPOENA IN A CIVIL CASE

Ellen Roy-Herzfelder, et al.   Case Number:[1]

TO: Frederick O'Regan And the
International Fund for Animal Welfare
411 Main Street
Yarmouth Port, MA 02648

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):

See Attached Document

| PLACE  Neveria Club, 100 Boylston Street, Room 260, Boston MA 02116 | DATE AND TIME  14 pm  July 2005 |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)  DATE 5/17/05

**SARAH A. THORNTON**
ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

CLERKS OFFICE
UNITED STATES DISTRICT COURT
1 COURTHOUSE WAY
SUITE 2300
BOSTON, MA 02210

# PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 12 June 2005 | Served via U.S. Tracked Priority Mail |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Frederick O'Regan | Parceled International Fund for Animal Welfare |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Richard Max Strahan | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on 14 June 2005
DATE

SIGNATURE OF SERVER
Richard Max Strahan
928 Dorchester Avenue
ADDRESS OF SERVER
Boston MA 02125

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and labe them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shal be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD MAX STRAHAN            )
                               )
            *Plaintiff*        )
                               )     Civil Action No.
v.                             )
                               )     05 - 10140 NMG
ELLEN ROY-HERZFELDER, *et al.* )
                               )     7 March 2005
            *Defendants*       )

RECEIVED
MAR 07 2005
EXECUTIVE OFFICE OF
ENVIRONMENTAL AFFAIRS

PLAINTIFF'S REQUEST FOR DISCOVERY TO DEFENDANTS

Pursuant to Rule 34 of the Massachusetts Rules of Civil Procedure, Plaintiff Richard Max Strahan requests that Defendants Herzfelder, Peters, and Diodati ("Defendants") produce for inspection and copying at the offices of Sierra Club of New England, 100 Boylston Street, Boston, Massachusetts, all documents described below on or before 9:00 A.M. on 7 April 2005. If the Defendants choose to reproduce the requested records on their own and supply them to Strahan on or before 7 April 2005, then they do not need to make their original copies of requested records available for inspection and copying on the said date and location.

**DEFINITIONS**

The following definitions shall apply to this request:

1. "Strahan" shall refer to the Plaintiff, Richard Max Strahan.
2. "EOEA" shall mean any office and all employees/agents of the Massachusetts Executive Office of Environmental Affairs and any of its infra-agencies and/or offices.
3. "DFG" shall mean any agency and/or agent of the Massachusetts Department of Fish and Game its infra-agencies and/or offices.

4. "DMF" shall mean any agency and/or agent of the Massachusetts Division of Marine Fisheries its infra-agencies and/or offices.

5. "Correspondence" includes, but is not limited to, any letter, telegram, telex, TWX, notice, message, E-mail, memorandum or other written communication or transcription or notes of a communication.

6. "Whale" or "whales" shall mean any member of a biological species taxonomically listed as belonging to the biological Order Cetacea.

7. "Entangled Whale(s)" shall mean a whale or whales that physically in contact for any length of time on any given day with any rope, net, pot, and/or any physical object that is deployed into the marine environment by an individual for the purpose of catching and/or harvesting marine wildlife of any biological species.

8. "And" and "or" shall mean, where the context permits, "and/or."

9. "All" and "any" shall mean, where the context permits, "any and all."

10. "Documents" shall mean any conceivable type of recorded information on any kind of conceivable material — including (but not exclusively) printed material, notes, hand written material, E-mails, computer files of any format, magnetic audio and/or video recordings, and photographs.

11. Words used in the singular shall, where the context permits, be deemed to include the plural, and words used in the plural shall, where the context permits, be deemed to include the singular.

