UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD MAX STRAHAN,<br><br>                Plaintiff,<br><br>v.<br><br>SECRETARY ELLEN ROY-HERZFELDER;<br>COMMISSIONER DAVID PETERS; and<br>DIRECTOR PAUL DIODATI,<br><br>                Defendants. | Civil Action No. 05-10140-NMG |

### PROVINCETOWN CENTER FOR COASTAL STUDIES' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S SECOND MOTION TO COMPEL AND IN SUPPORT OF ITS CROSS-MOTION TO QUASH AND FOR A PROTECTIVE ORDER

Provincetown Center for Coastal Studies (the "Center") submits this Memorandum in opposition to Plaintiff Richard Max Strahan's Second Motion for a Protection Order to Enforce His Subpoena,[1] as well as in support of its Motion to Quash, pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iv), and its Motion for a Protective Order that Plaintiff is not entitled to any additional discovery from the Center, pursuant to Federal Rule of Civil Procedure 26(c). The Center seeks an order quashing the Subpoena and a Protective Order for the following reasons:

---

[1] Plaintiff has utterly failed to properly serve any of the papers concerning his current Motion (or his previous motion to compel relating to the same subpoena). To date, the Center's counsel has received all papers via email, which is not a permissible means of service for pleadings, unless agreed to in writing by the person being served. *See* Fed. R. Civ. P. 5(b)(2). The Center has never been asked to afford such consent, nor has it agreed to same. Even Plaintiff's email "service" of his Motion was defective, as counsel for the Center did not receive the Motion from Plaintiff by email until August 4, 2005 – six days following the filing of the Motion with the Court. Furthermore, although Plaintiff's Certification of Service indicates that all papers have been served by "mail," counsel for the Center has received no papers via the United States Postal Service concerning this Motion (or his previous motion).

BOS1517863.1

- Many of the documents and other information requested in the Subpoena are obtainable (and were obtained) from the governmental agency that licenses the Center to perform whale disentanglements, subject to a subpoena nearly identical to the Center's Subpoena.

- The Center produced its on-line whale entanglement database, which contains virtually all of the information in the Center's possession on whale entanglements. Despite Plaintiff's unfounded notion that the database is "useless" (which is based upon Plaintiff's unauthorized hacking into the database, as well as a review of the produced database), the database is responsive to a vast majority of the Subpoena.

- Plaintiff's improper behavior during the course of this discovery dispute demonstrates his bad faith concerning the Center and the Subpoena, necessitating a request by the Center for the Court's intervention.

In opposition to Plaintiff's Motion and in support of its Cross-Motion, the Center submits the Affidavit of Amy R. George, Esq., sworn to August 12, 2005 ("August George Aff."). Attached to the August George Affidavit are the following pleadings, previously filed by the Center in opposition to Plaintiff's first Motion to Compel and in support of the Center's first Cross-Motion to Quash: Cross-Motion to Quash; Affidavit of Peter Borrelli, dated June 22, 2005 ("Borrelli Aff."); Affidavit of Amy R. George, Esq., dated June 22, 2005 ("George Aff."); and the Memorandum of Law in Opposition to Plaintiff's Motion to Compel and in Support of the Center's Cross-Motion to Quash ("Memo."). The Center incorporates by reference these pleadings and the facts and arguments set forth therein in opposition to Plaintiff's Motion and in support of the Center's Cross-Motion.

**ADDITIONAL FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]**

On or about April 15, 2005, Plaintiff served the Center with a Subpoena in the above-captioned matter. August George Aff., ¶ 2 & Exhibit A. Thereafter, on April 28, 2005, the Center timely sent Plaintiff its written objection to the Subpoena, pursuant to Federal Rule of

---

[2] The recitation of facts herein supplements the facts set forth in the Center's Memorandum of Law, as well as the George Affidavit. *See* Memo., at 3-4 & George Aff., ¶¶ 2-12.

Civil Procedure 45(c)(2)(B), indicating that, among other things, responding to the Subpoena would be unduly burdensome for the Center. *Id.* at ¶ 3.

