UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD MAX STRAHAN,

                                   Plaintiff,

            v.                                    Civil Action No. 05-10140-NMG

SECRETARY ELLEN ROY-HERZFELDER;
COMMISSIONER DAVID PETERS; and
DIRECTOR PAUL DIODATI,

                                   Defendants.

## AFFIDAVIT OF AMY R. GEORGE, ESQ.

I, Amy R. George, Esq., under oath do depose and say as follows:

1.      I am an associate with Nixon Peabody LLP, attorneys for Provincetown Center
for Coastal Studies (the "Center"). I submit this affidavit in support of the Center's opposition to
Plaintiff Richard Max Strahan's Second Motion for a Protection Order to Enforce His Subpoena,
as well as the Center's Cross-Motion to Quash the Subpoena and for a Protective Order.

2.      On or about April 15, 2005, Plaintiff served the Center with a Subpoena in the
above-captioned matter. A true and correct copy of the Subpoena is attached to the Affidavit of
Amy R. George, Esq., dated June 22, 2005 ("George Aff."), Exhibit A, which is submitted
herewith.

3.      On April 28, 2005, the Center timely sent Plaintiff its written objection to the
Subpoena, pursuant to Federal Rule of Civil Procedure 45(c)(2)(B), indicating that, among other
things, responding to the Subpoena would be unduly burdensome for the Center.

4.      On June 14, 2005, Plaintiff served a Motion for a Protection Order to Compel the
Production of Discovery.

5.     The Center filed an opposition to Plaintiff's Motion on June 23, 2005.  In addition, the Center cross-moved to quash the Subpoena.  In opposition to Plaintiff's Motion and in support of its Cross-Motion, the Center submitted the following:

     a.    Cross-Motion to Quash, a true and correct copy of which is attached hereto as Exhibit 1;

     b.    Memorandum of Law in Opposition to Plaintiff's Motion to Compel and in Support of the Center's Cross-Motion to Quash, a true and correct copy of which is attached hereto as Exhibit 2;

     c.    Affidavit of Peter Borrelli, a true and correct copy of which is attached hereto as Exhibit 3; and

     d.    George Affidavit, a true and correct copy of which is attached hereto as Exhibit 4.

6.     The Court held a hearing on, *inter alia*, Plaintiff's Motion on June 24, 2005.  A true and correct copy of the Hearing on Motion Transcript, dated June 24, 2005 ("Tr."), is attached hereto as Exhibit 5.  At that time, Judge Gorton denied Plaintiff's Motion without prejudice, and ordered the parties to the litigation, as well as the Center, to participate in a face-to-face meeting in an attempt to resolve the discovery dispute.  Tr. at 13:8-21, 14:5-7, 17:9-12.  Judge Gorton also referred all discovery matters to Magistrate Judge Sorokin.  *Id.* at 13:6-7, 17:14-16.  Judge Gorton did not rule on the Center's Cross-Motion to Quash, which is still pending, having been referred to Magistrate Judge Sorokin.

7.     Plaintiff refused to conduct the discovery meeting as ordered by the Court, but rather requested that the Center discuss matters with him on an individual basis.

8.     To that end, on July 20, 2005, Peter Borrelli, Executive Director for the Center, Scott Landry, Rescue Coordinator for the Center, and I as counsel for the Center engaged in the court-ordered negotiation with Plaintiff concerning the Subpoena by telephone conference

2

("Discovery Conference Call"). The call lasted nearly two-and-one-half hours. The pertinent details of the Discovery Conference Call are as follows:

         a.      During the Discovery Conference Call, Messers. Borrelli and Landry responded to each question posed to them by Plaintiff concerning the function and day-to-day operation of the Center, including the documentation that the Center maintains concerning whale entanglements. Furthermore, Messers. Borrelli and Landry candidly answered each of Plaintiff's questions concerning the categories of documents requested in the Subpoena.

         b.      Mr. Borrelli again explained to Plaintiff that the limited-access Atlantic Large Whale Disentanglement Network on-line database ("Database"), which the Center produced in response to the Subpoena on May 18, 2005, is the Center's official record of all whale entanglements, which virtually every professional in the marine mammal field relies on for information regarding entanglements in the western North Atlantic. Despite these representations by the Center, Plaintiff continues to maintain that the Database is "useless" and contains none of the information that was requested in the Subpoena. Indeed, Plaintiff indicated during this call (as well as to me personally following the hearing) that he has the password to the Database and has hacked into the system on numerous occasions to review information contained in the Database.

         c.      During the Discovery Conference Call, Plaintiff's demeanor was overtly hostile and demeaning. Moreover, on several occasions, Plaintiff refused to believe Messers. Borrelli and Landry's responses to his questions and, in essence, accused them of lying. Furthermore, Plaintiff accused the Center of exploiting whales and only being associated with, and concerned about, commercial interests.

3

d.      Also during the Discovery Conference Call, extensive discussion occurred concerning Plaintiff's intended use of any materials produced by the Center, and the Use Agreement that the Center asked Plaintiff to sign. Once again, we explained to Plaintiff the need for an agreement to govern the distribution of materials (particularly photographs) that the Center produced due to, *inter alia*, licensing restrictions. Plaintiff agreed to sign the Use Agreement, which he acknowledged was sent to him on several prior occasions. It was made clear to Plaintiff during this call that, under no circumstances, would additional materials be provided to him unless he signed the Use Agreement.

9.      On August 5, 2005, I once again forwarded the Use Agreement to Plaintiff for his signature. By return email, Plaintiff stated his refusal to sign the Use Agreement. A true and correct copy of the August 4, 2005 Email Correspondence from Amy R. George, Esq., to Plaintiff and the August 4, 2005 Email Correspondence from Plaintiff to George and Borrelli are attached hereto as Exhibit 6.

10.     On August 8, 2005, I spoke to Kevin Collins, Esq., attorney with National Oceanic & Atmospheric Administration ("NOAA"), concerning the Subpoena that Plaintiff served on the National Marine Fisheries Service ("NMFS"). Thereafter, Mr. Collins faxed me copies of the Subpoena, as well as NMFS' written responses to the subpoena. A true and correct copy of the Subpoena issued by Plaintiff to NMFS and NMFS' response are attached hereto as Exhibits 7 and 8, respectively.

11.     On August 9, 2005, Plaintiff notified Mr. Borrelli and me of his intention to add Mr. Borrelli, Charles Mayo, and the Center as defendants in the current action, noting that "then the issue with CCS will be discovery. Much better." A true and correct copy of the August 9,

2005 Email Correspondence from Strahan to Adam Keats, Amy George, and Peter Borrelli Re: Strahan v. Herzfelder is attached hereto as Exhibit 9.

12.     On August 10, 2005, I spoke with Jay Govindan, Esq., the Department of Justice attorney representing NOAA NMFS in connection with the subpoena issued by Plaintiff. According to Mr. Govindan, in addition to the two (2) CD-ROMS produced by NOAA in response to the subpoena, several hundred pages of hard copy documents were also produced. Mr. Govindan also explained (and later confirmed) that the photographs that NOAA produced in response to its subpoena from Plaintiff were obtained from the Center's Database.


         SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY, THIS 12TH DAY OF AUGUST, 2005.


                                          _____
                                          Amy R. George


Subscribed and sworn to before me,
this ⟨2⟩th day of August, 2005.

_____
Notary Public
My Commission expires:  7/19/07

## CERTIFICATE OF SERVICE

I, Amy R. George, Esq., do hereby certify that the above Affidavit of Amy R. George, Esq., was served, by overnight mail, upon Richard Max Strahan, 928 Dorchester Avenue, Unit 5, Boston, MA  02125, on this 12th day of August, 2005.

Amy R. George

BOS1504008.1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD MAX STRAHAN,

Plaintiff,

v.

SECRETARY ELLEN ROY-HERZFELDER;
COMMISSIONER DAVID PETERS; and
DIRECTOR PAUL DIODATI,

Defendants.

Civil Action No. 05-10140-NMG

## PROVINCETOWN CENTER FOR COASTAL STUDIES CROSS-MOTION TO QUASH

Pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iv), Provincetown Center for

Coastal Studies (the "Center"), though its attorneys, Nixon Peabody LLP, hereby moves this

Court for an ordering quashing the Subpoena, served on or about April 15, 2005, by Plaintiff

Richard Max Strahan. In support of this Motion, the Center submits the following: Affidavit of

Peter Borrelli; Affidavit of Amy R. George, Esq.; and the Memorandum of Law in Opposition to

Plaintiff's Motion to Compel and in Support of the Center's Cross-Motion to Quash. In addition,

the Center states as follows:

1.    On or about April 15, 2005, Plaintiff served the Center with a Subpoena in the

above-captioned matter.

2.    The Center is a not-for-profit organization that, with respect to whales, conducts

marine mammal research relating to humpback and right whales and performs whale rescues.

3.    The Center is federally-authorized to perform large whale disentanglement under

the authority of Scientific Research and Enhancement Permit Number 932-1489-04/PRT009526,

BOS1503922.1

issued by the National Oceanic and Atmospheric Administration ("NOAA") National Marine Fisheries Service and United States Fish and Wildlife Service, under the authority of the Marine Mammal Protection Act and the Endangered Species Act.

4.      On April 28, 2005, the Center timely sent Plaintiff its written objection to the Subpoena, pursuant to Federal Rule of Civil Procedure 45(c)(2)(B), indicating that, among other things, responding to the Subpoena would be unduly burdensome for the Center.

