UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD MAX STRAHAN | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| ELLEN ROY-HERZFELDER, *et al.* | ) |
| | ) |
| Defendants | ) |

Civil Action No. 05-10140-NMG

## NEW ENGLAND AQUARIUM'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SUBPOENA AND IN SUPPORT OF CROSS-MOTION TO QUASH

Non-party New England Aquarium ("NEA") opposes the Motion for Protective Order *[sic]* to Enforce His Subpoena on Edmund Toomey and The New England Aquarium (the "Motion") filed by plaintiff Richard Max Strahan ("Strahan") and cross-moves for a protective order pursuant to Fed. R. Civ. P. 45, all for the reasons set forth below.

## FACTUAL BACKGROUND

NEA is a not-for-profit corporation organized under M.G.L. c. 180. On June 23, 2005, Strahan served a subpoena *duces tecum* upon NEA. On July 7, 2005, pursuant to Fed. R. Civ. P. 45(c)(2)(B), NEA served a written objection upon Strahan. A copy of NEA's objection is attached hereto as Exhbit A. Strahan then contacted NEA's attorney and stated that the Court had instructed him to confer about NEA's objection. Strahan scheduled a telephone conference to discuss NEA's objection. On July 22, 2005, Strahan and NEA began the discussion of NEA's objection. Almost immediately, however, Strahan began speaking vulgarly and NEA's attorney refused to proceed unless Strahan stopped doing so. Strahan

refused and NEA's attorney hung up.[1]  On August 8, 2005, Strahan served his Motion upon NEA.[2]

## Strahan's Prior Dealings with NEA

For many years, Strahan has harassed NEA, its employees, and its patrons.  Based on Strahan's vulgar and threatening comments, NEA obtained a permanent injunction barring Strahan from approaching within a specified area around the NEA aquarium in downtown Boston.  The Suffolk Superior Court has repeatedly held Strahan in contempt of that permanent injunction.  *See, e.g.,* selected docket entries in Suffolk Superior Court C.A. 93-05240, attached hereto as Exhibit B.  Strahan has failed to pay the sums the Superior Court ordered him to pay NEA.

Strahan has previously sued NEA (unsuccessfully), sought (unsuccessfully) to bring criminal charges against its employees, and alleged that it engages in the unlawful taking of endangered whales in violation of the Endangered Species Act and Marine Mammal Protection Act.  Strahan continues to threaten people associated with NEA.  Upon information and belief, a criminal action is presently pending in Boston Municipal Court based on Strahan's alleged threat to shoot a security guard working at the NEA aquarium, docket no. 0101CR004651.

## NEA's Research and Protection Efforts Concerning Whales

NEA scientists research and seek to protect various endangered marine mammals, including whales.  NEA scientists spend months each year doing fieldwork, publish peer-reviewed articles, and develop and carry out research projects on whales.  Affidavit of Amy Knowlton ("Knowlton Aff."), filed herewith, ¶¶ 2 – 5.  As part of these efforts, in 1986, NEA

---

[1] Strahan subsequently left NEA's lawyer two voice-mail messages, in which he indicated, *inter alia*, that he would serve additional, broader discovery on NEA.

[2] Strahan apparently filed his Motion with the Court on July 29, 2005 and represented that he had served it upon NEA on that day as well.

became a founding member of a cooperative right whale research program conducted by the University of Rhode Island, New England Aquarium, Center for Coastal Studies, Woods Hole Oceanographic Institution, and other organizations, the North Atlantic Right Whale Consortium (the "Consortium"). The Consortium, through the University of Rhode Island, maintains databases of right whale sightings (the "Sightings Database") and, through NEA, hundreds of thousands of photographs of right whales, including an electronic catalogue of identifying photographs of right whales (the "Catalogue"). Access to the Sightings Database is governed by a written Protocol for Data Access. Knowlton Aff., ¶¶ 9 – 10 and Exhibit 1.

