UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD MAX STRAHAN, <br><br> and <br><br> JEREMY SHUGAR, <br><br>   Plaintiffs <br><br> v. <br><br> ELLEN ROY-HERZFELDER, in her official capacity as Secretary of the Massachusetts Executive Office of Environmental Affairs, <br><br> DAVID M. PETERS, in his official capacity as Commissioner of the Massachusetts Department of Fish and Game, <br><br> and <br><br> PAUL DIODATI, in his official capacity as Director of the Massachusetts Division of Marine Fisheries, <br><br>   Defendants | Civil Action <br> No. 05-10140-NMG |

**STATE DEFENDANTS' OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

The Secretary of the Massachusetts Executive Office of Environmental Affairs, the Commissioner of the Massachusetts Department of Fish and Game, and the Director of the Massachusetts Divison of Marine Fisheries (together, the "State Defendants"), hereby oppose the motion of the plaintiff, Richard Max Strahan ("Strahan"), for a preliminary injunction. This

opposition is filed in anticipation of, and in conjunction with, the evidentiary hearing scheduled by this Court for July 21, 2006, at which Strahan will attempt to sustain his burden of demonstrating that a preliminary injunction should enter. For the reasons discussed herein, Strahan's request for a preliminary injunction should be denied.

## **Background**

This case is a follow-on action to similar litigation filed by Strahan against these same defendants almost a decade ago. In a 1996 action brought under the Endangered Species Act (the "ESA") and the Marine Mammal Protection Act (the "MMPA"), Strahan claimed that the State Defendants, as the state agencies responsible for licensing and permitting commercial fishing gear in Massachusetts state waters, had effected illegal takings of endangered whales to the extent that fixed fishing gear, deployed in state waters, had the capacity to cause such whales to become entangled in submerged lines, and to suffer potentially grave harm as a result. The United States District Court (Woodlock, J.) granted summary judgment in Strahan's favor on several counts of his complaint in that case, holding that Strahan had demonstrated that fixed fishing gear licensed by the State Defendants "had caused and is likely to continue to cause actual harm to endangered whales if such licensing continues." Strahan v. Coxe, 939 F.Supp. 963, 988 (D. Mass. 1996).

In that case, as here, Strahan sought a preliminary injunction in the form of an order effectively enjoining the State Defendants from issuing permits for the deployment of gillnets and fixed lobster traps in state waters. Id. at 991. The Court in the earlier case agreed that, where a showing has been made that an ongoing activity is likely to continue causing takings within the meaning of the ESA, some form of injunctive relief was appropriate, notwithstanding

federal courts' "traditional equitable discretion in injunction proceedings of balancing the parties' competing interests." Id. at 989, quoting National Wildlife Federation v. Burlington Northern Railroad, Inc., 23 F.3d 1508, 1511 (9th Cir. 1994). The Court declined, however, to order the wide-ranging injunction sought by Strahan, electing instead to fashion a remedy compelling the creation of an Endangered Whale Working Group tasked with making recommendations as to prospective steps the State Defendants could implement to reduce the future likelihood of whale entanglements in state-licensed fishing gear. As set forth in the Affidavit of Daniel J. McKiernan, filed herewith, the Endangered Whale Working Group ultimately produced such a plan, the components of which were approved by the Court. See McKirnan Affidavit at ¶¶ 6-12.

On appeal, the First Circuit specifically endorsed this approach. Noting that "a federal judge sitting as a chancellor is not mechanically obligated to grant an injunction for every fiolvation of law," the First Circuit affirmed that a district court confronted with an ongoing violation of the ESA "was not required to go any farther than ensuing that any violation would end," and pronounced itself "satisfied that the district court was aware of the need to curtail any violation and bring about the Commonwealth's compliance with the ESA and that its order adequately achieves those ends." Strahan v. Coxe, 127 F.3d 155, 171 (1997), quoting Tennessee Valley Authority v. Hill, 437 U.S. 153, 192 (1978).

In this present action, Strahan's allegations are essentially identical to those of his first suit. He once again claims that various species of endangered and protected whales have been, or are likely to become, entangled in fixed fishing gear permitted by the State Defendants for deployment in Massachusetts state waters, this time keying the time period of the actual

3

entanglements to the period after the entry of final judgment in the previous action (i.e., after 2002). He once again seeks preliminary injunctive relief against the State Defendants in the form of an order enjoining the State Defendants from further permitting of fixed fishing gear. The State Defendants oppose this request on the grounds that Strahan cannot demonstrate a likelihood of success on his claim of an ESA violation and, in the alternative, that any violation of the ESA that Strahan can make out does not necessitate the extreme form of injunctive relief that he seeks.

