UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD MAX STRAHAN       )
                          )
        Plaintiff         )
                          )
v.                        )       Civil Action No. 05-10140-NMG
                          )
STEPHEN R. PRITCHARD, et. al[1]  )
                          )
        Defendants        )
                          )

**DECLARATION OF DANIEL J. MCKIERNAN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS APPLICATION FOR A PRELIMINARY INJUNCTION**

Pursuant to 28 U.S.C. § 1746, I, Daniel J. McKiernen hereby declare under penalty of perjury as follows:

1. I am currently the Deputy Director for the Massachusetts Division of Marine Fisheries (*MarineFisheries*), Department of Fish & Game, Executive Office of Environmental Affairs.

2. I have been employed by *MarineFisheries* as a senior marine biologist for approximately 21 years.

3. During these 21 years my duties and responsibilities have included the development and adoption of marine fishery policies, management measures and *MarineFisheries* rules conserving endangered whales, including the northern right whale and the humpback whale, by requiring among other things that all persons permitted by *MarineFisheries* to harvest lobsters in Massachusetts coastal waters use only specially designed rope and buoys that are "whale-safer", i.e. fishing gear that minimizes the possibility of entangling whales.

4. In this regard, I work closely and cooperatively with experts from the National Marine Fisheries Service, National Oceanic and Atmospheric Administration,

---

[1] On July 12, 2005 Stephen R. Pritchard replaced Ellen Roy-Herzfelder as the Secretary of the Massachusetts Executive Office of Environmental Affairs.

United State Department of Commerce (*NOAA Fisheries*), who also conserve endangered whales pursuant to the federal Marine Mammal Protection Act and Endangered Species Act.

5.  Massachusetts was the first government, state or federal, to recognize the need to take immediate action to conserve the endangered northern right whale. As early as 1980 the Massachusetts Legislature designated the northern right whale as the official state marine mammal. G.L. c. 2, § 16. In 1985, the Massachusetts Governor signed into law Legislation to investigate and study the conservation needs of the northern right Whale, including initial funding of $50,000, the need for a population assessment, and for a conservation plan containing recommended conservation measures. Resolution 12 of the Resolves of 1985. In that same year defendant Department of Fish and Game (called the Department of Fisheries, Wildlife and Environmental Law Enforcement at that time) established a Right Whale Advisory Group composed of ten recognized experts in the field of marine biology and right whales, including Dr. Stormy Mayo from the Center for Coastal Studies, and Dr. Scott Kraus of the New England Aquarium. In 1987, the Right Whale Advisory Group filed with the Massachusetts Legislature a report on Right Whales in Massachusetts Waters which contained their findings, proposals and recommendations to protect the northern right whale. Shortly thereafter *MarineFisheries* implemented four of the five recommended conservation measures contained in the plan including: (1) promulgation of a rule establishing a 500 yard protective zone surrounding any northern right whale in coastal waters, prohibiting any vessel from entering or remaining within such a zone without a permit; (2) developing and distributing by mail to all commercial and recreational fishermen educational literature about the northern right

whale, the 500 yard protective zone, and actions that can be taken to minimize any risk of harm to these whales including gear entanglement; (3) a formal recommendation to all Massachusetts agencies with regulatory jurisdiction over ocean dumping to exercise their permitting authority in a manner which would prevent environmental impacts northern right whale habitat within Cape Cod Bay; and (4) investigating the need for a northern right whale critical habitat in Cape Cod Bay. (Attachments 1A to 1E).

6.  On September 24, 1996 the Federal District Court for the District of Massachusetts (Woodlock, J.) issued an Order which required the same Massachusetts agency officials that are named in the present suit to, among other things: (1) apply for an incidental take permit pursuant to the Endangered Species Act (ESA), 16 U.S.C. § 1539(a), from the National Oceanic and Atmospheric Administration, National Marine Fisheries Service (*NOAA Fisheries*); (2) apply for a permit pursuant to the Marine Mammal Protection Act (MMPA), 16 U.S.C. § 1387, to *NOAA Fisheries*; (3) "develop and prepare a proposal, to be submitted to the Court on or before December 16, 1996, to restrict, modify or eliminate the use of fixed-gear in coastal waters of Massachusetts listed as critical habitat for northern right whales"; (4) "convene an Endangered Whale Working Group to engage into substantive discussions with the Plaintiff, or his representative, as well as other interested parties, regarding modifications of fixed-fishing gear and other measures to minimize actual harm to Northern Right whales." (Attachment 2).

7.  In compliance with the Court's Order, the defendants applied to *NOAA Fisheries* for (1) a general incidental take permit under either section 7 or 10 of the ESA for northern right whales incidental to commercial fishing, and (2) a small take

authorization for northern right whales incidental to commercial fishing activities under the MMPA. (Attachments 3A to 3E).

