UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD MAX STRAHAN                )
                                   )
              *Plaintiff*          )
                                   )   Civil Action No.
v.                                 )
                                   )   05 – 10140 - NMG
STEVEN PRITCHARD, Secretary        )
EXECUTIVE OFFICE OF ENVIRONMENTAL AFFAIRS)
                                   )
DAVID M. PETERS,  Commissioner     )
DEPARTMENT OF FISH AND GAME        )   31 July 2006
                                   )
PAUL DIODATI, Director             )
DIVISION OF MARINE FISHERIES       )
                                   )
              *Defendants*         )

_____

VERIFIED AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF AND REQUEST FOR A JURY TRIAL
_____

This an enforcement action — brought pursuant to the "citizen attorney general"

provision of Section 11(g) the Endangered Species Act ("ESA")[1] — for the Court to enforce the

Act's Section 9 take prohibitions against the Defendants to stop their further killing members of

endangered species of whales listed as protected under the Act incidental to the Lobster Pot

Fishery and the Gill Net Fishery {"Fixed Gear Fisheries") that are licensed and regulated by the

Defendants. The Plaintiff also seeks to reverse the enhanced threat of extinction facing these said

endangered species as a result of the Defendants accumulative past unlawful takings of them that

has been ongoing since at least the year the Act was adopted in 1973.  See 16 U. S. C. §1538(a

and g).  The Plaintiffs are seeking to have the Court order the Defendants in the future must

_____

[1] See 16 U. S. C. §§ 1531 *et seq*.

license only commercial fishing operation in U. S. coastal using fishing gear that has been pre-certified as Whale Safe[2] and that does not pose any significant risk of entanglement to endangered species of whales.

1.      This action is brought to protect the Plaintiffs and the Public's interest in the continued existence and rapid recovery from their endangered status of four endangered species of whales that have been designated as listed species under the ESA. These species of endangered whales currently inhabit the United States coastal areas under the concurrent state jurisdiction of Massachusetts. The four listed species of whale are the Northern Right Whale (*Eubalaena glacialis*); the Humpback Whale (*Megaptera novaeangliae*); the Fin Whale (*Balaenoptera physalus*); and the Blue Whale (*Balaenoptera musculus*) (collectively known henceforth as "Federally Protected Whales"). See 50 C. F. R. § 17.3.

2.      The Plaintiff is also seeking an order requiring the Defendants to fund proactive efforts to negate the current enhanced threat of future extinction inflicted on Federally Protected Whales ("Enhanced Extinction Threat") as a direct result of the Defendants reduction since 1973 of Federally Protected Whales remaining populations as a result of three decades of unlawful takings by the Gill Net and Lobster Pot Fisheries of the Defendants.  For example, the current size of the remaining population of the Northern Right Whale is much smaller than it would otherwise be without the Defendants three decades of unlawful killings of its members. As a direct result of the Defendants causing its current smaller population size that it otherwise would have been, the Northern Right Whale is afflicted with a permanent greater likelihood of

---

[2] "Whale Safe Fishing" is defined for purposes of the instant action as commercial fishing that is not expected to cause on an annual basis a single incident of entanglement of a listed species of endangered whale.

extinction from this fact alone. [3] This Enhanced Extinction Threat is a violation of Section 9 of the ESA in itself. The Plaintiff is asking the Court to order the Defendants to completely fund a pro-active recovery effort for individual Federally Protected Whale species that will artificially enhance the size of their remaining populations to the level that they would be expected to be at if not for the impact of the illegal killing and injury inflicted on them by the Defendants three decades of unlawful commercial fishing activity.

3.    Upon information and belief the Defendants have NOT been issued any permit by the National Marine Fisheries Service ("NMFS") to allow them to lawfully take any listed species of Endangered Whale.  Section 10 of the ESA provides for the issuing of permits to allow the incidental taking of listed endangered species of wildlife.

**Past Civil Action Against State Agencies for Similar ESA Claims**

4.     This is the second civil action that Strahan has commenced against the Defendants to stop them from licensing fishing gear that entangles endangered Federally Protected Whales in violation of the Section 9 prohibitions of the ESA. See _Strahan_ v. Coxe, 95-10927 –DPW (D. Mass. 1995). In that first civil action the court found the defendants liable for violating the take

---

[3] The Defendants unlawful killings have cause the current remaining populations of these endangered species to be smaller than they would have been had they not been subject to the Defendants unlawful "harvesting" of them. The Defendants reduction in the size of the remaining populations of endangered species of Federally Protected Whales has enhanced the likelihood of these species going extinct and prevented any possible recovery form their endangered status that they would have achieved without the adverse impact of the Defendants' unlawful takings of their members. The "small population" effect in conservation science asserts that the smaller a population becomes its chances of extinction rise exponentially. Even if the Court enjoins the Defendant from further killings of the said endangered species, the enhanced threat of extinction that the Defendants created by depleting these populations for years remains and therefore the Defendants continue to inure the Plaintiffs. To correct the Defendants' "enhanced threat of extinction" injury of the Plaintiff requires the proactive efforts to artificially increase the size of the depleted populations to at least the level that they would be absent the Defendants unlawful takings. The Plaintiff seeks an order requiring the Defendants to pay for these proactive efforts.

prohibitions of Section 9 of the ESA by licensing and regulating commercial fishing gear that kill, injures and otherwise entangles Federally Protected Whales. Despite finding liability, that court failed to issue any order that requiring even the slightest curtailment of the Defendants commercial fishing activities. Upon the request of Strahan it issued a an interlocutory order meant to only encourage the Defendants to voluntary amend its fisheries regulations for the *purpose* of reducing the likelihood of only Northern Right Whales becoming entangled in fishing gear.[4]  See *Strahan v. Coxe,* 939 F. Supp. 963 (D. Mass. 1996), aff'd in part and vacated in part, *Strahan v. Coxe,* 127 F. 3d 155 (1st Cir. 1997), cert. denied *Coates v. Strahan*, 525 U. S. 978 (1998); *Strahan v. Linnon*, 967 F. Supp. 581 (D. Mass. 1995)**.** The *Strahan* court refused to issue an order that in any way required that its defendants restrain or amend its ongoing marine fisheries activities. After that court also refused Strahan any opportunity for discovery and then stayed the proceedings for a year to specifically allow the interveners and the defendants to engage in settlement talks.

