UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD MAX STRAHAN )<br>)<br>*Plaintiff* )<br>)<br>)<br>v. )<br>)<br>SECRETARY, MASSACHUSETTS EXECUTIVE )<br>OFFICE OF ENVIRONMENTAL AFFAIRS[1], *et al.* )<br>)<br>*Defendants* ) | Civil Action No.<br><br>05 – 10140 - NMG<br><br><br>15 January 2007 |

_____

PLAINTIFF'S MOTION PURSUANT TO RULE 60 FOR A RELIEF FROM JUDGMENT
_____

Citizen-Prosecutor Richard Max Strahan moves the Court pursuant to Rule 60 of the Fed. R. Civ. Proc. to provide him a relief from judgment by reversing its dismissal of the instant action and its denial of his preliminary injunction. Recent events of entanglement of endangered whales in state licensed fishing gear, the deception by Massachusetts state officials in representing the content Massachusetts regulations, and the Court's resultant error to recognize existing Massachusetts law compel that the Court grant the requested relief. Judicial economy also compels the Court to do so also. The Plaintiff has appealed both the denials of the preliminary injunction and the dismissal. It is better for the Court to squarely face these issues on appeal now than face them on a remand by the First Circuit.

The Defendants' (i. e. Massachusetts Division of Marine Fisheries ("DMF") has adopted regulations requiring the use by its licensed agents of vertical buoy lines on their lobster pot gear out to 12 miles from the Massachusetts coastline. See 322 C. M. R. § 4.13(d). This regulation

---

[1] The original named defendant Ellen Roy-Herzfelder has subsequently left her employment as the Secretary of the Massachusetts Executive Office of Environmental Affairs and was replaced subsequently by first one and then another person. For consistency, Strahan has adopted the current caption for his civil action.

Case 1:05-cv-10140-NMG    Document 157    Filed 01/15/2008    Page 2 of 9

*Strahan v. Secretary, Massachusetts EOEA*, 05-10140-NMG (D. Mass. 2005): 15 January 2008 Plaintiff's Motion for Rule 60 Relief

2

establishes "Fixed Gear Marking Zone" that extends twelve miles off the Massachusetts coast. See 322 C. M. R. § 4.13(c). Any state licensed fisherman deploying lobster pot gear in this zone must under these regulations use two sets of vertical buoy lines on each of their trawls.

During the course of these proceedings two incidents of entanglement of Humpback Whales were sighted by federal agents off the Massachusetts coast ("Whale Entanglements"). Both of these reported entanglements occurred in about the same area and the Defendants have maintained that this area was just one or so miles outside the three-mile political boundary Massachusetts state waters. One entanglement occurred on 2 August 2006 and the other in May 2007. The fishing gear removed from these whales was undisputedly identified as belonging to Massachusetts licensed fishermen. There is no question that the location of this said area — as maintained by the Defendants — is within Massachusetts' Fixed Gear Marking Zone.

Without doubt, the Defendants are liable for the Whale Entanglements as they both occurred in Massachusetts' Fixed Gear Marking Zone. Under federal law, state-licensing agency engages in conduct prohibited by the ESA Section 9 prohibitions on taking when it licenses fishing gear that entangles whales under its jurisdiction. Since Massachusetts regulations require the use of the vertical buoy lines that caused the Whale Entanglements in its Fixed Gear Marking Zone where these entanglements occurred, the Defendants are absolutely liable for them and must be found by the Court to have violated the Section 9 take prohibitions of the ESA in doing so,

The Defendants deliberately acted to deceive the Court when they maintained during the proceedings that these entanglements occurred outside any area of their jurisdiction. What they said was obviously not true. As officers of the court officers, the Defendants' attorneys are ethically bound to tell the court the truth. Instead they deliberately used deception in an attempt

Case 1:05-cv-10140-NMG   Document 157   Filed 01/15/2008   Page 3 of 9

*Strahan v. Secretary, Massachusetts EOEA*, 05-10140-NMG (D. Mass. 2005): 15 January 2008 Plaintiff's Motion for Rule 60 Relief

3

to get the court into ruling in favor of the Defendants on Strahan 's request for a preliminary injunction.

The Court cannot allow this deception to remain as the basis for making its decision on Strahan's request for a preliminary injunction and then also be the basis for its subsequent staying the proceedings.

