UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RICHARD MAX STRAHAN, ) | |
| ) | |
| Plaintiff ) | |
| ) | Civil Action |
| v. ) | No. 05-10140-NMG |
| ) | |
| IAN BOWLES, in his ) | |
| official capacity as Secretary of the ) | |
| Massachusetts Executive Office ) | |
| of Energy and Environmental Affairs, ) | |
| ) | |
| THOMAS FRENCH, in his official ) | |
| capacity as Acting Commissioner of the ) | |
| Massachusetts Department of ) | |
| Fish and Game, ) | |
| ) | |
| and ) | |
| ) | |
| PAUL DIODATI, in his official capacity ) | |
| as Director of the Massachusetts ) | |
| Division of Marine Fisheries, ) | |
| ) | |
| Defendants ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR RELIEF FROM JUDGMENT**

The Secretary of the Massachusetts Executive Office of Energy and

Environmental Affairs, the Commissioner of the Department of Fish and Game, and the

Director of the Division of Marine Fisheries (together, the "State Defendants"),[1]

defendants in the above-titled action, hereby oppose the motion of the plaintiff, Richard

---

[1] The names of two of the officials holding these offices have changed since the onset of this litigation. The present officials, with their correct titles, are reflected by the signature block, infra.

Max Strahan ("Strahan"), for relief from judgment. In his motion, filed on January 18, 2008 (the "Motion"), Strahan asks the Court to vacate and reconsider (a) its order dismissing the instant case, upon the plaintiff's own motion; and (b) its January, 2007, order denying Strahan's motion for a preliminary injunction. Arguing that these orders should be vacated, Strahan alleges that they were premised upon an imperfect understanding of Massachusetts regulatory law, a misperception that, he claims, the State Defendants somehow fraudulently induced. For the reasons set forth below, the Motion should be denied.

## Factual and Procedural Background

Strahan initiated this action under the Endangered Species Act, 16 U.S.C. § 1531, et seq. (the "Act"), in 2005, seeking declaratory and injunctive relief against the State Defendants. In his complaint, and in subsequent pleadings requesting preliminary injunctive relief, Strahan argued that the State Defendants were in violation of the Act because they issued permits to Massachusetts lobstermen to set fixed fishing gear in Massachusetts coastal waters, notwithstanding that such gear had the capacity to entangle, or otherwise effect a "take" of, large whales that were endangered, within the meaning of the Act. Specifically, Strahan alleged that fixed fishing gear licensed or permitted by the State Defendants had caused entanglements of large whales in state waters in the past; that such gear was likely to cause additional entanglements in the future; and that injunctive relief was therefore necessary to prevent further or future violations of the Act. The State Defendants denied these allegations.

In November, 2006, the Court conducted a three-day evidentiary hearing with respect to Strahan's motion for a preliminary injunction.[2] At the hearing, seven witnesses (six of whom were designated by Strahan) testified to, among other things, the status of whale entanglements in Massachusetts waters and other jurisdictions; the efficacy of existing and proposed regulations addressing the problem; and the technological feasibility of various proposed solutions to the problem.

On January 24, 2007, the Court entered an order denying Strahan's motion for preliminary injunctive relief and staying the litigation for two years. See Strahan v. Pritchard, 473 F.Supp.2d 230 (D.Mass. 2007). In its conclusion, the Court held:

> The Court is not persuaded that the defendants are liable for entanglements of endangered whales 1) in Massachusetts waters or 2) in fishing gear licensed by the defendants but it is convinced that such gear poses an ongoing (even if declining) threat to endangered whales. The law prohibits the taking of endangered species under any circumstances and entanglement in fixed fishing gear constitutes a "taking." In light of newly-implemented regulations prohibiting the use of floating ground line, the broad injunctive relief sought by the plaintiff is unwarranted at this time but careful monitoring of the situation is, indeed, justified. Consistent with the equitable powers conferred by 16 U.S.C. § 1540(g)(1), the Court will enter an order that will ensure the temporary monitoring of the threat posed to endangered whales by fixed fishing gear without unduly interrupting the commercial fishing industry.

Id. at 241. The Court accordingly ordered the parties to file three joint status reports, at eight-month intervals, reporting on relevant developments in the fishery, including, among other things, new entanglement reports, new regulatory requirements, and new

---

[2] In his motion, Strahan sought a preliminary injunction barring the State Defendants from issuing or renewing any permit for the deployment of fixed fishing gear in Massachusetts coastal waters. At the hearing, Strahan urged the Court to consider, as an alternative, ordering that, as of a future date of the Court's choosing, the State Defendants certify that all fixed fishing gear deployed by its permit holders was "whale-safe" – i.e., lacked the capacity to entangle endangered large whales.

developments in "whale-safe" technology. Id. The State Defendants filed their first such status report on October 1, 2007.[3]

In October, 2007, Strahan filed a motion to dismiss the instant case, without prejudice. In that motion, Strahan argued that he was unlikely to prevail on the merits on the factual record that had been developed to date, and wished to be free to pursue other avenues of redress. Over the State Defendants' opposition, the Court granted Strahan's motion to dismiss on December 17, 2007.

