UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD MAX STRAHAN,

Plaintiff

v.

IAN BOWLES, in his official capacity as Secretary of the Massachusetts Executive Office of Energy and Environmental Affairs

Mary Griffin, in her official capacity as the Commissioner of the Massachusetts Department of Fish and Game,

and

PAUL DIODATI, in his official capacity as Director of the Massachusetts Division of Marine Fisheries,

Defendants[1]

Civil Action No. 05-10140-NMG

**DECLARATION OF DANIEL J. MCKIERNAN IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT**

Pursuant to 28 U.S.C. § 1746, I, Daniel J. McKiernan, hereby declare under penalty of perjury as follows:

1. I am the Deputy Director for the Massachusetts Division of Marine Fisheries (*MassFisheries*), Department of Fish & Game, Executive Office of Energy and Environmental Affairs.

[1] The names of the first two Commonwealth officials have changed since this litigation was filed three years ago. The present officials are shown in the caption. In addition, the Executive Office has changed its name to the Executive Office of Energy and Environmental Affairs.

2. For twenty-one years I have been a marine biologist responsible for the creation, development and adoption of marine fishery policies, management measures and rules managing marine resources, fixed and mobile fishing gear, and protecting endangered whales, including the northern right whale and the humpback whale.

3. During this time I have worked closely with managers and biologists from the National Marine Fisheries Service, National Oceanic and Atmospheric Administration, United States Department of Commerce (*NOAAFisheries*), who administer the provisions of the federal Endangered Species Act, the Marine Mammal Protection Act, (hereinafter the "MMPA") the Magnuson-Stevens Fisheries Conservation and Management Act, (hereinafter the "Magnuson-Stevens Act"), and the Atlantic Coastal Fisheries Cooperative Management Act, (hereinafter ACFCMA). For additional background on my experience in this area, see my first Declaration of Daniel J. McKiernan in Opposition to Plaintiff's Motion for a Preliminary Injunction.

4. In 1988 I worked specifically as a lobster biologist on the Commonwealth's conservation and management measures for the inshore lobster fishery.

5. In 1983 the American lobster fishery was managed by *NOAAFisheries* pursuant to the Magnuson-Stevens Act. A fishery management plan for the American lobster was completed by the New England Regional Fishery Management Council (hereinafter the "NE Council") and in turn approved and implemented by *NOAAFisheries* via a 1983 rulemaking. The NE Council then adopted Amendment 1 to the lobster plan and that too was approved and implemented by *NOAAFisheries* via a 1986 rulemaking. Amendment 1 and the federal rule that implemented it standardized gear marking requirements for the so-called "offshore lobster fishery" which was defined by *NOAAFisheries* to be established within those waters west of a line drawn twelve miles from the baseline of the territorial sea. The "inshore lobster fishery" was defined by *NOAAFisheries* to be established within those waters shoreward of the twelve mile line and gear marking from the shore to 12 miles was left to management by the states. See 50 CFR §649.21(b)(4)(1).

6. In direct response to the above gap in federal gear marking regulations, in 1988 *MassFisheries* adopted state gear marking regulations at 322 CMR 4.13 ("Fixed Gear Marking and Maximum Length Requirements") for the inshore lobster fishery

similar to those adopted by *NOAAFisheries* for the offshore lobster fishery. These gear marking measures applied to Massachusetts fishermen within waters out to twelve miles. See 322 CMR 4.13 attached as **Exhibit A**.

7. This 1988 regulation, 322 CMR 4.13, required Massachusetts fishermen to identify their buoys with permit numbers and certain flag configurations to mark the east and west ends of a string or line of fixed fishing gear (lobster traps, gillnets or longlines) so that mobile gear fishermen would be able to spot and decipher the setting pattern early enough to avoid steaming through the fixed gear or setting other fixed gear over it. Such measures were designed to prevent hostilities between these various user groups. See the 1988 Regulation Filing Form for 322 CMR 4.00 attached as **Exhibit B**.

