```
                    United States District Court
                      District of Massachusetts
_____
                              )
RICHARD MAX STRAHAN,          )
         Plaintiff,           )
                              )
         v.                   )    Civil Action No.
                              )    05-10140-NMG
IAN BOWLES, in his official   )
capacity as Secretary of the  )
Massachusetts Executive Office)
of Environmental Affairs, THOMAS )
FRENCH, in his official capacity )
as Commissioner of the        )
Massachusetts Department of Fish )
and Game, and PAUL DIODATI, in )
his official capacity as      )
Director of the Massachusetts )
Division of Marine Fisheries, )
         Defendants.          )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The pro se plaintiff in this case has filed motions for the government to pay the cost of transcripts and for relief from judgment with respect to two orders of the Court, one denying a preliminary injunction and the other dismissing the case.

### I. Background

Plaintiff Richard Max Strahan ("Strahan"), filed a complaint against Ian Bowles ("Bowles"), in his official capacity as Secretary of the Massachusetts Office of Environmental Affairs, Thomas French ("French"), in his official capacity as Acting Commissioner of the Massachusetts Department of Fish and Game,

and Paul Diodati ("Diodati"), in his official capacity as Director of the Massachusetts Division of Marine Fisheries (collectively "the state defendants") for alleged violations of the Endangered Species Act ("ESA"), 16 U.S.C. § 1538 et seq.[1] Strahan alleged that the licensing of certain commercial fishing gear by the state defendants caused harm to endangered whales by permitting them to become entangled in line.

In April, 2006, the plaintiff filed a motion for a preliminary injunction in which he sought to enjoin the defendants from continuing to license the subject commercial fishing gear and an order requiring that the defendants hereafter license only fishing gear that poses no significant entanglement threat to whales, that the defendants fund research to develop such gear and that they fund efforts to increase the size of the whale population.

In November, 2006, the Court conducted an evidentiary hearing on the plaintiff's motion for a preliminary injunction. On January 24, 2007, the Court entered a Memorandum & Order (Docket No. 132) ("the January 24 M&O") in which it found that, although the fishing gear in question poses an ongoing threat to endangered whales, the plaintiff had failed to meet his burden of proving that the defendants were liable for violation of the ESA

---

[1] Two of the incumbents of those offices at the onset of this action have since been replaced and consequently the title of the case has been amended accordingly.

because he could not conclusively show that any whales had been entangled in Massachusetts coastal waters or in gear licensed by the defendants within the relevant time frame.  The Court, therefore, denied the motion for preliminary injunction <u>but</u> ordered the parties to file periodic status reports so that it could continue to monitor the situation.  The Court also indicated that it would give further consideration to this matter upon motion of the parties should there be a "material change in circumstances".

After the Court issued its January 24 M&O and before the first periodic status report was due in October, 2007, Strahan filed, among other pleadings, a motion for reconsideration of the order denying the preliminary injunction and two motions for discovery, all of which the Court denied.  Strahan appealed the denials of the motions for a preliminary injunction and for reconsideration.  In October, the state defendants filed the first periodic status report but Strahan did not participate in its preparation.  On October 9, 2007, Strahan filed a motion to dismiss the entire case without prejudice and a motion to stay, which the state defendants opposed.  Nine days later, because the parties had failed to file a joint status report, the Court issued a Memorandum & Order (Docket No. 152)("October 18 M&O") setting out the procedure by which the parties were to submit all subsequent reports.  On December 17, 2007, Strahan's motion to

dismiss was inadvertently and improvidently allowed.

On January 14, 2008, Strahan appealed the order allowing the motion to dismiss.  The next day, he filed a motion to set aside the judgment of this Court.  Three days later, he amended that motion by the filing of a motion for reconsideration "re Order on Motion to Dismiss Because of Fraud by the Defendants Attorneys and the Court's Failure to Assess the Content of State Regulations" which the state defendants oppose.  Strahan has also filed a motion requesting the Court to pay the cost of transcripts.

## II.  Motion for Reconsideration

Strahan moves this Court for relief under Fed. R. Civ. P. 59 "to provide him a reconsideration of its judgment by reversing its dismissal of the [case] and its denial of a preliminary injunction".  He contends that a Massachusetts regulation indicates that the fisherman whose gear caused an entanglement in August 2, 2006, as well as the fisherman who caused an entanglement in May, 2007, were under the control of the state defendants at the locations where the entanglements occurred. Strahan argues that, although both entanglements occurred outside the three-mile boundary for "coastal" or state-controlled waters, they occurred within the "fixed gear marking zone" that extends out to 12 miles from the Massachusetts coastline.  See 322 C.M.R.

§ 4.13.

The "fixed gear marking zone" refers to an area defined in a Massachusetts regulation ("the marking regulation") that specifies the size and number of buoys that must be used to mark the east and west ends of lobster trawls set in Massachusetts coastal waters "and adjacent waters extending to the seaward edge of the 12 mile contiguous zone". 322 C.M.R. § 4.13(2). Strahan appears to contend that the marking regulation demonstrates that the state defendants regulate lobstermen up to 12 miles off the coastline and therefore are liable for ESA violations up to that point. He asserts that the state defendants misrepresented to the Court that the whale entanglements had not occurred in Massachusetts waters and, consequently, the Court should reconsider its order of dismissal and its order denying the preliminary injunction.

