```
                United States District Court
                  District of Massachusetts
_____
                               )
RICHARD MAX STRAHAN,           )
        Plaintiff,             )
                               )
        v.                     )   Civil Action No.
                               )   05-10140-NMG
PAUL DIODATI, IAN BOWLES, and  )
MARY GRIFFIN,                  )
        Defendants.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case involves the alleged inaction by state agencies (of which the defendants are representatives) when confronted with the entanglement of whales in fishing gear. Plaintiff's motions to dismiss and for partial summary judgment, as well as Defendants' motion for summary judgment, are pending before the Court.

## I. Background

Pro se plaintiff Richard Max Strahan ("Strahan") is a self-proclaimed "citizen prosecutor" who has filed numerous lawsuits on behalf of whales that become entangled in fishing gear pursuant to the "citizen suit" provision of the Endangered Species Act ("the ESA"), 16 U.S.C. § 1540(g)(1). The whales and those who are concerned for their safety should be grateful for his vigilance.

Strahan brought the instant action against officers of the

three agencies collectively responsible for licensing fishing gear deployed in Massachusetts coastal waters: Paul Diodati, in his official capacity as Director of the Massachusetts Division of Marine Fisheries; Ian Bowles, in his official capacity as Secretary of the Massachusetts Executive Office of Energy and Environmental Affairs; and Mary Griffin, in her official capacity as Commissioner of the Massachusetts Department of Fish and Game (collectively "the defendants").[1]

Strahan seeks a declaratory judgment that the defendants have violated § 9(a) and (g) of the ESA, 16 U.S.C. § 1538(a) and (g). Strahan also seeks a permanent injunction a) to enjoin the defendants from continuing to license certain commercial fishing equipment that allegedly entangles whales in violation of the ESA and b) to require them to fund the development of "whale-safe" gear and efforts to increase the size of the whale population.

In April, 2006, Strahan filed a motion for a preliminary injunction essentially identical to the requested injunction described above. After conducting an evidentiary hearing, the Court issued an Order dated January 24, 2007, in which it found that, although the fishing gear in question poses a threat to whales, there was no evidence that whales have become entangled in Massachusetts coastal waters or in fishing gear licensed by

---

[1] Two of the incumbents of those offices at the outset of this action have since been replaced and consequently the caption of the case has been amended accordingly.

the defendants within the time frame relevant to this lawsuit. The Court determined, therefore, that the requested preliminary injunction was unwarranted because Strahan failed to show a strong likelihood that the defendants had violated the ESA but it, nevertheless, entered an order staying the action and requiring the parties to file periodic status reports to monitor the situation.

The status reports were meant to inform the Court whether: 1) any whales became entangled in fixed fishing gear in Massachusetts coastal waters or in fixed fishing gear licensed by the defendants, 2) the requirement of using sinking (i.e. weighted, as opposed to floating) ground lines was effectively enforced, 3) any noteworthy advances were made in the development of whale-safe technology and 4) any amendments were made to state procedures for obtaining commercial fishing licenses that were intended to affect the safety of whales.

Status reports were filed in accordance with the court order on October 1, 2007, and October 1, 2008, and July 1, 2009, at which time the stay of the case was lifted. The plaintiff was invited to file responsive comments to each of those reports but did not do so. The three status reports indicate only one entanglement (in April, 2009) that might fall within the scope of this case. The Court issued an Order dated August 14, 2009, permitting the plaintiff to conduct limited additional discovery

with respect to the April, 2009 entanglement, but the plaintiff declined to do so.

A supplement to the final status report was filed by the defendants on November 10, 2009, to notify the Court of two entanglements of endangered whales, which occurred after the final status report, that appear to fit the criteria set forth in the January 24, 2007 Order. Although the plaintiff did not address the two later entanglements, he filed "notice" on November 12, 2009, questioning the truth of the three status reports and arguing for a much broader scope of discovery, which has been repeatedly denied by the Court.

Meanwhile, in June, 2007, this Court denied a motion filed by Strahan for reconsideration of the order denying his request for a preliminary injunction. It also denied another motion filed by him requesting that the Court issue subpoenas to two interested parties to this action, the National Oceanographic and Atmospheric Agency ("NOAA") and the Provincetown Center for Coastal Studies ("CCS"), to gather information from them on recent whale entanglements. In October, 2007, the Court again denied a similar motion for subpoenas to be served on NOAA and CCS.