## INSTRUCTIONS

1. As to any document requested herein but withheld on the ground of privilege, please state the following:

   a. The nature of the claimed privilege;
   b. The title of the document;
   c. The type of document (e.g. letter, note, memorandum, etc.);
   d. The date of the document;

3

    e.    Names and positions of all persons who authored the document, or assisted in its preparation, or in whose name the document was prepared;

    f.    Names and positions of all persons to whom the document was addressed; or to whom it was sent, or who received, have seen, have had possession or custody of, or have had disclosed to them the contents of, the document or any copies thereof;

    g.    Names and positions of all persons from whom the document was received;

    h.    The present location of the document and all copies thereof;

    I.    Names and positions of all persons having custody or control of the document and all copies thereof; and

    j.    Subject matter of the document.

2. In producing documents, documents responsive to each request are to be segregated and labeled so as to indicate which request each segregated set of documents to which it is in response.

3. If a document has been generated as a computer file and then converted into a printed format, the computer file is requested first and only the printed document too if in any way it has been personalized with a signature, date stamp and/or annotations of any type.

## DOCUMENTS REQUESTED

1. All digital computer files of images of entangled whales at the highest available resolution as measured in absolute size of pixels (e. g. if two distinct files exist of the same image but one of them is higher in resolution as measured in pixels, the higher resolution and larger as measured in bytes of a particular format constitutes the requested file).

2. All photographs depicting entangled whales in coastal waters under Massachusetts state jurisdiction.

4

3. All documents in any way describing and/or reporting the observation of entangled whales in coastal waters under Massachusetts state jurisdiction.

4. All documents concerning the DFG and any of its infra agencies entering into a cooperative agreement with the National Marine Fisheries Service pursuant to Section 6 the federal Endangered Species Act ("ESA") for the purposes of its managing and protecting species of whales resident to Massachusetts and listed as protected species under the provisions of the ESA.

5. All correspondence between the Defendants, EOEA, DFG, and/or DMF with any employee and/or member of the International Fund for Animal Welfare in any way concerning whales and/or sea turtles or any subject concerning whales, sea turtles, commercial fishing and/or fishing gear.

6. All correspondence between the Defendants, EOEA, DFG, and/or DMF with any member and/or employee of the Massachusetts Lobsterman's Association in any way concerning whales and/or sea turtles.

7. All correspondence between the Defendants, EOEA, DFG, and/or DMF with any employee of the National Ocean and Atmospheric Administration ("NOAA") in any way concerning whales and/or sea turtles or any subject concerning whales and/or sea turtles.

8. All documents concerning any memorandum of understanding entered into between the DMF and the Massachusetts Division of Fish and Wildlife and/or any of its employees in any way concerning whales and/or sea turtles or any subject concerning whales, including commercial fishing and/or fishing gear.

9. All correspondence between any of the Defendants, EOEA, DFG, and/or DMF with any member and/or employee of the Center for Coastal Studies in any way concerning whales, sea turtles, commercial fishing, and/or fishing gear

10. All documents concerning the expenditure of funds by the Defendants, the EOEA, the DFG and/or the the DMF for the conservation, observation and/or any kind of research on and/or concerning whales and/or sea turtles.

5

11. All documents mentioning and/or referring to Plaintiff Strahan.

12. All correspondence between David Gouveia – an employee of NOAA – and any of the Defendants, the EOEA, the DFG, the DMF, David Hoover and/or Daniel MacKiernien (the latter two are employees of the DFG/DMF).

By:

[signature]

RICHARD MAX STRAHAN, Plaintiff
928 Dorchester Avenue, #5
Boston, MA 02125
617.233.3854

*PRO SE AND PROUD!*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD MAX STRAHAN ) | |
| ) | Civil Action No. 05-10140-NMG |
| *Plaintiff* ) | |
| ) | |
| v. ) | |
| ) | |
| ELLEN ROY-HERZFEDLER, Secretary ) | |
| EXECUTIVE OFFICE OF ENVIRONMENTAL ) | |
| AFFAIRS ) | |
| ) | |
| DAVID M. PETERS, Commissioner ) | |
| DEPARTMENT OF FISH AND GAME ) | |
| ) | |
| PAUL DIODATI, Director ) | |
| DIVISION OF MARINE FISHERIES ) | |
| ) | |
| *Defendants* ) | |

### AFFIDAVIT OF ERIN HESKETT

Before me, the undersigned authority, personally appeared Erin Heskett, who, by me duly sworn, deposes as follows:

1. My name is Erin Heskett, and I am of sound mind, am over the age of 18 and competent to make this Affidavit. I have personal knowledge of the matters stated herein and based upon the foregoing knowledge, such facts are true and correct.