On June 14, 2005, Plaintiff served a Motion for a Protection Order to Compel the Production of Discovery. *Id.* at ¶ 4. The Center filed an opposition to Plaintiff's Motion on June 23, 2005. *Id.* at ¶ 5. In addition, the Center cross-moved to quash the Subpoena. In opposition to Plaintiff's Motion and in support of its Cross-Motion, the Center submitted its Cross-Motion to Quash, Memorandum of Law, Borrelli Affidavit, and George Affidavit. August George Aff., ¶ 5 & Exhibits 1 through 4, respectively.

The Court held a hearing on, *inter alia*, Plaintiff's Motion to Compel on June 24, 2005. *Id.* at ¶ 6 & Exhibit 5. At that time, Judge Gorton denied Plaintiff's Motion without prejudice, and ordered Plaintiff, Defendants, and the Center to participate in a face-to-face meeting in an attempt to resolve the discovery dispute. *Id.* at ¶ 6. Judge Gorton did not rule on the Center's Cross-Motion to Quash, which is still pending before the Court, having been referred to Magistrate Judge Sorokin for consideration. *Id.*

Plaintiff refused to conduct the discovery meeting as ordered by the Court, but rather requested that the Center discuss matters with him on an individual basis. August George Aff., ¶ 7. The Center agreed and, on July 20, 2005, Peter Borrelli, Executive Director for the Center, Scott Landry, Rescue Coordinator for the Center, and counsel for the Center engaged in the court-ordered negotiation with Plaintiff concerning the Subpoena by telephone conference ("Discovery Conference Call"). *Id.* at ¶ 8.

The Discovery Conference Call lasted nearly two-and-one-half hours, and provided little results due to Plaintiff's hostile and obstructive behavior. *Id.* The Center fully and candidly responded to the questions posed by Plaintiff concerning the function and day-to-day operation

3

of the Center, the documentation that the Center maintains concerning whale entanglements, and the category of documents requested in the Subpoena. *Id.* at ¶ 8(a). During the Discovery Conference Call, Plaintiff's demeanor was overtly hostile and demeaning. August George Aff., ¶ 8(c). Moreover, on several occasions, Plaintiff refused to believe Messers. Borrelli and Landry's responses to his questions and, in essence, accused them of lying. *Id.*

On several occasions, the Center has asked Plaintiff to sign a straight-forward Use Agreement that would govern Plaintiff's use of the documents and things that the Center produced in response to the Subpoena. *Id.* at ¶¶ 8(d), 9; *see also* George Aff., ¶¶ 7-9 & Exhibits C through F. Plaintiff agreed to sign such an agreement on more than one occasion, including during the Discovery Conference Call. August George Aff., ¶ 8(d). The Center first forwarded the Use Agreement to Plaintiff in May 2005. George Aff., ¶ 8. However, to date, Plaintiff has refused to sign the Agreement, citing copyright concerns. August George Aff., ¶ 9 & Exhibit 6; *see also* George Aff., ¶ 8.

### GOOD CAUSE EXISTS FOR THE COURT TO ISSUE A PROTECTIVE ORDER THAT PLAINTIFF IS NOT ENTITLED TO ANY ADDITIONAL DISCOVERY FROM THE CENTER.

The Subpoena requests eight (8) categories of documents, dating from 1999 to 2005, including photographs, computer records, correspondence, and other documents relating to whale entanglements and sightings.[3] *See* George Aff., Exhibit A. The Center opposes Plaintiff's Motion to Compel and seeks an order quashing the Subpoena and for a Protective Order because: (a) many of the documents requested in the Subpoena are obtainable and, indeed, have been obtained from other sources; (b) the Center has produced extensive documents and things that

---

[3] On or about June 22, 2005, Plaintiff purported to serve the Center with a Supplemental Subpoena. However, the "Supplemental Subpoena" was not a subpoena at all, but rather additional requests for documents unaccompanied by any subpoena issued by the Court. Moreover, Plaintiff "served" this document by email, which is not permitted under the Rules of Civil Procedure.

are responsive to the Subpoena, and requiring a further response from the Center, a not-for-profit organization that has made every effort to comply with the Subpoena, would be unduly burdensome and cripple the Center from performing its every day functions; and (3) Plaintiff's often hostile and obstructive behavior during the course of this discovery dispute warrants such intervention by the Court.