5.      The Subpoena requests eight (8) categories of documents, dating from 1999 to 2005, including photographs, computer records, correspondence, and other documents relating to whale entanglements and sightings.

6.      The Center seeks an order quashing this Subpoena for the foregoing reasons, which are set forth in more detail in the Affidavits and Memorandum of Law submitted herewith:

        a.      In response to the Subpoena, the Center produced its on-line whale entanglement database, which contains virtually all of the information in the Center's possession on whale entanglements and is responsive to six of Plaintiff's requests;

        b.      Requiring the Center to collect, review, and produce additional whale entanglement documents responsive to the Subpoena would be unduly burdensome upon the Center, requiring resources that would cripple the Center and its day-to-day operations; and

        c.      Much of the information requested by Plaintiff in the Subpoena is duplicative of information in the possession of NOAA.

2

## LOCAL RULE 7.1(A)(2) CERTIFICATION

Pursuant to Local Rule 7.1(A)(2), the Center hereby certifies that it has made a good faith attempt to resolve this matter prior to filing this Motion, during numerous conversations between Plaintiff and counsel for the Center, as well as conversations between Plaintiff and Peter Borrelli, Executive Director of the Center.

## REQUEST FOR ORAL ARGUMENT

The Center hereby requests that the Court conduct a hearing on its Motion to Quash.


WHEREFORE, the Provincetown Center for Coastal Studies requests that this Court grant its Cross-Motion to Quash, and such other just and equitable relief as the Court deems appropriate.

Respectfully submitted,

PROVINCETOWN CENTER FOR COASTAL STUDIES

By its attorneys,

David M. Ryan (BBO No. 644037)
Amy R. George (BBO No. 629548)
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110
617-345-1000 (phone)
617-345-1300 (fax)

Dated:        June 23, 2005

## CERTIFICATE OF SERVICE

I, Amy R. George, Esq., do hereby certify that the above Cross-Motion to Quash was served, by hand delivery, upon Richard Max Strahan, 928 Dorchester Avenue, Unit 5, Boston, MA  02125, on this 23th day of June, 2005.

Amy R. George

BOS1504008.1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD MAX STRAHAN,

                                    Plaintiff,

        v.

SECRETARY ELLEN ROY-HERZFELDER;
COMMISSIONER DAVID PETERS; and
DIRECTOR PAUL DIODATI,

                                    Defendants.

Civil Action No. 05-10140-NMG

## PROVINCETOWN CENTER FOR COASTAL STUDIES' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND IN SUPPORT OF ITS CROSS-MOTION TO QUASH

Provincetown Center for Coastal Studies (the "Center") submits this Memorandum of

Law in opposition to Plaintiff Richard Max Strahan's Motion to Compel[1] concerning a Subpoena

served on the Center, dated April 15, 2005 (the "Subpoena"). The Affidavits of Peter Borrelli,

Executive Director of the Center ("Borrelli Aff."), and Amy R. George, Esq. ("George Aff.") are

submitted contemporaneously herewith, as well as the Center's Cross-Motion to Quash the

Subpoena.

## INTRODUCTION

The Center is a not-for-profit organization that, with respect to whales, conducts marine

mammal research relating to humpback and right whales and performs whale rescues. Plaintiff

---

[1]    Plaintiff has failed to properly serve any of the papers concerning his Motion to Compel. To date, all papers have been received via email, which is not a permissible means of service for pleadings, unless agreed to in writing by the person being served. See Fed. R. Civ. P. 5(b)(2). Although Plaintiff's Certification of Service indicates that all papers have been served by "mail," no papers have been received from the postal service. Moreover, Plaintiff's email "service" of the papers concerning his Motion has not included any of the attachments referenced in the documents.

BOS1503564.1

served the Subpoena on the Center, seeking virtually every document that the Center possesses concerning whale entanglements and sightings. The Center formally objected to the Subpoena, but thereafter engaged Plaintiff in an attempt to narrow the scope of the Subpoena and produce priority documents. Despite a breakdown in negotiations as to the Subpoena scope, the Center produced its on-line database, which contains virtually all of the information that the Center has in its possession concerning whale entanglements, including 2000 photographs and 1000 additional files of information. Plaintiff now contends that none of the information contained on the database is responsive to his requests, including the 2000 photographs that specifically respond to requests 1 and 5. The Center's on-line database is relied on by researchers in the area of whale entanglements, and Plaintiff's claim that the on-line database does not provide the information that he is seeking is simply disingenous. Moreover, requiring the Center to produce hard copy documents that contain the same information as that on the on-line database would cripple the Center because of the outlay of resources necessary to undertake such a task.

Plaintiff is also unsatisfied with the photographs contained on the on-line database, and seeks all photographs in the megapixel size. Complying with this request would place a tremendous burden on the Center, requiring resources that this non-for-profit corporation simply cannot spare, particularly where the photographs have already been provided and the discernible difference between the two differently-sized photos is not apparent to the naked eye. Finally, much of the information requested by Plainitff in the Subpoena is obtainable for other sources, such as the National Oceanic and Atmospheric Administration ("NOAA"). Indeed, Plaintiff proved this point by including a Center photograph in his Affidavit concerning the alleged inadequacies of NOAA National Marine Services' response to his subpoena.

2

Based upon the foregoing, the Center requests that this Court deny Plaintiff's Motion to Compel and grant its Cross-Motion to Quash the Subpoena.

## FACTUAL BACKGROUND

On or about April 15, 2005, Plaintiff served the Center with a Subpoena in the above-captioned matter. *See* George Aff., ¶ 2 and Ex. A. On April 28, 2005, the Center timely sent Plaintiff its written objection to the Subpoena, pursuant to Federal Rule of Civil Procedure 45(c)(2)(B), indicating that, among other things, responding to the Subpoena would be unduly burdensome for the Center. *See id.* at ¶ 3 and Ex. B. Thereafter, during a conversation with the Center's counsel, Plaintiff prioritized his document requests and suggested that the Center start with the production of pictures of entangled whales and documents relating to any reports of entangled whales. George Aff., ¶ 5.

In an effort to comply with Plaintiff's prioritized requests, the Center agreed to produce to him the Atlantic Large Whale Disentanglement Network on-line database (the "On-Line Database"), which is a limited access website available to Network members only. Borrelli Aff., ¶ 10; George Aff., ¶ 7. The Center's counsel communicated this to Plaintiff on May 9, 2005, at which time he agreed to review the On-Line Database, as well as sign an agreement to limit the use and distribution of it. George Aff., ¶ 7. Also during this conversation, despite earlier indications, Plaintiff made it clear that nothing other than full compliance with his Subpoena would be sufficient. *Id.*

Despite Plaintiff's failure to review and sign the Use Agreement relating to the On-Line Database (which he had previously agreed to do) and his protestations that he did not want the On-Line Database, on May 18, 2005, the Center produced the On-Line Database to Plaintiff, in response to his Subpoena. George Aff., ¶¶ 8-11 and Exs. D-G ; Borrelli Aff., ¶ 10. The On-Line

Database represents the Center's entire entanglement database, and is the official database of record. Borrelli Aff., ¶ 11. In fact, this On-Line Database is used by virtually every professional in the marine mammal field for information regarding entanglements in the western North Atlantic Ocean. *Id.*

The On-Line Database contains approximately 3000 separate files of information relating to entangled whales, including Whales Archives from 1999 to May 4, 2005, organized annually. *Id* at ¶ 13. The Whales Archive contains information on 120 sightings of entangled whale that occurred between 1999 and May 4, 2005. *Id.* at ¶ 14. Moreover, the On-Line Database contains every photograph (approximately 2000) that the Center has in its possession showing whales entangled in Massachusetts waters during that same time period. *Id.* at ¶ 17. The On-Line Database also contains telemetry information on entangled whales, including detailed coordinate locations, telemetry maps and details about the whale itself, positioning information, reports from the field, and photographs. *Id.* at ¶¶ 23-24.

On May 18, 2005, Plaintiff informed the Center's counsel that he had access to the database, that it contained none of the scientific information requested, and that he believed the Center failed to comply with the Subpoena in any manner. George Aff., ¶ 12.

Thereafter, on June 14, 2005, Plaintiff filed his Motion to Compel, which was a single-paged Motion simply alleging that the Center failed to comply with the Subpoena. On June 20, 2005, Plaintiff "served" by email the Affidavit of Richard Max Strahan ("Strahan Affidavit") and a Memorandum in Support of his Motions ("Memo.").[2] On June 22, 2005, Plaintiff "served" by email another Affidavit of Richard Max Strahan and Memorandum.[3]

---

[2]    Plaintiff has also filed a Motion to Compel against the National Marine Fisheries Service, and a portion of the Strahan Affidavit and the Memorandum relates to that Motion.

[3]    References herein are to the June 22, 2005 Affidavit and Memorandum.

## REQUIRING THE CENTER TO RESPOND TO PLAINTIFF'S SUBPOENA IS UNDULY BURDENSOME ON THE CENTER AND, THEREFORE, THE SUBPOENA SHOULD BE QUASHED.

In his Motion to Compel, Plaintiff argues that: (1) as to requests 1, 5 and through 8 of the Subpoena, the Center failed to comply in any manner; and (2) as to requests 2 through 4 of the Subpoena, the Center provided only "corrupted" files derived from the original documents that the Center publishes on its website. *See* Memo, at p. 3. Plaintiff further argues that the Center has failed to provide megapixel photographs as requested. *Id.* Plaintiff's arguments are specious, at best. The Center produced the On-Line Database, which provided information responsive to requests 1 through 6 of the Subpoena. Further response to the Subpoena would be unduly burdensome on the Center, which is a not-for-profit organization. As a result, the Court should deny Plaintiff's Motion and quash the Subpoena.