**Strahan's Recent Efforts to Solicit Data from NEA**

In 2004 and 2005, Strahan has requested large amounts of information from NEA. In these requests, Strahan has attempted to portray himself as a fellow scientific researcher working alongside NEA's widely respected Dr. Scott Kraus and Amy Knowlton. Despite Strahan's history of litigious and obnoxious behavior with NEA, NEA provided much of the information Strahan requested. In April 2004, *e.g.*, Strahan sought a copy of the Sightings Database. After Strahan submitted the appropriate application, NEA produced the sightings database to Strahan. Knowlton Aff., ¶¶ 11 – 15. In April and May 2005, Strahan made a number of additional requests for photographs and information (backed up with threats to subpoena more materials) from NEA. In response, in May 2005, NEA also mailed the Catalogue to Strahan, as well as providing various other photographs and reports he requested. *Id.*

Strahan continued to demand information from NEA - - immediately and in precisely the format Strahan found convenient. Strahan repeatedly threatened to subpoena "more" documents unless NEA provided him the information he demanded. Knowlton Aff., ¶ 14.

3

•

Strahan views lawsuits,[3] and the subpoena that they entitle him to serve, as a weapon he can deploy when a non-party such NEA refuses to do his bidding. NEA already provided Strahan the bulk of material responsive to his subpoena; the remainder is in the possession of third-parties or so far removed from the subject of Strahan's complaint and so burdensome for NEA to produce as to justify a protective order. NEA's researchers undertake their own projects to study and protect endangered marine mammals, not to gather and collate information in formats demanded by Strahan. The Court should deny Strahan's Motion and reject his efforts to force NEA to perform research for him.

## ARGUMENT

### I.  STRAHAN DOES NOT ADDRESS ANY OF NEA'S OBJECTIONS.

NEA provided detailed responses to Strahan's subpoena. Of the twenty-one categories of documents requested, NEA answered that as to eight of them it had no responsive documents. As to the remaining thirteen categories, NEA provided specific objections, including that it had already produced the sightings database to Strahan and that his requests are unduly burdensome. As a non-party, NEA is entitled to protection from unduly burdensome requests. *See, e.g., Blount International, Ltd. v. Schuylkill Energy Resources Incorporated*, 124 F.R.D. 523, 526 (D. Mass. 1989) (when non-party target of discovery, requirement of necessity more strictly construed); *Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) (rule well established that non-parties enjoy greater protection from discovery than parties). *See also Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) (upholding district court's allowance of motion to quash based on undue burden

---

[3] In the Opposition filed in this Court by non-party Center for Coastal Studies ("CCS") in response to a similar motion to enforce subpoena filed by Strahan, CCS notes that Strahan has been a plaintiff in numerous cases filed in the various United States district courts. Strahan has also been a party in at least fifteen cases in Suffolk County Massachusetts alone.

compliance would impose on non-party). In his Motion, Strahan does not address any of NEA's objections. NEA therefore reviews Strahan's remaining categories of requested documents thematically.

### A. NEA Has Provided Thousands of Photographs of Right Whales to Strahan and Has No Obligation to Perform Further Research or Analysis for Him. (Requests 1, 2, 6, 18, 19)

In requests 1 - 2, Strahan directs NEA to select the "best original digital image files." In request 6, Strahan demands additional data about the photographs he seeks in requests 1 -2. NEA already produced the Catalogue to Strahan, a compact disc that it has prepared containing approximately ten images of between 250 to 300 right whales. In his Motion, Strahan provides no explanation as to why he requires any additional photographs from NEA.