## ARGUMENT

**STRAHAN CANNOT MEET HIS BURDEN OF DEMONSTRATING THAT AN INJUNCTION BANNING THE PERMITTING OF FIXED FISHING GEAR SHOULD ENTER.**

In opposition to Strahan's request for a preliminary injunction, the State Defendants submit the affidavit of Daniel J. McKiernan ("McKiernan"), filed herewith. McKiernan is the defendant Division of Marine Fisheries' deputy director and its official most intimately familiar with the Commonwealth's large whale take-reduction efforts. In both his affidavit and his anticipated testimony at the July 21, 2006 hearing, McKiernan addresses the remediation plan approved by the Court in the 1996 litigation; the implementation of that plan; and subsequent actions the State Defendants have taken to further reduce the likelihood of whale entanglements in state waters.

As McKiernan states, the large whale conservation plan developed by the working group and approved by the Court incorporated several regulatory changes designed to reduce the likelihood of future entanglements. Specifically, the conservation plan, among other things: made lobster permits to fish in the Cape Cod Bay Critical Habitat from February 15 to May 15 of

each year (the season when large whales are most likely to enter inshore waters) conditional upon the fisherman's deployment of gear equipped with a 500-pound breakaway link; prohibited the use of floating ground line (i.e., the horizontal lines that connect lobster traps to each other) in all of Cape Cod Bay; implemented a regime of "dynamic gill net management" in Cape Cod Bay, which prohibits the use of untended gill nets in Cape Cod Bay when a specific quantity of large whales have been sighted there; instituted and funded an aerial surveillance program for whales in Cape Cod Bay; and mandated publication of annual reports summarizing the effectiveness of gear regulations. McKiernan Affidavit at ¶ 14.

Even after the conclusion of the earlier litigation, the State Defendants have continued to take regulatory steps to further reduce the likelihood of entanglements. Since 1997, the Division of Marine Fisheries has, among other thigns, implemented regulations: requiring break-away buoys and decreasing buoy line strength; streamlining the process for disentangling whales that are sighted in Massachusetts coastal waters; and putting into place a system of advisory warnings to notify fishermen and boaters of the presence of endangered whales in Massachusetts coastal waters. McKiernan Affidavit at ¶ 15.

As McKiernan notes in his affidavit, there is imperfect knowledge among biologists regarding the precise mechanics of how a whale becomes entangled in fixed fishing gear. McKiernan Affidavit at ¶ 13. It is clear, however, that a major risk factor for entanglement arises from the suspension of "floating ground line" -- i.e., the horizontal lines that connect multiple lobster traps -- in the water column. McKiernan Affidavit at ¶ 22. In response to this danger, the Division of Marine Fisheries has taken the unprecedented step of requiring all lobstermen using fixed gear to utilize sunken ground line (i.e., line that rests on the ocean floor)

5

to connect their lobster traps. McKiernan Affidavit at ¶¶ 23-24  This regulation, which will go into effect on January 1, 2007, will remove all horizontal lines from the inshore lobster fishery and will therefore, in McKiernan's opinion, dramatically reduce the likelihood of future whale entanglements in Massachusetts state waters.  McKiernan Affidavit at P 22.

In light of McKiernan's proffered testimony, the State Defendants submit that Strahan cannot sustain his burden of demonstrating a likelihood that he will succeed on his claim that the State Defendants' licensure of fixed fishing gear constitutes a violation of the ESA's proscription against the taking of endangered species in the territorial seas of the United States.  16 U.S.C. § 1538(a)(1)(B).  Moreover, even if such a facial violation of the ESA can be made out, this Court, sitting in equity, has the discretion to determine whether an injunction is appropriate under the circumstances and, if so, what the scope of that injunction should be.  See Strahan v. Coxe, 127 F.3d at 171.  In light of the steps the State Defendants have taken, and continue to take, to reduce the likelihood of takings of endangered whales in state waters, the State Defendants submit that no injunctive relief is appropriate in this case.

WHEREFORE, the State Defendants respectfully request that this Court enter an order denying Strahan's motion for a preliminary injunction.

    Respectfully submitted,

    ELLEN ROY-HERZFELDER, in her
    official capacity as Massachusetts
    Secretary of Environmental Affairs;

    DAVID M. PETERS, in his official
    capacity as Massachusetts Commissioner
    of the Department of Fish and Game;

    and

        PAUL DIODATI, in his official capacity
as Director of the Massachusetts Division
of Marine Fisheries

By their attorney,

THOMAS F. REILLY
ATTORNEY GENERAL


/s/Daniel J. Hammond
Daniel J. Hammond
Assistant Attorney General
Government Bureau
One Ashburton Place, Room 2019
Boston, Massachsuetts 02108
(617) 727-2200, ext. 2078

Date: June 30, 2006