8.  By letter dated May 28, 1996, NMFS stated that "it does believe it is appropriate to consider authorizing this activity through a permit application process… NMFS may issue authorizations for the incidental taking of endangered and threatened species under section 101 (a) (5) (E) of the MMPA upon its own initiative to fishers operating in commercial fisheries … NMFS does not consider it appropriate for a state … to apply … Therefore, an incidental take permit under section 10 is unnecessary." NMFS then "informed Massachusetts that it was inappropriate to proceed, as requested by Massachusetts, to process MMPA and ESA applications." (Attachments 4A to 4C).

9.  In compliance with the Court's Order, on November 4, 1996 the defendants established the Endangered Whale Working Group with its membership approved by the Court. I was appointed by the working group to act as its chairman.

10.  In further compliance with the Court's Order, on December 16, 1996 the defendants submitted a Conservation Plan for Massachusetts Waters to Minimize Entanglement Risk of Right Whales. (Attachment 5A to 5C).

11.  *MarineFisheries* has promulgated rules that formally adopted and implemented each and every recommended proposal contained in the conservation plan submitted to the Court on December 16, 1996. Specifically, *MarineFisheries* rules include the following measures that are effective in all Massachusetts coastal waters located within the *NOAA Fisheries'* Cape Cod Bay Critical Habitat for Northern Right Whales from January 1 through May 15 of each year, the period when Northern Right Whales are normally present in this area: (1) a complete ban on all gill net fishing; (2) a

prohibition on the use of any floating line between traps; (3) a prohibition on the setting of traps buoyed separately; (4) a requirement that all lobstermen use only multiple trap trawls; and: (5) a requirement that all lobster gear comply with a special gear marking scheme. (Attachment 6).

12. *MarineFisheries* adopted the additional protective measures described above after the Court conducted a hearing on the proposed measures on January 7, 1997 and found them acceptable. See Statement of Intentions and Update on Conservation Plan for Massachusetts Waters to Minimize Entanglement Risk of Right Whales. January 17, 1997; and Transcript of the Court's January, 1997 Hearing.

13. It is a common consensus within the industry that the sources of possible entanglements occur through three fishing practices: (1) the use of vertical lines to mark the trap's locations at the surface; (2) the use of floating ground lines to connect the traps; and (3) the use of gill nets in the off-season.

14. The Court approved a Settlement Agreement entered into between the state defendants, and the Conservation Law Foundation and Massachusetts Lobstermen's Association who intervened in the case. The Settlement Agreement addressed these 3 sources of entanglements, as well as other right whale conservation issues. In accordance with the agreement, *MarineFisheries* has promulgated the following regulations: (1) requirements that gear set in the Cape Cod Bay Critical Habitat during January 1 through May 15 be equipped with a 500 lbs. breakaway link; (3) the year-round prohibition of floating ground line in all of Cape Cod Bay: (4) agreement to request annual appropriations through FY 2006 to fund the aerial surveillance program and to support disentanglement programs; and (5) review annually the results of fishing

gear regulations to reduce the risk of entanglements and to publish a report on such findings. (Attachments 7).

15. *MarineFisheries* continues to develop and implement whale safe fishing gear even after the adoption of the 1997 regulations. The more protective regulatory measures adopted by *MarineFisheries* since January, 1997 for Northern Right Whales have several key components, including: (1) measures designed to reduce the likelihood of northern right whale entanglements in Massachusetts licensed fishing gear by requiring breakaway features on the buoy and adopting regulations which mirror the federal rules relating to decreasing buoy line strength; (2) measures designed to assist in the disentanglement of such whales in fishing gear in the event entangled whales are sighted in Massachusetts coastal waters; (3) a right whale guidance protocol to be followed by all vessels operated or contracted by the Commonwealth; (4) securing a Joint Resolution of Members of the Committee on the Environment of the Conference of New England Governors and Eastern Canadian Premiers for Northern Right Whale Protection; (5) establishment of a Right Whale Early Warning System that utilizes the immediate deployment of the New England Whale Disentanglement Network if any large whale is found entangled in fishing gear; and (6) implementing a system of advisory warnings notifying fishermen and boaters of the dates, times, locations and numbers of northern right whales when they are located in coastal waters. (Attachments 8A to 8E).

16. To achieve these regulatory goals, *MassFisheries* has in place two Northern Right Whale Surveillance Programs; a "Peak Season" Surveillance Program and an "Off-Season" Surveillance Program.