       5.      Because the *Strahan* court decided to not give Strahan the relief he was seeking and refused to continue to let him prosecute his claims, Strahan was forced to withdraw from that

---

[4] Violation of the 10th Amendment was a very real issue to the *Strahan* district court. It was keenly aware that it could not order the state to *regulate* its fisheries in accordance to the needs of the ESA It could only enjoin the state's licensing of fishing gear. That court declined to in any way enjoin the state's commercial fisheries. It only issued an interlocutory procedural order compelling the state to *consider* fisheries regulations for the purpose of reducing the fisheries likelihood of entangling just one species of whale — Northern Right Whales. It ignored the rest. The First Circuit in its *Strahan* decision opined what interlocutory relief was ordered by the district court:

> "The district court did not order the Commonwealth to ban gillnet and lobster pot fishing although the defendants incorrectly, and repeatedly, so claim throughout their brief.   Rather, the injunction ordered the Commonwealth to consider means by which gillnets and lobster pots may be modified in order for the Commonwealth to avoid authorizing takings in its coastal waters in violation of federal law.   *The injunction did not order specific modifications, let alone ban the licensure scheme*. Indeed, the court's order did not even command the Commonwealth to restrict its permitting process in any way. " *Id* at 168.

suit without obtaining any of the relief he sought.[5] In 2001 the defendants entered into a settlement agreement with the Trojan-Horse intervener-plaintiff. That plaintiff-intervener then simply dismissed its claims with prejudice against the defendants and the defendant-intervener. That court did not approve the dismissal nor did it issue any kind of final judgment .The action was terminated with no permanent order arising from that court.

6.    The claims of the Plaintiff in the instant action are based on the continuing and recurring said violations of the Defendants that continue through to 2006. The prospective injunctive relief requested by the Plaintiff is intended to stop the expected violations of the Section 9 prohibitions of the ESA by the Defendants in the immediate future. The Plaintiff refers to previous violation by the Defendants prior to 2002 as evidence of historical continuing violations by the Defendants of the Section 9 prohibitions of the ESA in regards to its Fixed Gear Fisheries killing, injuring and otherwise entangling Federally Protected Whales.

**Events between 2001 through 2006 that Give Rise
to Strahan's Claims Against the Defendants**

7.    Since the termination of *Strahan* the Defendants in each of the years from 2002 – 2006 have annually issued thousands of new permits to individuals to deploy Fixed Fishing Gear into U. S. coastal waters pursuant to its marine fisheries regulations. Between 2001 and 2006, the Defendants have also adopted new regulations to regulate their Lobster Pot Fisheries and Gill

---

[5] Strahan moved for voluntary dismissal under Rule 41(a) of the Fed. R. Civ.Proc. of his ESA claims and the Strahan court then dismissed his claims with prejudice.  Strahan claims that he is in no way restricted from fully prosecuting the Defendants for their ongoing and recurrent violations of the Section 9 take prohibitions of the ESA despite the said prior dismissal of his claims with prejudice. Because the instant action challenges ongoing *ultra vires* conduct by the Defendants and because the Strahan court did not full adjudicate his ESA claims against the Defendants in the *Strahan* suit, Strahan is in no way barred by res judicata or any collateral estoppel from fully prosecuting the Defendants in the instant action for their ongoing and recurrent entangling of Federally Protected Whales in their marine fisheries in violation of the Section 9 prohibitions of the ESA.

Net Fisheries. These new regulations have not diminished— and in fact they have increased — resulted the number of Federally Protected Whales being continually entangled, killed and/or injured in the Fixed Fishing gear being licensed and regulated by them. <u>See</u> 322 C. M. R. §§ 4, 6 and 8.

8.      Recently, the NMFS and Massachusetts Division of Fish and Wildlife (MDFW) have entered into an ESA Section 6 cooperative agreement ("Cooperative Agreement") to have the MDFW assume management and enforcement responsibilities for NMFS in regards to Federally Protected Whales in Massachusetts' coastal waters. Pursuant to the Cooperative Agreement Massachusetts formally agrees to support the federal regulatory scheme for the conservation and protection of endangered species of wildlife as established by the ESA. The Agreement does not allow MDFW to authorize the taking or issue permits. It does require that the MDFW enforce the Section 9 take prohibitions and manage coastal activities under state law to insure the protection and recovery of Federally Protected Whales.[6]

9.      In violation of the Cooperative Agreement, the MDFW is allowing the Defendants through the Massachusetts Division of marine Fisheries ("MDMF") on its own to request and obtain funds from the federal government that are supposed to only go to state agencies that are the signors of ESA Section 6 cooperative agreements — which in this case is the MDFW. Since 1997, the MDMF has unlawfully obtained millions of dollars in ESA Section 6 cooperative agreement funds that it is not eligible to obtain and that should have gone to MDFW and its Natural Heritage Program to fund conservation programs for state listed

---

[6] The Cooperative Agreement with NMFS means that Massachusetts has adopted the federal regulatory scheme for endangered species as established by the ESA and agrees to be regulated under its terms. This means that Massachusetts waives and 10th or 11th Amendment restraints on being sued under the ESA and being ordered to regulate its marine fisheries in support of the requirements of the ESA.

endangered wildlife. The funds have been completely squandered by MDMF only useless projects that have in no way benefited the conservation of Federally Protected Whales. Instead have been used to pay off third party conspirators to assist the MDMF in evading enforcement of the Section 9 tale prohibitions of the ESA.

10.     In 2006, The Defendants are licensing more Fixed Fishing Gear in Massachusetts' coastal waters then they were in 2001.  In 2006, Federally Protected Whales continue to repeatedly become entangled in the Fixed Fishing Gear that the Defendants' license and regulate. There is no question that at the present time Northern Right Whales, Humpback Whales and the other Federally protected Whales continue to be entangled by Fixed Fishing Gear licensed and regulated by the Defendants.