## Procedural History

The instant action was commenced in January 2005 bringing claims against the Defendants for engaging in conduct prohibited by Section 9 of the Endangered Species Act ("ESA"). See 16 U. S. C. § 1538(a and g). In 1996 Strahan previously brought similar claims against the same state agencies. See *Strahan v. Coxe*, 939 F. Supp. 963, (D. Mass 1996) ("*Strahan I*"). The *Strahan I* court found the Defendants liable for repeated prohibited taking of endangered whales entangled by fishing gear that was licensed and regulated by them when their licensed agents are required by them to use fishing gear that entangles whales. *Strahan I* also established that the entanglement of a endangered whale in fishing On appeal the First Circuit ruled (*Strahan II*) that an agency that licenses commercial fishing and imposes requirements that cause prohibited takings is strictly liable for them: "A governmental third party pursuant to whose *authority* an actor directly exacts a taking of an endangered species may be deemed to have violated the provisions of the ESA." See *Strahan v. Coxe*, 127 F. 3d 155, 163 (1st Cir. 1997).

The Court held an evidentiary hearing on Strahan's motion for a preliminary injunction where six witnesses gave testimony over two days and with numerous exhibits introduced into the record. On 24 January 2007 the Court issued an order denying Strahan's requested preliminary injunction, consolidated its finds into a final judgment denying Strahan injunctive

Case 1:05-cv-10140-NMG   Document 157   Filed 01/15/2008   Page 4 of 9

*Strahan v. Secretary, Massachusetts EOEA*, 05-10140-NMG (D. Mass. 2005): 15 January 2008 Plaintiff's Motion for Rule 60 Relief

4

relief, and stayed further proceedings on his request for declaratory judgment for two years. See *Strahan v. Pritchard*, 473 F. Supp. 2d 230 (D. Mass 2007) ("*Strahan III*"). In both January and September 2007 Strahan filed motions requesting the opportunity to conduct further discovery. The Court denied both. On November 2007, Strahan moved the Court to dismiss his claims against the Defendants without prejudice owing to his inability to produce further evidence on his claims against them owing to his being denied any further opportunity to do discovery. On December 2007 the Court granted Strahan's motion to dismiss without prejudice.

**Standard for Injunctions Against Alleged Conduct Prohibited by Section 9 of the ESA**

The ESA does not prohibit extinction. It implements far broader protections to prevent the possibility of species extinction. Enforcement is mandatory to effectuate the Federal Regulatory Scheme for the Conservation of Endangered Wildlife. The "institutionalization of caution" See *Tennessee Valley Authority v. Hill*, 437 U. S. 153, 98 S. Ct. 2279 (1978). In *TVA*, the Supreme Court declared that the Congress' intent in enacting the ESA was to proactively and comprehensively provide for the protect and conservation of existing endangered species of wildlife —

> "As it was finally passed, the Endangered Species Act of 1973 represented the most comprehensive legislation for the preservation of endangered species ever enacted by any nation. Its stated purposes were "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved and 'to provide a program for the conservation of such . . . species' " *TVA* at 2294-2295.

Section 9 of the ESA prohibits anyone — imposing criminal and civil penalties on violators — the "taking" members of species of wildlife listed as "endangered" under the ESA. Section 9(a) of the ESA prohibits direct "takings" intentional or not. Section 9(g) of the ESA prohibits the "causing" of any Section 9(a) taking through conducting an activity that is otherwise lawful.

Case 1:05-cv-10140-NMG    Document 157    Filed 01/15/2008    Page 5 of 9

*Strahan v. Secretary, Massachusetts EOEA*, 05-10140-NMG (D. Mass. 2005): 15 January 2008 Plaintiff's Motion for Rule 60 Relief    5

Standard statutory interpretation requires that the Section 9(g) prohibition on "causing" a Section 9(g) taking must be seen as distinctive and serving a unique — and not duplicitous — purpose apart from the Section 9(a)'s prohibition on simply taking an endangered animal. Correctly interpreted, Section 9(g) must be seen a prohibiting any activity on its own right that predictably and expectedly results at some point in causing a Section 9(a) taking. Illustration; while on any given Sunday a fisherman violates a Section 9(a) prohibitions by catching an endangered fish with his fishing gear at his favorite fishing hole, the very activity of fishing at his fishing hole becomes prohibited by Section 9(g) if more than one endangered fish is caught by either him or other fishermen fishing at this same fishing spot. This is because of the established fact that fishing at this fishing spot actually causes endangered fish to be taken by fishing there. Now prohibited by Section 9(g), anyone fishing at this fishing spot is engaged in conduct prohibited by Section 9(g) whether they ever personally catch an endangered fish or not.