### The Instant Motion

On January 18, 2008, Strahan filed the instant Motion, pursuant to Fed. R. Civ. P. 59. In it, Strahan seeks relief from the judgment of dismissal entered against him, together with reconsideration of the Court's denial of his motion for a preliminary injunction. Strahan argues that he is entitled to this relief because the State Defendants engaged in "deception . . . in representing the content [of] Massachusetts regulations." Motion at 1.

Specifically, Strahan alleges that the State Defendants somehow concealed, and that the Court was therefore unaware of, the existence of 322 C.M.R. 4.13. That regulation creates a "fixed gear marking zone" for the deployment of lobster trawls in "coastal waters under the jurisdiction of the Commonwealth and adjacent waters

---

[3]When the parties could not agree on a process for generating a "joint" status report, the Court issued an order establishing a new procedure to govern subsequent status reports, whereby the State Defendants would serve Strahan, in advance of the deadline, with a draft of their proposed status report, and Strahan would serve his comments and/or questions upon the State Defendants. The State Defendants would then integrate Strahan's questions or criticisms into the body of the status report, together with the State Defendants' responses thereto, and file the status report with the Court. Strahan would then have an additional window to file any persisting objections he may have with the Court. The granting of Strahan's motion to dismiss this litigation on December 17, 2007, however, served to vacate all outstanding orders in this case, including, presumably, the obligation to file additional status reports.

extending to the seaward edge of the 12 mile contiguous zone." 322 C.M.R. 4.13(2). The regulation goes on to specify the size and number of buoys that must be used to mark the east and west ends of lobster trawls set in the fixed gear marking zone. 322 C.M.R. 4.13(3)(b) (general requirements) & 322 C.M.R. 4.13(3)(d) (specific requirements for Cape Cod Bay Critical Habitat). The purpose of the requirement is spelled out in the regulation, as follows:

> A vast amount of fixed gear is being fished in and outside of Massachusetts waters on fishing grounds which must be shared by fishermen using many different gear types. These fixed gear marking requirements will assist fishermen to see and avoid each other's gear thereby reducing conflicts between fixed and mobile gear fishermen fishing from the shore out to 12 miles from the coast. Maximum length requirements also will help fishermen identify the ends of fixed gear and will facilitate co-existence of fishermen on the same fishing grounds. The gillnet length requirement only pertains to gillnets set in waters under the jurisdiction of the Commonwealth.

322 C.M.R. 4.13(1).

In his Motion, Strahan argues that this regulation, of which he was allegedly unaware when he presented his advocacy with respect to his preliminary injunction motion, effectively serves to increase the geographical area over which the State Defendants exercise regulatory control, and therefore transforms one or more historical whale entanglements (either discussed by witnesses at the evidentiary hearing or disclosed in the October 1, 2007 status report) into entanglements for which the State Defendants should be held liable. Because this assertion is not correct, Strahan's Motion should be denied.

## ARGUMENT

**STRAHAN HAS EVINCED NO GROUND UPON WHICH THE DISMISSAL OF THIS CASE SHOULD BE SET ASIDE; ACCORDINGLY, HIS MOTION SHOULD BE DENIED.**

### A. Strahan Has Made No Showing That the Extraordinary Relief Permitted under Either Rule 59 or Rule 60 is Warranted Here.

Strahan couches his motion as one for "relief from judgment" under Fed. R. Civ. P. 59. As a threshold matter, this conflates two distinct rules of civil procedure: Rule 59 provides a mechanism to request amendment or modification of a judgment, whereas it is Rule 60 that permits a motion for relief from judgment. Moreover, a motion to alter or amend a judgment pursuant to Fed. R. Civ. P. 59 must be made within ten days of the entry of the judgment complained of. See Fed. R. Civ. P. 59(e); see also Perez-Perez v. Popular Leasing Rental, Inc., 993 F.2d 281, 285 (1st Cir. 1993)("litigant who gets his motion in on time enjoys the full menu of grounds for relief provided by Rule 59; if not, he is confined to the six specific grounds of relief found in Rule 60(b)"). Given that Strahan's Motion was filed on January 18, 2008 – more than 10 days after entry of the Court's order dismissing this action – he is jurisdictionally barred from seeking alteration of the judgment under Rule 59. His Motion, then, must be treated as one seeking relief from a judgment under Rule 60(b).