8. *MassFisheries* cited, as one of the authorities for adopting 322 CMR 4.13, 18 U.S.C. §1856(a)(2) of the Magnuson-Stevens Act, which provides that nothing in the Act diminishes the jurisdiction or authority of any state within its boundaries; that the Commonwealth is specifically authorized to regulate fisheries within federal waters of Nantucket Sound; and that states may regulate fishing vessels outside their boundaries when the fishing vessel is registered under the laws of that state and there are no applicable federal fishing regulations for that particular fishery.

9. In 1999 the American lobster management plan and its Amendment 1 were repealed by *NOAAFisheries* and management authority for the American lobster fishery was turned over to the regional regulatory organization called the Atlantic States Marine Fisheries Commission (ASMFC), of which Massachusetts is a member, to be managed under the authority of ACFCMA and the Magnuson-Stevens Act. The ASMFC then adopted a fishery management plan with subsequent amendments for the American lobster. The plan provisions were implemented by the member states and *NOAAFisheries*. Where a given species' habitat spans state and federal waters like the American lobster, ACFCMA authorizes federal and state managers to collaborate on joint regulatory efforts to manage the resource in question. See G.L. c.130, App. §§1-4, and the title page and table of contents to the ASMFC's Amendment 3 to the Interstate Fishery Management Plan for American Lobster (December, 1997), the latter attached as **Exhibit C**.

10. *NOAAFisheries* thereafter adopted a new set of federal regulations at 50 C.F.R. 697.21 governing lobster gear marking requirements applicable to federal permit holders, including those fishing in federal waters from three to twelve miles. For federal permit holders also licensed by Massachusetts, both state and federal lobster fishing gear marking regulations apply to the same waters that extend out to twelve miles from the Massachusetts coastline. Massachusetts fishermen fishing in federal waters may mark their gear using a federal fisheries ID number, or their state fisheries permit number.

11. Like the Massachusetts regulations codified at 322 CMR 12.00 which protect endangered whales in state waters, federal regulations adopted by *NOAAFisheries* under authority of the MMPA also protect endangered whales by establishing other fixed gear restrictions and requirements. These regulations require gillnet and lobster gear to be rigged with buoy lines and contain color coded markings. With the exception of certain small bays, inlets and river mouths, the federal regulations protecting endangered whales apply to all U.S. waters of the Atlantic. See 50 CFR §229.32(a)(1).

12. I have in no way misled this Court, or the plaintiff, either directly or indirectly regarding the issue of extraterritorial state fishery management authority. Allegations to that effect are completely false and without any merit. I did not state or imply during any of my testimony that Massachusetts had no fishery management authority beyond three miles. Nor have I stated in any of my numerous affidavits and declarations that Massachusetts does not have or exercise fishery management authority beyond the three mile limit. The plaintiff need only have taken a close look at *MassFisheries*' codified regulations which are readily available on the *MassFisheries*' web site to see the extent to which many of these regulations apply to federal waters beyond three miles.

13. *MassFisheries* and *NOAAFisheries* have collaborated with regard to the American lobster trap tag program. Pursuant to a Memorandum of Agreement entered into between *MassFisheries* and *NOAAFisheries*, the state and federal regulators have created a regimen by which *MassFisheries* will issue federal trap tags allocated to Massachusetts vessels fishing traps in federal waters. *MassFisheries* administers the distribution of these trap tags to Massachusetts fishing vessels with federal permits based on the vessel's eligibility to fish traps governed by various federal regulations and/or the

interstate plan. 322 CMR 6.13(1) establishes eligibility requirements for the trap tags allocated to Massachusetts-license fishermen fishing in state and/or federal waters.

14. *MassFisheries*' regulations codified at 322 CMR §1.00, et seq., show that many fishery management measures governing fish stocks, fishing activities and fishing gear apply to Massachusetts fishermen beyond three miles. The northern right whale regulations, however, are not among them.