The state defendants first respond that Strahan is barred from seeking relief under Rule 59 because such relief must be requested within ten days of the entry of the adverse judgment. Fed. R. Civ. P. 59(e). Because Strahan filed his motion more than ten days after the denial of his motion for a preliminary injunction and the order of dismissal, his motion will be treated as one seeking relief from judgment under Fed. R. Civ. P. 60(b) which enumerates six specific grounds upon which a party may seek to set aside an adverse judgment. Strahan does not specifically

cite one of the enumerated grounds but his allegations suggest that dismissal of the case and denial of the preliminary injunction was procured by fraud in that the state defendants lied about whether the entangled whales were located in Massachusetts waters. The state defendants deny that they have committed fraud and argue that Strahan's argument with respect to their regulatory area is inapt. Regardless of the procedural rule under which Strahan brings his motion, the Court finds it to be without merit.

With respect to Strahan's allegations of fraud, as the state defendants note, from the beginning of the case, Strahan has alleged that the whale entanglements occurred in "coastal waters" or "state waters", terms that refer to an area within three miles of the coastline. At no time were the state defendants or the Court put on notice that Strahan defined Massachusetts waters to include the fixed gear marking zone that extends to 12 miles off the coast. Strahan's assertion with respect to the limits of Massachusetts waters and regulatory area is simply a new legal theory introduced by Strahan in this motion. The fact that the state defendants did not volunteer or share with the Court or Strahan a possible pro-plaintiff legal theory does not suggest fraud on their part.

With respect to the merits of Strahan's claim, his contention that the marking regulation should alter the Court's

prior understanding of Massachusetts waters and lobster fishing regulations is unavailing. Massachusetts coastal waters "extend three nautical miles from the shoreline". Strahan v. Coxe, 127 F.3d 155, 159 (1st Cir. 1997). Despite that definition, Strahan argues that, because the state defendants regulate lobster fishery outside the three-mile limit in the marking regulation, they are liable for takings that occur in that extended area. The Court disagrees.

Although federal law permits states to regulate state-licensed fishing vessels navigating outside of the state's coastal waters, 16 U.S.C. § 1856(a)(3), all fishermen need federal, not state, authorization to catch lobsters in those federal waters. Id.; 50 C.F.R. § 697.4. Moreover, despite having the ability to regulate state-licensed vessels beyond the three-mile limit, Massachusetts has not exercised that authority with respect to regulating lobster gear. Massachusetts fixed gear regulations that pertain specifically to large whale protection, 322 C.M.R. § 12.00 et seq., and the state-wide ban on floating groundline, 322 C.M.R. § 12.03, are limited to Massachusetts waters. Consequently, any lobster fishing that occurs in waters beyond three miles from the coast is done pursuant to federal rather than state authority. Outside of the three mile limit, the state defendants are not "governmental third part[ies] pursuant to whose authority an actor directly

exacts a taking" and therefore cannot be liable under the ESA. See Coxe, 127 F.3d at 163.

Because Strahan's new legal argument demonstrates neither that the state defendants committed fraud nor that the Court wrongfully interpreted Massachusetts law, his motion for reconsideration will be denied.

### III.  **The Reopening of the Case**

Although Strahan's motion will be denied, the Court, sua sponte, will reopen the case.  Pursuant to the Court's January 24 M&O, the parties were directed to submit two more periodic status reports.  The Court reaffirms its interest in receiving such reports from the state defendants with respect to whale entanglements and the state's on-going effort to make lobster gear more whale-safe.  It further acknowledges that the case was closed erroneously.  See Fed. R. Civ. P. 60(a) (permitting the court to correct mistakes on its own initiative, with or without notice).  Although Strahan has appealed the order of dismissal, the First Circuit Court of Appeals has stayed that appeal in order for this Court to resolve the pending matters.

The Defendants are directed to file the two remaining status reports in accordance with the January 24 M&O, as modified by the October 18 M&O and as further modified by the following order. Although, in the October 18 M&O, the Court invited a response

from Strahan to the state defendants' first status report, the time and utility for such a response has passed. Nevertheless, Strahan will be afforded the opportunity to comment on the final two status reports.

### IV. Motion for Transcript Costs

Finally, Strahan has filed a motion to be provided, at government expense, transcripts of the July 17, 2006 and November, 2006 hearings. The Court will allow that motion.

### ORDER

In accordance with the foregoing, Plaintiff's Motion for Reconsideration (Docket No. 158) is DENIED and Plaintiff's Motion for Transcript Costs (Docket No. 164) is ALLOWED. The case is hereby reopened and the state defendants shall submit two further periodic status reports in conformance with the Court's January 24, 2007 Memorandum & Order. The status report originally due on July 1, 2008 shall be due on October 1, 2008 and the status report originally due on February 1, 2009 shall be due July 1, 2009. With respect to the two remaining status reports, the parties shall abide by the following procedure:

   a) on the due date the defendants shall file the required report with the Court and serve a copy of that report on the plaintiff, and

   b) 30 days after the filing of the required report, the plaintiff may, if he chooses, file with the Court (and

>      serve on the defendants) any comments and/or criticisms
>      of the report (not to exceed the length of the subject
>      report) for the Court's consideration.

**So ordered.**

>                              /s/Nathaniel M. Gorton
>                              Nathaniel M. Gorton
>                              United States District Judge

Dated July 23, 2008