On March 15, 2010, the defendants moved for summary judgment on all counts. Instead of responding to the defendants' motion, the plaintiff moved to dismiss the case without prejudice on June

25, 2010. In response, the defendants ask the Court either to find in their favor on their pending motion for summary judgment, or, in the alternative, to dismiss the action with prejudice. The Court granted numerous extensions of time for the plaintiff to respond to the defendants' motion for summary judgment and made it clear that no further extensions would be allowed beyond September 30, 2010. On that deadline date, the plaintiff filed an opposition to the defendants' motion for summary judgment, as well as his own motion for partial summary judgment. On October 18, 2010, the defendants opposed the plaintiff's motion for summary judgment. The motion to dismiss and cross-motions for summary judgment are pending before the Court.

**II. Analysis**

**A. Motion to Dismiss**

**1. Legal Standard**

At the plaintiff's request, the Court, in its discretion, may dismiss an action on terms that the Court considers proper. Fed. R. Civ. P. 41(a)(2). In reaching its decision, the Court may consider: 1) the plaintiff's diligence in bringing the motion, 2) the plaintiff's reasons for dismissal, 3) the effort and expense incurred by the defendant to date and 4) the extent to which the litigation has progressed. Am. Sci. & Eng'g, Inc. v. Kelly, 2000 WL 307462, at *1 (D. Mass. 2000) (citations omitted).

### 2. Application

In support of his June 2010 motion to dismiss without prejudice, Strahan argues that: 1) he is unable to prosecute his claims meaningfully because he is indigent and no longer lives in the Boston area and 2) the Court's rulings have "banned" him from further discovery, thereby precluding him from "successfully" prosecuting the defendants.

The Court will deny the plaintiff's motion to dismiss without prejudice for several reasons:

1) Plaintiff waited until the case was more than five years old (and scheduled for trial two months later) to seek dismissal,

2) Strahan argues for dismissal based on the Court's legal rulings regarding the scope of discovery and his dissatisfaction with the factual record subsequently developed,

3) Defendants have already spent a prodigious amount of time on this litigation, including in discovery and

4) the Court has already conducted hearings, reviewed numerous documents, imposed a reporting requirement during the stay, decided motions and set a date for trial.

The plaintiff's stated reasons for seeking dismissal are insufficient, as "voluntary dismissal should be refused when a

plaintiff seeks to circumvent an expected adverse result." Id. at *1 (citations omitted). Furthermore, to grant the plaintiff's motion at this stage in the case would cause the defendants to suffer legal prejudice. Thus, plaintiff's motion will be denied. See P.R. Mar. Shipping Auth. v. Leith, 668 F.2d 46, 50 (1st Cir. 1981).

### B. Motion for Summary Judgment

#### 1. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court views the entire record in the light most hospitable to the non-moving party and indulges all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

Failure to include a concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried constitutes grounds for denial of the motion. Local Rule 56.1. Opposition to a motion for summary judgment must include a concise statement of the material facts as to which there exists a genuine issue to be tried. Id. The material facts set forth in the statement filed by the moving party will be deemed for purposes of the motion to be admitted by the opposing party unless controverted by the statement required to be served by the opposing party. Id.

An opposing party "may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2). If an opposing party shows by affidavit that, for specified reasons, it

cannot present facts essential to justify its opposition, the court may deny the motion, order a continuance to enable discovery to be undertaken or issue any other just order. Fed. R. Civ. P. 56(f).

**2. Application**

**a. Defendants' Motion for Summary Judgment**

To prevail on his claims in chief, the plaintiff must show, <u>inter alia</u>, that the defendants: 1) actually caused "takings" of federally protected whales in violation of the ESA during the relevant time period and 2) are likely to continue to do so in the future, absent an injunction. <u>Strahan</u> v. <u>Coxe</u>, 939 F. Supp. 963, 989 (D. Mass. 1996) (citing <u>Am. Bald Eagle</u> v. <u>Bhatti</u>, 9 F.3d 163, 166 (1st Cir. 1993)). The defendants move for summary judgment on the grounds that there are no genuine issues of material fact and that the plaintiff cannot prove either prong of his case in chief.

The plaintiff opposes the defendants' motion in a brief two-page document, requesting:

> a month to file the required response to the Defendants' statement of issues of material fact and a memorandum of law in opposition to the Defendants' Motion.