2. I have been employed by IFAW since May 7, 2001. My current position is Senior Program Officer, and my responsibilities include:

    (a) oversee IFAW's global marine mammal habitat work,

    (b) lead IFAW's North Atlantic Right Whale Campaign,

    (c) leads IFAW's Ocean Noise Campaign,

    (d) manage the coordinator of the Song of the Whale (SOTW) research vessel, which has conducted all research related to Right Whales, and

    (e) manage IFAW's budget for the Right Whale Campaign

3. I have reviewed the Subpoena which was served on Frederick O'Regan and IFAW, and based upon my knowledge and experience in my current capacity at IFAW, I hereby state as follows:

(a) That the information requested could be obtained from other sources. For instance, IFAW provided all suitable images taken of right whales (during field work with SOTW in 1997-2001) to the New England Aquarium (Neaq) for inclusion in the North Atlantic Right Whale Photo-Identification Catalogue. IFAW also sent all images taken by SOTW of entanglements to the Provincetown Center for Coastal Studies (PCCS) for their ongoing assessment/monitoring of RW entanglements. Both categories of images are available through either the PCCS or Neaq.

In addition, IFAW has analyzed acoustic data and used this data in ongoing work to indicate presence of Right Whales and thereby reduce threats. The following scientific papers reflect this data analysis and use:

Matthews, J., Brown, S., Gillespie, D., Johnson, M., McLanaghan, R., Moscrop, A., Nowacek, D., Leaper, R., Lewis, T. and Tyack, P. 2001. Vocalization Rates of the North Atlantic Right Whale. *Journal of Cetacean Research and Management*

Gillespie, D. (2004) Detection and Classification of Right Whale Calls Using an 'Edge' Detector Operating on a Smoothed Spectrogram. *Canadian Acoustics* Vol. 32. Special Issue on Detection and Localisation of Marine Mammals.

Matthews, J. (2004) Detection of Frequency-Modulated Calls Using a Chirp Model. *Canadian Acoustics* Vol. 32. Special Issue on Detection and Localisation of Marine Mammals.

Moscrop, A., Matthews, J., Gillespie, D., and Leaper, R. (2004) Development of Passive Acoustic Monitoring Systems for Northern Right Whales. *Canadian Acoustics* Vol. 32. Special Issue on Detection and Localisation of Marine Mammals.

(b) That the scientific information sought by the Plaintiff represents an enormous amount of data and information that is complex, voluminous, and it would be burdensome and oppressive for us to retrieve, compile and produce.

(c) That the information requested is located in multiple locations, including offices overseas, and is voluminous, and, in most instances, it would be extremely burdensome and oppressive for IFAW to locate, compile and produce.

(d) That searching for and retrieving these stored materials would require time and labor that is not currently budgeted.

(e) That the materials would take at least two (2) weeks to retrieve and could not be performed by an untrained or temporary employee.

(f) That IFAW's work on Right Whales began in 1997, and key former IFAW employees who worked on the Right Whale Campaign would need to be located and contacted to help with the collection of requested information.

(f) That some of the information requested in the Subpoena may contain confidential and proprietary business information.

Signed under the penalties of perjury this 27 of June 2005.

_____
Erin Heskett, Senior Program Officer
International Fund for Animal Welfare

## COMMONWEALTH OF MASSACHUSETTS

County of BARNSTABLE, ss:

On this 27th day of June 2005, before me, the undersigned notary public, personally appeared Erin Heskett, provided to me through satisfactory evidence of identification, which was driver's license [ ] or Erin Heskett_____, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

Date: June 27th, 2005

Bethany A. Hutchinson
Notary Public
My Commission expires:

Bethany A. Hutchinson
Notary Public
My Commission Expires
February 27, 2009