## I. MANY OF THE DOCUMENTS AND OTHER INFORMATION REQUESTED IN THE SUBPOENA ARE OBTAINABLE (AND WERE OBTAINED) FROM NOAA

Much of the information requested by Plaintiff in the Subpoena is duplicative of information in the possession of NOAA NMFS, and was produced to Plaintiff in response to a third-party subpoena served on that governmental agency. *See* Memo., at 10-11; *see also* August George Aff., ¶¶ 10, 12 & Exhibits 7, 8. The Center operates and performs large whale disentanglements under a permit from NOAA. Borrelli Aff., ¶ 4. As a result, the Center is required to provide information about its whale disentanglement activities to NOAA. *Id.* at ¶ 16. For example, the Center provides Disentanglement Permit Reports to NOAA NMFS on an annual basis. *Id.* This report details the Center's (and others) whale disentanglement activities on an annual basis, including the number of reported entanglements, species, outcome of disentanglement attempts, and assessments of documented cases. *Id.*

On or about April 15, 2005, Plaintiff served a Subpoena on NMFS. August George Aff., ¶ 10 & Exhibit 7. The first eight (8) requests of that subpoena are identical to the requests contained in the Subpoena that Plaintiff served on the Center. *Cf.* Center Subpoena *with* NMFS Subpoena, George Aff., Exhibit A & August George Aff., Exhibit 7, respectively. Indeed, it appears that Plaintiff simply cut and pasted the requests to the Center into the request to NMFS, as request 7 in the NMFS subpoena seeks "CCS" documents, which refers to the Center.

5

On May 13, 2005, NMFS responded to the subpoena, producing written responses, as well as two (2) CD-ROMS of photographs and documents, as well as several hundred pages of hard copy documents. *See* August George Aff., ¶¶ 10, 12 & Exhibit 8. The photographs produced by NOAA were obtained from the Center's Database. *Id.* at ¶ 12. Moreover, Plaintiff has previously admitted to the Court in his affidavit submitted in support of his previous Motion to Compel against NOAA that NOAA possesses documentation from the Center, which was produced in response to the NOAA NMFS subpoena. Specifically, Plaintiff included a photograph attributed to the Center in his argument about the inadequacies of NOAA NMFS' response to his subpoena. *See* Affidavit of Richard Max Strahan, dated June 20, 2005, ¶ 6, previously filed with the Court.

Thus, NOAA NMFS not only has in its possession documentation from the Center, but it actually produced same in response to Plaintiff's subpoena. For these reasons, the Center asserts that a majority of the information requested by Plaintiff in his Subpoena is in the possession of governmental agencies, which should relieve the Center from its obligation to produce additional documents in response to the Subpoena, particularly given the undue burden that such would impose on the Center.

II.  **THE CENTER'S PRODUCTION OF THE ON-LINE DATABASE SATISFIES PLAINTIFF'S REQUESTS FOR DOCUMENTS CONCERNING WHALE ENTANGLEMENTS**

In the first six (6) requests of his Subpoena, Plaintiff seeks, for the time period 1999 to 2005, digital images and reports of whales entangled in fishing gear, as well as digital images and documents concerning and detailing the removal of fishing gear from whales. *See* Subpoena, Requests 1, 2, 4, and 5. Plaintiff also seeks, without any time limitation, documents that describe or report the observation of any entangled whales in the coastal waters of Massachusetts and all computer records detailing observations of certain whales in

6

Massachusetts coastal waters.[4] *See* Subpoena, Requests 3 and 6. The Center's production of its on-line database satisfies these requests, as detailed below and in its previous Memorandum, despite Plaintiff's contrary belief. *See* Memo., at 6-8.

In response to Plaintiff's Subpoena, the Center produced its the limited-access Atlantic Large Whale Disentanglement Network on-line database ("Database"), which contains virtually all of the information in the Center's possession on whale entanglements. Borrelli Aff., ¶ 10. On several occasions, including as recently as during the Discovery Conference Call, the Center has explained to Plaintiff that the Database is the Center's official record of all whale entanglements (including documents and photographs), which virtually every professional in the marine mammal field relies on for information regarding entanglements in the western North Atlantic. *See id.* at ¶ 11; August George Aff., ¶ 8(b).