District courts have broad discretion to manage discovery matters. *See Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003). Federal Rule of Civil Procedure 26(c) provides that, upon a showing of good cause, a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Indeed, Federal Rule of Civil Procedure 45(c)(3)(A)(iv) states that a court "shall" quash or modify a subpoena, if the subpoena "subjects a person to undue burden."

The party moving to quash a subpoena in a civil trial bears the burden of persuasion. *See Demers v. Lamontagne*, Civ. Action No. 98-10762, 1999 U.S. Dist. LEXIS 17500, at *4 (D. Mass. May 5, 1999) (citing *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996)). The Court considers numerous factors when determining whether a subpoena places an undue burden on a party: (1) the relevance of the documents sought; (2) the necessity of the documents sought; (3), the breadth of the request; (4) the time period covered by the request (5) the particularity with which the documents are described; (6) and the burden in fact

imposed. *Id.* (citation omitted). In addition, a non-party is given consideration regarding

inconvenience and expense. *Id.* (citation omitted). The ultimate determination of burden and

reasonableness, however, is subject to the discretion of the court. *See United States v. Concemi*,

957 F.2d 942, 949 (1st Cir. 1992).

## I.    THE CENTER'S PRODUCTION OF THE ON-LINE DATABASE SATISFIES PLAINTIFF'S REQUESTS FOR DOCUMENTS CONCERNING WHALE ENTANGLEMENTS.

In his Subpoena, Plaintiff requests, for the time period 1999 to 2005: (1) digital images of

all entangled whales; (2) all documents concerning reports of any whale observed entangled in

fishing gear; (3) documents concerning and detailing the removal of fishing gear from whales, as

well as the subsequent disposal of such gear; and (4) photographs of the fishing gear removed

from each entangled whale. *See* Subpoena, Requests 1, 2, 4, and 5. Plaintiff also seeks, without

any time limitation: (1) all documents that describe or report the observation of any entangled

whales in the coastal waters of Massachusetts; and (2) all computer records detailing

observations of certain whales in Massachusetts coastal waters.[4] *See* Subpoena, Requests 3 and

6. The Center's production of the On-Line Database satisfies these requests, as detailed below.

The Center produced the On-line Database to Plaintiff in response to the Subpoena.

Borrelli Aff., ¶ 10. The On-Line Database represents the Center's entire entanglement database.

*Id.* at ¶ 11. This On-Line Database is the official database of record, and the one that virtually

every professional in the marine mammal field relies on for information regarding entanglements

in the western North Atlantic. *Id.* This On-Line Database is a limited access website, available

to members of the Network only. *Id.*

---

[4]    These requests are unduly burdensome and overly broad, as they fail to specify a time period for which these documents are requested. Moreover, the request for computer records seeks information relating not only to whale entanglements, but all whales sightings. Such a request is unreasonable as overly broad and irrelevant to the case for which the Subpoena was issued.

This On-Line Database contains approximately 3000 separate files of information relating to entangled whales, including the Whales Archive from 1999 through May 4, 2005. Borrelli Aff., ¶¶ 13-14. The Whales Archive for each year contains information on every sighting of an entangled whale that occurred in a particular year. *Id.* at ¶ 14. For example, the Whale Archive for 2000 contains information relating to twenty-six (26) such whale sightings. *Id.* at ¶ 14(b) and Ex. C.

Where the information is available, for each entangled whale listed in the Whales Archive, the On-Line Database contains detail about the geographic location of the entangled whale (including a map and coordinates), a description about the condition of the whale, a description of the fishing gear in which the whale was entangled, photographs of the entangled whale, and information about the disentanglement of the whale. *Id.* at ¶ 15. An example of the information contained on the database for a particular entangled whale is attached to the Borrelli Affidavit, Exhibit I.

Moreover, the On-Line Database contains every photograph that the Center has in its possession showing whales entangled in Massachusetts waters between 1999 and May 4, 2005. Borrelli Aff., ¶ 17. Also included amongst these photographs are all the images of fishing gear in which the whales are entangled that the Center has in its possession. *Id.* According to Mr. Borrelli, the On-Line Database contains approximately 2000 photographs of whale entanglements, all of which are responsive to Mr. Strahan's Subpoena. *Id.*

The On-Line Database also contains telemetry information on the entangled whales listed in the Whales Archive. *Id.* at ¶ 23. The detail for the telemetry tracked whales includes detailed coordinate locations, telemetry maps and details about the whale itself, positioning information, reports from the field, and photographs. Borrelli Aff., ¶ 24. An example of the telemetry

7

information contained on the database relating a particular entangled whale is attached to the Borrelli Affidavit, Exhibit N.

In sum, the On-Line Database contains virtually all of the information that the Center has in its possession concerning whale entanglements. *Id.* at ¶ 25. To produce the information contained on the On-Line Database in a different form would be unduly burdensome upon the Center and duplicative of that already produced by the Center. For example, Mr. Borrelli estimates that it would take between fourteen (14) and eighteen (18) work days to identify, collect, and prepare for production the documents relating to entangled whales requested in requests 1 through 5 of the Subpoena, if the Center were to produce them in hard copy form. Borrelli Aff., ¶ 9. To fully and completely respond to the Subpoena, Mr. Borrelli estimates that it would take between 21 and 25 work days. *Id.* at ¶ 8. The Center is a not-for-profit corporation, and the reallocation of the Center's resources to undertake this document collection effort and production would virtually cripple the Center. *Id.* at ¶ 2. As a result, the Center requests that the Court deny Plaintiff's Motion to Compel and grant its Motion to Quash.

## II.    REQUIRING THE PRODUCTION OF ADDITIONAL DOCUMENTS (INCLUDING PHOTOGRAPHS IN A DIFFERENT FORMAT) WOULD BE UNDULY BURDENSOME FOR THE CENTER AND DUPLICATIVE OF INFORMATION ALREADY PRODUCED.

### A.    Production of Megabyte Images Would be Unduly Burdensome for the Center.

Despite the production of thousands of photographs on the On-Line Database, Plaintiff continues to request photographs in the megapixel size, as opposed to the size provided on the On-Line Database. *See* Memo., at pp. 2, 3. To produce each photograph contained on the On-Line Database in such a manner would require extensive work by the Center, and would provide no additional information to Plaintiff. In rejecting the photographs contained on the On-Line Database, Plaintiff has rejected photographs that are industry-standard and utilized by

researchers and others on a daily basis with respect to whale disentanglements. Because Plaintiff

has all of the photographs in its possession via the On-Line Database and reproduction of these

photographs would be unduly burdensome for the Center, the Court should deny Plaintiff's

Motion to Compel on this issue.

As detailed in the Borrelli Affidavit, the typical photograph that the Center takes is

between 2,000 - 3,000 KB or 1.95 - 2.93 MB. Borrelli Aff., ¶ 19. Those images are 3048 x 2072

pixels wide on a monitor, and their print size is 42 inches by 28 inches. *Id.* These are "original"

photographs of a whale. For the On-Line Database, the Center changes the dimensions of the

file to make them sharer-friendly, reducing the file size to approximately 124 KB. *Id.* at ¶ 20. In

terms of identifying the whale, the entanglement, and the nature of the wounds, there is virtually

no difference between the "original" and On-Line Database photographs. *Id.* at ¶ 21. This is

amply demonstrated by a review of Exhibits J and K – two images of a right whale known as

Piper – which are attached to Mr. Borrelli's affidavit. Exhibit J is the smaller file, which was

taken directly from the Center's database. The "original" photograph is attached to Mr.

Borrelli's Affidavit as Exhibit K. The Center is perplexed by the notion that the On-Line

Database photographs are sufficient for researchers, but not for Plaintiff.

Moreover, to locate, label, copy, and download every photograph contained on the On-

Line Database would impose tremendous burden on the Center. For example, all photographs

taken prior to mid-2001 are on film, and not in digital format. Borrelli Aff., ¶ 22. Therefore,

these films would have to be located in order to comply with such a request, which would be a

great burden for the Center. In total, Mr. Borrelli estimates that it would average the Center

approximately fifteen (15) minutes per photograph to produce it in the megabyte size requested

by Plaintiff, including locating, identifying, labeling, and downloading the images. *Id.* Although

just an estimate, this potentially translates into more than one month of time that a Center

employee would need to dedicate to this project alone. Again, for a not-for-profit organization,

such would seriously impact its ability to conduct its day-to-day business. For this reason, the

Center requests that the Court deny Plaintiff's Motion to Compel on this point and grant its

Motion to Quash.

### III.    MANY OF THE DOCUMENTS AND OTHER INFORMATION REQUESTED IN THE SUBPOENA ARE OBTAINABLE FROM OTHER SOURCES.

Much of the information requested in the Subpoena is obtained from governmental

agencies, such as NOAA. The Center provides Disentanglement Permit Reports to NOAA

National Marine Fisheries Service on an annual basis. Borrelli Aff., ¶ 16. This report details the

Center and Network member's whale disentanglement activities on an annual basis, including

the number of reported entanglements, species, outcome of disentanglement attempts, and

assessments of documented cases. *Id.* Moreover, NOAA issues Large Whale Entanglement

Reports on an annual basis, which details the location, species information, nature of the animal

or carcass, observers, and the nature of the entanglement for those on the entire Eastern Seaboard

and relating to all cetacean species. *Id.* In addition, NOAA publishes Fishery Interaction Gear

Analyses on an annual basis. These analyses include location, baleen cetacean species

information, nature of entanglement, nature of animal or carcass, observers, and an analysis of

the entangling material for the entire Eastern Seaboard. *Id.* Thus, the entanglement information

and documentation that Plaintiff seeks is available from National Marine Fisheries Service.