The Catalogue that NEA already produced to Strahan contains approximately ten photographs that NEA believes best identify each right whale. Knowlton Aff., ¶ 14. Determining what is the "best" image of a right whale in some other sense would require NEA to review hundreds of thousands of photographs and then bring its expertise to bear in determining which are the "best" based on some unidentified additional criteria. NEA, a charitable organization that is not a party to this suit, does not have the ability to undertake this task, nor the obligation to put its expertise at Strahan's disposal. Amy Knowlton has estimated that merely to respond to request no. 2 would require NEA to expend over 500 hours. "A subpoena duces tecum is intended to require the production of designated documents; it is not designed to put the person subpoenaed to the expense of compiling information from his records or analyzing their content." 9A FEDERAL PRACTICE AND PROCEDURE, C.A. Wright, A. Miller (1995 & Supp. 2005) ("Wright & Miller"), § 2459, p. 53.

NEA generally does not possess the information requested in request 6, although it may have some of it for some photographs. But providing such information would itself require review of the same hundreds of thousands of photographs. Strahan provides no argument as to why he requires additional data or why NEA should be forced to undertake the Herculean task of reviewing 500,000 to 750,000 photographs from a more than 60 year period that he would impose upon it.

NEA already provided the computer database maintained by the Consortium, which Strahan seems to request in request 18. Knowlton Aff., ¶ 11. NEA does not possess a database of the sort requested in Request 19, other than the Sightings Database that NEA already produced to Strahan. NEA has no obligation and no ability to produce such a database.[4] *See, e.g.,* Wright & Miller, § 2459, p. 53.

Finally, even if Strahan could establish some necessity for requesting additional documents from NEA and also that their production would not be unduly burdensome (as he cannot), Strahan ignores the question of how he would pay NEA for the documents produced. Rule 45(c)(2)(B) provides that the a non-party shall not bear any "significant expense" in responding to a subpoena. Strahan has represented that he is indigent. Already, Strahan owes NEA money based on his contempt of court orders. Strahan ought not be allowed to force NEA to expend any funds responding to his subpoena when he himself refuses to pay court-ordered sanctions.

### B. Other Persons Control Documents Strahan Seeks. (Requests 3, 7, 8, 10)

In certain requests, Strahan seeks documents that he can obtain only or significantly more easily for others. As to Request 3, NEA has already informed Strahan that he has to

---

[4] Additionally, databases of whale sightings have no relation to Strahan's claims in this lawsuit, namely, that the defendants violate certain statutes by licensing certain types of fishing gear. *See* Section I.C below.

seek permission from the Consortium for this information.  Request 7 is so vague as to be unintelligible.  NEA informed Strahan that it does not have primary responsibility for whales entangled in fishing gear, request nos. 8 and 10, a task undertaken by the Center for Coastal Studies ("CCS").  Knowlton Aff., Exhibit 7.  Strahan has also subpoenaed documents from CCS, which has represented that it already provided Strahan with two CD-ROMS and hundreds of pages of hard-copy responsive material, which included CCS's Atlantic Large Whale Disentanglement Network on-line database.  NEA does not segregate material by communication with CCS or NOAA, and it would be a overwhelming burden for NEA to review all of its files, segregate them in this way, and then determine whether they contained any glancing reference to a whale entanglement.  The pointlessness of that burdensome task is heightened by the fact that CCS, the entity primarily responsible for resolving whale entanglement, already provided responsive documents to Strahan.

### C. Strahan's Requests Are Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence.  (Requests 4, 5, 20, 21)

All discovery, including Strahan's subpoena, is subject to Rule 26(b)(1)'s requirement that it must be "reasonably calculated to lead to the discovery of admissible evidence." Certain of Strahan's requests are entirely unrelated to a lawsuit involving the Commonwealth's decision to license certain types of fishing gear.  In request 4, Strahan seeks photographs and video images of a humpback whale in Boston Harbor.  There is no suggestion that that whale was entangled in fishing gear and no reason to put NEA to the time and expense of attempting to locate and reproduce such material unless Strahan can explain how it is reasonably calculated to lead to the discovery of admissible evidence, a daunting task in light of the allegations in Strahan's complaint.  For the same reason, NEA should not have to undertake a

7

search for correspondence with "employees of state and/or federal agencies" about that whale. Request 5.