17.     Under *MarineFisheries'* current "Peak-Season" Northern Right Whale Surveillance Program, whale researchers from the Center for Coastal Studies ("CCS"), a contracted private marine mammal research organization in Provincetown, Massachusetts, conduct twice weekly Cape Cod Bay wide surveillance flights and one weekly vessel surveillance of the bay to monitor the presence of large whales in the bay and adjacent waters. The "Peak-Season" Northern Right Whale Surveillance Program includes aerial flights on almost a daily basis which allows for maximum sighting coverage. The "Peak-Season" Northern Right Whale Surveillance Program is conducted from January through May 15 of each year, and is a continuation of the Peak-Season Surveillance Program that *MarineFisheries* first commenced over the Cape Cod Bay Critical Habitat in March, 1996 with the assistance of the United States Coast Guard's Air Wing deployed at Otis Air Force Base.

18.     The Commonwealth also currently has in place an Off-Season Northern Right Whale surveillance program for the months of June to December of each year when Northern Right Whales are usually not present in Massachusetts coastal waters. Under the program, all mariners are requested to report sightings of Northern Right Whales and any entanglements in fishing gear to NMFS, the Commonwealth's Environmental Police, and CCS.

19.     The Commonwealth's Off-Season surveillance program has also been successful in protecting northern right whales and assisting the Commonwealth in developing further right whale protective measures.

20.     The sighting data that has been compiled confirms that although northern right whales use Massachusetts coastal waters from January through mid-May, after mid-

May of each year, northern right whale sightings in Massachusetts coastal waters are rare. northern right whales observed in Massachusetts coastal waters after mid-May do not spend an extended period of time in these waters - perhaps several hours or days at most.

21. According to a NMFS study, the most common point of attachment for right whales was the mouth (77.4%). For humpback whales, the most common point of attachment was the tail (53%) and the mouth (43%). The study concluded foraging whales become entangled with lines in the water column.

22. Floating ground line (lines connecting traps) constitutes a major threat to cause mortality or serious injuries to whales in nearshore and inshore waters. The recent prohibition of floating ground line by *MarineFisheries* will substantially reduce the risk of entanglements causing injury. I estimate that for lobster gear fished in known and expected large whale habitats, the effect of this rule will be a reduction of lines vulnerable to whales of 80% to 95%. In my opinion right whale entanglements in fishing gear are unlikely to occur in Cape Cod Bay due to the regulatory changes adopted by *MassFisheries*.

23. During 2004, *MarineFisheries* organized a line buy-back program for fishermen to replace their floating groundline inventory with sinking line. Consequently, nearly all Massachusetts lobstermen are currently fishing sinking groundline in state waters.

24. *MarineFisheries* has taken further action to protect whales by enacting a year-round prohibition on floating groundline in <u>all</u> state waters effective January 1, 2007. This state rule is far more protective than the current federal rules.

25. *MarineFisheries* produces an annual report on the status of the northern right whale including programs, plans, regulations, charts, photos, statistics and data relative to conservation efforts to protect the species. (Annual reports for 1997-2005 are attached as 9A to 9H).

26. Massachusetts remains a leader today and is in the forefront of the development and adoption of new whale safe gear technologies, new programs and the implementation of additional conservation measures for endangered whales that is recognized both nationally and internationally: "[t]the surveillance of Cape Cod Bay . . . in 1998 and 1999 during the peak season for right whales provided excellent sighting information and useful scientific data" on northern right whales." Conservation Law Foundation Status Report, at p. 1; "NMFS recognizes and appreciates the efforts of the Commonwealth of Massachusetts to protect the northern right whale." 59 Fed. Reg. 28801 (June 3, 1994); "Massachusetts laws have resulted in strong conservation measures for endangered marine animals … [B]etween [*NOAA Fisheries*] stewardship responsibilities and the [*MarineFisheries*] laws, it really makes sense for the federal and state government to team up and protect these animals." *NOAA Fisheries* letter to *MarineFisheries* (June 1966); acknowledging *MarineFisheries'* "… superb efforts to protect the right whales that use the essential habitat of Cape Cod Bay and local waters." Rossiter, William W., President, Cetacean Society International. Letter to Dan McKiernan. (16 April 2006); "[W]ith a tight timeline … the state moved far more quickly then the feds in implementing a [right whale conservation] plan. In fact, the feds incorporated some of the principles of the state's plan … Massachusetts fishermen have made more concessions to whale protection than any other state … [Massachusetts] has

been really proactive … in the lead in trying to get new things through." Johnson, Tora. Entanglement - The Intertwined Fate of Whales and Fishermen. Gainesville: University Press of Florida, 2005. (Attachments   , respectively).

Executed on June 30, 2006

Daniel J. McKiernan

Attachments 1A through 10A are a voluminous document. The original is being filed directly with the Court and being served by mail upon all parties.