11.     On 4 January 2006, NMFS published its List of Fisheries ("LOF ") for 2006 in the Federal Register. See 71 FR 247. Both the Massachusetts Gill Net fishery and its Lobster Pot Fishery are designated as a Category I fishery pursuant to the 2006 LOF. The 1994 Amendments to the Marine Mammal Protection Act require that the NMFS compile an annual LOF of marine commercial fisheries licensed by NMFS and to categorize each of these fisheries in regards to the number of incidents of marine mammals being killed and/or seriously injured by these fisheries as a result of entanglement.  16 U. S. C. § 1383a and 50 C. M. R. § 229. A "Category I" fishery in respect to a marine mammal species is defined as a commercial fishery where by 16 U. S. C. § 1983a as —

> "Annual mortality and serious injury of a stock [specific population of mammals] in a given fishery is greater than or equal to 50 percent of the [its] PBR level."[7]

---

[7] "PBR (Potential Biological Removal) level" is defined as: "Potential biological removal level means the maximum number of animals, not including natural mortalities, that may be removed from a marine mammal stock while allowing that stock to reach or maintain its optimum sustainable population. The potential biological removal level is the product of the following

12.     On 10 January 2002 NMFS adopted an Atlantic Large Whale Take Reduction Plan ("ALWTRP") pursuant to the requirements of the MMPA. <u>See</u> 67 FR 1300. This plan is implemented as regulations governing the Atlantic northeastern Lobster Pot Fishery and the Gill Net fishery as Category I fisheries. <u>See</u> 50 C. F. R. § 229.  The Defendants Fixed Gear Fisheries are regulated by these regulations as a matter of law. Fixed Gear fisheries as regulated by the ALWTRP routinely and repeatedly entangle Federally Protected Whales resulting in the killing and injuring of these listed endangered species. The Defendants Fixed Gear Fishery therefore entangled Federally Protected Whales on a repeated basis in 2006 and will continue to do so into the indeterminate future.

13.     Since the published decision in *Strahan*, NMFS has turned primary management responsibility for federal management of Lobster Pot Fisheries on the Atlantic coast to the interstate Atlantic States Marine Fisheries Commission that has since adopted an "Interstate Fishery Management Plan for the American Lobster" ("IFMPAL"). The IFMPAL was subject to an ESA Section 7 review by NMFS in 2002.  <u>See</u> 16 U. S. C. § 1536(a).  On 21 October 2002, NMFS issued its formal Biological Opinion on the IFMPAL and the IFMPAL became effective some time after that date. On 27 March 2003, NMFS published a notice in the Federal Register announcing a final rule adopting a further revised version of the IFMPAL. <u>See</u> 68 FR 14902. Lobster Pot Fisheries as regulated by the IFMPAL routinely entangle Federally Protected Whales. Therefore the Defendants Lobster Pot Fishery repeatedly entangles Federally Protected Whales — killing and injuring them in the process — and will continue to do so into the indeterminate future.

---

factors: (1) The minimum population estimate of the stock; (2) One-half the maximum theoretical or estimated net productivity rate of the stock at a small population size; and (3) A recovery factor of between 0.1 and 1.0." 50 C. F. R. § 229.2,

14.     Pursuant to the 1994 Marine Mammal Protection Act, NMFS is required to prepare annual "Stock Assessment Reports" ("SAR") assessing the biological status of the separate geographic populations all marine mammal species under its prevue including an annual accounting for the historical killing and serious injuring of the animals in these populations from interaction with state and federal commercial fisheries. It also provides an assessment for the current annual rate of killing and serious injury of specific marine mammals populations from known reported entanglements with fishing gear. The NMFS' 2005 SAR for the Northern Right Whale states that, "[f]urther research using the North Atlantic Right Whale Catalogue has indicated that, each year, between 10% and 28% of right whales are involved in entanglements. " The majority of these incidents of entanglements must be attributed to the Fixed Gear Fisheries of the Defendants and Maine. The 1995 Right Whale SAR goes on to state that, "[g]iven that PBR has been set to zero, no mortality or serious injury for this stock can be considered insignificant." The NMFS 1995 SAR also cites a figure of 1.6 annual incidents of serious injury and/or mortality from Fixed Fishing Gear on Northern Right Whales and 2.8 said incidents per year on Humpback Whales. It also cites that the allowable PBR as determined by NMFS for Northern Right Whales is zero and for Humpback Whales is 1.3. More Northern Right Whales and Humpback Whales are being killed and injured from fishing gear than can be sustained by their remaining populations and have these populations capable of growing and increasing in order to recover these species from their listed endangered status.

15.     Inshore state licensed Lobster Pot Fisheries account for eighty percent of all Lobster Pot Fishing effort off the U. S. Atlantic coastline. Both Massachusetts and Maine Lobster Pot Fisheries constitute the majority of all inland state licensed Lobster Pot fishery activity in the Atlantic Ocean. Therefore, as a matter of sheer probability that any observed

entanglement of a Federally Protected Whale in Lobster Pot gear along the Atlantic U. S. coast

was gear licensed and regulated by wither Maine or the Defendants in Massachusetts.

The 2005 SAR for the Northern Right Whale reports the sighting of an entangled whale

(#3107) in Cape Cod bay in Massachusetts in 2002. This was a very serious entanglement. In

2004 the whale was re-sighted still entangled. In 2005 it was discovered dead on a Virginia

beach. The entanglement in the Defendants' Lobster Gear was found to be the cause of its death.

The 2005 SAR for the Humpback Whale lists a dead whale found entangled by a Gill Net on the

beach at Plymouth MA on 1 October 2002. The necropsy report adopted by NMFS cites the

cause of death of the whale as the entanglement by the Gill Net. The fishing gear involved in

both these cited incidents was Fixed Fishing Gear licensed and regulated by the Defendants.

16.    On 21 June 2006, NMFS once again published a proposed a new ALWTRP

because of the failure of the 2002 ALWTRP to stop the killing and serious injury to Northern

Right Whales from entanglement in Fixed Fishing Gear.  See 70 FR 35894 *et seq*. In it notice

NMFS described the death of a female Northern Right Whaler in lobster gear consistent with that

licensed and regulated by the Defendants —

> "In 2002, eight right whales were observed entangled after implementation of the
> RPA ["reasonable and prudent alternatives" that were recommendations pursuant
> to the ESA Section 7 consultation] measures. One of the eight, a female right
> whale born in 2000 (RW #3107), had line with an attached buoy wrapped around
> and cutting into her tailstock. Several disentanglement attempts were made and
> she was subsequently freed of the gear. The recovered gear was examined to
> obtain further information on the entanglement event. NMFS could not positively
> identify the fishery or owner of the gear. However, based on the examination,
> NMFS concluded that the gear was consistent with that used in the *inshore* lobster
> trap fishery. " *Id*. at 35895.