The basis for a court issuing requested injunctive relief under the Section 9 of ESA is similar to the accepted standard for injunctive relief supported by this circuit. However, established ESA jurisprudence requires a court to not consider the economic impact of the requested relief prior to its decision on whether to issue the requested injunction and that issuing the requested injunction will serve the Public Interest and not doing so will harm it. In its reported decision in *Strahan III*, the Court found that —

> "The test for the issuance of a preliminary injunction under the ESA differs from the traditional test. For cases arising under the ESA, the traditional balancing of the parties' competing interests is not a consideration. *Strahan,* 939 F.Supp. 963, 989. The statutory language, history and structure of the ESA indicate that Congress intended that endangered species be afforded the highest of priorities. *TVA v. Hill,* 437 U.S. 153, 174, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). The factors to consider, therefore, are 1) the movant's likelihood of success on the merits, 2) the likelihood of irreparable harm in the absence of injunctive relief and 3) the effect on the public interest, bearing in mind that "the balance of hardships and the public interest tips heavily in favor of protected species." *National Wildlife Federation v. Burlington Northern R.R.,* 23 F.3d 1508, 1511 (9th Cir.1994)."

Case 1:05-cv-10140-NMG    Document 157    Filed 01/15/2008    Page 6 of 9

*Strahan v. Secretary, Massachusetts EOEA*, 05-10140-NMG (D. Mass. 2005): 15 January 2008 Plaintiff's Motion for Rule 60 Relief                                                                                                                                                                6

To compel the grant of injunctive relief does not require proof of future takings but the mere possibility of future prohibited conduct by a defendant —

> *Earth Island Institute v. U.S. Forest Service*, 442 F. 3d 1147, 1177 (9th Circuit 2006) "Because Earth Island has shown 'a strong likelihood of success on the merits,' it need only show 'the possibility of irreparable injury' if preliminary relief is not granted, and that the 'balance of hardships' tips in its favor. *Id*. Further, in this case it is appropriate that it be required to show 'the advancement of the public interest.' *Kootenai Tribe v. Veneman,* 313 F. 3d 1094, 1125 (9th Cir. 2002) ("[W]here the purpose of the challenged action is to benefit the environment, the public interest must be taken into account in balancing the hardships"). The "possibility of irreparable injury" has clearly been shown. We have stated that "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." *Nat'l Parks & Conservation Ass'n v. Babbitt,* 241 F. 3d 722, 737 (9th Cir. 2001) (internal quotations omitted). In this case, Earth Island contends that the Power and Freds Projects may result in the unnecessary cutting of trees that would otherwise survive, in harm to the California spotted owl, and in harm to several MIS bird species. Earth Island has certainly shown that there is a possibility of such injury, and that such injury is irreparable."

A court is compelled to issue an injunction against a defendant for past prohibited takings and to deter the possibility of engaging in further conduct prohibited by the ESA in the future.

**Additional Argument**

In its 24 January 2008 order ("January Order") denying Strahan's request for a preliminary injunction and invoking a stay on further proceedings, the Court found that the 2 August 2006 entanglement incident of Whale Entanglements was caused by the fishing gear of a state licensed fisherman. See *Strahan v. Pritchard*, 473 F. Supp. 2d 230, 237 and 238 (D. Mass 2007). It however refused to rule that the Defendants were liable for this taking for only one reason — which the entanglement occurred outside of its state jurisdiction. The January Order stated that —

> "The conclusion to be drawn from such evidence [including a report from NMFS that the fisherman of the 2 August 2006 whale entanglement claimed that his gear was deployed one mile outside that the three-mile state jurisdiction limit] is, therefore, that the humpback whale probably became entangled in fishing gear in federal waters. … Because the plaintiff has presented no evidence demonstrating that protected whales have, since 2002, become entangled in Massachusetts coastal waters or in fishing gear licensed by the defendants, the Court finds that Strahan has not made a "strong

Case 1:05-cv-10140-NMG   Document 157   Filed 01/15/2008   Page 7 of 9

*Strahan v. Secretary, Massachusetts EOEA*, 05-10140-NMG (D. Mass. 2005): 15 January 2008 Plaintiff's Motion for Rule 60 Relief                                                                                         7

showing" of likelihood of success on the merits of his underlying claim that the defendants have violated the ESA." *Id*.