Rule 60(b), in turn, enumerates six specific grounds upon which a party may seek to set aside an adverse judgment. While Strahan does not specifically identify any of these grounds in his Motion, he appears to argue that the dismissal of his case was procured via fraud, in that the State Defendants somehow concealed the existence of the regulation governing buoy deployment in the "fixed gear marking zone," thereby impeding his ability to prove his substantive claims. See Motion at 2-3.

The assertion is absurd. As set forth in the accompanying Affidavit of Daniel J. McKiernan (the "McKiernan Affidavit") at ¶¶ 6-8, the regulation in question was promulgated in 1988 and has been codified (and available for public perusal) continuously since that time. Since the inception of this case, Strahan has alleged that the State Defendants were liable for endangered whale entanglements in "coastal waters,"[4] and/or in gear licensed and permitted by the State Defendants. At no time were the State Defendants or the Court put on notice of Strahan's theory that the definition of "coastal waters" should be enlarged as a consequence of the regulation governing marking of buoys in the fixed gear marking zone. Rather, the State Defendants merely rebutted the allegations Strahan made, in his complaint and in his motion for a preliminary injunction.

Moreover, in the interest of completeness, the State Defendants' status report to the Court on October 1, 2007, included a list of twelve reported endangered whale entanglements seen in Canadian and United States waters between Grand Manan, New Brunswick, and Nags Head, North Carolina, during the first reporting period (i.e., from the date of the Court's January 24, 2007 Order through October 1, 2007). The State Defendants brought this information to the Court's attention even though, based on investigations by the Provincetown Center for Coastal Studies ("CCS") and the Massachusetts Division of Marine Fisheries ("MDMF"), it did not appear that any of the twelve cases involved endangered whales becoming entangled in fixed gear licensed by Massachusetts and/or set in Massachusetts state waters. Nevertheless, in a memorandum

---

[4] The terms "coastal waters" or "state waters" are universally understood, in the context of fishery management, to refer to waters within three miles of a state's coastline. See Ace Lobster Company, Inc. v. Evans, 165 F.Supp.2d 148, 152 n.3 (D.R.I. 2001) (("The waters within 3 nautical miles from the shore are generally protected by the states, and are often referred to as 'coastal' or 'in-state' waters. See 16 U.S.C. §§ 1802(11), 5102(6)."); see also Massachusetts ex rel. Marine Fisheries v. Daley, 170 F.3d 23, 25 (1st Cir. 1999) ("state boundaries . . . on the East Coast, are three nautical miles offshore."). In Massachusetts, state waters also encompass virtually all of Nantucket Sound.
.

7

attached to the status report, MDMF took pains to highlight three of the twelve reported entanglements, because in each of the three cases, at some point in the case history, the animal was sighted in state waters. In short, the State Defendants have erred on the side of providing more information than required by the Order, so as to give the Court as accurate a picture as possible of the overall state of endangered whale entanglements during the relevant time period.

What Strahan propounds now is no more, or less, than a new legal theory, one he did not plead in his complaint, and one which he adduced no evidence of in his presentation before the Court. As set forth below, the new legal theory is without merit, and does nothing to alter the correctness of the judgment of dismissal (and denial of injunctive relief) previously entered. However, as a threshold matter, it is an improper subject of a motion for relief under Rule 60(b) (or, for that matter, under Rule 59). See, e.g., United States v. Metropolitan St. Louis Sewer District, 440 F.3d 930, 934-935 (8th Cir. 2006) (motions for relief from judgment, under either Rule 59 or Rule 60, improper vehicles for tendering new legal theory not previously raised in litigation). Accordingly, Strahan's motion should be denied on that ground alone.

    **B.    Even if Strahan's New Argument Were Properly Before the Court, it Does Nothing to Undermine the Judgment of Dismissal Already Entered.**

Even if Strahan could demonstrate that he was somehow deprived of the ability to make this argument before the underlying litigation was dismissed, it still avails him of nothing. In order to prevail in a motion for relief from judgment, the moving party must demonstrate that "nondisclosure worked some substantial interference with the full and fair presentation of [his] case." Anderson v. Cryovac, Inc., 862 F.2d 910, 923, 926 (1st

Cir. 1988). Because the regulation establishing the fixed gear marking zone does not expand the geographical area over which the State Defendants exert regulatory control over lobster gear, Strahan can make no showing that the Court would have ruled differently even if his new argument had been timely made.