15. Contained in 322 CMR 4.00 are at least four sections that directly regulate fishing gear beyond three miles. See 322 CMR §4.06: Use of Mobile Gear; 322 CMR §4.09: Use of Gillnets South and West of Cape Cod; 322 CMR §4.10: Use of Sea Scallop Dredges; and 322 CMR §4.13: Fixed Gear Marking and Maximum Length Requirements which is the subject matter of plaintiff's motion for relief from judgment.

16. Some fishery management regulations clearly and specifically apply to the fishing activities of Massachusetts vessels in waters which extend out two-hundred miles from the Massachusetts coastline. See 322 CMR §4.12: Use of Nets for Taking Striped Bass; and 322 CMR §5.00: Northern Shrimp.

17. Finally, there are fishery management measures which indirectly govern fishing activities beyond three miles through possession and landing restrictions that require any fish landed in Massachusetts regardless of where the fish came from to comply with certain conservation measures or gear restrictions. See 322 CMR §6.26: Bycatch Lobster Landing/Possession Limits, which prohibits any vessel fishing with gillnets in any waters from landing in Massachusetts more then 100 lobsters per twenty-four hour fishing trip.

Signed under the pains and penalties of perjury this 15th day of February 2008.

Daniel J. McKiernan
Daniel J. McKiernan

Exhibit A.

322 CMR 4.13: Fixed Gear Marking and Maximum Length Requirements

Ex. H



4.11: continued

(4) Exception. 322 CMR 4.11 shall not apply to inshore net areas set forth in 322 CMR 4.02 or to persons permitted to take bluefish in accordance with 322 CMR 4.05.

4.12: Use of Nets for Taking Striped Bass *(Morone saxatalis)* or Shad *(Alosa sapidissima)*

(1) It is unlawful to offload onto any vessel within waters under the jurisdiction of Massachusetts or to offload or land onto any pier, wharf or other structure within Massachusetts any striped bass or shad which was harvested, caught or taken by any net.

(2) It is unlawful for any vessel registered under the laws of the state as that term is defined in M.G.L. c. 130, § 1 to harvest, catch or take any striped bass or shad by any net in any waters under the jurisdiction of Massachusetts or in those waters within the United States 200 miles exclusive economic zone bounded in such a way that the inner boundary is a line coterminous with the seaward boundary of each coastal state and the outer boundary is a line drawn in such a manner that each point on it is 200 nautical miles from the baseline from which the territorial sea is measured, as depicted on nautical charts of the National Oceanic and Atmospheric Administration.

(3) It is unlawful for any person, firm, corporation, restaurant, supermarket or other retail or wholesale distributor or fish or fish products to possess any striped bass or shad harvested, caught, or taken by nets except striped bass or shad lawfully harvested, caught, taken or possessed in jurisdictions other than Massachusetts.

4.13: Fixed Gear Marking and Maximum Length Requirements

(1) Purpose. A vast amount of fixed gear is being fished in and outside of Massachusetts waters on fishing grounds which must be shared by fishermen using many different gear types. These fixed gear marking requirements will assist fishermen to see and avoid each other's gear thereby reducing conflicts between fixed and mobile gear fishermen fishing from the shore out to 12 miles from the coast. Maximum length requirements also will help fishermen identify the ends of fixed gear and will facilitate co-existence of fishermen on the same fishing grounds. The gillnet length requirement only pertains to gillnets set in waters under the jurisdiction of the Commonwealth.

Gear marking requirements for pot trawls and single pots and the pot trawl maximum length requirement have been reserved until proposed requirements for state waters are reconciled with those already established for gear set in adjacent federal waters. Gear marking requirements for gear set in portions of Boston Harbor also have been reserved.

(2) Definitions.

Single pots means individual lobster pots, fish pots, and conch pots.

Pot trawls means lobster pot trawls, fish pot trawls, and conch pot trawls and refers to single pots tied together in a series and buoyed at both ends.