Because the Court has granted numerous extensions of time for the plaintiff to file his response and made it clear that no further extensions would be allowed, the Court will deny plaintiff's request for yet another extension of time.

The plaintiff also requests additional discovery pursuant to Fed. R. Civ. P. 56(f). Strahan states in an affidavit that he has "conducted no discovery for four years as a result of court orders" and needs to collect records from a variety of sources. In fact, the Court issued an order on August 14, 2009, in which it permitted the plaintiff to conduct limited additional discovery, including expert depositions. (At that point, the plaintiff had already conducted extensive discovery and called several witnesses to testify in a three-day evidentiary hearing.) The plaintiff's failure to conduct that additional discovery is not a sufficient basis for his pending motion, and thus, the Court will deny the plaintiff's motion for discovery pursuant to Fed. R. Civ. P. 56(f).

Because the plaintiff: 1) may not rely merely on allegations or denials in his own pleading pursuant to Fed. R. Civ. P. 56(e)(2), 2) fails to put forth sufficient grounds for additional discovery pursuant to Fed. R. Civ. P. 56(f) and 3) fails to submit the required concise statement of material facts as to which there exists a genuine issue to be tried pursuant to Local Rule 56.1, the material facts set forth in the defendants' motion for summary judgment are deemed admitted by the plaintiff.

With respect to the first prong, there is no conclusive evidence that the defendants caused takings during the relevant time period. In an Order dated January 24, 2007, the Court

stated there was "no conclusive evidence" that fisherman using state-licensed gear effected takings of endangered whales in state waters between January 2002 (when the plaintiff's prior litigation was dismissed) and November 2006 (when the evidentiary hearing in this case was held).

In an Order dated August 14, 2009, the Court: 1) reviewed the periodic status reports filed by the defendants in 2007, 2008 and 2009, 2) determined that only one entanglement (in April 2009) might fall within the scope of this case and 3) permitted the plaintiff to conduct limited additional discovery regarding that entanglement. The plaintiff conducted no such discovery. In a supplement filed in November, 2009, the defendants disclosed two additional entanglements which occurred after the final status report that might fall within the scope of this case. The plaintiff never sought or conducted any discovery specific to those entanglements which were still under investigation by federal authorities at the time the pending motion for summary judgment was filed. Thus, although the record suggests three entanglements over a seven year period that might fall within the scope of this case, there is no conclusive evidence that the defendants actually caused any takings during the relevant time period.

With respect to the second prong, there is no evidence that takings, if any, are likely to continue in the future. The

-11-

evidence in the record indicates that Massachusetts is at the forefront in taking regulatory steps to eliminate contact between whales and fishing gear, rendering the risk of entanglements "nearly nonexistent." The defendants have implemented numerous measures to reduce the possibility of any future entanglements, including: 1) monitoring developments in fishing gear, 2) pledging to incorporate such advances into the regulatory scheme when technologically and commercially viable, 3) increasing surveillance, 4) requiring more reporting by fisherman and 5) cooperating with other agencies in enforcing regulatory requirements.

Thus, the Court will allow the defendants' motion for summary judgment because there are no genuine issues of material fact in dispute and the defendants are entitled to judgment as a matter of law.

### b. Plaintiff's Motion for Partial Summary Judgment

The plaintiff moved for partial summary judgment (requesting a declaratory judgment) on September 30, 2010, more than six months after the deadline for filing such a motion. The plaintiff also failed to file, pursuant to Local Rule 56.1, a concise statement of material facts as to which there is no genuine issue. Moreover, Strahan requests an additional month "to file the required affidavit and memorandum of law in support of the instant motion." Given the plaintiff's untimely motion

and his failure to comply with requirements despite the Court's clear edict that no further extensions of time would be allowed, the Court will deny the plaintiff's motion for partial summary judgment.

### IV. Miscellaneous

The defendants' motion in limine to include evidence as part of the record at trial is also pending before the Court. Because the Court will allow the defendants' motion for summary judgment, the motion in limine will be denied as moot.

### ORDER

In accordance with the foregoing,

1) plaintiff's Motion to Dismiss Without Prejudice (Docket No. 208) is **DENIED;**
2) defendants' Motion for Summary Judgment (Docket No. 201) is **ALLOWED;**
3) plaintiff's Motion for Partial Summary Judgment (Docket No. 212) is **DENIED;** and
4) defendants' Motion in limine (Docket No. 205) is **DENIED** as moot.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated December 16, 2010