Despite these representations by Messers. Borrelli and Landry, the Center's Executive Director and Rescue Coordinator, respectively, Plaintiff continues to maintain that the Database is "useless," and contains none of the information that was requested in the Subpoena. Plaintiff bases this assessment upon his unauthorized review of the Database – Plaintiff admitted to the Center and counsel that he has the password to the Database and has hacked into the system on numerous occasions – and his review of the Database produced by the Center in response to the Subpoena. August George Aff., ¶ 8(b). Simply put, Plaintiff is wrong. Indeed, even NOAA believes that the Database contains documents and things responsive to the Subpoena, as it produced photographs from that Database in response to its identical subpoena from Plaintiff. August George Aff., ¶ 12.

---

[4] These requests are unduly burdensome and overly broad, as they fail to specify a time period for which these documents are requested. Moreover, the request for computer records seeks information relating not only to whale entanglements, but all whales sightings. Such a request is unreasonable as overly broad and irrelevant to the case for which the Subpoena was issued.

7

It is clear that he Center has produced extensive documentation in response to Plaintiff's Subpoena, despite his contrary notions. *See* Memo., at 6-8; Borrelli Aff., ¶¶ 10-15 & Exhibits A-K.. In fact, Judge Gorton commented during the hearing on Plaintiff's first Motion to Compel that "it sounds to me like Miss George has made a good-faith effort on behalf of her client [to respond to the Subpoena]." August George Aff., ¶ 6. As a result, the Center seeks denial of Plaintiff's Motion to Compel, as well as an order quashing the Subpoena and issuing a Protective Order that Plaintiff is not entitled to any additional discovery from the Center.

### III. REQUIRING THE CENTER TO FURTHER RESPOND TO THE SUBPOENA WOULD BE UNDULY BURDENSOME UPON THE CENTER, PARTICULARLY GIVEN PLAINTIFF'S OVERTLY HOSTILE AND OBSTRUCTIVE BEHAVIOR.

As set forth more fully above, the Center has substantially complied with the Subpoena. In addition, the Center has tried on numerous occasions since receipt of the Subpoena in May to work with Plaintiff to narrow the scope of the Subpoena, to no avail. See George Aff., ¶¶ 5, 7, 9; August George Aff., ¶ 8. Specifically, the Center's counsel has spoken to Plaintiff on several occasions, in an attempt to narrow the scope of the Subpoena and work a compromise with Plaintiff. *See, e.g.*, George Aff., ¶¶ 5, 7, 9. In addition, Messers. Borrelli and Landry and the Center's counsel engaged in a two-and-one-half hour Discovery Conference Call with Plaintiff, during which time the Center fully and candidly responded to each question posed to them by Plaintiff. August George Aff., ¶ 8.

Requiring the Center to collect, review, and produce additional whale entanglement documents (or any other documents given Plaintiff's conduct) responsive to the Subpoena would be unduly burdensome upon the Center, requiring resources that would cripple the Center and its day-to-day operations. As detailed more fully in the Memorandum and Borrelli Affidavit, Mr. Borrelli estimates that the fully and completely respond to the Subpoena would take between twenty-one (21) and twenty-five (25) work days. *See* Memo., at 8; Borrelli Aff., ¶¶ 8, 9.

8

The Center is a not-for-profit corporation, and the reallocation of the Center's resources to undertake this document collection effort and production would virtually cripple the Center. Id. at ¶ 2. Indeed, the Center has already expended extensive resources in an attempt to resolve the discovery dispute with Plaintiff. However, Plaintiff has demonstrated no willingness to work with the Center with regard to the Subpoena. Plaintiff continues to demand additional documents and things from the Center based upon his unfounded belief that the Center is not being forthright with him about the existence of documents concerning whale entanglements. In essence, Plaintiff has accused the Center of lying about the existence of documents and things. Furthermore, Plaintiff's conduct has been, and continues to be, hostile and obstructive.