Requests 1 through 7 of the Subpoena served upon the Center are identical to those same

requests in Plaintiff's subpoena to National Marine Fisheries Service. *Cf.* Memo., at pp. 4-6, 6-8.

Moreover, in his Affidavit, Plaintiff includes a photograph attributed to the Center in his

argument about the inadequacies of NOAA National Marine Fisheries Service's response to his

subpoena. *See* Strahan Aff., ¶ 6. Thus, National Marine Fisheries Service not only has in its possession documentation from the Center, but it actually produced same in response to Plaintiff's subpoena. For these reasons, the Centers asserts that a majority of the information requested by Plaintiff in his Subpoena is in the possession of governmental agencies, which should relief the Center from its obligation to produce additional documents in response to the Subpoena, particularly given the undue burden that such would impose on the Center.

## CONCLUSION

For the foregoing reasons, the Provincetown Center for Coastal Studies requests that this Court deny Plaintiff's Motion to Compel, grant its Cross-Motion to Quash, and grant such other just and equitable relief as the Court deems appropriate.

Respectfully submitted,

PROVINCETOWN CENTER FOR COASTAL STUDIES

By its attorneys,

David M. Ryan (BBO No. 644037)
Amy R. George (BBO No. 629548)
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110
617-345-1000 (phone)
617-345-1300 (fax)

Dated:        June 23, 2005

**CERTIFICATE OF SERVICE**

I, Amy R. George, Esq., do hereby certify that the above Memorandum of Law in Opposition to Plaintiff's Motion to Compel and in Support of the Cross-Motion to Quash was served, by hand delivery, upon Richard Max Strahan, 928 Dorchester Avenue, Unit 5, Boston, MA  02125, on this 23th day of June, 2005.

Amy R. George

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

## CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.

1

1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
2

3                                ҫ

4    RICHARD MAX STRAHAN,                )
                         Plaintiff,      )
5                                        )
                                         )
6    vs.                                 )  CA No. 05-10140-NMG
                                         )
7                                        )
     SECRETARY ELLEN ROY HERZFELDER,     )
8    et al.,                             )
                         Defendants.     )
9

10

     BEFORE:  The Honorable Nathaniel M. Gorton
11

12
                           HEARING ON MOTION
13

14

15
                John Joseph Moakley United States Courthouse
16                        Courtroom No. 4
                         One Courthouse Way
17                        Boston, MA 02210
                       Friday, June 24, 2005
18                          10:22 A.M.

19

20

21                  Cheryl Dahlstrom, RPR, RMR
                      Official Court Reporter
22      John Joseph Moakley United States Courthouse
                   One Courthouse Way, Room 3209
23                      Boston, MA 02210
            Mechanical Steno - Transcript by Computer
24

25

2

APPEARANCES:

    Richard Max Strahan, Pro Se

    ATTORNEY GENERAL'S OFFICE
    By:  Daniel J. Hammond, Esq.
    One Ashburton Place, Room 2019
    Boston, Massachusetts 02108-1698
    On behalf of the Defendants.

    NIXON, PEABODY, LLP
    By:  Amy R. George, Esq., and
    David M. Ryan, Esq.
    100 Summer Street
    Boston, Massachusetts 02110
    On behalf of Interested Party Provincetown Center for
    Coastal Studies.

1           P R O C E E D I N G S

2           THE CLERK:  This is Civil Action 05-10140, Richard Max

3    Strahan vs. Secretary Herzfelder, et al.  Counsel please

4    identify themselves for the record.

5           MR. STRAHAN:  Richard Max Strahan, plaintiff, pro se

6    and proud.

7           THE COURT:  Good afternoon -- rather, good morning,

8    Mr. Strahan.

9           MR. STRAHAN:  Good morning, Judge Gorton.

10          MR. HAMMOND:  Good morning, your Honor.  Daniel

11   Hammond, Assistant Attorney General, for all of the named

12   defendants.

13          THE COURT:  All right.  Good morning to you, Mr.

14   Hammond.

15          MS. GEORGE:  Good morning, your Honor.  Amy George for

16   the Center for Coastal Studies.

17          THE COURT:  Good morning, Miss George.

18          MR. RYAN:  Good morning, your Honor.  David Ryan from

19   Nixon, Peabody, also for the Center.

20          THE COURT:  Good morning to you, Mr. Ryan.

21          All right.  We are here to consider pending motions

22   that have been filed, the first of which is the plaintiff's

23   motion to default the defendants for failure to file a timely

24   answer, which is Docket No. 10.  And it is true that the

25   defendants did not file a timely answer but rather, in April,

1  filed a motion to enlarge time within which to file responsive

2  pleadings.  That motion itself was not timely filed.  However,

3  it was allowed by this Court, so the motion to default is

4  rendered moot.

5       That does not, however, at all excuse the failure of

6  the defendants to abide by the rules of this court.  And even

7  though I have allowed the government, the state agencies that

8  are involved -- or the state executive appointees, I guess, is

9  a more proper way to describe it -- to avoid the default this

10  time, that doesn't mean that they are exempt any more than a

11  private party from abiding by the rules of this court.  And

12  their failure to do so will not be tolerated in the future; and

13  the matter, if it is repeated, will result in a default

14  judgment or severe sanctions.  And I hope that you will report

15  that back to your superiors at the Attorney General's Office

16  and within these agencies.

17       I understand -- at least the argument was that you

18  were considering filing a motion to dismiss on res judicata

19  grounds.  Are you still considering the filing of such a

20  motion, Mr. Hammond?

21       MR. HAMMOND:  Thank you, your Honor.  Not a Rule

22  12 motion, your Honor.  We are still looking at the

23  inter-relationship between this case and its predecessor case.

24  However --

25       THE COURT:  That was the 1995 case that was before

5

1    Judge Woodlock?

2          MR. HAMMOND:  That's correct, your Honor, and

3    ultimately reviewed by the First Circuit.

4          And we -- the defendant agencies are still looking at

5    the question of whether the resolution of that case bears on

6    whether a separate cause of action lies now absent an

7    allegation that the settlement agreement that ultimately

8    resolved the first case has been violated.

9          However, we did ultimately decide not to file a Rule

10   12 motion but, rather, to engage in some discovery and perhaps

11   revisit that question on a Rule 56 motion down the road.

12         THE COURT:  So what is really called for is the

13   allowance of the plaintiff's motion for a scheduling conference

14   and to turn this into a scheduling conference.  Is that not --

15         MR. HAMMOND:  I think that would be appropriate, your

16   Honor.

17         THE COURT:  -- true?  You agree with that, Mr.

18   Strahan?

19         MR. STRAHAN:  Yes, I would.  I guess, also, at the

20   same time with my motion to default was the motion to compel

21   discovery.

22         THE COURT:  Yes.  We have that under advisement, too,

23   so we'll deal with that.  Did you want to address that at this

24   stage?

25         MR. STRAHAN:  Well, I want just to point out that when

1   they filed their timely motion -- their untimely motion to file

2   an answer, they made a promise in that motion and they proposed

3   a date to comply with discovery, which they didn't comply with.

4   So discovery is still outstanding months after it was served.

5          THE COURT:  Well, let me back up a little bit.  There

6   hasn't been a scheduling conference in this case, correct?

7          MR. STRAHAN:  No, there has not been.

8          THE COURT:  There hasn't been a conference, a Rule 26

9   conference, that is, where you have sat down with the

10  defendants and tried to work out any discovery.

11         MR. STRAHAN:  We have done that.

12         THE COURT:  You have done that?

13         MR. STRAHAN:  Yes, on two occasions.

14         THE COURT:  All right.  We're, I think, getting the

15  cart before the horse here a little bit.  What we need to do is

16  to set forth a scheduling order.  And in light of your claims,

17  which you say are time-sensitive, we will try to afford a quick

18  discovery period.

19         However, it is also clear that there are already

20  discovery disputes; that is, you have served discovery on the

21  defendants, and they claim that they are either overbroad or

22  not possible to answer.  And as I understand it, the interested

23  third party, Center for Coastal Studies, which Miss George

24  represents, have made an attempt to respond to the subpoenas

25  but, also, believe that they are overbroad.

1          Is that the position of your client, Miss George?

2          MS. GEORGE:  That's correct, your Honor.

3          THE COURT:  Have you responded in any other way to the

4    subpoena that was served on you by the plaintiff?

5          MS. GEORGE:  Yes, your Honor.  We provided the

6    Atlantic Large Whale Disentanglement Network online database,

7    which the Center maintains.  That database is the entire

8    database that the Center maintains concerning entangled whales.

9    It is the database relied on by researchers and others in the

10   industry because of its information relating to entangled

11   whales.  It contains approximately 3,000 files of information

12   and includes 2,000 photographs, all of which the Center

13   contends are responsive to the subpoena.

14         In addition, your Honor, in support of our -- in

15   opposition to the motion to compel and in support of our motion

16   to quash, we submitted the affidavit of Peter Borelli, who is

17   the executive director for the Center, and attached to that

18   affidavit as exhibits are pronounced from that website to give

19   the Court a sense of the type of information that's included on

20   the website, including the detail relating to the approximate

21   120 sightings of disentangled whales that have occurred from

22   1999 to May 4, 2005.