Similarly, Dr. Scott Kraus is an NEA researcher. He holds a research permit issued by NOAA. It would be a substantial burden for NEA to identify documents "associated with the application and granting" of that permit, request 20, and the documents could have no bearing on Strahan's suit, which is ostensibly about Commonwealth agencies' decision to license certain types of fishing gear.

Finally, request no. 21 is so broad as to encompass hundreds of thousands of documents. NEA would have to undertake a massive research project reviewing books, articles, correspondence, and other materials to segregate responsive documents. To the extent that Strahan seeks documents about NEA's efforts to mitigate, such documents are confidential and proprietary information that is protected from disclosure to third parties.

## CONCLUSION

For all of the above-stated reasons, the Court should deny Strahan's Motion and allow NEA's Cross-Motion to Quash.

<div style="margin-left:40%">

NEW ENGLAND AQUARIUM
CORPORATION
By its attorneys,

 /s/Joseph F. Shea
Joseph F. Shea (BBO # 555473)
Young Paik (BBO # 660896)
Nutter, McClennen & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
617-439-2280

</div>

Dated: August 19, 2005

<u>Certificate of Service</u>

I, Joseph F. Shea, hereby certify that on this day a true copy of the above document was served upon the Plaintiff *pro se* by mail and upon all other parties by electronic filing.

/s/ Joseph F. Shea
Dated:  August 19, 2005

**EXHIBIT A**

.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD MAX STRAHAN                )
                                   )
            Plaintiff              )
                                   )
v.                                 )
                                   )    Civil Action No. 05-10140-NMG
ELLEN ROY-HERZFELDER, *et al.*     )
                                   )
            Defendants             )

## OBJECTION OF NEW ENGLAND AQUARIUM PURSUANT TO
## FED. R. CIV. P. 45(c)(2)(B)TO PLAINTIFF'S SUBPOENA

### General Objections

**A.**    New England Aquarium Corporation ("NEA") objects that the subpoena subjects it to undue burden.  NEA, a not-for-profit corporation, cannot review hundreds of thousands of photographs to make the subjective decisions plaintiff demands.

**B.**    NEA objects that the subpoena calls for it to disclose trade secret or other confidential research or development information.  NEA is a member of the so-called North Atlantic Right Whale Consortium Database, which consists of a sightings database and a catalog of photographs.  The catalog contains photographs of right whales dating back to 1935.  Materials in the catalog are provided to NEA from independent individuals and institutions.  Access to the catalog is determined according to a Protocol for Data Access.

**C.**    NEA objects that as a not-for-project corporation it cannot incur substantial copying costs.

## DOCUMENTS REQUESTED

### Request No. 1:

Ten of the best original digital image files of every Northern Right Whale sighted between 1999-2005.

### Response No. 1:

NEA objects that Request No. 1 is unduly burdensome and vague.

### Request No. 2:

Ten of the best original digital image files of each Northern Right Whale sighted entangled in fishing gear, stranded, or sighted injured in any way in the formal of the original captured digital images of the said which may be originally in RAW, JPEG, and/or TIF format.

### Response No. 2:

NEA objects that Request No. 2 is unduly burdensome and vague.

### Request No. 3:

Digital images of a Northern Right Whale and its calf-off the South Carolina coast seen earlier in 2005.

### Response No. 3:

NEA objects that Request No. 3 is unduly burdensome and vague. NEA objects that any such images in its possession are the property of a third-party.

### Request No. 4:

Digital images and video of a Humpback Whale repeatedly seen frequenting Boston Harbor in the spring of 2005.

### Response No. 4:

NEA objects that Request No. 4 is unduly burdensome, vague, and not reasonably calculated to lead to the discovery of admissible evidence.