17.    On 16 February 2006, NMFS published an emergency rule in the Federal Register

shutting down for the rest of 2006 the southeast Atlantic Gillnet Fishery because a baby Northern

Right Whale was killed from a Gillnet entanglement in that fishery earlier in 2006.  Closed the

southeast gill net fishery. See 71 FR 8223. The Gillnet in question is identical to the Gillnets licensed and regulated by the Defendants that still entangle, kill and/or injure Federally Protected Whales in Massachusetts' coastal waters in 2006.

### No Question that the Defendants are Currently Taking Federally Protected Whales in Its Fixed Gear Fishery

18.    There is no question that Federally Protected Whales are currently entangled by Fixed Fishing Gear licensed by the Defendants in Massachusetts' coastal waters.  The NMFS 2006 LOF claims that Eighty percent of all Lobster Pot fishing is inshore and state regulated. The Lobster Pot fisheries of Maine and Massachusetts represent the majority of the state regulated Lobster Pot fishing.  The federal Lobster Pot fishery accounts for a fractional part of Lobster Pot fishing along the Atlantic coast.

19.    Pursuant to its 2002 ALWTRP, in 2006 NMFS on at least six occasions closed areas along the northeast U. S. coastline to Fixed Fishing Gear that is equivalent to that licensed by the Defendants in order to prevent the entanglement of Northern Right Whales in said Fixed Fishing Gear: 1 February 2006 at 71 FR 5180, 8 February 2006 71 FR 639616, February at 71 FR 8223, Twice on 6 April 2006 at 71 FR 17358 and 17360, and 17 May 2006 at 71 FR 28587.

20.    The Defendants on 25 April 2006 issued a "right whale advisory" to warn commercial fisherman that they license to use Fixed Fishing Gear that there was "aggregations" of Northern Right Whales in Cape Cod Bay. In doing so the Defendants themselves recognized that the Fixed Fishing Gear that they license poses a clear and present danger to entangle federally protected Whales to the present day.

### Defendants Practice Evasion of the ESA and Not Conservation as Required by the Act

21.    The Defendants have consistently refused to regulate their Fixed Gear fisheries to make them Whale Safe. The deliberate refusal to change has resulted in them not pursuing

technologies and engineering initiatives that would have yielded effective solutions. As a result, they have no technological fix available to them. This deliberate "painting themselves into a corner" has further inspired them to evade the ESA. Since before 2001 the Defendants have also engaged in a scheme with the Center for Coastal Studies ("CCS") in Provincetown, MA to evade possible sanctions imposed by Section 9 of the ESA for their Fixed Gear fisheries and to evade any need to alter their current fisheries practices. The Defendants have decided not to comply with the Act's prohibitions but to evade them.  CCS has entered into this partnership with the Defendants in order to assist the Defendants in the licensing and regulation of commercial fishing that kills, injures and otherwise takes listed species of endangered wildlife in violation of Section 9(a and g) of the Act.  The CCS is currently a business partner of the Defendants. The Defendants pay the CCS millions of dollars to openly support their ongoing entanglement of Federally Protected Whales There is no question that if it were not for the unlawful support of the CCS in assisting them in evading the enforcement against them of the protective provision of the ESA, Federally Protected Whales would no longer be entangled by Fixed Fishing Gear licensed and regulated by the Defendants.

22.     An essential part of the conspiracy between CCS and the Defendants is to get the Court and the Public to ignore the entanglement of Federally Protected Whales, by focusing only on the entanglements of the Northern Right Whales. The CCS attempts to place the imprimatur of scientific legitimacy on this scheme by directly supporting the "conservation efforts" of the Defendants as adequate. The CCS also deliberately fails to report any entanglement of Northern Right Whales and other Federally Protected Whales in Massachusetts' coastal waters in exchange for the Defendants funding them to conduct aerial and shipboard surveys of Massachusetts' coastal waters.  As part of the their scheme the Defendant entered into a

contractual agreement with the plaintiffs-interveners in *Strahan* in 2001 as part of a settlement agreement to give millions of dollars to CCS for it to do the said aerial and shipboard surveys for Northern Right Whales in Cape Cod Bay. This contract itself constitutes a violation of the Section 9 take prohibitions of the ESA. As a result the Defendants have spent millions of dollars since 1997 on CCS to do sighting surveys in Cape Cod Bay without "seeing" a single entangled Northern Right Whale in Massachusetts coastal waters and without any resulting disentanglement of it.  Instead of spending millions of dollars of taxpayer money to protect whales from their Fixed Gear Fisheries, the Defendants have spent it to cover up their ongoing killing and injuring of Federally Protected Whales with the aide of their co-conspirator the CCS.

### The Defendants Lobster Pot and Gillnet Fisheries

23.     Massachusetts state law prohibits the deployment of commercial fishing gear in United States coastal waters under its concurrent state jurisdiction without first obtaining a license from the Defendants and the Massachusetts Division of Marine Fisheries. Massachusetts state law and the regulations adopted by the Defendants under their state regulatory authority mandate that the type of fishing gear deployed by individuals.  See 322 C. M. R. §§ 4, 6, and 8. These requirements result in licensing of fishing gear that is of a character that causes it to routinely kill and injure Endangered Whales and Endangered Turtles by entanglement.

24.     The most deadly type of commercial fishing gear for Federally Protected Whales licensed by the Defendants are Gill Nets and Lobster Pot Gear ("Fixed Fishing Gear"). Fixed Fishing Gear causes the majority of unlawful entanglements inflicted on Endangered Whales and Turtles by the Defendants.  The individual licensees of the Defendants who actually deploy Fixed Fishing Gear and other types of entangling fishing gear into U. S. coastal waters are the official agents of the State Defendants. Both they and the Defendants are liable under Section 9

of the ESA for the unlawful taking of Federally Protected Whales by entanglement caused by the their commercial fishing gear deployed in U. S. coastal waters under license and permit by the State Defendants.