It is undisputable that the state-licensed fisherman whose gear caused the 2 August 2006 entanglement was under the control, by the state Defendants at the location that the entanglement occurred despite the fact that the location was outside the three-mile political state jurisdiction limit. Massachusetts regulates its licensed fishermen in the area encompassed by its Fixed Gear Marking Zone that extends out to 12 miles from the Massachusetts coastline — 9 miles further off shore from the Massachusetts coastline. The 2 August 2006 entanglement occurred at a location where the owner of the gear is required by Massachusetts to use the vertical buoy lines that entangled the whale.

On 12 May 2007 another Humpback Whale was sighted entangled in vertical buoy line in Massachusetts state political waters and was disentangled by federal agents within the three mile limit. The federal agents examined the gear and found that it was owned by a Massachusetts licensed lobster pot fisherman. On 1 October 2007 the Defendants then filed with the Court the status report (Paper #138) required by its January Order ("Status Report"). In its Status Report at the Defendants admitted that the entanglement occurred and that it was cause by a state licensed fisherman —

> "Of special note is the May 12, 2007, entanglement of a humpback whale denoted as "Banjo," found and disentangled by the CCS in Massachusetts state waters off the coast of Provincetown. An MDMF investigation revealed that the lobsterman whose gear (a detached buoy line) was removed from the whale is duly licensed to fish in Massachusetts and federal waters. The lobsterman in question reported having lost a buoy line from a trawl set in federal waters shortly before the reported entanglement, suggesting that the entanglement occurred in federal, not state, waters. A map displaying coordinates of the sites where the buoy line was reportedly set, and where Banjo was subsequently seen entangled, is attached hereto as Exhibit C."

The Defendants deliberately misrepresented to the Court that said fisherman was not under state jurisdiction at the location where they maintain the entanglement occurred. There is

*Strahan v. Secretary, Massachusetts EOEA*, 05-10140-NMG (D. Mass. 2005): 15 January 2008 Plaintiff's Motion for Rule 60 Relief

8

no question that the location that the Defendants maintain was the location of the said entanglement is well within the boundaries of Massachusetts Fixed Gear Marking Zone that extends 12 miles off the Massachusetts coast. See 322 C. M. R. § 4.13. There is no question that the Defendants and their attorneys are well aware of the reality of the state's Fixed Gear Marking Zone and falsely represented to the Court in its Status Report that at a minimum that the said entanglement occurred outside the established regulatory authority of Massachusetts.

The Defendants and their attorneys are well aware of the holdings of *Strahan I and II* that the Defendants are liable for violating the ESA if the fishing gear under their authority entangles whales and especially if the entanglement is caused by a specific type of gear required by the Defendants to be used by its licensed fishermen. The Defendants and their attorneys deliberately made false representations to the Court on the extent of the area where Massachusetts regulates its licensed commercial fishermen. They deliberately deceived the Court — and the Plaintiff — by maintaining that the state does not regulate commercial fishing outside the Massachusetts' three-mile political state boundary from its coastline. The Court cannot see the Defendants and their attorney's deceptive conduct for what it is — lying to the Court to win the case.

The Whale Entanglements and the fact that the state regulates fishing in the waters where the Defendants concede that they occurred constitute constitutes new evidence that allows the Court to grant the instant motion. The Defendant's fraudulent misrepresentation of the extent of Massachusetts regulation of its commercial fisheries off its coastline constitutes the fraud and deliberate misrepresentation that compels the Court under Rule 60 to set aside its January Order and issue Strahan's requested injunctive relief against the Defendants.

For the above reasons the Plaintiff asks the Court to GRANT his requested relief.

Case 1:05-cv-10140-NMG    Document 157    Filed 01/15/2008    Page 9 of 9

*Strahan v. Secretary, Massachusetts EOEA*, 05-10140-NMG (D. Mass. 2005): 15 January 2008 Plaintiff's Motion for Rule 60 Relief   9

BY: _____
Richard Max Strahan, Plaintiff
236 West Portal Avenue, #195
San Francisco, CA
617.233.3854

*Pro Se and Proud!*

_____
CERTIFICATION OF SERVICE
_____

I hereby certify that a copy of the above document has been served on the defendants VIA ECF on 15 January 2008.

_____
Richard Max Strahan, Plaintiff