Under the amalgam of state and federal rules governing the lobster fishery, lobstermen who set trawls more than three miles from the Massachusetts shoreline must conform their gear to federal, not state, regulations. The federal regulatory regime governing lobster fishing in federal waters is set forth in detail at 50 C.F.R. §§ 697.1 through 697.26, inclusive.[5]

This is not to say that the State Defendants may not, under any circumstances, regulate fishing activities in federal waters (i.e., waters beyond three miles from shore). As the McKiernan Affidavit makes clear, the Magnuson-Stevens Act (the federal statute that governs fishery management) permits states to regulate fishing vessels licensed in that state, but fishing outside of the state's coastal waters, provided that the state regulation is not inconsistent with applicable federal regulatory requirements. See 16 U.S.C. § 1856(a)(3)(B); McKiernan Affidavit at ¶¶ 8. Indeed, the McKiernan Affidavit collects a variety of Massachusetts regulations that purport to restrict the activities of Massachusetts fishing vessels out to the 200-mile limit of United States territorial waters. See McKiernan Affidavit at ¶ 16, citing, e.g., 322 C.M.R. 4.12 (regulation governing use of nets for taking striped bass); 322 C.M.R. 5.00, et seq. (regulations governing taking of Northern shrimp).

---

[5] See also, 50 C.F.R. § 229.32, et seq. (federal regulations specifically governing large whale protection measures as applied to fixed fishing gear).

In regulations promulgated by the National Oceanographic and Atmospheric Administration ("NOAA"), this dual regulatory authority is specifically extended to states seeking to regulate American lobster fishing. At 50 C.F.R. § 697.3, the NOAA regulations state that:

> [t]he regulations in this part do not preempt more restrictive state laws, with respect to weakfish fishing and American lobster fishing. If a requirement of this part and a management measure required by state or local law differ, any vessel owner permitted to fish in the [Exclusive Economic Zone, the name used by the Magnuson-Stevens Act to denote federal waters] must comply with the more restrictive requirement or measure.

50 C.F.R. § 697.3. With respect to lobsters, then, the Magnuson-Stevens Act not only permits states to regulate their own vessels in federal waters, but allows state law to pre-empt federal law where the former is more restrictive than the latter.

Notwithstanding this broad grant of authority, however, Massachusetts does not purport to regulate lobster gear beyond its coastal waters. The problem is not one of authority, but one of functional enforcement. Insofar as Massachusetts regulatory authority in federal waters is limited to vessels licensed in Massachusetts, it would be impracticable, from an enforcement standpoint, to subject Massachusetts-licensed vessels fishing in federal waters to regulatory restrictions not applicable to vessels licensed in other states but fishing in the same waters. By way of illustration only, 322 C.M.R. 6.14, the Massachusetts regulation dealing with lobster car restrictions, prohibits any person from placing a buoyed or unbuoyed lobster car (a container tethered to the boat, used to hold lobsters in the water after they have been removed from traps) within the coastal waters of the Commonwealth, except in inshore net areas defined in 322 C.M.R. 4.02. The State Defendants could lawfully have applied this restriction to Massachusetts vessels fishing in federal waters, but instead limited its application to waters of the

10

Commonwealth (i.e., Massachusetts coastal waters, within three miles of the shoreline). Extending the prohibition to federal waters would have created the anomalous situation whereby Massachusetts vessels fishing in federal waters would have been prohibited from storing lobsters in such containers, while vessels licensed in New Hampshire, Maine, or other states, fishing in the same waters, would have been free of such restrictions. Given the near-impossibility of enforcing such a scheme, and the competitive disadvantage that would inhere to Massachusetts fishermen if it were extended to federal waters, the State Defendants have consistently elected to regulate all aspects of lobster gear only within Massachusetts coastal waters.

The same is true of Massachusetts fixed gear regulations that pertain specifically to large whale protection, which are found at 322 C.M.R. 12.00, et seq. Many of these regulations grew out of the Large Whale Working Group convened by the District Court (Woodlock, J.) as part of the relief it fashioned in Strahan v. Coxe, 939 F. Supp. 963 (D.Mass. 1996). Others, such as the state-wide ban on floating groundline, set forth in 322 C.M.R. 12.03, have been promulgated more recently, in an effort to further reduce the likelihood of whale entanglement in Massachusetts waters or Massachusetts gear. In all cases, however, the State Defendants have chosen to limit the application of their regulations to Massachusetts coastal waters, both to avoid conflict with contrary federal rules, and to avert the enforcement problems outlined above, if the State Defendants attempted to extend their regulation of lobster gear into federal waters.