Fixed gear marking zone means coastal waters under the jurisdiction of the Commonwealth and adjacent waters extending to the seaward edge of the 12 mile contiguous zone.

East end means that part of the gillnet or pot trawl extending from 01 through 180° magnetic.

Twin orange markers means a pair of identical orange flag-like strips of material that are clearly visible and attached to the buoy stick or high flyer.

West end means that part of a gillnet or pot trawl extending from 181 through 00° magnetic.

(3) The following minimum requirements apply to the marking of fixed gear within the Commonwealth's fixed gear marking zone.

(a) Gillnets: the east end of a gillnet shall be marked with a high flyer and standard 12-inch tetrahedral corner radar reflector; the west end shall be marked with a high flyer with flag and a standard 12-inch tetrahedral corner radar reflector.

4.13: continued

(b) Pot Trawls and Single Pots: The east end of a pot trawl shall be marked with a double buoy, consisting of any combination of two 7"x7" or 5"x11" buoys and one or more three foot sticks. The west end of a pot trawl shall be marked with a single 7"x7" or 5"x11" buoy with a three foot stick and a flag. Single pots shall each be marked with a single 7"x7" or 5"x11" buoy. Sticks are optional, but if used, shall not have a flag attached.

(c) Boston Harbor Exemption: Inside an imaginary line drawn from Deer Island in Winthrop to Windmill Point in Hull, it shall be lawful to fish with trawls marked on one end with a plastic bottle attached by at least ten feet of ½" cotton line or similar light material, provided that said substitute buoy shall be painted with the buoy colors and permit number of the owner. A standard buoy as specified in 322 CMR 4.13(3)(b) shall be attached to the other end of the trawl, except that sticks need not be used. Single pots shall be marked with a standard buoy attached by light line in channel areas.

(d) Cape Cod Bay Critical Habitat Restrictions. Lobster pots set in Cape Cod Bay Critical Habitat as defined in 322 CMR 12.10 during January through May 15 that are properly modified with those features required in 322 CMR 12.03 designed to reduce the risk of whale entanglement must be marked as follows:

1. Two-pot trawls or "doubles" shall be marked with a single buoy line. The buoy shall be rigged with a three-foot stick and twin orange markers visibly attached to the top of the buoy stick.

2. All bouys marking either ends of a trawl shall have twin orange markers visibly attached to the buoy stick in addition to the existing marking requirements in 322 CMR 4.13(3)(b).

These twin orange markers must be removed from all buoy sticks after May 15 and before June 1 and fishermen may not re-attach them until after November 30 of each year.

(e) Prohibition. It shall be unlawful to mark fixed gear as required in 322 CMR 4.13(3)(d) if the lobster pots are not properly rigged with those features required in 322 CMR 12.05 to reduce risk of whale entanglement.

(4) Gillnet maximum length: the total continuous length of gillnets shall not exceed 2,400 feet from end to end of an entire net set in waters under the jurisdiction of the Commonwealth.

(5) Pot Trawl Maximum Length: The total length of pot trawls set in waters under the jurisdiction of the Commonwealth shall not exceed 2,000 feet from end to end.

(6) All buoys used to mark all fixed gear shall be permanently and visibly marked or branded with the permit number of the owner.

REGULATORY AUTHORITY

322 CMR 4.00: M.G.L. c. 130, §§ 2, 17A, 80 and 104; 16 U.S.C. 1856(a)(2).

Exhibit B.

Filing Form from October 13, 1988 enacting 322 CMR 4.13: Fixed Gear Marking and Maximum Length Requirements

 Ex. B

256



# The Commonwealth of Massachusetts

Office of the Secretary of State

## Regulation Filing

*To be completed by filing agency*

CHAPTER NUMBER: 322 CMR 4.00

CHAPTER TITLE: Fishing and Shellfishing Equipment

AGENCY: Division of Marine Fisheries

### SUMMARY OF REGULATION

*State the general requirements and purposes of this regulation:*

These regulations establish fixed fishing gear marking and maximum length requirements. These fixed gear marking requirements will assist fishermen see and avoid each other's gear thereby reducing conflicts between fixed and mobile gear fishermen fishing from the shore out to 12 miles from the coast. Maximum length requirements also will help fishermen identify the ends of fixed gear and will facilitate co-existence of fishermen on the same fishing grounds. The gillnet length requirement only pertains to state waters.