Moreover, Plaintiff's conduct has time and again exhibited bad faith concerning the Center and the Subpoena. Indeed, despite the Center's efforts at complying with the Subpoena and working to resolve the dispute, Plaintiff continues to refuse to sign a Use Agreement concerning the documents and things produced by the Center. August George Aff., ¶ 9. Moreover, Plaintiff has threatened the Center on numerous occasions with adding it as a defendant in the current lawsuit if the Center did not cooperate with his Subpoena requests. *See, e.g.* August George Aff., ¶ 9 & Exhibit 9. Plaintiff most recently threatened such action on August 9, 2005, by email correspondence to Mr. Borrelli and Ms. George, wherein he stated an intention to add Charles Mayo, Mr. Borrelli, and the Center as defendants in the current action, noting that "then the issue with CCS will be discovery. Much better." August George Aff., Exhibit 9.

Plaintiff's method of conducting himself in this discovery dispute should not be tolerated by the Court. Plaintiff ignores the rules of the Court, and his overtly hostile conduct towards defendants, third-parties, and their counsel is simply not civilized. Moreover, he continues to

communicate directly with the Center, despite counsel's repeated requests that he refrain from doing so. *Id.* at Exhibit 9. As a professional litigant, Plaintiff should be expected to uphold the tenets of civility and common decency, as well as observe the Court's rules.

Plaintiff is not unfamiliar with the legal justice system. Despite his *pro se* status, Plaintiff has extensive experience litigating matters. For example, Plaintiff has been involved as a plaintiff in at least eighteen (18) matters over the last ten (10) years. Some of the cases in which Plaintiff has been involved include:

- *Strahan v. Rumsfeld, et al.*, Civil Action No. 1:05-CV-10275-NMG (D. Mass.);

- *Northern Right Whale, Strahan, and Greenworld v. Governor, State of Maine, et al.*, Civil Action No. 1:00-CV-00087-GZS (D. Maine);

- *Strahan v. Harvard Law School, et al.*, Civil Action No. 1:04-CV-10119-RGS (D. Mass.);

- *Strahan v. Smith, et al.*, Civil Action No. 1:02-CV-10017-WGY (D. Mass.);

- *Strahan, et al. v. Center for Coastal Studies, et al.*, Civil Action No. 1:01-CV-11061-GAO (D. Mass.);

- *Strahan v. Martin, et al.*, Civil Action No. 1:01-CV-10639-MLW (D. Mass.);

- *Strahan, et al. v. Frazier, et al.*, Civil Action No. 1:00-CV-12355-WGY (D. Mass.);

- *Strahan, et al. v. Fitzpatrick, et al.*, Civil Action No. 1:00-CV-12318-WGY (D. Mass.); and

- *Humpback Whale and Strahan v. Manager, Stellwagen Bank Nat'l Marine Sanctuary, et al.*, Civil Action No. 1:99-CV-10017-DPW.

Thus, given Plaintiff's vast experience with the courts and litigation, Plaintiff's conduct simply should not be tolerated by this Court. As a result, the Court should deny Plaintiff's Motion to Compel, and grant its Cross-Motion to Quash and for a Protective Order that Plaintiff is not entitled to any additional discovery from the Center.

WHEREFORE, the Provincetown Center for Coastal Studies requests that this Court: (1) deny Plaintiff's Motion to Compel; (2) grant its Cross-Motion to Quash and for a Protective Order that Plaintiff is not entitled to any additional discovery from the Center; and (3) grant such other just and equitable relief as the Court deems appropriate.

>Respectfully submitted,
>
>PROVINCETOWN CENTER FOR COASTAL STUDIES
>
>By its attorneys,
>
>*/s/ Amy R. George*
>David M. Ryan (BBO No. 644037)
>Amy R. George (BBO No. 629548)
>NIXON PEABODY LLP
>100 Summer Street
>Boston, MA 02110
>617-345-1000 (phone)
>617-345-1300 (fax)

Dated:   August 12, 2005

11

## CERTIFICATE OF SERVICE

I, Amy R. George, Esq., do hereby certify that the above Memorandum in Opposition to Plaintiff's Motion to Compel and in Support of the Cross-Motion to Quash and for a Protective Order was served, by overnight mail, upon Richard Max Strahan, 928 Dorchester Avenue, Unit 5, Boston, MA 02125, on this 12th day of August, 2005.

_____
Amy R. George

BOS1504008.1