23         THE COURT:  How is -- you have told the Court that to

24   comply completely with the requests that were made by the

25   plaintiff would take 21 workdays, if you will, or 21 to 25

8

1    workdays.

2            MS. GEORGE:  Yes, your Honor.

3            THE COURT:  How is it -- you have provided him with a

4    certain amount of information.

5            MS. GEORGE:  Yes, your Honor.

6            THE COURT:  What is the information that would take

7    you 21 to 25 days to produce?

8            MS. GEORGE:  Well, Mr. Strahan is not satisfied with

9    our production of the database, and he -- my understanding is

10   he would like the back-up documentation and the hard-copy

11   documents that would be duplicative of the information

12   contained on the database.

13           In speaking with Mr. Borelli, a majority of the

14   information is not maintained or organized in the way that Mr.

15   Strahan has requested and, again, is duplicative of what's on

16   the database.  So just with regards to collecting, gathering

17   and identifying the hard-copy documents that would represent

18   the information already on the database, Mr. Borelli would

19   estimate that would take between 14 and 18 days.  And that

20   would just be to respond to those requests relating directly to

21   the entangled whales.  There were a few other requests in the

22   subpoena as well, and that would be the difference in the time

23   period, your Honor.

24           THE COURT:  All right.  Thank you.  What about the

25   defendants' response to the discovery pleadings that have been

1    filed?

2          MR. HAMMOND:  Your Honor, to date, we have raised no

3    motion to quash or anything like that.  We have, in fact,

4    served upon Mr. Strahan what I would call the paper responses

5    to both his requests for admissions and his requests for

6    production of documents.

7          In the text of our response to the requests for

8    production of documents, we identified which of his requests we

9    actually had responsive data to but, also, in a prologue stated

10   that the actual physical production of those documents would

11   take some time, and we set a deadline of July 1st for that

12   production.

13         THE COURT:  So you're still in the process -- your

14   clients are still in the process of producing documents or

15   attempting to locate and produce documents?

16         MR. HAMMOND:  That is correct, your Honor.

17         THE COURT:  All right.  Then let's do this.  Let's use

18   my form, if Mr. Nicewicz will get one out, to make sure that I

19   don't skip something.  We'll go through and determine some

20   dates.  Then what I'm going to do, sort of superimposed on this

21   scheduling order, is a reference of any discovery disputes to

22   the magistrate judge who is assigned on this case, and that

23   would be the new magistrate judge, Leo Sorokin.  So any

24   discovery disputes that remain after we set a scheduling order

25   and after you have sat down with one another and try to work

1   out these matters without intervention of the court, that's the
2   way we're going to proceed.

3          You've informed me now that there will not be a filing
4   of a motion to dismiss on res judicata grounds, is that
5   correct?

6          MR. HAMMOND:  That is correct, your Honor, yes.

7          THE COURT:  All right.  Let's -- all amendments and/or
8   supplements to the pleadings, that is, any new claims and/or
9   any new parties that are to be added, Mr. Strahan, will be done
10  on or before July 31st.  That gives you about six weeks to
11  determine whether there are to be any new parties added and/or
12  whether there are any new claims.  You understand what I'm
13  talking about.  You've been involved in enough litigation to
14  know what this is all about, right?

15         MR. STRAHAN:  Yes.

16         THE COURT:  In other words, the idea is, we don't want
17  to get through the entire discovery schedule that takes
18  whatever it takes, three to six months, and then come to find
19  out that there's a new party that you want to add and/or a new
20  claim that would result in further discovery and further delay.
21  If you're going to add any new parties or you're going to add
22  any new claims, it's got to be done before July 31st.

23         MR. STRAHAN:  I understand that and I, obviously, want
24  to expedite the proceedings for the sake of the whales.  This
25  is why it's so important to have the National Fishery Service

1    and the Center for Coastal Studies comply with their subpoenas

2    to produce the documents that's possible to identify all

3    parties that may be subject to this suit.

4            THE COURT:  Okay.  I'm not going to get into the

5    nitty-gritty of your motion to compel today.  I'm going to

6    refer that dispute.  If it remains after today and after you've

7    had a chance to sit down with these folks and try to work out

8    this matter --

9            MR. STRAHAN:  Right.

10           THE COURT:  -- then that matter is going to be

11   resolved by the magistrate judge --

12           MR. STRAHAN:  I appreciate that.

13           THE COURT:  -- who is in a good position to do that.

14   What we're going to do today is set forth a scheduling order

15   and try to get this case on a fast track.

16           MR. STRAHAN:  Right.

17           THE COURT:  That's what you want --

18           MR. STRAHAN:  Absolutely.

19           THE COURT:  -- and you're entitled to under the rules.

20   On the other hand, the defendants and/or the interested third

21   parties are not required to drop everything else they're doing

22   and jump through hoops.  They have obligations other than this

23   case.  And they will be required to respond in a timely

24   fashion.  There's going to be no more of this 60 or 80 days

25   after the fact or they're going to pay a price for that.  But

12

1    be that as it may, the matter's got to proceed in an orderly

2    fashion.  So that's the first deadline.

3         Then the second deadline will be written discovery.  I

4    take it that's primarily in the works already, right?  But

5    we'll say all discovery, if there is to be any further written

6    discovery, will be served on or before July 31st and answered

7    on or before August 31st.

8         Then if there are to be any depositions in this case,

9    they will be completed on or before October 31st.  Dispositive

10   motions, that is, motions for summary judgment, will be filed

11   on or before November 15th and responded to in accordance with

12   the rules.  Actually, I'll give 21 days, so we'll say

13   dispositive motions will be answered on or before whatever the

14   Friday nearest -- first Friday in November.  What would that

15   be?

16              THE CLERK:  In December?

17              THE COURT:  November.

18              THE CLERK:  The 4th.

19              THE COURT:  November 4th.  Responsive pleadings to

20   dispositive motions will be due on or before November 4th.  Did

21   I say November 15th?  I beg your pardon.  Mr. Nicewicz is right

22   as usual.  So it will be dispositive motions by November 15th,

23   responses by the first Friday in December, which is December

24   2nd.

25              Then if there is -- at that stage, if there hasn't

1   been resolution of these matters, we will have -- we'll

2   schedule a final pretrial conference for, let's say, early

3   February, Thursday, February 9th at 3 p.m., trial to commence

4   the first Monday of March, 2006, March 6 of 2006, if it gets

5   that far.

6           In the meantime, if there are any discovery disputes,

7   those disputes will be referred to Magistrate Judge Sorokin.

8           I am going to deny without prejudice the plaintiff's

9   motions to compel discovery.  It is without prejudice, and I am

10  instructing counsel and Mr. Strahan, who represents himself pro

11  se, to sit down at a mutually convenient time to try to resolve

12  any discovery disputes that remain.  I don't know if -- you say

13  you've done this already, Mr. Strahan?

14          MR. STRAHAN:  We had some phone conversations and

15  tried to work a few things out.

16          THE COURT:  Well, I want you to sit down in person.

17  Rather than having a phone conversation, sit down in person and

18  see if you can't work out the problems you have with the

19  defendant and the problems that you have with the third --

20  non-party -- interested parties, Miss George and her client,

21  Center for Coastal Studies.

22          I am not going to require either the defendant or the

23  interested third party to supplement the discovery that they've

24  already produced at this time and/or are in the process of

25  producing.  As Mr. Hammond says, the government is in the

1   process of completing this in the next week or so, right?

2          MR. HAMMOND: That's correct, your Honor.

3          THE COURT: So we won't require this meeting until

4   after your client has had an opportunity to complete its

5   discovery. But once that has been done, then I want you and

6   Ms. George and Mr. Strahan to sit down together in a room and

7   see if you can't work these discovery matters out.

8          MR. STRAHAN: There's also the issue of the National

9   Fishery Service. They haven't shown today, the government, but

10   they were served with --

11          THE COURT: They're not a party to this litigation.

12          MR. STRAHAN: But they were subpoenaed.

13          THE COURT: Well, I think Miss George is here because

14   she volunteers to be here. She's not a party to this case.

15          MR. STRAHAN: All right.

16          THE COURT: She's not required to be here.

17          MR. STRAHAN: Right.

18          THE COURT: And unless there is some motion to compel

19   -- you see, I don't even have jurisdiction over the non-third

20   parties. They aren't parties to this litigation.

21          MR. STRAHAN: Well --

22          THE COURT: You have a right under Rule 45 to serve

23   subpoenas on them, and they have an obligation, so long as it

24   does not cause undue hardship, or whatever the magic words are

25   in the rule, they have an obligation to respond. But it sounds

1    to me like Miss George has made a good-faith effort on behalf

2    of her client to do so.

3                MR. STRAHAN: ℓ Well --

4                THE COURT:  I don't know anything about the National

5    Marine Fisheries.  They're not before me.

6                MR. STRAHAN:  The thing about these two parties are,

7    that they are intimate business associates of the defendants.

8    In fact, the state pays the Center for Coastal Studies almost a

9    half a million dollars a year to produce these very documents.

10   In fact, under the state and federal contracts for Center for

11   Coastal Studies, NOAA and the state own this property we're

12   talking about in discovery.  In fact, the defendants themselves

13   could order the Center for Coastal Studies, pursuant to their

14   contract, to produce everything I've asked them directly to do.