### Request No. 5:

All correspondence between New England Aquarium ("NEA") and employees of state and/or federal agencies concerning this while that is the subject of item #4 and all reports and records generated from sightings of this whale.

**Response No. 5:**

NEA objects that Request No. 5 is unduly burdensome, vague, and not reasonably

calculated to lend to the discovery of admissible evidence.

**Request No. 6:**

For each of the digital images supplied pursuant to #1 and #2, I want to be supplied its associated metadata including the name of the photographer, the date and time of the capture of the digital image, the location of the digital image capture in longitude and latitude, the platform used to take the digital image, and the elevation in feet of the platform when the digital image was captured.

**Response No. 6:**

NEA objects that Request No. 6 is not a document request, but an interrogatory. To

the extent that Request No. 6 might be construed as a document request, it is unduly

burdensome and vague.

**Request No. 7:**

Relevant documents on the sighting and the actions taken by NEA personnel/employees after the sightings were made.

**Response No. 7:**

NEA objects that Request No. 7 is vague, overbroad, and unduly burdensome.

**Request No. 8:**

Correspondence between NOAA employees and employees the New England Aquarium concerning entangled, stranded, and/or otherwise injured whales sighted by anyone.

**Response No. 8:**

NEA objects that Request No. 8 is vague, overbroad, unduly burdensome, and not

reasonably calculated to lead to the discovery of admissible evidence.

**Request No. 9:**

3

Correspondence between NOAA employees and employees the New England Aquarium concerning Richard Max Strahan.

**Response No. 9:**

NEA has no documents in its possession, custody, or control responsive to Request No.

9.

**Request No. 10:**

Correspondence between NEA employees and employees of the Center for Coastal Studies concerning entangled, stranded, and/or otherwise injured whales sighted by anyone.

**Response No. 10:**

NEA objects that Request No. 10 is vague, overbroad, and unduly burdensome.

**Request No. 11:**

Correspondence between NEA employees and employees of the International Fund for Animal Welfare concerning Richard Max Strahan.

**Response No. 11:**

NEA has no documents in its possession, custody, or control responsive to Request No.

11.

**Request No. 12:**

Correspondence between NEA employees and employees of the International Fund for Animal Welfare concerning whales.

**Response No. 12:**

NEA has no documents in its possession, custody, or control responsive  to Request

No. 12.

**Request No. 13:**

Correspondence between NEA employees and employees of the Center for Coastal Studies concerning Richard Max Strahan.

**Response No. 13:**

NEA has no documents in its possession, custody, or control responsive to Request No.

13.

**Request No. 14:**

Correspondence between NEA employees and employees of the U.S. Coast Guard concerning whales and/or Richard Max Strahan.

**Response No. 14:**

NEA has no documents in its possession, custody, or control responsive to Request No.

14.

**Request No. 15:**

Correspondence between NEA employees and employees the State of Massachusetts concerning whales and/or Richard Max Strahan.

**Response No. 15:**

NEA has no documents in its possession, custody, or control responsive to Request No.

15.

**Request No. 16:**

Correspondence between NEA employees and employees the U.S. Navy concerning entangled, stranded, and/or otherwise injured whales sighted by anyone.

**Response No. 16:**

NEA has no documents in its possession, custody, or control responsive to Request No.

16.

**Request No. 17:**

Correspondence between NEA employees and employees the U.S. Navy concerning Richard Max Strahan.

**Response No. 17:**

NEA has no documents in its possession, custody, or control responsive to Request No.

17.

**Request No. 18:**

Computer database of all sightings of Northern Right Whales and associated metadata.

**Response No. 18:**

NEA objects that Request No. 18 is vague and unduly burdensome. NEA further objects that it has previously produced to Strahan a computer database of sightings of Northern Right Whales.

**Request No. 19:**

Computer database of all sightings of members of species of Whales and associated metadata.