25.    When Federally Protected Whales become entangled in fishing gear, the gear routinely digs into the flesh of the whale causing tissue injury and blood loss in even the most trivial level of entanglement.  Vertical buoy lines used in Fixed Fishing Gear are a significant source of entanglement of Endangered Whales and Turtles. These lines are vertically suspended in the water column for hundreds of feet. They are fixed in place by a heavy anchor and remain in any location for months at a time. These lines are made of plastic and have an extremely rough surface that is ideal to ensure knotting and entanglement of endangered whales.  To become entangled in a vertical buoy line, a Federally Protected Whale has merely to brush by a vertical buoy line to have it wrap around its flipper and "knot" into place. Gill Nets are vertical walls of plastic mesh that stretch out for miles and are anchored to the sea floor with vertical buoy lines and are left unattended for days in a row. All manner of marine wildlife including Federally Protected Whales routinely run into Gill Nets, become entangled, and horribly die. Gill Nets are inherently dangerous to Endangered Whales and Turtles and cannot be used in any form in whale habitat without causing the death and injury of Endangered Whales and Turtles.

26.    Most of Cape Cod Bay has been listed by NMFS as designated critical habitat for the Northern Right Whale pursuant to the provisions of Section 3 of the ESA. The deployment of commercial fishing gear into the area of Cape Cod Bay designated under the ESA as critical for the survival of this whale species adversely impacts this marine environment and in so doing reduces the ability of the Northern Right Whale to thrive and recover from its endangered species habitat.  All this commercial fishing gear transforms Northern Right Whale critical

habitat into a "death trap" for these endangered whales. The mere physical placement of this Fixed Fishing Gear in Northern Whale critical habitat in Cape Cod Bay — and the vessel operations that place and maintain it — harass and interfere with the feeding and movement of Northern Right Whales and other Federally Protected Whales in this area. Over one million pieces of Fixed Fishing Gear are annually deployed into Northern Right Whale critical habitat in Cape Cod Bay by agents of the Defendants.  The Defendants are adversely altering the listed critical habitat of the Northern Right Whale in a manner that results in the death or injury of whales.

27.    This instant action was brought out of necessity by Strahan as a "citizen attorney general" to enforce the Section 9 take prohibitions against the Defendants their commercial Fixed gear Fisheries. The Defendants do not impose any requirement that the Fixed Fishing Gear that they currently license and regulate must be "Whale Safe" before actually licensing its deployment by commercial fisherman. NMFS and the U. S. Coast Guard ("USCG") have abrogated their mandatory and non-discretionary authority to enforce the Section 9 take prohibitions of the ESA. Both of these federal agencies are given by Congress the necessary authority and non-discretionary mandate to independently enforce the Section 9 take prohibitions of the ESA pursuant to Section 11(e) of the Act. *Id* at 1540(e). Both the NMFS and the USCG refuse — and have done so since the beginning of the Act — to enforce the Section 9 take prohibitions of the ESA against individuals entangling whales and sea turtles through commercial fishing activity licensed by state agencies or licensed by NMFS itself. The NMFS and the USCG has never issued even a single civil citation to any commercial fisherman whose fishing gear entangled an endangered whale or sea turtle.  Further, the National Marine Fisheries Service currently and historically violates the Section 9 take prohibitions of the ESA by itself

licensing and regulating the deployment of commercial fishing gear in U. S. coastal waters that routinely kills and injures Endangered Whales Turtles by entanglement.  NMFS and the USCG have never notified any state government that its commercial fishing activities that entangle Federally protected Whales is unlawful or advised them in any manner on how to make their state authorized commercial fisheries Whale Safe.

**Parties**

28.     Plaintiff Richard Max Strahan ("Strahan") is a citizen of the United States, a conservation biologist, and also serves as the National Campaign Director for GreenWorld; an environmental movement that seeks to implement conservation plans for endangered species of wildlife. His business address is Suite 195, 236 West Portal Avenue, San Francisco CA 94127.

29.     Defendant Pritchard is a citizen of the United States. He is being sued in his official capacity as the Secretary of the Massachusetts Executive Office of Environmental Affairs. The address of his place of business is % the Massachusetts Executive Office of Environmental Affairs, 100 Cambridge Street, Boston MA 02108.

30.     Defendant Allen is a citizen of the United States. He is being sued in his official capacity as the Commissioner of the Massachusetts Department of Fisheries and Game. The address of his place of business is % the Massachusetts Department of Fisheries and Game, 100 Cambridge Street, Boston MA 02108.

31.     Defendant Diodati is a citizen of the United States. He is being sued in his official capacity as the Director of the Massachusetts Division of Marine Fisheries. The address of his place of business is % the Massachusetts Division of Marine Fisheries, 100 Cambridge Street, Boston MA 02108.

**Jurisdiction and Standing**

32.     The Court has jurisdiction over the subject matter of this action by virtue of 28 U.

S. C. § 1331 (action under the laws of the United States); 16 U. S. C. § 1540(c) (action arising

under the ESA); 16 U. S. C. § 1540(g) (citizen suit provision of the ESA) and Declaratory

Judgment Act 28 U. S. C. §§ 2201-2202 (power to issue declaratory judgment). Pursuant to

Section 11(g) of the ESA, the Plaintiffs have previously sent written notice to each of the State

Defendants — and the Secretary of the Department of Commerce and its infra-agency NMFS —

informing them of his intent to bring suit against the Defendants if they do not voluntarily stop

their said unlawful takings of listed endangered species. None of the State Defendants has

responded to the Plaintiffs' notices and they continue to the present day their unlawful said

activities. The NMFS has informed the Plaintiffs that it has no intention of enforcing the ESA

Section 9 take prohibitions against state commercial fisheries.  The Plaintiffs has also served the

State Defendants with the requisite notice of intent to bring an action against them pursuant to

the Massachusetts Torts Act.

33.     The Plaintiff has standing to bring the instant civil action owing to their extended

history of researching and developing conservation plans for species of Federally Protected

Whales. The Plaintiff is an avid whale watcher.  Courts have repeatedly found Strahan to have

standing to act as a "citizen attorney general" and to bring civil actions under the ESA to enforce

the take prohibitions of the ESA in order to protect listed species of Federally Protected Whales

from unlawful takings in the Atlantic Ocean.