Strahan now suggests that the regulation he identified in his Motion somehow blurs this well-settled line of demarcation. It does not. By its terms, that regulation, 322 C.M.R. 4.13(3), does not require (or prohibit) the placement of lines or other gear in

11

either state or federal waters. These substantive requirements lie elsewhere (that is, in relevant sections of 322 C.M.R. §§ 6.00, et seq., 7.00, et seq., and 12.00, et seq., for Massachusetts coastal waters, and at 50 C.F.R. § 697 and 50 C.F.R. § 229, for federal waters). Nor does Section 4.13 purport to enlarge the geographical area over which the State Defendants exercise regulatory control with respect to the lobster fishery. On the contrary, that regulation merely requires that lobstermen who have set lobster trawls in either state waters or federal waters out to twelve miles from shore must identify and mark the ends of those trawls in a prescribed way.

The origin and evolution of 322 C.M.R. 4.13 are set forth in detail in the McKiernan Affidavit, at ¶¶ 5-10. Briefly stated, the regulation, which was adopted in 1988, reflected an effort by the State Defendants to fill a gap left open by federal regulations in place at the time, and were designed exclusively to prevent gear conflicts between fixed- and mobile-gear fishermen. As the McKiernan Affidavit states, NOAA promulgated rules in 1986 requiring that buoys identifying the endpoints of lobster trawls set in federal waters be marked in a particular way, so that fishermen towing mobile gear (e.g., otter trawl nets) could discern, at a glance, where underwater fixed gear was located, and therefore take evasive action to prevent gear-on-gear entanglement. McKiernan Affidavit at ¶ 5. The federal regulations, however, were applicable only to the offshore lobster fishery (defined as all points more than twelve miles from shore), id., leaving fixed gear fishermen inside the twelve-mile line free from gear marking requirements. In an effort to make gear markings consistent between the inshore and offshore fisheries, the State Defendants promulgated 322 C.M.R. 4.13 in 1988, subjecting Massachusetts lobstermen fishing inside the 12-mile line (irrespective of whether they

were fishing in state or federal waters) to the same gear-marking requirements. McKiernan Affidavit at ¶¶ 6-7.

In 1999, NOAA repealed its lobster management plan (including the regulations governing gear markings in the offshore lobster fishery), and replaced it with a more comprehensive scheme that, among other things, required all federally permitted lobstermen fishing in federal waters (including in the area between three and twelve miles from shore) to employ the same marking system required by 322 C.M.R. 4.13(3). McKiernan Affidavit at ¶ 9.  Thus, to the extent that it applies to Massachusetts vessels fishing in federal waters, 322 C.M.R. 4.13 is now something of a superfluity, in that it merely mirrors the same buoy-marking requirements already levied and enforced by NOAA.  McKiernan Affidavit at ¶ 10.

The redundancy of the federal and state regulations is a secondary point, however. The larger point is that the existence of the Massachusetts fixed gear marking zone requirement, even if Strahan had timely brought it to the Court's attention, does nothing to buttress the allegation that he makes in his complaint:  that the State Defendants, through their licensing and regulation of fixed fishing gear, increase the likelihood that endangered whales will be subject to proscribed takes, within the meaning of the Act.  In Strahan v. Pritchard, supra, this Court concluded that Strahan had not proved that endangered whales had become entangled in state waters or in gear licensed by the State Defendants, and also that, in light of new regulations promulgated by the Commonwealth, such entanglements were becoming increasingly unlikely in the future. 373 F.3d at 241.  These conclusions were factually and legally correct then, and they remain so now.

## **CONCLUSION**

For the reasons discussed above, this Court should deny Strahan's Motion. Even if his new argument were the proper subject of a motion for relief from judgment (which it is not), the regulation he identified does not alter the geographic area over which the State Defendants exercise regulatory control with respect to lobster gear, and therefore does not expand the universe of whale entanglements for which the State Defendants are liable under the Act.

    Respectfully submitted,

    IAN BOWLES, in his
    official capacity as Massachusetts
    Secretary of Energy and Environmental
    Affairs;

    MARY GRIFFIN, in her official
    capacity as Massachusetts Commissioner
    of the Department of Fish and Game;

    and

    PAUL DIODATI, in his official capacity
    as Director of the Massachusetts Division
    of Marine Fisheries

    By their attorney,

    MARTHA COAKLEY
    ATTORNEY GENERAL


    /s/Daniel J. Hammond
    Bryan G. Killian
    BBO # 271640
    Daniel J. Hammond
    BBO # 559475
    Assistant Attorneys General
    Government Bureau
    One Ashburton Place, Room 2019
    Boston, Massachusetts 02108

(617) 727-2200, exts. 2553, 2078

Dated:  February 15, 2008