REGULATORY AUTHORITY: G.L. c.130, ss. 2, 17A, 80 and 104

AGENCY CONTACT: Philip G. Coates PHONE: 727-3193

ADDRESS: 100 Cambridge Street, Room 1901, Boston, MA 02202

## *Compliance with M.G.L. C.30A, and Promulgation and Attestation*

### EMERGENCY ADOPTION

*If this regulation is adopted as an emergency regulation, state the nature of the emergency:*

### PRIOR NOTIFICATION AND/OR APPROVAL

*If prior notification to and/or approval of the Governor, legislature or others was required, list each notification, approval and date, including notice to the local Government Advisory Commission:*

Commissioner, Department of Fisheries, Wildlife and Environmental Law Enforcement................................10/13/88

Marine Fisheries Advisory Commission...........................10/6/88

## PUBLIC REVIEW

*Was notice of the hearing or comment period filed with the Secretary of State, published in appropriate newspapers and sent to persons to whom specific notice must be given at least 21 days prior to such bearing or comment period?*

Yes [X] Date of public hearing or comment period: 8/18,19,20/87 & 11/10,12,18/87

## FISCAL EFFECT

*Estimate the fiscal effect on the public and private sectors:*

For the first and second years: ______

For the first five years: ______

No fiscal effect: [X]

## CODE OF MASSACHUSETTS REGULATIONS INDEX

*List key subject entries that are relevant to this regulation:*

## PROMULGATION

*State the action taken by this regulation and its effect on existing provisions of the Code of Massachusetts Regulations (CMR) to repeal, replace or amend. List by CMR number:*

Amends Section 4.00 by adding subsection 4.13.

## ATTESTATION

*The regulation described herein and attached hereto is a true copy of the regulation adopted by this agency.*

ATTEST:

[signature] Date: 10/13/88

*Signature*

# Publication

*To be completed by the Regulations Division*

MASSACHUSETTS REGISTER NUMBER: 594

DATE: 10/28/88

EFFECTIVE DATE: 10/28/88

CODE OF MASSACHUSETTS REGULATIONS

| *Remove these pages:* | *Insert these pages:* |
|---|---|
| Vol. 15 322 CMR – | |
| 1 & 2 | 1 & 2 |
| 15 & 16 | 15 & 16 |
| 26.1 & 26.2 | 26.1– 26.4 |

A TRUE COPY ATTEST

[signature]

MICHAEL JOSEPH CONNOLLY
SECRETARY OF STATE

DATE [illegible] CLERK [signature]

Exhibit C.

Cover Page and Table of Contents of
Amendment #3 to the Interstate Fishery Management Plan for American Lobster