15              So the issue here in this case comes down to actually

16   maybe that the defendants should be joined by the Center for

17   Coastal Studies and NOAA in this lawsuit because of their

18   intimate business relationship and their possession of

19   information.  And if that proceeds, considerate of the deadline

20   of July 31st, I have to raise the issue of the infamous 60-day

21   notice, which we addressed in the Navy case.

22              Now, Judge Woodlock --

23              THE COURT:  Wait a minute, Mr. Strahan.  We're going

24   beyond the scope of this hearing.

25              MR. STRAHAN:  No.  I was just going to --

16

1          THE COURT:  If you believe you need to add as a third

2     party or a party defendant the Center for Coastal Studies or

3     the National Marine Fisheries Service, then that's up to you.

4          MR. STRAHAN:  Right.

5          THE COURT:  The defendant can implead somebody if they

6     want to implead, but that's not up to you.  That's up to them.

7          MR. STRAHAN:  Right.

8          THE COURT:  Miss George is here today representing the

9     Center for Coastal Studies because, as I understand it, her

10    client was subpoenaed under Rule 45.  Is that right, Miss

11    George?

12         MS. GEORGE:  That's correct, your Honor.

13         THE COURT:  Did you wish to add something?  You stood

14    a moment ago.

15         MS. GEORGE:  I did, your Honor.  I just wanted to

16    point out to the Court that we have actually tried very

17    diligently to work things through with Mr. Strahan.  Through

18    several phone conversations, we were able to prioritize some of

19    his requests, and that was what prompted the production of the

20    online database.  Over time, it became quite clear to me that,

21    short of full compliance with the subpoena, that, you know,

22    there was no compromise to be had.

23         Your Honor, we're a not-for-profit corporation, but

24    we're really hoping to come here today to get some resolution

25    on the motion to compel and our motion to quash.

1          MR. STRAHAN:  This --

2          THE COURT:  You have a corresponding motion to quash

3   what?

4          MS. GEORGE:  The subpoena, your Honor.

5          MR. STRAHAN:  That was served yesterday and I am --

6          THE COURT:  I have not -- I'm not familiar with that

7   motion because I haven't seen it.

8          MS. GEORGE:  Understood, your Honor.

9          THE COURT:  What I'm going to do is to refer this

10  matter to the magistrate judge for discovery, written

11  responses.  I am going to deny Mr. Strahan's motions to compel

12  without prejudice to being refiled if, after further discovery

13  is had from the government, these matters cannot be resolved

14  either by conference or among yourselves.  And if there is to

15  be a further filing of a motion to compel, that motion will be

16  considered by Magistrate Judge Sorokin.

17          The motion for a scheduling conference has been

18  allowed.  We have a scheduling order, at least orally, and the

19  deputy clerk will submit to all parties a written version of

20  this scheduling order.  That is the scheduling order of this

21  court unless there's one of those dates or some of those dates

22  that the parties wish to bring to my attention are impossible

23  to meet.  I hear none.

24          MR. STRAHAN:  No.  They're fine with me.  I just want

25  to clarify to the Court, I wasn't really asking the Court for

1    any response to a motion.  I just want to raise a guidance

2    issue, put it all at least in the air for possible

3    consideration in future conflict, that Judge Woodlock, when he

4    added interveners in the 1995 Strahan vs. Coxe case, which

5    preceded this, he ruled that 60-day notices were not needed to

6    be served on defendants in an action once the suit has been

7    commenced.  In other words, he interpreted the 60-day notice

8    provision under the Endangered Species Act to be merely an

9    issue to commence a civil action.  There's case law on this,

10    actually.  And that once an action has been commenced, to add

11    new plaintiffs -- new defendants, you don't need to use the

12    60-day notice because the action has already been commenced and

13    they can just be added into it whether it's intervening

14    status -- in other words, an intervener does not have to come

15    in with a defendant with a 60-day notice sent to them or a

16    person wanting to add a new defendant as long as it's relevant

17    to the situation.

18          THE COURT:  Well, that issue is not before me in any

19    pending motion that I'm aware of, Mr. Strahan --

20          MR. STRAHAN:  I was just --

21          THE COURT:  -- in this case.

22          MR. STRAHAN:  It just might be an issue.

23          THE COURT:  I'm not going to anticipate whether -- if

24    you were to move to add the Center for Coastal Studies as a

25    party defendant in this case, whether they would raise as a

1   defense the fact that they hadn't been given 60 days' notice --

2           MR. STRAHAN:  Most likely.

3           THE COURT:  If they do, then I'll deal with that.

4           MR. STRAHAN:  Okay.

5           THE COURT:  If they don't, sufficient unto the day,

6   that sort of thing.

7           MR. STRAHAN:  Sure.  I was just raising the point.

8           THE COURT:  Okay.  But that's not before me.

9           Is there anything else that is before me that would

10  help get this matter on the right track that I haven't dealt

11  with at this stage?  Mr. Strahan.

12          MR. STRAHAN:  I do believe the Court has thoroughly

13  addressed all the outstanding issues.

14          THE COURT:  Anybody from the defendants or the

15  interested third party?

16          MR. HAMMOND:  No, your Honor.

17          MS. GEORGE:  No, your Honor.

18          THE COURT:  Good luck.  And I want you to work with

19  one another in good faith.  I am convinced that the defendants

20  are acting in good faith.  A minor slip by the defendants in

21  not responding timely will be overlooked this time but not

22  another time.  It does seem to me the third parties have, in

23  good faith, attempted to respond to the subpoena.

24          I haven't dealt and do not have before me at the

25  present time your motion to quash.  But I expect that,

1    hopefully, this matter can be resolved once the government has

2    completed its discovery production and you've sat down with Mr.

3    Strahan and tried to work this out.  If you can't do that, then

4    we'll deal with those motions, and those motions will, in fact,

5    at that point be referred to the magistrate judge for

6    resolution.  Okay?  Thank you, counsel.

7    (Whereupon at 10:45 a.m. the hearing concluded.)

21

C E R T I F I C A T E

1

2

3

4        I, Cheryl Dahlstrom, RPR, RMR, and Official Reporter

5    of the United States District Court, do hereby certify that the

6    foregoing transcript, from Page 1 to Page 20, constitutes, to

7    the best of my skill and ability, a true and accurate

8    transcription of my stenotype notes taken in the matter of

9    Civil Action No. 05-10140-NMG, Richard Max Strahan vs.

10   Secretary Ellen Roy Herzfelder, et al.

11

12

13

14

15

16          *Cheryl Dahlstrom*

17          Cheryl Dahlstrom, RPR, RMR

18          Official Court Reporter

19

20

21

22

23

24

25

**Issued by the**

UNITED STATES DISTRICT COURT

_EASTERN_    DISTRICT OF    _MASSACHUSETTS_

Richard Max Stradhan

SUBPOENA IN A CIVIL CASE

Ellen Roy - Herz Feleler
    Regional Administrator,    Case Number:[1]
TO: NATIONAL MARING FISHERIES SERVICE
    ONE Blackburn DRIVE
    Gloucester, MA 01930

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  _SEE ATTACHMENT_
MASSACHUSETTS SIERRA CLUB
100 Boylston STREET, 7th Floor
Boston, MA

| PLACE | DATE AND TIME |
|---|---|
| | 16 March 2005 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| , courtroom deputy clerk | 3- 11-05 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
    UNITED STATES DISTRICT COURT
    1 COURTHOUSE WAY
    SUITE 2301                    (See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)
    BOSTON, MA 02210    617-748-9158

[1] If action is pending in district other than district of issuance, state district under case number.

Craig Nkewicz, deputy clerk

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | 15 April 2005 | Regional Administrater National Marine Fishein Service. |

SERVED ON (PRINT NAME)

MANNER OF SERVICE  VIA U.S. Priority MAIL

SERVED BY (PRINT NAME)  Richard Max Strahan.

TITLE  Prince of Whales.  115 Bradford Stret  P-Town 02657

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on   15 April 2005
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER   928 Ponclester Ave
Boston MA 02125

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD MAX STRAHAN | ) |
| | ) |
| *Plaintiff* | ) |
| | ) Civil Action No. |
| v. | ) |
| | ) 05 – 10140 - NMG |
| ELLEN ROY-HERZFELDER, *et al.* | ) |
| | ) 15 April 2005 |
| *Defendants* | ) |

PLAINTIFF'S SUBPOENA TO REGIONAL ADMINISTRATOR, NATIONAL MARINE
FISHERIES SERVICE TO PRODUCE DOCUMENTS FOR INSPECTION AND COPYING

Pursuant to the Federal Rules of Civil Procedure, Plaintiff Richard Max Strahan

DEMANDS that the Regional Administrator of the National Marine Fisheries Service regional

office headquartered in Gloucester MA produce for inspection and copying at the offices of

Sierra Club of New England, 100 Boylston Street, Boston, Massachusetts, all documents

described below on or before 9:00 A.M. on 16 May 2005. If the Defendants choose to reproduce

the requested records on their own and supply them to Strahan on or before 16 May 2005, then

they do not need to make their original copies of requested records available for inspection and

copying on the said date and location.

## DEFINITIONS

The following definitions shall apply to this request:

1. "Strahan " shall refer to the Plaintiff, Richard Max Strahan.

2. "EOEA" shall mean any office and all employees/agents of the Massachusetts
   Executive Office of Environmental Affairs and any of its infra-agencies and/or
   offices.

3. "DFG" shall mean any agency and/or agent of the Massachusetts Department of Fish and Game its infra-agencies and/or offices.

4. "DMF" shall mean any agency and/or agent of the Massachusetts Division of Marine Fisheries its infra-agencies and/or offices.