**Response No. 19:**

NEA objects that Request No. 19 is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**Request No. 20:**

Documents associated with the application and granting of research permit to Scott Kraus by NOAA.

**Response No. 20:**

NEA objects that Request No. 20 is overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

**Request No. 21:**

Documents associated with mitigating the impact of fishing gear on endangered whales.

**Response No. 21:**

NEA objects that Request No. 21 is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

NEW ENGLAND AQUARIUM
CORPORATION
By its attorneys,

Joseph F. Shea (BBO # 555473)
Nutter, McClennen & Fish LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
617-439-2280

July 7, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of July 2005 I served a true copy of the above document upon plaintiff Richard Max Strahan at 928 Dorchester Avenue, #5, Boston, Massachusetts 02125 by first-class mail.

Joseph F. Shea

1444061.1

7

**EXHIBIT B**



**Trial Court Information Center**
Commonwealth of Massachusetts

Home  » County Inquiry » Civil Party Search » Search Results » Docket Details » Docket Entries » Entry Text

# New England Aquarium v Strahan et al

## Docket Entry Details for Docket: SUCV1993-05240

| No. | Docket Entry: |
|---|---|
| 1 | JUDGMENT ON COMPLAINT FOR CONTEMPT Judgment for the New England |
| 2 | Aquarium on its complaint of March 18, 1998, for civil contempt |
| 3 | against Richard Strahan. I punish Strahan by sentencing him to the |
| 4 | Suffolk County House of Correction for one (1) day. This sentence is |
| 5 | suspended for one year. I warn Strahan that this Court is retaining |
| 6 | jurisdiction of this case to prevent a loss of continuity in the |
| 7 | enforcement of the Court's orders. Moreover, I intend to impose |
| 8 | punishment for each future contempt, which is shown by the Aquarium, |
| 9 | in geometric progression. For example next contempt seven days, then |
| 10 | fourteen, thirty, sixty, one hundred and twenty, and finally one |
| 11 | hundred and eighty (APPROVED Volterra, J.) entered on docket pursuant |
| 12 | to Mass.R.Civ.P.58(a) and notice sent to parties pursuant to Mass.R. |
| 13 | Civ.P.77(d) |

**Docket Details:**   **Parties**   **Attorneys**   **Docket Entries**   **Calendar Events**

**Print Docket**

Massachusetts Administrative Office of the Trial Court
© Copyright, 2000-2001
» **Logout**

Terms of Use
System data reflects current activity.



## Trial Court Information Center
Commonwealth of Massachusetts

Home » County Inquiry » Civil Party Search » Search Results » Docket Details » Docket Entries » Entry Text

# New England Aquarium v Strahan et al

## Docket Entry Details for Docket: SUCV1993-05240

| No. | Docket Entry: |
|-----|---------------|
| 1 | MEMORANDUM of Decision and ORDER: for judgment on plff's complaint |
| 2 | fro civil contempt dated. It is ORDERED that judgment is to enter on |
| 3 | or after 4/10/00 on the NE Aqaurium's complaint for civil contempt |
| 4 | dated 5/13/99 (1) Judging the deft Richard Strahan, to be in civil |
| 5 | contempt of the judgment & permanent injunction of this Court entered |
| 6 | on the docket on 11/14/97; & (2) Ordering the deft to pay to the plff |
| 7 | $450.00 in attornet's fees & costs with payments of $75.00 of this |
| 8 | amount to be made on the first business day of each month for six |
| 9 | months, beginning 5/1/00, and ending 10/2/00. Payment is to be made |
| 10 | to the plff's counsel. (Margot Botsford, Justice) Notice sent 3/28/00 |

**Docket Details:**    **Parties**    **Attorneys**    **Docket Entries**    **Calendar Events**
**Print Docket**

Massachusetts Administrative Office of the Trial Court
© Copyright, 2000-2001
» **Logout**

Terms of Use
System data reflects current activity.

8/19/2005 1:11 PM