**Plaintiffs' Claims Against the Defendants**

**Count I**:    Violation of Section 9(a and g) of the Endangered Species Act:  the
Defendants' Killing, Injuring and Otherwise Unlawful Taking of Northern
Right Whales

34.    Plaintiff re-alleges and incorporates herein by reference each and every allegation
contained in paragraphs 1 through 33 of this Complaint.

35.    The Defendants are currently and historically engaged in a conspiracy to violate
the Section 9(a and g) take prohibitions of the ESA pursuant to the Defendants authorizing and
regulating the annual deployment of millions of pieces of Lobster Pot Gear, Gill Nets and other
kinds of fishing gear into U. S. coastal waters that routinely kills and injures Federally Protected
Whales through entanglement.  For over three decades since Congress adopted the ESA in 1973,
all Federally Protected Whales have been continuously and repeatedly entangled by the Fixed
Fishing gear licensed and regulated by the Defendants. All of the remaining populations of
Federally Protected Whales are significantly smaller than they would be if so many of their
members were not killed by the Fixed Fishing Gear licensed and regulated by the Defendants
since 1973.

36.    The vast majority of incidents of entanglements of Federally Protected Whales go
unreported. This is in part do to a complete lack of adequate survey effort to track and record the
entanglement of Federally Protected Whales in Fixed Fishing Gear. This is also intentional.
Many commercial fishermen and the CCS deliberately fail to report sightings of entangled
Federally Protected Whales in U. S. coastal waters.

37.    There are about 1000 Northern Right Whales remaining in the Atlantic Ocean.
There population has been slowly increasing since hunting of them ended in the 1930's.
Northern Right Whales are currently being routinely entangled by commercial fishing gear
licensed and regulated by the State Defendants. At least one Northern Right Whale is seriously

injured or killed each year from becoming entangled in commercial fishing gear licensed by the State Defendants. Most of these entanglements go unreported. Many of these entanglements are observed by the CCS and are reported to them by third parties. The CCS deliberately conceal these records of these reported entanglements to insure that the information will not be used to enforce the ESA Section 9 take prohibitions against the Defendants and have no adverse impact on the current Fixed Gear Fisheries in U. S. coastal waters.

38.    The entanglement of whales in commercial fishing gear constitutes a "taking" in violation of the Section 9 take prohibitions of the ESA. Section 2 of the Act defines a "taking" as to —

> "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." *Id*. at 1532(19).

By regulation, the Secretary of the Interior further defines at 50 C. F. R. § 17.3 (1999) the term "harm" to mean —

> "an act which kills or injures wildlife. Such act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering."

Section 9 (a) and (g) combine to ban the incidental take of listed species.

39.    On or about 3 August 2002, a Northern Right Whale was entangled in fishing gear in U. S. coastal waters off Gloucester MA in commercial fishing gear licensed by the Defendants. The whale was discovered dead in a Gill Net by licensed by the owner of the gear and the licensed agent of the Defendants.

40.    On or about 30 August 2002 a Northern Right Whale was spotted entangled in Fixed Fishing Gear in Cape Cod bay. This Northern Right Whale was later identified as #3201. In 2005 its carcass washed ashore on a beach in Virginia. The entanglement was listed as the cause of its death by the NMFS.

41.     On or about 1 November 2002 a Northern Right Whale was seen entangled in commercial fishing gear just outside of Sesuit Harbor in Dennis MA. The Northern Right Whale was seen entangled in commercial fishing gear anchored to the sea floor outside of Sesuit harbor in Dennis MA on the same day with a commercial fisherman attempting to remove its gear from the entangled whale. This individual never reported the entanglements and was trying to remove the evidence of the unlawful entanglement.

42.     Federal courts have ruled that a state agency is liable under Section 9 of the ESA for the killing and injuring of members of listed endangered species caused by fishing gear whose deployment that it authorizes and regulates. See *Strahan supra*.  The entanglement of Endangered Whales in commercial fishing gear licensed and regulated by the Defendants is a violation of the Section 9(a and g) take prohibitions of the ESA. Such unlawful entanglements occur routinely and have been occurring for many decades. Unless the Court grants the Plaintiffs their requested injunctive relief to stop these unlawful entanglements they will continue and many more endangered Northern Right Whales will be killed and injured by the Defendants which will also precipitate this endangered species into n irreversible path to imminent extinction.

**Count II**:     Violation of Section 9 of the Endangered Species Act: the Defendants Adversely Altering and "Harming" the Designated Listed Critical Habitat of the Northern Right Whales

43.     Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 42 of this Complaint.

44.     On 3 June 1994, the National Marine Fisheries Service issued a final rule designating most of Cape Cod Bay in Massachusetts as a listed critical habitat for the Northern Right Whale. See 59 Fed. Reg. 28,793. The presence of fishing gear in this critical habitat is a

modification of that habitat that results in enhanced risk to kill and injure species from adverse activities that would not be as significant elsewhere. Such an adverse modification of habitat particularly essential to the survival of an endangered species constitutes a taking by "harm" because it results in the death from entanglement or impairment to feeding, birthing etc.

45.     The Defendants are violating the take prohibitions of Section 9 of the ESA by taking the Northern Right Whale through "harm." by annually licensing and regulating the deployment of over a million pieces of fixed-fishing gear (in the form of gill nets and lobster gear) into Massachusetts Bay in habitat that has been designated by NMFS as listed critical habitat of the Northern Right Whale In so doing the Defendants are intentionally degrading the habitat of the designated listed critical habitat of this endangered species and significantly impairing the Northern Right Whale's ability to survive. The Defendants' conspiracy to license and regulate the deployment of gill nets, lobster gear, and other fishing gear in waters in an area that is within boundaries of the listed critical habitat for these whales in Cape Cod Bay, has significantly affected the designated listed critical habitat of the Northern right Whale to the point where these endangered whales will likely become killed and injured, directly through the entanglements with the deployed fishing gear, as well as through the significant impairment of their feeding, swimming, and other essential behaviors necessary for the whale's survival by the physical presence of the said fishing gear. This includes impairment of the Northern Right Whale's ability to recover from its endangered status.