published by Atlantic States Marine Fisheries Commission, December 1997

Fishery Management Report No. 29

of the

# Atlantic States Marine Fisheries Commission




## Amendment 3 to the Interstate Fishery Management Plan For American Lobster

December 1997

**TABLE OF CONTENTS**

EXECUTIVE SUMMARY.....ii
ACKNOWLEDGEMENTS.....v
TABLE OF CONTENTS.....vi
INTRODUCTION.....1
1.1 BACKGROUND INFORMATION.....1
1.1.1 Statement Of The Problem.....1
1.1.2 Benefits Of Implementation.....1
1.2 DESCRIPTION OF THE RESOURCE.....1
1.2.1 Species Life History.....1
1.2.2 Stock Assessment Summaries.....2
Stock Assessment.....5
1.3 DESCRIPTION OF THE FISHERY.....5
1.3.1 Commercial Fishery.....6
1.3.2 Recreational Fishery.....6
New Jersey.....6
1.3.3 Interactions with other fisheries, species, and other users.....7
1.3.4 Interactions with protected species.....7
1.4 HABITAT CONSIDERATIONS.....10
1.4.1 Components of Habitat.....11
1.4.2 Anthropogenic Impacts On Lobsters And Their Habitat.....12
1.4.3 Description Of Programs To Protect, Restore, Preserve, And Enhance Lobster Habitat.....14
1.4.4 Recommendations For Further Habitat Research.....15
2 GOALS AND OBJECTIVES.....16
2.1 GOAL.....16
2.2 OBJECTIVES.....16
2.3 SPECIFICATION OF THE MANAGEMENT UNIT.....16
2.4 DEFINITION OF AN OVERFISHED RESOURCE.....18
2.5 EGG PRODUCTION REBUILDING SCHEDULE.....18
2.6 IMPLEMENTATION SCHEDULE.....18
3 MANAGEMENT PROGRAM IMPLEMENTATION.....20
3.1 COASTWIDE REQUIREMENTS AND PROHIBITED ACTIONS.....20
3.1.1 Prohibition on possession of berried or scrubbed lobsters.....20
3.1.2 Prohibition on possession of lobster meats, detached tails, claws or other parts of lobster.....20
3.1.3 Prohibition on spearing lobsters.....20
3.1.4 Prohibition on possession of V-notched female lobsters.....20
3.1.5 Requirement for biodegradable AGhost@ panel for Traps.....20

3.1.6 Minimum Gauge Size ..... 20

3.1.7 Limits on Landings by fishermen using gear or methods other than traps ..... 20

3.2 MEASURES APPLICABLE TO ALL STATES AND AREAS ALONG THE ATLANTIC COAST ..... 20

3.2.1 Permits and Licensing ..... 21

3.2.2 Escape Vents on Traps ..... 21

3.2.3 Maximum Trap Size ..... 21

3.3 MEASURES APPLICABLE TO COMMERCIAL FISHING IN LOBSTER MANAGEMENT AREAS ..... 21

3.3.1 Area 1, Inshore Gulf of Maine ..... 21

3.3.2 Area 2, Inshore Southern New England ..... 22

3.3.3 Area 3, Offshore Waters ..... 22

3.3.4 Area 4, Inshore Northern Mid-Atlantic ..... 23

3.3.5 Area 5, Inshore Southern Mid-Atlantic ..... 23

3.3.6 Area 6, New York and Connecticut State Waters ..... 23

3.3.7 Outer Cape Lobster Management Area ..... 23

3.4 PROCEDURES FOR AREA MANAGEMENT ..... 24

3.4.1 Establishment of Lobster Conservation Management Teams ..... 24

3.5 ALTERNATIVE STATE MANAGEMENT REGIMES ..... 24

3.5.1 Procedures ..... 24

3.5.2 Management Program Equivalency ..... 25

3.6 ADAPTIVE MANAGEMENT ..... 25

3.6.1 Procedures ..... 25

3.7 EMERGENCY MEASURES ..... 25

3.8 RECOMMENDATIONS FOR ACTIONS IN FEDERAL WATERS ..... 25

4 MONITORING AND REPORTING ..... 27

5 COMPLIANCE ..... 27

5.1 ESSENTIAL COMPLIANCE ELEMENTS FOR STATES ..... 27

5.1.1 Regulatory Requirements ..... 27

5.1.2 State Reporting ..... 27

5.1.3 Essential Measures To Be Included In State Programs ..... 27

5.2 PROCEDURES FOR DETERMINING COMPLIANCE ..... 28

5.3 COMPLIANCE SCHEDULE ..... 28

6 LITERATURE CITED ..... 28

APPENDIX 1. COORDINATES OF MANAGEMENT AREAS. ..... 33