5. "CCS" shall mean the Center for Coastal Studies in Provincetown, MA.

6. "Correspondence" includes, but is not limited to, any letter, telegram, telex, TWX, notice, message, E-mail, memorandum or other written communication or transcription or notes of a communication.

7. "Whale" or "whales" shall mean any member of a biological species taxonomically listed as belonging to the biological Order Cetacea.

8. "Entangled Whale(s)" shall mean a whale or whales that physically in contact for any length of time on any given day with any rope, net, pot, and/or any physical object that is deployed into the marine environment by an individual for the purpose of catching and/or harvesting marine wildlife of any biological species.

9. "And" and "or" shall mean, where the context permits, "and/or."

10. "All" and "any" shall mean, where the context permits, "any and all."

11. "Documents" shall mean any conceivable type of recorded information on any kind of conceivable material — including (but not exclusively) printed material, notes, hand written material, E-mails, computer files of any format, magnetic audio and/or video recordings, and photographs.

12. Words used in the singular shall, where the context permits, be deemed to include the plural, and words used in the plural shall, where the context permits, be deemed to include the singular.

## INSTRUCTIONS

1. As to any document requested herein but withheld on the ground of privilege, please state the following:

   a. The nature of the claimed privilege;

FROM NOAA/GCNE

b.  The title of the document;

c.  The type of document (e.g. letter, note, memorandum, etc.);

d.  The date of the document;

e.  Names and positions of all persons who authored the document, or assisted in its preparation, or in whose name the document was prepared;

f.  Names and positions of all persons to whom the document was addressed; or to whom it was sent, or who received, have seen, have had possession or custody of, or have had disclosed to them the contents of, the document or any copies thereof;

g.  Names and positions of all persons from whom the document was received;

h.  The present location of the document and all copies thereof;

I.  Names and positions of all persons having custody or control of the document and all copies thereof; and

j.  Subject matter of the document.

2.  In producing documents, documents responsive to each request are to be segregated and labeled so as to indicate which request each segregated set of documents to which it is in response.

3.  If a document has been generated as a computer file and then converted into a printed format, the computer file is requested first and only the printed document too if in any way it has been personalized with a signature, date stamp and/or annotations of any type.

## DOCUMENTS REQUESTED

1.  Ten representative digital images of each and every whale observed entangled in fishing gear within fifty miles of U. S. coastal waters under Massachusetts state jurisdiction between the years 1999 – 2005. The digital images provided should be the highest available resolution as measured in absolute size of pixels (e. g. if two distinct files exist

of the same image but one of them is higher in resolution as measured in pixels, the higher resolution and larger as measured in bytes of a particular format constitutes the requested file). In addition necessary documentation that identifies the date any provided picture was taken, the location it was taken in latitude and longitude, the species of the whale that is being depicted, and the name of the photographer that took the image.

2. All documents concerning reports of any whale observed entangled in fishing gear within 50 miles of U. S. coastal waters under Massachusetts state jurisdiction (e. g. within 53 miles of any point on the Massachusetts coastline) between the years 1999 - 2005.

3. All documents in any way describing and/or reporting the observation of entangled whales in coastal waters under Massachusetts state jurisdiction.

4. Documents concerning and detailing the removal of fishing gear from whales between 1999 - 2005 and the subsequent handling and disposal/storage of this fishing gear.

5. Ten representative digital images of the fishing gear removed from each whale disentangled by employees and agents of the CCS and/or the Coast Guard and/or commercial fisherman between the years 1999 – 2005. The digital images provided should be the highest available resolution as measured in absolute size of pixels (e. g. if two distinct files exist of the same image but one of them is higher in resolution as measured in pixels, the higher resolution and larger as measured in bytes of a particular format constitutes the requested file). In addition the necessary documentation that identifies the date any provided picture was taken, the location it was taken in latitude and longitude, and the name of the photographer that took the image.

6. All computer records detailing observations of the occurrence of individual Northern Right Whales, Humpback Whales, Fin Whales, Minke Whales and Blue Whales between the years 1999 – 2005 in coastal waters under Massachusetts state jurisdiction and the area within fifty miles of any point on the Massachusetts coastline.

7.    All correspondence between any employee and/or agent of the EOEA, DFG, and/or DMF and any employee or agent of the CCS in any way concerning and/or naming Richard Max Strahan.

8.    Any report and/or other results — including high resolution photographs — of studies of the scarring on individual Humpback Whales and Northern Right Whales and the correlation of this scarring on the whale with its possible entanglement in commercial and sports fishing gear.

9.    Documents that were used as a basis for NOAA to develop its Draft Environmental Impact Statement for the revision of its Atlantic Large Whale Take Reduction Plan. The specific documents for which copies are sought are listed on pp. 77-79 of Chapter 5 of the DEIS/ALWTRP entitled ""Biological Impacts." If computerPDF or other formatted computer files of any of these requested documents exist then these are the ones that will be provided.

By:

RICHARD MAX STRAHAN, Plaintiff
928 Dorchester Avenue, #5
Boston, MA 02125
617.233.3854

*PRO SE AND PROUD!*



**U.S. Department of Justice**

Environment and Natural Resources Division

*Wildlife and Marine Resources Section*
*P.O. Box 7369*
*Ben Franklin Station*
*Washington, DC 20044-7369*

*Telephone (202) 305-0210*
*Facsimile (202) 305-0275*

May 13, 2005

Mr. Richard Max Strahan
c/o Sierra Club of New England
100 Boylston Street
Boston, MA 02116

      Re:   Strahan v. Roy-Herzfelder, 05-10140-NMG

Dear Mr. Strahan:

Enclosed please find a set of documents and two (2) CD-ROMs provided on behalf of the National Marine Fisheries Service ("NMFS")in response to your April 15, 2005 subpoena *duces tecum.* NMFS has retained the originals, and has provided you with a copied set of these materials.

NMFS considers its obligations under the subpoena satisfied. If you have any questions regarding this matter, please do not hesitate to let me know.

                Very truly yours,

                S. Jay Govindan

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **RICHARD MAX STRAHAN,** | ) |
| | ) |
| Plaintiff, | ) Civil Action No. |
| | ) |
| v. | ) 05-10140-NMG |
| | ) |
| **ELLEN ROY-HERZFELDER, et al.,** | ) |
| | ) |
| Defendants. | ) |

## NATIONAL MARINE FISHERIES SERVICE'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S SUBPOENA *DUCES TECUM*

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, the National Marine

Fisheries Service ("NMFS") responds to Plaintiff's Subpoena *Duces Tecum* as follows:

### GENERAL OBJECTIONS

1. NMFS objects to each of the requests to the extent it is unreasonable, unduly

burdensome or expensive under the circumstances of this case.

2. NMFS objects to each of the requests to the extent it seeks information protected

by the attorney-client privilege, the attorney work product privilege, or any other applicable

privilege.

3. NMFS objects to each of the requests, and the prefatory "Definitions" and

"Instructions" to the extent they seek to impose obligations that exceed the requirements of the

Federal Rules of Civil Procedure.

4. NMFS objects to each of the requests to the extent that it seeks the production of

documents that are already in Plaintiff's possession, custody or control or that are public records,

Strahan v. Roy-Herzfelder, 05-10140-NMG
Response to Subpoena *Duces Tecum*

and thus are equally available to Plaintiff.

5.  NMFS objects to each of the requests to the extent it is cumulative, duplicative, or the subject of prior Freedom of Information Act ("FOIA") requests.

Subject to and incorporating the foregoing objections and without waiving these objections or the right to file later motions, NMFS responds as follows:

## DOCUMENTS REQUESTED

### REQUEST NO. 1

Ten representative digital images of each and every whale observed entangled in fishing gear within fifty miles of U.S. coastal waters under Massachusetts state jurisdiction between the years 1999-2005. The digital images provided should be the highest available resolution as measured in absolute size of pixels (e.g. if two distinct files exist of the same image but one of the is higher in resolution as measured in pixels, the higher resolution and larger as measured in bytes of a particular format constitutes the requested file). In addition necessary documentation that identifies the date any provided picture was taken, the location it was taken in latitude and longitude, the species of the whale that is being depicted, and the name of the photographer that took the image.

### RESPONSE TO REQUEST NO. 1

NMFS specifically objects to this request insofar as it is overly broad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, responsive materials are contained on the first of two CD-ROMs enclosed herein.

### REQUEST NO. 2

All documents concerning reports of any whale observed entangled in fishing gear within 50

Strahan v. Roy-Herzfelder, 05-10140-NMG
Response to Subpoena *Duces Tecum*                2

miles of U.S. coastal waters under Massachusetts state jurisdiction (e.g. within 53 miles of any

point on the Massachusetts coastline) between the years 1999-2005.

## RESPONSE TO REQUEST NO. 2

NMFS specifically objects to this request insofar as it is overly broad and unduly burdensome.

Subject to and without waiving the foregoing general and specific objections, responsive

materials are contained on the first of two CD-ROMs enclosed herein.

## REQUEST NO. 3

All documents in any way describing and/or reporting the observation of entangled whales in

coastal waters under Massachusetts state jurisdiction.

## RESPONSE TO REQUEST NO. 3

NMFS specifically objects to this request insofar as it is overly broad and unduly burdensome.

Subject to and without waiving the foregoing general and specific objections, responsive

materials are contained on the first of two CD-ROMs enclosed herein. The materials responsive

to Request No. 2 above are responsive to this request as well.