46.     In so doing the Defendants are in continuous violation of the take prohibitions of the ESA. 16 U. S. C. 1538(a)(1)(B) and 1538(g) through "harm." Such unlawful deployment of commercial fishing gear in designated listed Northern Right Whale critical habitat occurs routinely and has been occurring for many decades. Unless the Court grants the Plaintiffs their

requested injunctive relief to stop these unlawful deployments they will continue and many more endangered Northern Right Whales will be killed and injured by the Defendants which will also precipitate this endangered species into an irreversible path to imminent extinction.

> **Count III**:    Violation of Section 9(a and g) of the Endangered Species Act:  the Defendants' Killing, Injuring and Otherwise Unlawful Taking of Humpback Whales

47.    Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 46 of this Complaint.

48.    The Defendants are currently and historically violating the Section 9 take prohibitions of the ESA by authorizing and regulating the annual deployment of millions of pieces of Lobster Gear, Gill Nets and other kinds of fishing gear into U.S. coastal waters that routinely kills and injures Humpback Whales and other Endangered Whales by entanglement.

49.    On or about 17 June 2002 a Humpback Whale was entangled in fishing gear licensed by the Defendants in U.S. coastal waters off Sesuit Harbor in Dennis MA. The whale was emaciated and severely distressed when it was discovered entangled in Fixed Fishing Gear on 17 June 2002. Upon inspection it was discovered that the Humpback Whale had sustained numerous injuries from its entanglement. Some buoy lines had become permanently embedded in the whale's flesh and were not removable.  It also had sustained several deep cuts on the sides of its flukes. Its flukes were also twisted abnormally and had become dislocated by the entanglement.

50.    On or about 29 June 2002 a Humpback Whale was entangled in fishing gear in U. S. coastal waters just north of Race Point in Provincetown MA.  This gear licensed by the Defendants. The whale was emaciated and severely distressed when it was discovered entangled in Fixed Fishing Gear licensed by the Defendants on 29 June 2002. The same Humpback Whale

was later seen on 11 July 2002 at the same location still entangled in commercial fishing gear licensed by the Defendants.

51.    On or about 1 October 02, a Humpback Whale was discovered dead with injuries consistent with having been entangled in Fixed Fishing Gear. The gear was absent and had been deliberately removed to conceal the cause of the injury and the type of gear that killed the whale. The NMFS necropsy attributed the Humpback Whale's death to entanglement in Fixed Fishing Gear.

52.    On or about 26 August 2002 a Humpback Whale was entangled in Lobster Gear licensed by the Defendants off Long Point in Provincetown MA. On 26 August 2002 it was observed entangled in two vertical buoy lines of Lobster Gear owned by a licensed agent of the Defendants and this person reported the entanglement.

53.    On or about 1 October 2002 a Humpback Whale was seen entangled in anchored commercial fishing gear licensed by the Defendants about 1.5 miles northeast of Plymouth MA in Cape Cod Bay. The Humpback Whale was dead. It eventually washed ashore off Race Point in Provincetown MA. A detailed physical examination showed deep scarring from entanglement in commercial fishing gear with numerous strands of plastic line buried deep in the wounds in the Humpback Whale's flesh. The necropsy report said that it was Gill Net that killed the whale.

54.    At least two Humpback Whales are seriously injured or killed each year from becoming entangled in commercial fishing gear licensed by the State Defendants.  Most of these entanglements go unreported. Many of these entanglements are observed by the Corporate Defendants are reported to them by third parties. The Corporate Defendants deliberately conceal these records of these reported entanglements to insure that the information will not be used to

enforce the ESA Section 9 take prohibitions against the State Defendants and the commercial fishing industry of the United States.

55.    The entanglement of Endangered Whales in commercial fishing gear licensed and regulated by the Defendants is a violation of the Section 9(a and g) take prohibitions of the ESA. Such unlawful entanglements occur routinely and have been occurring for many decades. Unless the Court grants the Plaintiffs their requested injunctive relief to stop these unlawful entanglements they will continue and many more endangered Humpback Whales will be killed and injured by the Defendants which will also unlawfully impede the recovery of this endangered species from its endangered status.

> **Count IV**:    Violation of Section 9(a and g) of the Endangered Species Act:  the Defendants' Killing, Injuring and Otherwise Unlawful Taking of Fin Whales

56.    Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 55 of this Complaint.

57.    The Defendants through their conspiracy are currently and historically violating the Section 9 take prohibitions of the ESA by the State Defendants authorizing and regulating the annual deployment of millions of pieces of Lobster Gear, Gill Nets and other kinds of fishing gear into U. S. coastal waters that routinely kills and injures Fin Whales and other Endangered Whales by entanglement. The commercial fishing gear of the Defendants pose a significant and unlawful risk to kill and injure Fin Whales by entanglement in U. S. coastal waters under the concurrent state jurisdiction of Massachusetts.  The Fin Whale is listed as a resident native endangered species pursuant to the Massachusetts Endangered Species Act. See M. G. L. Ch. 131A.

58.    At least one Fin Whale is seriously injured or killed each year from becoming

entangled in commercial fishing gear licensed by the Defendants.  Most of these entanglements

go unreported. Many of these entanglements are observed by the CCS and are reported to them

by third parties. The CCS deliberately conceal these records of these reported entanglements to

insure that the information will not be used to enforce the ESA Section 9 take prohibitions

against the State Defendants and the commercial fishing industry of the United States.

59.    The entanglement of any Endangered Whale in commercial fishing gear licensed

and regulated by the Defendants is a violation of the Section 9 take prohibitions of the ESA.

Such unlawful entanglements occur routinely and have been occurring for many decades. Unless

the Court grants the Plaintiffs their requested injunctive relief to stop these unlawful

entanglements they will continue and many more endangered Fin Whales will be killed and

injured by the Defendants which will also unlawfully impede the recovery of this endangered

species from its endangered status.

**Count V**:    Violation of Section 9(a and g) of the Endangered Species Act:  the
Defendants' Killing, Injuring and Otherwise Unlawful Taking of Blue
Whales

60.    Plaintiff re-alleges and incorporates herein by reference each and every allegation

contained in paragraphs 1 through 59 of this Complaint.