## REQUEST NO. 4

Documents concerning and detailing the removal of fishing gear from whales between 1999-

2005 and the subsequent handling and disposal/storage of this fishing gear.

## RESPONSE TO REQUEST NO. 4

NMFS specifically objects to this request insofar as it is overly broad and unduly burdensome.

Subject to and without waiving the foregoing general and specific objections, responsive

materials are contained on the first of two CD-ROMs enclosed herein. The materials responsive

to Request No. 2 above are responsive to this request as well.

**REQUEST NO. 5**

Ten representative digital images of the fishing gear removed from each whale disentangled by employees and agents of the CCS and/or the Coast Guard and/or commercial fisherm[e]n between the years 1999-2005. The digital images provided should be the highest available resolution as measured in absolute size of pixels (e.g., if two distinct files exist of the same image but one of them is higher in resolution as measured in pixels, the higher resolution and larger as measured in bytes of a particular format constitutes the requested file). In addition[,] the necessary documentation that identifies the date any provided picture was taken, the location it was taken in latitude and longitude, and the name of the photographer that took the image[.]

**RESPONSE TO REQUEST NO. 5**

NMFS specifically objects to this request insofar as it is overly broad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, responsive materials are contained on the first of two CD-ROMs enclosed herein.

**REQUEST NO. 6**

All computer records detailing observations of the occurrence of individual Northern Right Whales, Humpback Whales, Fin Whales, Minke Whales and Blue Whales between the years 1999-2005 in coastal waters under Massachusetts state jurisdiction and the area within fifty miles of any point on the Massachusetts coastline.

**RESPONSE TO REQUEST NO. 6**

NMFS specifically objects to this request insofar as it is overly broad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, responsive materials are contained on the first of two CD-ROMs enclosed herein.

Strahan v. Roy-Herzfelder, 05-10140-NMG
Response to Subpoena *Duces Tecum*                      4

## REQUEST NO. 7

All correspondence between any employee and/or agent of the EOEA, DFG and/or DMF and any employee or agent of the CCS in any way concerning and/or naming Richard Max Strahan.

### RESPONSE TO REQUEST NO. 7

NMFS specifically objects to this request insofar as it is overly broad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, NMFS states that it has no documents responsive to this request.

## REQUEST NO. 8

Any report and/or other results - including high resolution photographs - of studies of the scarring on individual Humpback Whales and Northern Right Whales and the correlation of this scarring on the whale with its possible entanglement in commercial and sports fishing gear.

### RESPONSE TO REQUEST NO. 8

NMFS specifically objects to this request insofar as it is overly broad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, responsive materials are being provided herein.

## REQUEST NO. 9

Documents that were used as a basis for NOAA to develop its Draft Environmental Impact Statement for the revision of its Atlantic Large Whale Take Reduction Plan. The specific documents for which copies are sought are listed on pp. 77-79 of Chapter 5 of the DEIS/ALWTRP entitled "Biological Impacts." If computer PDF or other formatted computer files of any of these requested documents exist then these are the ones that will be provided.

### RESPONSE TO REQUEST NO. 9

Strahan v. Roy-Herzfelder, 05-10140-NMG
Response to Subpoena *Duces Tecum*                5

NMFS specifically objects to this request insofar as it is overly broad and unduly burdensome.

Subject to and without waiving the foregoing general and specific objections, responsive

materials are being provided, in paper form and on the second of two CD-ROMs enclosed herein.

Respectfully submitted this 13th day of May, 2005.

> KELLY A. JOHNSON, Acting Assistant Attorney General
> United States Department of Justice
> Environment and Natural Resources Division
> JEAN E. WILLIAMS, Chief
> SETH M. BARSKY, Assistant Chief

By:

> /s/ S. Jay Govindan
>
> S. JAY GOVINDAN, Trial Attorney
> United States Department of Justice
> Environment and Natural Resources Division
> Wildlife and Marine Resources Section
> Benjamin Franklin Station, P.O. Box 7369
> Washington, D.C. 20044-7369
> Telephone: (202) 305-0237
> Facsimile: (202) 305-0275

> Attorneys for Federal Defendants

(MON)   8. 05   13:21/ST. 13:09/NO.4861159774   P 15

FROM NOAA/GCNE

## George, Amy

| | |
|---|---|
| **From:** | Richard Strahan [esis@savespecies.com] |
| **Sent:** | Tuesday, August 09, 2005 2:03 PM |
| **To:** | Adam Keats; George, Amy; Peter Borrelli |
| **Subject:** | Strahan v. Herzfelder |

9 August 2005

Amy George
Nixon and Peabody

Ms. George,

Since I have not heard from you I assume that the CCS is unwilling to
supply me a single document requested by my subpoena. I find that
unfortunate but completely understandable. The CCS is know  business
partners with the Defendants and actively promotes the interests of the
commercial fishing and whale watching industry.

I will ask the court for a hearing on my motion to compel. In addition
I have asked the current defendants to accede to a request to add
Charles Mayo, Borrelli and the CCS as defendants. If the court allows
the motion then the issue with CCS will be discovery. Much better. Will
you be representing them?

In Peace,

Richard Max Strahan

**George, Amy**

| | |
|---|---|
| **From:** | Richard Strahan [esis@savespecies.com] |
| **Sent:** | Friday, August 05, 2005 10:19 AM |
| **To:** | George, Amy; Peter Borrelli |
| **Subject:** | Subpoena: Strahan v. Herzfelder |

4 August 2005

Amy George
Nixon and Peabody

Ms. George,

Your clients have made no offer to send me anything! They unilaterally
hung up during our conference call which only show their self-serving
animosity to the litigation because they are business partners with the
defendants. Nor have you offered me any kind of acceptable
"confidentiality agreement." CCS ' continuing hostility and refusal to
supply any of the requested documents is a matter of record. As of
this date I have nothing in writing from CCS or you in any way stating
a willingness to supply any of the documents requests in the subpoena.
The fact that CCS continues to refuse to supply a copy of a single
original digital image is well established, including by your own
statements to Judge Gorton. I have done more than most to breach this
impasse. I spent over two and a half hours on the phone two weeks ago
as an act of goodwill to get the CCS to provide a copy of anything
requested in the subpoena. The last thing I head from Borrelli just
before he unilaterally hung up on both you and me was a statement that
"CCS will not provide these documents." Its obviously time to accept
the reality that CCS is working with the defendants to insure that no
restraints on commercial fishing gear in order to protect whales are
imposed by the court.

On the confidentiality agreement that you offered me. I will not sign
any agreement in which I am forced to recognize that the sought for
pictures are owned by the CCS re lawfully copyrighted by it, which is
not true in both cases. The pictures are owned by NMFS and
Massachusetts. I will draft my own version of a confidentiality
agreement for CCS' consideration.

Obviously the CCS is unwilling to comply with the subpoena in any way.
Obviously the CCS sees itself as a political and business ally to
commercial fishing interests and the defendants. Be advised if the CCS
continues to aid the defendants I will seek to have CCS and Mayo added
as defendants NOT because they simply refuse to comply with the
subpoena but only because they are business partners with the
defendants.

You have to the close of business day on Monday to provide me in
writing a statement on whether CCS intends to comply with the
subpoena's request for document production on each of its specific
requests including the supplement. If I do not receive this from you I
will take your lack of response as CCS' de facto refusal to comply.
If CCS agrees to supply requested documents, then I will draft and
forward to you a confidentiality agreement for CCS approval. If CCS
agrees to this confidentiality agreement, then I will come by your
office and sign it and at the same time be given by you the copies of
the requested documents. You should actually try calling me to discuss
this further.

I am currently seeking a hearing on my motion for the court to enforce
my subpoena against the CCS. At the time of this hearing I will also be
asking the court to approve my request to add the CCS as a defendant.

1

```
In Peace,

Richard Max Strahan
617.233.3854

On Aug 5, 2005, at 8:50 AM, George, Amy wrote:

> Mr. Strahan --
>
> As previously communicated to you, Provincetown Center for Coastal
> Studies will not provide any additional photographs to you until such
> time as you sign the Use Agreement.  To date, I have not received a
> signed copy of the Agreement.  For your convenience, I once again
> attach
> the May 12, 2005 transmittal letter and Use Agreement for your review
> and signature.
>
>
> _____ __ __ ___
> Amy R. George, Esq.
> Nixon Peabody LLP
> 100 Summer Street
> Boston, MA  02110-1832
> Ph:   (617) 345-1143
> Fax:  (866) 829-3411
> Email:  ageorge@nixonpeabody.com
>
>
>
> This email message and any attachments are intended only for the use of
> the addressee named above and may contain information that is
> privileged
> and confidential.  If you are not the intended recipient, any
> dissemination, distribution, or copying is strictly prohibited.  If you
> received this message in error, please immediately notify the sender by
> replying to this email message and then delete all copies of the
> original message.  Thank you.
>
>
>
> -----Original Message-----
> From: Richard Strahan [mailto:esis@savespecies.com]
> Sent: Thursday, August 04, 2005 12:45 PM
> To: George, Amy
> Subject: Subpoena: Strahan v. Herzfelder
>
>
> 4 August 2005
>
> Amy George
> Nixon and Peabody
>
> Ms. George,
>
> I have attached the motion to compel that I filed with the court last
> friday. I have still not received the pictures of the right whale that
> you offered to serve on me as an act of good faith to show that the CCS
> was willing to comply with the subpoena.
>
> In Peace,
>
> Richard Max Strahan
> 617.233.3854
>
> <Strahan Letter and Use Agreement.PDF>
```