61.    The State Defendants and the Corporate Defendants through their conspiracy are

currently and historically violating the Section 9(a and g) take prohibitions of the ESA by the

State Defendants' authorizing and regulating the annual deployment of millions of pieces of

Lobster Gear, Gill Nets and other kinds of fishing gear into U. S. coastal waters that routinely

kills and injures Blue Whales and other Endangered Whales by entanglement. The commercial

fishing gear of the Defendants pose a significant and unlawful risk to kill and injure Blue Whales

by entanglement in U. S. coastal waters under the concurrent state jurisdiction of Massachusetts. The Blue Whale is listed as a resident native endangered species pursuant to the Massachusetts Endangered Species Act. See M. G. L. Ch. 131A.

62.    At least one Blue Whale is seriously injured or killed each year from becoming entangled in commercial fishing gear licensed by the State Defendants.  Most of these entanglements go unreported. Many of these entanglements are observed by the Corporate Defendants are reported to them by third parties. The CCS deliberately conceal these records of these reported entanglements to insure that the information will not be used to enforce the ESA Section 9 take prohibitions against the State Defendants and the commercial fishing industry of the United States.

63.    The entanglement of any Endangered Whale in commercial fishing gear licensed and regulated by the Defendants is a violation of the Section 9(a) take prohibitions of the ESA. Such unlawful entanglements occur routinely and have been occurring for many decades. Unless the Court grants the Plaintiffs their requested injunctive relief to stop these unlawful entanglements they will continue and many more endangered Blue Whales will be killed and injured by the Defendants which will also unlawfully impede the recovery of this endangered species from its endangered status.

### PRAYER FOR RELIEF

WHEREFORE the Plaintiff asks the Court for the following relief —

I.    For a judgment declaring that the Defendants are violating Section 9(a and g) take prohibitions of the ESA through the Defendants' licensing and regulating the deployment of Fixed Fishing Gear in the coastal waters of the United States that entangles listed species of Federally Protected Whales.

II.    For an order, enjoining the Defendants from further licensing and regulating the deployment of Fixed Fishing Gear unless it has been first scientifically certified as Whale Safe and to not to pose a significant risk to cause a single entanglement of a Federally Protected Whale.

III.    For an order, requiring the Defendants to fund the research and development of Whale Safe fishing gear and otherwise to amend its regulations to require that only Whale Safe fishing gear and fisheries practices can be used by individuals its licenses to deploy Fixed Fishing Gear in U. S. coastal waters.

IV.    For an order, enjoining requiring the Defendants to directly support pro-active recovery efforts to raise the population of Federally Protected Whales to species specific levels consummate to what their populations would be currently if they were not adversely affected by three decades of killing and injuring by the Defendants commercial fishing activities.

V.    For an award of the Plaintiffs direct costs of prosecution against the Defendants.

VI.    For any further relief that the Court deems appropriate.

BY:

Richard Max Strahan
236 West Portal Avenue, #195
San Francisco CA 94127
617.233.3854

*Pro Se and Proud!*

---

## VERIFICATION OF THE COMPLAINT

---

I Richard Max Strahan verify under the pains and penalties of perjury that all the facts alleged in the above complaint are known to the best of my ability to be true. Signed under the pains and penalties of perjury this twenty-seventh day of July in the year two thousand and six.


Richard Max Strahan

I hereby certify that a copy of the Amended Complaint has been served on the attorney for the Defendants by E-filing with the Court on 31 July 2006.

Richard Strahan, Plaintiff

# GreenWorld

Suit 195
236 West Portal Avenue
San Francisco

VIA U. S. CERTIFIED MAIL

TO:    Ellen Roy Herzfelder, Secretary
       Executive Office of Environmental Affairs
       251 Causeway Street
       Boston, MA 02114

       David M. Peters
       Department of Fisheries, Wildlife and Environmental Law Enforcement
       Suite 400
       251 Causeway Street
       Boston, MA 02114

       Paul Diodati
       Division of Marine Fisheries
       Suite 400
       251 Causeway Street
       Boston, MA 02114

June 29, 2003

NOTICE OF INTENT TO BRING SUIT UNDER THE CLEAN WATER ACT
AND THE ENDANGERED SPECIES ACT.

To the Above Parties:

    The commercial fishing industry that you license, fund, and promote causes numerous discharges of pollutants into the waters of the United States in violation of the Federal Water Pollution Control Act, 33 U. S. C. §§ 1251-1376 (hereinafter "CWA"). The deployment and disposal of commercial fishing gear in the navigable waters of the United States constitutes pollution under the CWA. You are causing this discharge of pollutants into to waters of the United States without having either applied for or obtained the requisite National Pollutant Discharge Elimination System ("NPDES") permits. By this letter, pursuant to 33 U. S .C. § 1365(a) and (b) of the CWA. GreenWorld and Strahan is providing you with notice of their intent to file suit to address the violations of the Clean Water Act referenced in this letter.

    Your licensing the use and deployment commercial fishing gear in U. S. coastal waters also results in the injuring and killing of. See 16 U. S. C. §§ 1531 *et seq*. Listed protected species of Whales and Sea Turtles are routinely entangled by the commercial fishing gear that you license and regulate. You are violating the Section 9 take prohibitions of the ESA by licensing and regulation the deployment and use of commercial fishing gear in U. S. coastal waters under concurrent state jurisdiction. See 16 U. S. C. § 1538.

Since 1994, you have been notified of the unlawful killing and injuring of whales and sea turtles in your commercial fishing gear. You have chosen to flaunt the law and continue your unlawful conduct. You have also been subject to a prior enforcement action to end your violations of federal law. <u>See</u> *Strahan v. Coxe*, 939 F. Supp 963 (D. Mass. 1996), *aff'd mostly* in *Strahan v. Coxe*, 127 F. 3d 155 (1st Cir. 1997), *cert. denied* in *Coates v. Strahan*, 119 S. Ct. 437 (1998). The court found that you unlawfully kill and injure endangered whales in your commercial fishing gear. Despite this you have continued to intentionally kill and injure thousands of endangered animals and will continue to do so unless you are brought to justice in a court of law.

We await your reply.

In Peace,

Richard Strahan
National Campaign Director